IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik<br><br>    Plaintiffs,<br>v.<br><br>The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 3:14-cv-00532-HTW-LRA |

## MOTION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE DISTRICT COURT JUDGE:

True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik move for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the

Federal Rules of Civil Procedure, which permits a party to seek a temporary restraining order to prevent immediate and irreparable injury. Pursuant to Rule 65(b), a temporary restraining order should be issued to prevent tampering, redaction, or destruction of voter records because:

- Defendant county commissioners have prevented access to voter records in violation of federal law unless they be redacted in violation of federal law and offer inconsistent bases for denying access to records required to be made available for public inspection under the NVRA, these acts have made it virtually impossible to inspect voting records relevant to the recent Mississippi Republican Primary Run-Off election;

- Without immediate access to the voter records, illegal voting may go unchallenged resulting in certain dilution of voting rights; and,

- Without immediate access to the voter records, an unlawful election may be certified by the State of Mississippi.

While failure to enter a TRO under Rule 65 would harm Plaintiffs' efforts to investigate allegations of improper voting in Mississippi's Republican Primary Run-Off and potentially render this suit moot, Defendants would suffer no commensurate harm by an order directing the Defendants to make records publically available in compliance with the NVRA. Further, preliminary relief would serve the public interest by promoting transparency in election practices.

## I.
## FACTUAL BASES FOR RELIEF

1.  True the Vote monitors elections for compliance with state and federal law and identifies instances of voting irregularities or possible fraud, including the failure of election officials to verify the identity of voters and the failure of election officials to disqualify ineligible voters from voting in both Republican and Democratic primaries. It trains volunteers to conduct these activities.

2. As part of its mission to protect electoral integrity, True the Vote examines official lists of eligible voters and other voter registration data to verify their accuracy and currency.

3. In June 2014, in an effort to determine whether ineligible voters had been allowed to cast ballots in the Mississippi Republican Primary Run-Off Election (the "election"), True the Vote requested access to the State of Mississippi's voter records. Immediately prior to the election, True the Vote requested the records from Hinds and Rankin Counties. Their request was made pursuant to NVRA Section 8(i)(1). *See* 42 U.S.C. 1973gg-6(i).

4. True the Vote was denied access to the records.

5. Immediately following the election, on July 7 and July 8, True the Vote again demanded the voter records from certain Mississippi counties pursuant to NVRA Section 8(i)(1). While some counties provided proper voter records, Copiah County, Hinds County, Jefferson Davis County, Lauderdale County, Leake County, Madison County, Rankin County, Simpson County, and Yazoo County refused. These counties, who have been sued via their respective Election Commissions, also wrongfully maintain that the birthdates of voters must be redacted from voter records, at Plaintiffs' expense. The Republican Party of Mississippi and Secretary of State are moving forward with the election certification process without proper concern for NVRA laws regarding a federal election.

6. The individual Plaintiffs are registered voters who voted in Mississippi's Republican Primary Run-Off election and have since requested access to voter records. Their requests have been denied entirely, or have been granted only in part and in violation of the NVRA.

7. By preventing access to the un-redacted records, Defendants County Election Commissions (and by extension the Secretary of State, who is charged with overseeing elections) have failed to comply with the NVRA.

8. Without access to the un-redacted records, the Republican Senate Primary Election may be certified without confirmation that the election was lawful and proper, pursuant to the NVRA. And the ability to protest an unlawful election will be irreparably injured without the access to the un-redacted records. Thus, irreparable harm to Plaintiffs, who are concerned with voter dilution and upholding the NVRA, may result without immediate Court intervention.

## II.
## CONSTITUTIONAL IMPLICATIONS

9. "[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters." *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S.Ct. 1362 (1964). This is known as the "one person, one vote" rule, and it guarantees that every individual's vote is weighed equally. *Id.* at 558.

10. Because voting is a "fundamental political right," it is subject to strict scrutiny. *Romer v. Evans*, 517 U.S. 620, 650 n. 3, 116 S.Ct. 1620 (1996). Thus, protection of constitutional voting rights via relief under Rule 65 should be considered with particularity.[1]

## III.
## FEDERAL AND STATUTORY FRAMEWORK

11. In 1993, Congress enacted the NVRA to safeguard electoral integrity. The NVRA obligates states to protect the accuracy of voter rolls. To ensure voter records are accurate and current, Section 8(i)(1) of the NVRA provides:

> Each State shall maintain for at least 2 years and **shall make available for public inspection** and, where available, photocopying at a reasonable cost, ***all records***

---

[1] Where constitutional rights are threatened, grounds for temporary restraining order relief are particularly supported. *See, e.g., Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F.Supp.2d 796 (N.D. Ohio 2008); *Lozano v. City of Hazleton*, 459 F Supp. 2d 332 (M.D. Pa. 2006); *Miller v. Blackwell*, 348 F.Supp.2d 916 (S.D. Ohio 2004); *Cirelli v. Town of Johnston School Dist.*, 888 F.Supp. 13 (D.R.I. 1995); *National Prisoners Reform Ass'n v. Sharkey*, 347 F.Supp. 1234 (D.R.I. 1972).

**concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters**, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. 1973gg-6(i).

12. Poll books—the records at issue in this case—mirror the state's voter registration rolls. They are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1); *see Project Vote/Voting for Am., Inc.*, 682 F.3d at 335. Meanwhile, the process of reviewing completed voter materials, such as poll books, constitutes a "program" or "activity" of evaluating voter records "for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). Accordingly, the records made the basis of this case are subject to the NVRA.

13. Mississippi law requires counties to maintain accurate voter rolls and poll books for general and primary elections. *See* MISS. CODE ANN. § 23-15-135; 23-15-125; 23-15-127; § 23-15-211; § 23-15-153. But, Mississippi law imposes additional restrictions on public access to records in violation of federal law. In particular, Mississippi law requires parties inspecting records under the NVRA to bear the cost of redacting "exempted," identifying information from the voter rolls. *See* MISS. CODE. ANN. § 25-61-5 ("public agency shall be entitled to charge a reasonable fee for the redaction of any exempted material, not to exceed the agency's actual cost."). These costs are not minimal. While birthdates are "exempted" by Mississippi law from disclosure, birthdates are not exempt from disclosure under the NVRA. Further, a State cannot force parties to bear the costs of redacting such information from voter rolls, as the NVRA does not allow for states to recover reasonable costs of redaction.

5

## IV.
## ARGUMENT AND DEMAND FOR RELIEF

14. Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs seek a temporary restraining order or, in the alternative, a preliminary injunction. The standard for such relief is well-established and it courts routinely grant equitable relief in cases such as this one. *See, e.g., Assoc. of Community Org. for Reform Now v. Edgar*, 56 F.3d 791 (7th Cir. 1995); *League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 115 (N.D. Fla. 2012).

15. The standard for determining whether a temporary restraining order should be granted is similar to the standard for a preliminary injunction. The movant must show (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest. *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). The requirements for a TRO and preliminary injunctive relief are met when, as here, a plaintiff establishes a violation of a statute and there exists a cognizable danger of a recurrent violation.

16. Plaintiffs allege a violation of the NVRA's public disclosure provision, and are likely to prevail on the merits of their claim that Defendants have flatly denied public access to voter rolls in violation of the NVRA.

17. The NVRA imposes requirements on states concerning voter registration procedures and policies. 42 U.S.C. § 1973gg-6. These include requirements that states confirm voter registrations, ensure only registered voters vote in elections, remove ineligible voters from voter rolls and maintain accurate voter registration lists. *See id.* These NVRA obligations supplement the Defendants' statutory obligation to maintain records of federal elections pursuant

42 U.S.C. § 1974, which requires the State to retain and preserve for a period of twenty-two months all records and papers concerning a federal election for Senate.

18. The NVRA mandates public disclosure of all records related to the accuracy and currency of voter registrations. *Id.* § 1973gg-6(i)(1).

19. The records requested by Plaintiffs are subject to the NVRA Public Disclosure Provision because they are "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i)(1); *Project Vote/Voting for Am., Inc.*, 682 F.3d at 335.

20. Plaintiffs are protected by the Act's Public Disclosure Provision. In particular, True the Vote is an entity engaged in activities to verify the accuracy and currency of Mississippi's voter rolls, and has suffered an "informational injury" because the NVRA confers upon it a right to public information, including voters' birthdates, yet such information has been withheld from True the Vote. *See Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702-07 (E.D. Va. 2010) *aff'd* 682 F.3d 331, 335 (4th Cir. 2012) (holding voter organization denied access to public records under NVRA protected by Act's provisions and had standing to sue for injury).

21. True the Vote has satisfied all conditions precedent, as it requested access to public records under the NVRA within thirty days of an election. *See id.* § 1973gg-9(b)(3).

22. As the NVRA specifically provides a private right of action to any person aggrieved by a violation of the Public Disclosure Provision, *see* 42 U.S.C. § 1973gg-9(b), and the NVRA squarely requires states (and their associated counties) to make records available for public inspection, Plaintiffs are likely to prevail on the merits of their claims that the Defendants violated the NVRA in denying access to public records.

23. Plaintiffs may suffer irreparable harm if denied relief. Defendants' practices of denying access to voter rolls and associated materials restricts public participation in ensuring fair elections. In enacting the NVRA, Congress recognized that the public properly plays a role in ensuring currency and accuracy of voter rolls. Thus, Congress required each state to maintain for at least 2 years and make available for public inspection, *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. 42 U.S.C. 1973gg-6(i). Because Congress recognized the importance of reviewing voter records to the electoral process, it is undeniable that restricting the public from accessing such records is harmful.

24. The potential harm in this case may be of particular significance. Mississippians are fiercely divided over the outcome of the election. Their division stems from allegations the election was tainted by fraud. As of this writing, the Republican Party in Mississippi has yet to certify a winner of the election. Reviewing voter records under the NVRA is critical to determining whether or not the forgoing suspicions are founded. And, given the fundamental nature of the right to vote, any other remedy short of equitable relief would be inadequate in this case.

25. Further, Plaintiffs may suffer immediate, irreparable if the voting records made the subject of this case are in any way redacted or destroyed prior to their disclosure to the public.[2]

26. Equitable factors too strongly favor preliminary relief in this case. The NVRA's legislative history conveys Congress' intent that Section 8 represents a careful balancing of the

---

[2] In *United States v. Little Beaver Theatre, Inc.* temporary restraining order found especially appropriate where U.S. applied for and received order preventing all parties from "disposing of, relinquishing possession of, or in any matter cutting, altering, splicing, destroying, or mutilating" allegedly obscene movie film. 324 F.Supp. 120 (S.D. Fla. 1971). Certainly here, the concerns regarding the integrity of the voting records, which implicate constitutional voting rights, are more precious than potentially obscene movie film, and should be strictly preserved by the Defendant County Election Commissions. *See, e.g. Miller v. Blackwell*, 348 F.Supp.2d 916 (S.D. Ohio 2004) (temporary restraining order appropriate where constitutional voting rights threatened).

dual goals of enhanced voter participation and the maintenance of accurate and current voter registration lists. These dual purposes, Congress concluded, were served by making voter records (but not ballots) publically available for inspection and copying. *See* 42 § U.S.C. 1973gg-6(i). Congress determined that a private right of action under the NVRA was appropriate to correct violations of the NVRA public disclosure provision.

27. Finally, any burden on the defendants is minimal and is outweighed by the risk of harm to Mississippi voters, generally, and Plaintiffs, specifically. The Defendants are charged with maintaining current and accurate voter rolls. The NVRA requires Defendants to make such records available for inspection and copying. Having been subject to the NVRA since 1993, Defendants should easily be able to comply with its provisions. At a minimum, Defendants suffer no burden in simply preserving the status quo of their voting records without redaction.

28. Pursuant to Rule 65, Plaintiffs therefore ask the Court to enter a positive restraining order ordering the Defendants to maintain voter records in their possession without editing, tampering, or redacting birth dates or other identifying information from the records. Plaintiffs further request an order temporarily enjoining Defendants from refusing to permit access to any requesting party for copying and/or inspection of voter registration applications, absentee voting envelopes, absentee ballots and any associated applications therewith, voters rolls, voter poll books, and federal post card applications, as sought by Plaintiffs in this matter;

29. This limited order would preserve the status quo, until there is opportunity for a hearing on a preliminary injunction, determining whether equitable relief is appropriate to force further compliance with the NVRA.

30. The complained of counties have indicated on July 7 and July 8, 2014, that they required redacted birthdates from the voting records prior to making them available to True the Vote. This motion is being filed July 9, 2014. Certification of a potentially unlawful election

9

may occur within days of the filing of this motion if not properly challenged. Time is of the essence.

31. It bears repeating, Plaintiffs assert no harm to Defendants by virtue of a positive order restraining Defendants from tampering with or otherwise destroying voter records. Defendants are required to maintain the voting records[3], and should not redact the birthdates from them pursuant to the NVRA. Thus, the harm to Plaintiffs greatly outweighs any potential harm to Defendants.

26. For the foregoing reasons, Plaintiffs seek immediate relief under Rule 65(b) to access and inspect the voter records of the Defendant Counties under the NVRA. *Id.* § 1973gg-9(b). Plaintiffs request immediate access to voter records with the birthdates un-redacted. Irreparable harm will likely result if Plaintiffs, and other concerned citizens, are not given proper access to voting records in violation of the NVRA. *Id.* § 1973gg-9(b).

## VII.
## ATTORNEYS' FEES

27. Plaintiffs seek to recover reasonable attorneys' fees under 1973gg-99(c), permitting fees for actions under NVRA.[4]

28. Plaintiffs also seek to recover reasonable attorneys' fees under 42 U.S.C. § 1988, which allows for fees in suits vindicating actions for deprivations of civil rights.

## VIII.
## PRAYER

The information sought will directly impact the current dispute regarding the outcome of the 2014 Republican Primary Election Run-Off for the office of United States' Senator.

---

[3] See Miss. Sat. Ann. § 23-15-211 (creating county election commissions); *see also* § 23-15-153; 23-15-127; 23-15-35 (responsibilities of county election commission include properly maintaining voting records).
[4] Plaintiffs do not otherwise seek monetary recovery in this suit and therefore are not required to furnish security in support of this motion under Federal Rule of Civil Procedure 65.

Plaintiffs are currently unable to ascertain whether unlawful votes were cast, in violation of federal law.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

(a) Immediately order the election commissions of Copiah County, Hinds County, Jefferson Davis County, Lauderdale County, Leake County, Madison County, Rankin County, Simpson County and Yazoo County to not redact or otherwise destroy voter records, including voter registration applications, voting envelopes, absentee ballots, voter rolls, voter poll books, and federal post card applications;

(b) Require Defendants to immediately make available to any requesting party for copying and/or inspection voter records without redaction of birthdates;

(c) Award Plaintiffs costs incurred in pursuing this action, including attorneys' fees and reasonable expenses; and

(d) Grant such other and further relief as the Court deems proper.

Date: July 9, 2014

Respectfully submitted,

/s/    *L. Eades Hogue*

| | |
|---|---|
| Joseph M. Nixon<br>Texas State Bar No. 15244800<br>jnixon@bmpllp.com<br>Kristen W. McDanald<br>Texas State Bar No. 24066280<br>kmcdanald@bmpllp.com<br>Kelly H. Leonard<br>Texas State Bar No. 24078703<br>kleonard@bmpllp.com<br>BEIRNE, MAYNARD & PARSONS, LLP<br>1300 Post Oak Blvd, Suite 2500<br>Houston, Texas  77056<br>(713) 623-0887   Tel.<br>(713) 960-1527   Fax<br>(Pro Hac Vice Motions Pending)<br><br>James E. "Trey" Trainor, III.<br>Texas State Bar No. 24042052<br>ttrainor@bmpllp.com<br>BEIRNE, MAYNARD & PARSONS, LLP<br>401 W. 15th Street, Suite 845<br>Austin, TX 78701<br>(512) 623-6700   Tel.<br>(512) 623-6701   Fax<br>(Pro Hac Vice Motion Pending) | L. Eades Hogue<br>Mississippi State Bar No. 2498<br>Louisiana State Bar No. 1960<br>ehogue@bmpllp.com<br>BEIRNE, MAYNARD & PARSONS, LLP<br>Pan-American Life Center<br>601 Poydras Street<br>Suite 2200<br>New Orleans, LA 70130<br>(504) 586-1241 Tel.<br>(504) 584-9142 Fax<br>**Lead Counsel** |

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that this document has been filed with the Court's e-file system in accordance with Federal Rules of Civil Procedure and the Court's Local Civil Rules. This motion, however, is made pursuant to Rule 65(b), and therefore a temporary restraining order may be issued against the adverse party without oral or written notice.

                                                 /s/    *L. Eades Hogue*