IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik<br><br>    Plaintiffs,<br>v.<br><br>The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 3:14-cv-00532-HTW-LRA |

### DECLARATION

By: Julie Patrick

1. I, Julie Patrick, verify under penalty of perjury under the laws of the United States of America that the following is true and correct. *See* 28 U.S.C. § 1746.

2. As the Chairperson of the Republican Committee of Marshall County, on July 8-9, 2014, I attempted to examine the Ballot Boxes in Tunica County.

3. During canvassing the vote, which is where we double check totals for certification, we


EXHIBIT 3

compare the tally sheet provided by each closing manager. Pollbooks are removed, but all other materials are resealed into the ballot boxes to maintain the integrity of the vote should there be any challenges.

4.  At the end of the voting day at least two tapes are printed for each machine. One is put into the memory card bag and the other is posted to the wall ( for public disclosure, along with the tape that is printed at the beginning of the day that provides a public display that the machine had all zero total) and later removed and put loose within the poll bag and sealed.

5.  The Tunica County voting records reflected the opposite. All boxes were open and flaps undone. There had been no effort to maintain the integrity of the process. Most support documentation was removed, leaving primarily empty supplies, machine canisters and memory cards.

6.  All of the affidavit envelopes and even the ballots which should have been removed from the envelopes and laid in the boxes at the time of the count were not present.

7.  The loose machine printed totals were absent with the exception of a few of the zeroed out tapes (evidence that the poll workers knew to put all materials into the boxes) and even a couple of the printed machine tapes were missing within the memory card bags. The poll workers tally sheets (that listed the machine totals, absentee, curbside, affidavit etc.) were missing in all precincts, event logs (explains any problems or explanation for errors), opening and closing log, broken seals, and sign in sheets. Of note was there were almost no additional seals for the ballot boxes having been sealed at the polls, or after canvasing the vote, or any time after that. All broken seals should be carefully maintained within the box and a log of who unsealed with signature and date.

8.  I asked for the chain of custody information, yet was only provided with the opening and closing seals of the supply boxes, memory card and gray box (there were metal gray boxes inside blue canvass bags). On 7/9/14, we began checking the seal numbers against the log provided for Precincts 6 through 11, to ascertain what seals were in the bags. Only Precinct 7 had two additional seals not related to the opening and closing for June 24th, with two missing for the opening of the supply box and memory card. Of note, was a missing rejected absentee in Precinct 7. Since we did not have the pollworker tally sheets, the discovery of the missing envelope was by comparison of the official Absentee Ballot Received Report and the Record of Absentee Voters, in which a 5th name appears as having voted but does not appear on the other report, further notation states "New Register".

9.  When noting all boxes that were open, I was offered the explanation by Sharon Reynolds, the Circuit Clerk, they were unsealed for the McDaniel Campaign to do a pollbook review. Later, I attempted to get an explanation as to who and why the other materials were removed. 'Why is so much missing from these boxes, did the election commissioners go through these boxes?' Sharon Reynolds gave no other explanation other than, 'Yes, the Election Commissioners went through the boxes', which is a normal event, but since there were no additional seals in most cases and her statement that the boxes were unsealed for the McDaniel camp to look at the pollbook, it would seem that she was implying that her reference to the

election commission occurred after certification, despite that certification for Tunica took place on June 25th.

10. Upon inspection of the first box, I asked to have the box sealed. Each time, Ms. Reynolds complied, but I did not see or note her writing anything down as they were sealed. So beginning at Precinct 2, I began asking that I be shown the seal numbers. The next day, I noted the deputy clerk, noting the seal numbers in a notebook. Since, I had specifically asked for chain of custody documentation and was supplied only the opening and closing seal numbers, one would assume that her notebook would only contain the numbers we recorded on each report.

11. As chairperson for Marshall County, while canvassing the vote for my county, I was told that inspection of absentees are forbidden to reject or accept. It is at the sole discretion of the poll worker as to whether to accept or reject a ballot. My duty was simply to see that the ballots were there, so I had no experience in examination of these absentees. I had asked Ms. Reynolds, 'All absentee ballots that are accepted are opened and the ballot removed? and if they are rejected they remain closed?' She confirmed that was correct. Later when I attempted to obtain a count for how many of the absentees were for McDaniel, I was told that that information was not available to her. The next day, on 7/9/14 it occurred to me the most likely reason she could not know, was that the ballots were still within the envelopes. These ballots were supposed to be removed from the envelopes and not returned to the envelopes. Removing them from the envelopes helps whoever is counting to maintain the secrecy of how the voter cast his vote.

12. I asked Deputy Clerk, Neffie Gatewood, if she would have the ballots removed, so I could get this information as to the count. I was told that the Circuit Clerk was out of town. I asked if she would then call the Secretary of State. She stated she would. More than an hour later, I asked her if she had made this call. 'No, I have been here with you the whole time'. I asked, 'Can't you use your cell phone? She responded 'This is my personal phone'. Approximately 15 minutes later, I mentioned to Barbara Kendrick from the Cochran campaign that we had been asked to leave 30 minutes early so Ms. Gatewood could attend a meeting. Ms. Gatewood then reported to me that it was not necessary because she had just done the meeting over the phone, her personal cell phone. Later that day, after having been familiarized with some of the issues I had seen on the absentee votes, I asked to have the Precinct 1 reopened. I was told it was sealed. I told her that she could just break the seal, record it and replace it once we were done. She immediately used her personal cell phone to call the Circuit Clerk. After obvious resistance to open, I chose not to further challenge and asked for the seal numbers that I had not previously been afforded.

13. When leaving for a lunch break, I left reports and materials out on the desk as all parties left and the room was locked by Ms. Gatewood. We returned 15 minutes early and waited in the foyer. Finally at 10 minutes past 1, we checked to why we had not yet seen Ms. Gatewood and it was told that she was up in the room waiting for us. She had never gone past us and so she must have been in the room for the majority of the break. It was decided to skip sections of the reports and fill them in at home. We went through the remaining boxes taking inventory of what was and was not in the boxes, comparing June 3rd and June 24th (primary election and run-off) Sign In sheets and examining the absentees. Upon returning home I discovered that the Poll Worker information that I had previously been provided was missing.

14. On 7/8/14 in attendance from the Cochran Campaign was Patrick Johnson and Richard Fillilove. Mr. Fillilove was visibly dismayed at the disarray of the records with frequently shaking of his head and at one point mouthed, 'We're in trouble' in reference to the missing contents and absentee ballot with a double signature over flap.

15. On 7/9/14 representing the Cochran Campaign was Barbara Hendrick who also frequently shook her head in disbelief and raised eyebrows disgusted at the lack of cooperation, missing records, etc. At one point, I stated, 'Well at least something good will come out of all this -- the way we run elections will get cleaned up.' Ms. Hendrick agreed with my statement.

16. In summary the actions of the Circuit Clerk's office and the election commission of Tunica County frustrated and confused our efforts, keeping us shuffling through printed reports given to us separately when information was requested. I do not, and cannot, feel an adequate review was conducted by my team due to these failures.

17. Further, declarant sayeth not."

Signed on this the 14th day of July, 2014 in Marshall County, Mississippi.

_____
Julie Patrick