IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TRUE THE VOTE, JANE COLN, BRANDIE §
CORRERO, CHAD HIGDON, JENNIFER §
HIGDON, GENE HOPKINS, FREDERICK LEE §
JENKINS, MARY JENKINS, TAVISH KELLY, §
DONNA KNEZEVICH, JOSEPH KNEZEVICH, §
DORIS LEE, LAUREN LYNCH, NORMA §
MACKEY, ROY NICHOLSON, MARK §
PATRICK, JULIE PATRICK, PAUL PATRICK, §
DAVID PHILLEY, GRANT SOWELL, SYBIL §
TRIBBLE, LAURA VANOVERSCHELDE, §
AND ELAINE VECHORIK §
    Plaintiffs, §  Cause No. 3:14-CV-532-NFA
     §
v. §
     §
THE HONORABLE DELBERT HOSEMANN, §
in his official capacity as Secretary of §
State for the State of Mississippi, THE §
REPUBLICAN PARTY OF MISSISSIPPI, §
COPIAH COUNTY, MISSISSIPPI ELECTION §
COMMISSION, HINDS COUNTY, §
MISSISSIPPI ELECTION COMMISSION, §
JEFFERSON DAVIS COUNTY, MISSISSIPPI §
ELECTION COMMISSION, LAUDERDALE §
COUNTY, MISSISSIPPI ELECTION §
COMMISSION, LEAKE COUNTY, §
MISSISSIPPI ELECTION COMMISSION, §
MADISON COUNTY, MISSISSIPPI §
ELECTION COMMISSION, RANKIN §
COUNTY, MISSISSIPPI ELECTION §
COMMISSION, SIMPSON COUNTY, §
MISSISSIPPI ELECTION COMMISSION, AND §
YAZOO COUNTY, MISSISSIPPI ELECTION §
COMMISSION §
    Defendants.

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF BY PLAINTIFFS TRUE THE VOTE ET AL.**

TO THE HONORABLE DISTRICT COURT JUDGE:

1.     NOW COME True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik, complaining of The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, The Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission for failure to maintain records and papers of a federal election in violation of 42 U.S.C. § 1974 and to enforce Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. §1973gg-6.  In addition, the Individual Plaintiffs bring claims for vote dilution in violation of the Equal Protection Clause, and Equal Protection claims for Mississippi's failure to employ uniform election practices.

2.     In accord with Federal Rules of Civil Procedure 15(a) and (c), which permit amendment of a complaint 21 days after service thereof or within 21 days of any responsive pleading, Plaintiffs hereby file this First Amended Complaint for Declaratory and Injunctive Relief:

# I.
# JURISDICTION AND VENUE

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201, and 42. U.S.C. §§ 1973gg-9(b)(3), 1983.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 104 and 1391.

# II.
# PARTIES

5.     Plaintiff, True the Vote, is a 501(c)(3) organization existing under the laws of the State of Texas, with its principal office in Houston, Texas. It is the nation's largest nonpartisan voters' rights and election integrity organization.   An integral part of its public interest mission is to inspire and equip volunteers for involvement at every stage of America's electoral process by providing training, technology, and support to citizens so that they can ensure election integrity in their own communities.   As part of its activities, True the Vote trains volunteers to monitor local, state and federal elections for compliance with applicable law.   As relevant to this case, True the Vote (through its volunteers) culls through voter rolls and materials in order to identify potential election irregularities.   Due to concerns regarding irregularities in Mississippi's June 2014 Republican Primary Run-Off Election, True the Vote requested access to Mississippi's voter rolls, voter poll books, absentee ballot applications and envelopes and federal postcard applications.   The purpose of its request was to investigate claims that voters illegally double-voted in both the democratic and republican primary races or cast improper absentee ballots.   True the Vote was denied access to the requested materials by various County Circuit Clerks working at the direction of the Secretary of State.

3

6.      Jane Coln is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Coln voted in DeSoto County.

7.      Brandie Correro is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Correro voted in DeSoto County.

8.      Chad Higdon is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Higdon voted in DeSoto County.

9.      Jennifer Higdon is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Hidgon voted in DeSoto County.

10.     Gene Hopkins is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Hopkins voted in DeSoto County.

11.     Tavish Kelly is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Kelly voted in Pearl River County.

12.     Frederick Lee Jenkins is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Jenkins voted in DeSoto County.

13.     Mary Jenkins is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Jenkins voted in DeSoto County.

14.     Donna Knezevich is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Knezevich voted in Pearl River County.

15.     Joseph Knezevich is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Knezevich voted in Pearl River County.

16.     Doris Lee is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Lee voted in Marshall County.

17.     Lauren Lynch is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Lynch voted in DeSoto County.

18.     Norma Mackey is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Mackey voted in Wayne County.

19.     Roy Nicholson is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Nicholson voted in Rankin County.

20.    Mark Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Patrick voted in Marshall County.

21.    Julie Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Patrick voted in Marshall County.

22.    Paul Andrew Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Patrick voted in Marshall County.

23.    David Philley is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Philley voted in DeSoto County.

24.    Grant Sowell is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Mr. Sowell voted in Lee County.

25.    Sybil Tribble is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. Tribble voted in Wayne County.

26.    Laura VanOverschelde is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election.  Ms. VanOverschelde voted in Hinds County.

27.     Elaine Vechorik[1] is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republic Primary Run-Off Election.  Ms. Vechorik voted in Oktibbeha County.

28.     Defendant, Secretary of State Delbert Hosemann is sued in his official capacity as the chief state election official responsible for coordinating Mississippi's responsibilities under the NVRA.  *See* 42 U.S.C. § 1973gg-8, MISS. CODE ANN. § 23-15-211.1(1).  Defendant Hosemann is the head of the Office of the Secretary of State for Mississippi.  The Elections Division is one of the divisions established within the Office of the Secretary of State.  MISS. CODE ANN. § 7-3-71.

29.      Defendant, the Republican Party of Mississippi, is a political party organized under the laws of the State of Mississippi. It is the party responsible for conducting the Republican Primary and Primary Run-Off Elections under Mississippi law.

30.     Defendant, the Copiah County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[2] The Copiah County, Mississippi Election

---

[1] Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik are collectively referred to as "Voting Plaintiffs".

[2] The county election commissions in Mississippi have been established pursuant to MISS. CODE ANN. § 23-15-211 and include the county's circuit clerk and the county's elected election commissioners, who are parties to this suit in their official capacities as such members of the county election commission.  Pursuant to this statute Copiah County, Mississippi Election Commission includes Circuit Clerk Edna Stevens, and Election Commissioners Wilhelmina Jones, Frances Taylor, Bonnie McLendon, Lydia Green, and Beverly Hood.

Commission is responsible for coordinating Copiah County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

31.     Defendant, the Hinds County, Mississippi Election Commission, is a body created by MISS. CODE ANN. § 23-15-211.[3]  The Hinds County, Mississippi Election Commission is the entity responsible for coordinating Hinds County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

32.     Defendant, the Jefferson Davis County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[4]  The Jefferson Davis County, Mississippi Election Commission is the entity responsible for coordinating Jefferson Davis County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

33.     Defendant, the Lauderdale County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[5]  The Lauderdale County, Mississippi

---

[3] The Hinds County, Mississippi Election Commission includes Circuit Clerk Barbara Dunn and Election Commissioners James Reed, Josephine Anderson, Santore Bracey, Connie Cochran, and Lelia Rhodes.

[4] The Jefferson Davis County, Mississippi Election Commission includes Circuit Clerk Clint Langley and Election Commissioners Linda Speights, Ralph Hanegan, Deandera Clavo, Stephen Abram, and Carolyn Rhodes.

[5] The Lauderdale County, Mississippi Election Commission includes Circuit Clerk Donna Johnson and Election Commissioners Wallace Heggie, Evelyn Acklin, Awana Simmons, Gloria Dancy, and Jeff Tate.

Election Commission is the entity responsible for coordinating Lauderdale County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

34.    Defendant, the Leake County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[6]  The Leake County, Mississippi Election Commission is the entity responsible for coordinating Leake County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

35.    Defendant, the Madison County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[7]  The Madison County, Mississippi Election Commission is the entity responsible for coordinating Madison County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

36.    Defendant, the Rankin County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[8]  The Rankin County, Mississippi Election

---

[6] The Leake County, Mississippi Election Commission includes Circuit Clerk Kathy Henderson and Election Commissioners Sandra Grundy, Donna Rawson, Fannie Mae Jones, Linda Sanders, and Addie Hudson.

[7] The Madison County, Mississippi Election Commission includes Circuit Clerk Lee Westbrook and Election Commissioners Timothy Jenkins, Julia Hodges, Pat Truesdale, Azzie Jackson, and Leroy Lacy.

[8] The Rankin County, Mississippi Election Commission includes Circuit Clerk Becky Boyd and Election Commissioners Kelly Wedgeworth, Leslie Lewis, Tonya Rivers, Eric Baldwin, and C.L. Pittman.

Commission is the entity for coordinating Rankin County's responsibilities under the NVRA and Mississippi law. *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-135; 23-15-127; 23-15-153; 23-15-211.

37.     Defendant, the Simpson County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[9]   The Simpson County, Mississippi Election Commission is the entity responsible for coordinating Simpson County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-127; 23-15-135; 23-15-153; 23-15-211.

38.     Defendant, the Yazoo County, Mississippi Election Commission is a body created by MISS. CODE ANN. § 23-15-211.[10]   The Yazoo County, Mississippi Election Commission is the entity responsible for coordinating Yazoo County's responsibilities under the NVRA and Mississippi law.  *See* 42 U.S.C. § 1973gg-8, *see also* MISS. CODE ANN. §§ 23-15-125; 23-15-127; 23-15-135; 23-15-153; 23-15-211.

39.     The forgoing Defendants have been served with process, including summons and a copy of Plaintiffs' Original Complaint. (See Docs. 1, 29-39).

---

[9]  The Simpson County, Mississippi Election Commission includes Circuit Clerk Cindy Jensen and Election Commissioners Calvin Edwards, Eugene Blair, James Wallace, Lola McPhail, and Wanda Bridges.

[10] The Yazoo County, Mississippi Election Commission includes Circuit Clerk Robert Coleman and Election Commissioners Jerry Alexander, Virginia Mathews, Gretta Winters, Sylvia Vandevere, and Claude Collum.

**III.**
**FACTUAL ALLEGATIONS**

40.    Plaintiffs repeat and re-allege the preceding as though set forth fully herein.

**A.    Voter records were not made publicly available to True the Vote.**

41.    True the Vote is a non-profit organization that works to protect the integrity of local, state, and federal elections.  True the Vote monitors elections for compliance with state and federal law and identifies instances of voting irregularities or possible fraud, including the failure of election officials to verify the identity of voters and the failure of election officials to disqualify ineligible voters from voting, such as voters who vote in both the Republican and Democratic primaries.  It trains volunteers to conduct these same activities.

42.    As part of its mission to protect electoral integrity, True the Vote examines official lists of eligible voters and other voter registration data to verify their accuracy and currency.

43.    In June 2014, in an effort to determine whether ineligible voters had been allowed to cast ballots in the Mississippi Republican Primary Run-Off Election (the "election"), True the Vote requested access to Mississippi's voter records from the Republican Party of Mississippi.  True the Vote was denied access to the records.

44.    Immediately prior to the election, True the Vote requested records from Hinds and Rankin Counties.  Its requests were made pursuant to NVRA Section 8(i)(1). *See* 42 U.S.C. 1973gg-6(i). True the Vote was denied access to the records.

45.     Immediately following the election in July 2014, True the Vote again requested access to voter records pursuant to NVRA Section 8(i)(1) from Copiah County, Hinds County, Jefferson Davis County, Lauderdale County, Leake County, Madison County, Rankin County, Simpson County, and Yazoo County via its volunteer base. True the Vote was impermissibly denied access to complete voter records by these counties.

46.     In some instances, True the Vote was informed no voting records would be released for public inspection or copying. In other instances, discussed *infra*, True the Vote was advised records would only be made available for inspection of copying if voter birthdates were redacted from the requested materials.

47.     When the counties denied public access to voter rolls, voter poll books, absentee ballot applications and envelopes, and federal post card applications, the counties claimed certain records could not be made available for public inspection because they did not fall under the NVRA's public disclosure provision.

48.     True the Vote has expended significant time and resources to investigate issues concerning the Republican Primary Run-Off Election, and to assist its local community partners with voting concerns, including potentially improper election administration practices in local jurisdictions of Mississippi.  By preventing access to these records, Defendants are denying True the Vote's rights under the NVRA, subverting the Act's purpose and inhibiting True the Vote's efforts to carry out its voter protection and election administration reform programs and activities.

**B.      Voter Records were not made publicly available without redaction.**

49.      Roy Nicholson, Julie Patrick and True the Vote, among others ("the Requestors"), requested access to Mississippi's voter records pursuant to NVRA Section 8(i)(1), but encountered unlawful obstacles to their NVRA Section 8(i)(l) requests.

50.      The Requestors were advised that the records would not be produced in unredacted form.  Rather, they were told by the defendant counties that Mississippi law requires the counties to redact each voter's date of birth from the rolls, poll books and other materials at the Plaintiffs' cost.  Some Plaintiffs incurred the cost of redacting this information in violation of the NVRA.

51.      The Secretary of State, Mississippi's chief elections officer charged with compliance under the NVRA, has approved of such redactions in public statements.  Further, his office has directed county officials to redact voter birth dates from any voting records made publically available for inspection and copying.

52.      Once the Requestors secured the records, they perceived certain irregularities in them.  Specifically, some Requestors observed duplicate, missing and/or written entries in the voter rolls indicating that voters who had voted in Mississippi's Democratic Primary may have later voted in the Republican Primary Run-Off.  Such "double-voting" violates Mississippi Code § 23-15-575, which states: "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in which he participates."  *See Mississippi State Democratic Party v. Barbour*, 529 F.3d 538 (5th Cir. 2008).

13

53.     The Voting Plaintiffs submit their lawful votes in the Republican Primary Run-Off have been impermissibly diluted by unlawful ballots cast in violation of the prohibition on "double-voting."

54.     All Plaintiffs submit that the democratic process has been unlawfully manipulated, and Defendants, who are in the best position to monitor the Mississippi Republican Primary Run-Off Election, should be ordered to produce public records concerning the election in un-redacted form.   Should the records support claims of election irregularities, the votes should be re-counted, subtracting unlawful votes.

## IV.
## CONSTITUTIONAL FRAMEWORK

55.     Plaintiffs repeat and re-allege the preceding as though set forth fully herein.

56.     "[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters." *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362 (1964). This is known as the "one person, one vote" rule, and it guarantees that every individual's vote is weighed equally. *Id.* at 558.  Because voting is a "fundamental political right," it is subject to strict scrutiny. *Romer v. Evans*, 517 U.S. 620, 650 n. 3, 116 S. Ct. 1620 (1996). When a political subdivision allows unqualified voters to cast a vote in a given election, it dilutes the voting power of some qualified voters. It is well established that the right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105, 121 S. Ct. 525 (2000) (quoting *Reynolds*, 377 U.S. at 555).

14

57.     The Supremacy Clause of the Constitution makes federal laws enacted by the United States the supreme law of the land.   U.S. Const. art. VI, cl. 2.   Under the Supremacy Clause, state action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies a legislative field, or by implication because of conflict with a congressional enactment.   *Lorillard Tobacco Co. v. Reilly*, 121 S. Ct. 2404, 533 U.S. 525 (2001).

## V.
## FEDERAL AND STATUTORY FRAMEWORK

58.     Plaintiffs repeat and re-allege the preceding as though set forth fully herein.

59.     In 1993, Congress enacted the NVRA to safeguard electoral integrity.   The NVRA obligates states to protect the accuracy of voter rolls.   To ensure voter records are accurate and current, Section 8(i)(1) of the NVRA provides:

> Each State shall maintain for at least 2 years and **shall make available for public inspection** and, where available, photocopying at a reasonable cost, *all records* **concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters**, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. 1973gg-6(i) (emphasis supplied).

60.     Poll books, voter registration applications, absentee voting envelopes, absentee ballot applications, voter rolls, and federal post card applications are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1); *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th

Cir. 2012) ("*Long II*").  Meanwhile, the process of reviewing completed voter materials, such as poll books, constitutes a "program" or "activity" evaluating voter records "for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  *See Long II*, 682 F.3d at 335.  Accordingly, the records made the basis of this case are subject to the NVRA.

61.     The NVRA provides for a private right of action to enforce violations of the Act.  *See* 42 U.S.C.A. § 1973gg.  While a person aggrieved under the chapter may typically need to provide notice of the violation to the chief election official of the State involved prior to filing suit, notice need not be given if the violation occurred within 30 days of an election for Federal office.  *See* 42 U.S.C.A. § 1973gg-9.  Because the violations alleged in this suit occurred within 30 days of the June 2014 Republican Primary Run-Off Election for a Federal office, Plaintiffs were not required to give notice of the violations alleged in this lawsuit.

62.     Because the NVRA contains a public disclosure provision and provides for a private right of action to enforce violations of the Act, Plaintiffs have standing to assert an informational injury in being denied access to records made subject to the Act. *Project Vote/Voting for America, Inc. v. Long*, 752 F. Supp. 2d 697, 702-05 (E.D. Va. 2010) ("*Long I*"); *see Public Citizen v. United States Department of Justice*, 491 U.S. 440, 109 S. Ct. 2558 (1989) (finding informational injury under Federal Advisory Committee Act).

63.     Mississippi law also requires counties to maintain accurate voter rolls and poll books for general and primary elections.  *See* MISS. CODE ANN. § 23-15-135; 23-15-

125; 23-15-127.   But, according to the Secretary of State and County Defendants, Mississippi law imposes additional restrictions on public access to records concerning the accuracy and currency of voter registration rolls, such that only certain aspects of the voter rolls are permitted to be copied and inspected by the public.

64.     Mississippi law provides that social security numbers, telephone numbers and date of birth and age information in statewide, district, county and municipal voter registration files shall not be subject to inspection, examination, copying or reproduction. *See* MISS. CODE. ANN. § 23-15-165.   Mississippi's Open Records Act, in turn, requires parties inspecting records to bear the cost of redacting "exempted," identifying information from voter rolls. *See* MISS. CODE. ANN. § 25-61-5 ("public agency shall be entitled to charge a reasonable fee for the redaction of any exempted material, not to exceed the agency's actual cost.").

65.     The County Defendants and Secretary of State have interpreted the forgoing provisions to require the redaction of birth dates from voting records requested pursuant to the NVRA at the cost of the party inspecting such records. The Secretary of State has therefore directed that birth dates be redacted from voting records.  The County Defendants have carried out that directive and required parties requesting records under the NVRA to bear the cost of redacting such information.

66.     This practice conflicts with the NVRA. The NVRA requires States (and by extension their counties) to maintain accurate voting records.   The NVRA further requires birth dates to be made publically available and does not impose costs of

redaction upon the party seeking access to public records.  *See Long I*, 752 F. Supp. 2d at 710-11; *Long II*, 682 F.3d at 339.

67.     While redaction costs appear minimal at first blush, parties inspecting voter rolls have been directed to pay as much at $1,400 to redact dates of birth from voter records.

68.     The County Defendants and Secretary of State—the State's chief elections officer under the NVRA—are not permitted to require Plaintiffs to pay for redactions of voter birth dates from voter rolls, voter poll books, voter applications or other materials covered by the NVRA.  Their position that the Mississippi law allows redaction of such information at the cost of a party seeking public records under the NVRA is improper. To the extent Mississippi law permits the redaction of birth dates from such records, Mississippi law must be preempted by Federal law, in support of the democratic process.

## VI.
## CAUSES OF ACTION

### Count 1
### True the Vote Alleges a Violation of National
### Voting Registration Act's Public Disclosure
### Provision

69.     Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

70.     The NVRA imposes a variety of requirements on states concerning voter registration procedures and policies.  42 U.S.C. § 1973gg-6.  Those requirements include requirements that states confirm voter registrations, ensure only registered voters vote in elections, remove ineligible voters from voter rolls and maintain accurate voter registration lists.  *See id.*  These NVRA obligations supplement the Defendants' unique

statutory obligation to maintain records of federal elections pursuant 42 U.S.C. § 1974, which requires the State to retain and preserve for a period of twenty-two months all records and papers concerning a federal election for Senate.

71.    The NVRA mandates public disclosure of all records related to the accuracy and currency of voter registrations. *Id.* § 1973gg-6(i)(1).

72.    Shortly before the Republican Primary Run-Off Election, True the Vote, via its volunteer base, made a valid and timely request to review voter records under the NVRA, but it was denied access to those records.

73.    Shortly after the Republican Primary Run-Off Election, True the Vote demanded access to the voter rolls, voter poll books, absentee ballot applications and envelopes, and federal post card applications from the Defendant Counties and Circuit Clerks, but it was denied access to those records.

74.    The records requested by True the Vote are subject to the NVRA Public Disclosure Provisions because they are "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i)(1); *Long II*, 682 F.3d at 335.

75.    True the Vote is protected by the Act's Public Disclosure Provision. It is an entity engaged in activities to verify the accuracy and currency of Mississippi's voter rolls, and has suffered an "informational injury" because the NVRA confers upon it a right to public information, yet such information has been withheld from True the Vote. *See Long I*, 752 F. Supp. 2d at 702-07 *aff'd Long II*, 682 F.3d at 335 (holding voter

organization denied access to public records under NVRA protected by Act's provisions and had standing to sue for injury).

76.     The NVRA specifically provides a private right of action to any person who is aggrieved by a violation of the Public Disclosure Provision. *See* 42 U.S.C. § 1973gg-9(b).   Therefore, True the Vote may properly bring suit to enforce its right to the information in question under the NVRA.

77.     Finally, True the Vote has satisfied all conditions precedent to filing suit, as it requested access to public records under the NVRA within thirty days of an election. *See id.* § 1973gg-9(b)(3).

78.     Based on the forgoing, True the Vote alleges that the Defendants have violated the Public Disclosure Provision of the NVRA.

79.     True the Vote seeks a declaration of its right to inspect the records made the subject of this lawsuit and injunctive relief granting it access to the same under the NVRA. *Id.* § 1973gg-9(b). Specifically, True the Vote requests a declaration of its right to inspect voter records, including absentee voting envelopes, absentee ballot applications and any associated applications therewith, voters rolls, voter poll books, voter registration applications and federal post card applications.  True the Vote requests injunctive relief granting it access to such records.

<u>**Count 2**</u>
**The Individual Plaintiffs and True the Vote**
**Allege a Violation of the NVRA Based on**
**Conflict with State Laws**

80.     Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

81.     The Supremacy Clause of the United States Constitution, Art VI, part 2, states in part: "This Constitution, and the Laws of the United States which shall be made in pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

82.     The NVRA and its Public Disclosure Provision place binding requirements on the states.  To the extent that any state law conflicts with the NVRA, such law is preempted and superseded by the NVRA as a federal statute.

83.     The Public Disclosure Provision explicitly and unambiguously requires that the records made the subject of this suit be made available to the public for inspection and, where available, photocopying, because the requested records are "records concerning the implementation of programs or activates conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. 1973gg-6(i).

84.     Plaintiffs in this lawsuit requested access to records under the NVRA, but faced obstacles to securing the records that violate the NVRA.  Plaintiffs were advised that Mississippi law required clerks to redact each voter's date of birth from voter records at the Plaintiffs' cost.  *See* Miss. Code Ann. § 25-61-5.  The NVRA does not, however, contemplate that the public will be made to inspect voter rolls in the absence of critical, non-sensitive information and bear the costs associated with redacting such information. *See Long I*, 889 F. Supp. 2d at 781 ("Moreover, and contrary to Defendants' argument, Congress has made its intent clear with regard to the disclosure of an applicant's address,

signature, and birth date; disclosure of that information, unlike SSNs, is required by [the NVRA]").

85.     To the extent Mississippi Code § 25-61-5 (providing party requesting public records shall bear costs to redact exempted information) and § 23-15-165 or any other statutory or regulatory provision or administrative practice of Mississippi prohibits the disclosure of information required to be freely made available for public inspection and photocopying pursuant to the Public Disclosure Provision of the NVRA, such provisions and practices subvert the purpose of the NVRA and are, therefore, invalid and unenforceable.

86.     Plaintiffs therefore seek a declaration that the NVRA preempts any requirement imposed by Mississippi regarding the redaction of information from voter rolls and the costs of the same.  Plaintiffs also seek an injunction allowing them to review Mississippi's voter rolls, voter poll books, absentee ballot applications and envelopes, voter registration applications and federal post card applications without any redaction (apart from Social Security Numbers).

**Count 3**
**The Individual Plaintiffs Allege an Equal**
**Protection Violation**

87.     Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

88.     Mississippi Code § 23-15-575 prohibits "double voting" in primary elections. ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in which he participates.").  "Double voters" are

defined as those who voted in the June 3, 2014 Democrat Primary Election and then illegally voted in the Republican Primary Run-off Election on June 24, 2014.

89.     Individual Plaintiffs who have reviewed Mississippi's voter records in connection with the Republican Primary Run-Off, have perceived inaccuracies in the records causing them to believe their lawful vote was diluted by an unlawful, double vote.

90.     The Equal Protection Clause guarantees the opportunity for equal participation by all voters. *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362 (1964). Among its guarantees, the equal protection clause guarantees that every individual's vote shall be weighed equally. *Id.* at 558. When a political subdivision allows unqualified voters to cast a vote in a given election, it dilutes the voting power of some qualified voters. It is well established that the right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105, 121 S. Ct. 525 (2000) (quoting *Reynolds*, 377 U.S. at 555).

91.     Parties may sue to vindicate their right to equal protection of the laws. *See* 42 U.S.C. § 1983.

92.     Here, unlawful double voting between the democratic and primary elections has the effect of diluting a lawful vote in the Republican Primary Run-Off. Voters who cast ballots in the Democrat Primary Election are prohibited by law from subsequently casting ballots in the opposite party's primary run-off election. The purpose of this prohibition is clear: It prevents gamesmanship by political parties and candidates seeking

to skew election results by voters who do not actually support the platform they are voting under.  The Voter Plaintiffs, fear such gamesmanship has been allowed to occur in Mississippi and therefore sue to enforce their constitutional rights under the Equal Protection Clause.

93.    Plaintiffs further allege that any absentee ballots improperly cast and counted toward the election results of the 2014 Republican Primary Run-Off dilute their lawful votes.

94.    Plaintiffs also allege violations of the Equal Protection Clause for Mississippi's failure to employ uniform election practices with regard to maintaining voter records.  As demonstrated by Plaintiffs' experiences, counties across Mississippi differ in their treatment of granting access to voter records, including absentee voting envelopes, absentee ballot applications and any associated applications therewith, voter rolls, voter poll books, voter registration applications and federal post card applications. Differing treatment among counties with regard to such records results in unequal protection of voter's rights under the law to ascertain and investigate whether the state has employed proper voting practices and properly documented and recorded votes.

95.    Indeed, Plaintiffs assert counties have failed to employ uniform procedures for documenting votes on such records.  For this additional reason, Plaintiffs allege violations of the Equal Protection Clause.

## VII.
## ATTORNEYS' FEES

96.     Plaintiffs seek to recover reasonable attorneys' fees under 1973gg-99(c), which provides for an award of reasonable attorneys' fees, including litigation expenses and costs, the prevailing party in a cause of action under the National Voting Registration Act.

97.     Plaintiffs also seek to recover reasonable attorneys' fees under 42 U.S.C. § 1988, which allows for an award of reasonable attorneys' fees in suits vindicating actions for deprivations of civil rights.

## VIII.
## PRAYER

The information sought in this lawsuit and the relief requested herein may have a direct impact on the current dispute regarding the outcome of the 2014 Republican Primary Election Run-Off for the office of United States' Senator.  Time is of the essence.  The Plaintiffs are currently unable to ascertain whether unlawful votes resulted in uncertainty in the election results.  But the information requested herein may assist in that determination and in restoring confidence in the electoral process.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and that the Court:

(a) Declare that Defendants are in violation of the NVRA by refusing to grant access for inspection and photocopying of the requested records;

(b) Declare that Defendants are in violation of the NVRA by redacting voter birth dates from voter rolls, voter poll books, absentee ballot applications, federal

postcard applications and any other registration materials and imposing the costs of such redaction on the public;

(c) Enjoin Defendants from refusing to permit access to any requesting party for copying and/or inspection of voter registration applications, absentee voting envelopes, absentee ballots and any associated applications therewith, voters rolls, voter poll books, and federal post card applications, as sought by Plaintiffs in this matter;

(d) Enjoin Defendants from redacting (and charging for the redaction of) information authorized to be disclosed under the NVRA from voter registration applications, absentee voting envelopes, absentee ballots applications, voter rolls, voter poll books, and federal post card applications;

(e) Award Plaintiffs costs incurred in pursuing this action, including attorneys' fees and reasonable expenses, as authorized by 42 U.S.C. § 1973gg-9(c), 42 U.S.C. § 1988 and any other applicable provision; and

(f) Grant such other and further relief as the Court deems proper.


Date: July 30, 2014

Respectfully submitted,

/s/    *L. Eades Hogue*

Joseph M. Nixon – *pro hac vice*
Texas State Bar No. 15244800
jnixon@bmpllp.com
Kristen W. McDanald – *pro hac vice*
Texas State Bar No. 24066280
kmcdanald@bmpllp.com
Kelly H. Leonard – *pro hac vice*
Texas State Bar No. 24078703
kleonard@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887   Tel.
(713) 960-1527   Fax

L. Eades Hogue
Mississippi State Bar No. 2498
Louisiana State Bar No. 1960
ehogue@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
Pan-American Life Center
601 Poydras Street
Suite 2200
New Orleans, LA 70130
(504) 586-1241 Tel.
(504) 584-9142 Fax
**Lead Counsel**

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2014 a copy of the foregoing instrument was served on The Republican Party of Mississippi; the Copiah County, Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County, Mississippi Election Commission, the Madison County, Mississippi Election Commission and the Rankin County, Mississippi Election Commission; via the Court's e-file service.   Plaintiffs have served the remaining Defendants, who have not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

/s/    *L. Eades Hogue*