```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION


TRUE THE VOTE, JANE COLN, BRANDIE CORRERO,
CHAD HIGDON, JENNIFER HIGDON, GENE HOPKINS,
FREDERICK LEE JENKINS, MARY JENKINS, TAVISH
KELLY, DONNA KNEZEVICH, JOSEPH KNEZEVICH,
DORIS LEE, LAUREN LYNCH, NORMA MACKEY, ROY
NICHOLSON, MARK PATRICK, JULIE PATRICK,
PAUL PATRICK, DAVID PHILLEY, GRANT SOWELL,
SYBIL TRIBBLE, LAURA VANOVERSCHELDE, AND
ELAINE VECHORIK                                       PLAINTIFFS

v.                             CIVIL ACTION NUMBER 3:14CV532-NFA

THE HONORABLE DELBERT HOSEMANN, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF STATE FOR
THE STATE OF MISSISSIPPI, THE REPUBLICAN PARTY
OF MISSISSIPPI, COPIAH COUNTY, MISSISSIPPI
ELECTION COMMISSION, HINDS COUNTY,
MISSISSIPPI ELECTION COMMISSION, JEFFERSON
DAVIS COUNTY, MISSISSIPPI ELECTION
COMMISSION, LAUDERDALE COUNTY,
MISSISSIPPI ELECTION COMMISSION, LEAKE
COUNTY, MISSISSIPPI ELECTION COMMISSION,
MADISON COUNTY, MISSISSIPPI ELECTION
COMMISSION, RANKIN COUNTY, MISSISSIPPI
ELECTION COMMISSION, SIMPSON COUNTY,
MISSISSIPPI ELECTION COMMISSION, AND
YAZOO COUNTY, MISSISSIPPI ELECTION COMMISSION    DEFENDANTS


                      **EVIDENTIARY HEARING**


              BEFORE THE HONORABLE NANCY F. ATLAS
                  UNITED STATES DISTRICT JUDGE
                        JULY 24TH, 2014
                     JACKSON, MISSISSIPPI

REPORTED BY:   MARY VIRGINIA "Gina" MORRIS, RMR, CRR
               Mississippi CSR #1253
_____

                501 E. Court Street, Suite 2.500
                   Jackson, Mississippi 39201
                        (601) 608-4187
```

**EXHIBIT 1**

```
                          APPEARANCES


FOR THE PLAINTIFFS:

  MR. JAMES EDWIN TRAINOR III
  MR. JOSEPH M. NIXON
  MS. KELLY HUNSAKER LEONARD
  MS. KRISTEN W. MCDANALD
  MR. LLOYD EADES HOGUE

FOR THE HONORABLE DELBERT HOSEMANN:

  MR. HAROLD EDWARD PIZZETTA, III
  MR. JUSTIN L. MATHENY

FOR THE REPUBLICAN PARTY:

  MR. MICHAEL B. WALLACE
  MR. THORNTON RUSSELL NOBILE

FOR COPIAH COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MS. ELISE BERRY MUNN

FOR HINDS COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. PIETER TEEUWISSEN
  MR. ANTHONY R. SIMON

FOR JEFFERSON DAVIS COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. ROBERT E. SANDERS
  MR. JOHN WESLEY DAUGHDRILL, JR.

FOR LAUDERDALE COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. LEE THAGGARD

FOR LEAKE COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. JEFFREY T. WEBB

FOR MADISON COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. MIKE ESPY
  MR. SPENCE FLATGARD
```

```
FOR RANKIN COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. CRAIG SLAY

FOR SIMPSON COUNTY, MISSISSIPPI ELECTION COMMISSION:

  MR. DANNY WELCH
```

```
1              MR. NIXON:    We understand.
2              THE COURT:    -- is part of the --
3              MR. NIXON:    Right.
4              THE COURT:    -- part of the documents that would be
5   within your claim under the National Voter Registration Act.
6   I'm just stopping because I think we're at the end of her
7   explanation.
8              MR. NIXON:    Thank you.
9   BY MR. NIXON:
10  Q.   Let me take you back to the incident reports.  In part of
11  your training, do you hand incident reports to your volunteers?
12  A.   Yes.
13  Q.   Do you ask them to fill those out at the time that they
14  have contact with someone from whom they have requested
15  records?
16  A.   Well, if I -- if I might, the incident reports were only --
17  we had -- we had no expectation that the number of those that
18  we ultimately received would have been used because they were
19  only to be used in the instance of denial of records -- I mean,
20  denial of public records.
21       The primary tool that we trained on was to be used for
22  their collection of data.  So to answer your question, yes,
23  that is what the incident report was.  But that was really a
24  secondary purpose, a secondary tool, because we had no
25  expectation that we wouldn't be able to get the documents.
```

```
 1   Q.   How many volunteers of True the Vote came to Mississippi?
 2   A.   Roughly, 20 some.
 3   Q.   And on what days did you send them out?
 4   A.   Oh, my word.  I have to get my dates straight.
 5            THE COURT:  Would the July 7th and 8th refresh your
 6   recollection?
 7   A.   Yes.  I mean, those were two of the days that we were here.
 8   BY MR. NIXON:
 9   Q.   And did the volunteers fill out the reports at or near the
10   time of their contact with the county officials?
11   A.   Yes.
12   Q.   Did they send --
13            THE COURT:  Okay.  Can you show her several of them
14   and -- because they look like a lot of them are in the same
15   handwriting.  Can you cover that?
16            MR. NIXON:  Yes.
17   BY MR. NIXON:
18   Q.   How many --
19            THE COURT:  Please.
20   BY MR. NIXON:
21   Q.   How many teams did you send out?  Teams.
22   A.   Roughly ten teams, roughly.
23   Q.   Okay.  And were they instructed to go to multiple counties?
24   A.   Yes.
25   Q.   Okay.  So you might have the same person fill out the
```

```
 1  report three or four times, depending on how many counties they
 2  went to?
 3  A.   Yes.  And they went very quickly because they -- we weren't
 4  getting documents.  So...
 5  Q.   Okay.  So we have all of the incident reports here, and let
 6  me hand these to you.
 7          MR. NIXON:  By way of explanation, your Honor, with
 8  the bill of particulars, as we understood, we provided all the
 9  incident reports as related to the counties that were sued.
10  But we have all of the incident reports here for everybody to
11  inspect.  And I think we've even offered them to the Secretary
12  of State earlier today if he wanted --
13          THE COURT:  Copies?
14          MR. NIXON:  Well, we didn't have copies.  We just
15  said, Here.  You want to look at them?  We didn't make copies.
16  We didn't know how much -- we knew we had an hour.  We didn't
17  know how much we were going to get to do.
18  BY MR. NIXON:
19  Q.   Ms. Engelbrecht, pull out an incident report.
20       (COMPLIED WITH REQUEST)
21  Q.   What county is it for?
22  A.   This is for Attala County.
23  Q.   And what date was that done?
24  A.   On the 9th.
25  Q.   And who did it?
```

```
 1           MR. PIZZETTA:  Your Honor, I don't think the defense
 2  has a copy of that report.
 3           THE COURT:  Yeah.
 4           MR. NIXON:  No, you --
 5           THE COURT:  Go into your bill of particulars, please,
 6  and pick one.
 7           MR. PIZZETTA:  Your Honor, it may be more appropriate
 8  if he goes into the list of the few ones that are attached as
 9  possible exhibits today as opposed to the bill of particulars,
10  which --
11           THE COURT:  That would be fine.  That would be fine
12  too.  I don't care.
13           MR. SANDERS:  Your Honor, we would also object to the
14  testimony about Attala County.
15           THE COURT:  I can't hear you.
16           MR. SANDERS:  We would also object to testimony about
17  Attala County, a visit to Attala County.
18           THE COURT:  Yes.  I understand.  I agree with that.
19  That's why I'm not receiving that.  With due respect to the
20  State, frankly, you're on notice in this bill of particulars
21  business.  And I'm not persuaded -- I'm not persuaded that that
22  stuff is not potentially exhibits here.
23           MR. PIZZETTA:  I understand, your Honor, just --
24           THE COURT:  I understand they introduced other
25  documents as exhibits, in quotes; but the incident reports,
```

```
 1   we've all seen them.  They're in the bill of particulars.  And
 2   so --
 3          MR. PIZZETTA:  We've not seen all of them, your Honor,
 4   but I think you're right.  The bill of particulars --
 5          THE COURT:  I didn't -- I didn't say we'd seen all of
 6   them.  I said we all have seen the ones in the bill of
 7   particulars.  That's all I'm saying.
 8          You're right.  None of us have seen the rest of them.
 9   You're very right on that.  So do you want to take her through
10   one of them that we have seen, Mr. Nixon, please?
11          MR. NIXON:  Sure.  And the benefit of this one is --
12   BY MR. NIXON:
13   Q.  Let me show you what's been marked as Exhibit 4 as part of
14   the bill of particulars.  And, Ms. Engelbrecht, if you can just
15   look at the computer screen in front of you, that would be
16   probably there.  Is it not that clear?
17   A.  No.
18       (PAUSE)
19          THE COURT:  The electronics expert is going to help
20   you.  There's an auto focus.  And, frankly, if you adjust the
21   lights on the left and right, it will make it brighter.
22       (EXAMINED DOCUMENT)
23          THE COURT:  Great.
24          MR. NIXON:  Thank you.
25          THE COURT:  Thank you, sir.
```

```
1   BY MR. NIXON:
2   Q.  Okay.  Ms. Engelbrecht, if you could, turn your -- do you
3   have it there in front of you now?
4   A.  Uh-huh (indicating yes).
5   Q.  Okay.  Is this a form provided by True the Vote?
6   A.  Yes.
7   Q.  Okay.  Do you see where it's signed by Ellen Swensen?
8           THE COURT:  For the record, this is Exhibit 4.
9   Correct?
10          MR. NIXON:  Yes, it is.
11          THE COURT:  Plaintiffs' 4?
12          MR. NIXON:  Yes.
13  BY MR. NIXON:
14  Q.  Do you see where it Plaintiffs' 4?
15  A.  Yes.
16  Q.  Down at the bottom.  And it's filled out by Ellen Swensen?
17  A.  Uh-huh (indicating yes).
18  Q.  Is she one of the volunteers of True the Vote?
19  A.  Yes.
20          MR. NIXON:  And for the court's benefit, Ms. Swensen
21  is here today.
22  BY MR. NIXON:
23  Q.  Did True the Vote receive this incident report?  And it
24  looks like it's page two, page three of five, and signed by
25  looks like Ellen Swensen and Susan Morse at the bottom.
```

1  A. Yes.
2  Q. Is this the type of report that you asked your volunteers
3  to fill out?
4  A. Yes.
5  Q. Just to describe what happened.
6  A. Right.
7  Q. And then do they return the report back to you?
8  A. Yes.
9  Q. And do you keep the report in the course and scope of your
10 business?
11 A. Yes.
12 Q. And is it in the function of True the Vote and your
13 function as president of True the Vote to keep incident
14 reports?
15 A. Yes.
16 Q. And why do you do that?
17 A. Well, because it becomes sort of part of the archive of
18 what happened, and it gives us a clear indication of what did
19 or didn't occur and then -- that's it.
20 Q. Is this a true and correct copy of the original incident
21 report filled out by Ms. Morse?
22 A. It appears to be.
23 Q. And was it filled out at the time of their visit to the
24 specific county?  I believe --
25 A. Yes.

| | |
|---|---|
| 1 | Q. -- Jones County. Was it -- okay. Very good. Do you have |
| 2 | incident reports for all of the teams that went out? |
| 3 | A. Yes. |
| 4 | Q. Is that the folder that's in front of you today? |
| 5 | A. Yes, although I thought there were more, but yeah. |
| 6 | Q. Now, you did not sue all of the counties for whom you had |
| 7 | contact? |
| 8 | A. No. |
| 9 | Q. Why not? |
| 10 | A. Well, there -- there were so many incident reports that |
| 11 | came back, and it just became a function of time and |
| 12 | consideration of, you know -- frankly, of whose -- whose |
| 13 | experiences most clearly showed what we were experiencing |
| 14 | statewide and -- |
| 15 | Q. Did some of the counties cooperate and provide you with -- |
| 16 | A. Yes. Yes. |
| 17 | Q. With regard to the voter poll book and the voter rolls, |
| 18 | both of those two items that we've been talking about, is that |
| 19 | information available now electronically? |
| 20 | A. The voter rolls are available electronically, but poll |
| 21 | books are not. |
| 22 | Q. Okay. |
| 23 | A. To the best of my knowledge. |
| 24 | Q. Is the information from the poll book recorded now on the |
| 25 | voter rolls, so if we were to get a voter roll from Mississippi |

```
 1                    CERTIFICATE OF REPORTER
 2
 3        I, MARY VIRGINIA "Gina" MORRIS, Official Court
 4   Reporter, United States District Court, Southern District of
 5   Mississippi, do hereby certify that the above and foregoing
 6   pages contain a full, true and correct transcript of the
 7   proceedings had in the aforenamed case at the time and
 8   place indicated, which proceedings were recorded by me to
 9   the best of my skill and ability.
10        I certify that the transcript fees and format
11   comply with those prescribed by the Court and Judicial
12   Conference of the United States.
13        This the 28th day of July, 2014.
14
15                    s/ Gina Morris
                      U.S. DISTRICT COURT REPORTER
```

```
 1              THE COURT:  Oh.
 2              MR. NIXON:  We had some witnesses with doctors'
 3   appointments and --
 4              THE COURT:  Okay.
 5              MR. NIXON:  -- graduation.
 6              THE COURT:  Logistics.
 7              MR. NIXON:  Yes.  I mean, you said Thursday the 24th
 8   and --
 9              THE COURT:  Sorry.  I just --
10              MR. NIXON:  No, no.
11              THE COURT:  Life happens.
12              MR. NIXON:  We tried to create as good a record for
13   you as we could within a limited amount of time within the
14   parameters that you set for us.
15              THE COURT:  Okay.  I will allow you to mark for
16   identification the incident reports concerning the counties
17   that are here.  And I'll decide after I see them whether I'm
18   going to receive them.
19              MR. NIXON:  Okay.  Would you like us to do that today
20   or --
21              THE COURT:  You can do it this evening and submit them
22   by -- electronically.
23              MR. NIXON:  Okay.  Judge --
24              THE COURT:  I don't want the universe because it's
25   overkill, but I want to know whether you have exam -- since
```

```
 1   you're trying to use these people as examples, I mean, with due
 2   respect -- and this is really with due respect, there was time
 3   spent on stuff that, frankly, wasn't part of the case, but I
 4   allowed it.
 5           So I'm just giving you the opportunity despite that to
 6   at least identify the incident reports for the counties that
 7   were sued, because if -- I doubt it, but if there is one where
 8   you did get the records or you did not make a request, which is
 9   part of what I've heard from them, I want to have that
10   identified.  Okay?
11           MR. NIXON:  Yes.
12           THE COURT:  I would appreciate that.
13           MR. NIXON:  Yes, your Honor.  Judge, do you have any
14   other questions of me?
15           THE COURT:  No.
16           MR. NIXON:  Okay.
17           THE COURT:  Thank you.  I don't.
18           MR. NIXON:  Judge, it's a very simple, simple choice,
19   simple decision that you have.
20           THE COURT:  Okay.  Thank you.
21           MR. NIXON:  It's very clear.  Thank you very much.
22           THE COURT:  Thank you.  Yes, sir.
23           **ARGUMENT ON BEHALF OF THE SECRETARY OF STATE**
24           MR. PIZZETTA:  Your Honor, I appreciate the
25   opportunity to be heard, recognizing we will have additional
```

1  that's who we're asking relief from. And we understand the
2  Party currently doesn't have these records. But the point is
3  is that this is their primary.
4         THE COURT: I understand.
5         MR. NIXON: They're just a -- I mean, how could we
6  fashion a -- they need to be here in order to protect
7  themselves if an interest of theirs becomes an issue. That's
8  why we asked them to please come in.
9         We haven't said they've done anything bad. In fact,
10 we haven't said anything because really -- nobody's really done
11 anything bad. We just have a disagreement on what the law is,
12 which is fair. But as to Party, it's their primary. And to
13 the extent that the primary is affected in some respect, we'd
14 like them to be here. In fact, I think that they, you know,
15 would like to be here too.
16        THE COURT: Right.
17        MR. NIXON: So, Judge, we will address answers. And
18 we're prepared to do a briefing schedule now if you would like
19 to.
20        THE COURT: That would be great.
21   (COUNSEL CONFERRED)
22        MR. NIXON: Judge, you asked for all of the other
23 incident reports related to the counties that have been sued
24 and we have those marked as TTV-1 through 38. I don't -- and
25 you asked us to file them this evening.

```
 1              THE COURT:  No, I didn't say they had to be filed
 2   today.
 3              MR. NIXON:  Oh, okay.  That's good because --
 4              THE COURT:  I just said file them at some point.
 5              MR. NIXON:  Yeah, because we tonight -- the 5:30 deal
 6   was when our plane left.  I think that's what maybe --
 7              THE COURT:  I missed a plane also.
 8              MR. NIXON:  We do not have access to some --
 9              THE COURT:  It's no problem.
10              MR. NIXON:  -- ability to --
11              THE COURT:  It's really no problem.
12              MR. NIXON:  Okay.  Very good.  Thank you, Judge.
13              THE COURT:  Okay.  Thank you.  Let's talk about
14   briefing.  The plaintiffs have initiated the process with their
15   TRO and preliminary injunction request.  It has been responded
16   to by the Republican Party and Jeff Davis also, but most people
17   have not -- defendants have not responded.
18              The State and some of the others mentioned something
19   about motions to dismiss.  I really would like to focus on the
20   preliminary relief that's been requested and the statutory
21   interpretation and, you know, the elements relating to all of
22   that.  Anybody who wants to preserve their rights for dismissal
23   is fine.
24              I guess what I'd like to say on that is watch out what
25   you wish for because you just may get it, or not, but you may
```