# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**TRUE THE VOTE, ET AL.**                                         **PLAINTIFFS**

**v.**                                         **Cause No. 3:14cv00532-NFA**

**HON. DELBERT HOSEMANN, IN HIS OFFICIAL**          **DEFENDANTS**
**CAPACITY AS SECRETARY OF THE STATE OF MISSISSIPPI,**
**HINDS COUNTY ELECTION COMMISSION, ET AL.**

---

## HINDS COUNTY, MISSISSIPPI ELECTION COMMISSION'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

OF COUNSEL:

Pieter Teeuwissen, Esquire (MSB No. 8777)
Anthony R. Simon, Esquire (MSB No. 10009)
**OFFICE OF THE BOARD ATTORNEY**
**Hinds County, Mississippi**
316 South President Street
Jackson, Mississippi 39205
Telephone: 601.968.6797
Facsimile: 601.948.1003
*Attorneys for the Hinds Commission*

**THIS** the ___6th___ day of __August__, 2014.

___/s/ Pieter Teeuwissen_____
Pieter Teeuwissen

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TRUE THE VOTE, ET AL.                                          PLAINTIFFS

v.                                              Cause No. 3:14cv00532-NFA

HON. DELBERT HOSEMANN, IN HIS OFFICIAL             DEFENDANTS
CAPACITY AS SECRETARY OF THE STATE OF MISSISSIPPI,
THE REPUBLICAN PARTY OF MISSISSIPPI, HINDS COUNTY
ELECTION COMMISSION, ET AL.

### TABLE OF CONTENTS FOR HINDS COUNTY, MISSISSIPPI'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

Table of Contents.................................................................................-i-

Table of Authorities.............................................................................-ii-

Statement of Nature and Stage of Proceedings........................................1

Statement of the Issue..........................................................................3

Summary of the Argument....................................................................3

Argument and Authorities....................................................................4

    I.     NVRA does not apply in this matter....................................5
           A.    NVRA does not apply to poll books.........................10
           B.    NVRA only applies to state election officials.............14
    II.    No one ever sough disclosure of Hinds Commission information pursuant to the NVRA............................................15
           A.    Allegations of Amended Complaint versus hearing testimony.........16
           B.    Incident Reports fail.........................................18
    III.   True Vote Plaintiffs' injunctive relief request moot....................20

Conclusion........................................................................................20

Certificate of Service...........................................................................22

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**TRUE THE VOTE, ET AL.**                                    **PLAINTIFFS**

**v.**                                         **Cause No. 3:14cv00532-NFA**

**HON. DELBERT HOSEMANN, IN HIS OFFICIAL**              **DEFENDANTS**
**CAPACITY AS SECRETARY OF THE STATE OF MISSISSIPPI,**
**HINDS COUNTY ELECTION COMMISSION, ET AL.**

## TABLE OF AUTHORITIES FOR HINDS COUNTY, MISSISSIPPI'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

<u>Acts/Statutes</u>                                                          Page(s)

42 U.S.C. § 1973gg-1...................................................................................9

42 U.S.C. § 1973gg-2................................................................................. 9

42 U.S.C. § 1973gg-3................................................................................. 9

42 U.S.C. § 1973gg-4................................................................................. 9

42 U.S.C. § 1973gg-6................................................................................. 9

42 U.S.C. § 1973gg-6(a)(4).....................................................................5-6

42 U.S.C. § 1973gg-6(1).................................................................1,5,7,9, 14

42 U.S.C. § 1973gg-6(1)(4)........................................................................ 9

42 U.S.C. § 1973gg-6(b)...........................................................................5,7

42 U.S.C. § 1973gg-8............................................................................5-6,9 -10

42 U.S.C. § 1973gg-9(b)(1)-(3)................................................................6, 10

Help America Vote Act of 2002, 107 PL 252, 116 Stat. 1666................................ 10-11

Code of Federal Regulations                                                        Page(s)

11 CFR §4.1, Federal Election Commission, Part 4, Public Records and
the Freedom of Information Act, Definitions, subsection (o)........................................ 12

11 CFR 100.33 "Voter Registration and get-out-the-vote activities" ........................... 14

Cases

*Aviakian v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 49745 (N.D. Miss. 2014)................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)......................................4

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 104 S. Ct. 2778 (1984)............................7-8

*Delta Metalforming Co. v. Commissioner*, 632 F. 2d 442, 449 (CA 5th 1980)................................7

*Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990)......................................15

*Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (CA 5th 2008)..20

*Familias Unitas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980)......................................15

*Fec v. Akins*, 524 U.S. 11, 21 (1998).......................................................7

*In Re Mastercard International*, 132 F. Supp. 2d 468, 480 (E.D. La. 2001)..................................4

*Kibble v. Thomas*, 2007 U.S. Dist. LEXIS 42489 (S.D. Tex. 2007)..................................3

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ........................................4

*McLaughlin v. City of Canton*, 947 F. Supp. 954 (S.D. Miss. 1995)..........................................14-15

*Morales v. Francis*, 2005 U.S. Dist. LEXIS 26253 (S.D. Tex. 2003)..................................8

*National Solid Wastes Managment Ass'n v. City of Dallas*, 903 F. Supp.2d 446
(N.D. Tex. 2012) ............................................................................6

*Powell v. Dallas Morning News, L.P.*, 776 F. Supp. 2d 240 (N.D. Tex. 2011)...................15

*Samtech Corp. v. Fed. Express Corp.*, 2004 U.S. Dist. LEXIS 27123 (S.D. Tex. 2004) .....4

Cases                                                                              Page(s)

*Scott v. Schedler* 2013 U.S. Dist. LEXIS 9302 (E.D. La. 2013)..........................18

*Sealed Appellee 1 v. Sealed Appellant 1*, 2013 U.S. App. LEXIS 26127 (CA 5th 2013)......8

*True the Vote v. Hosemann*, 2014 U.S. Dist. LEXIS 93822 (N.D. Miss. 2014)............................13

*United States v. Kaluza*, 2013 U.S. Dist. LEXIS 173134 (E.D. La. 2013)...........................9

*United States v. Martinez*, 589 F. Supp. 784  (M.D. Tex. 2009).......................................4

*Voting for America, Inc. v. Andrade*, 488 Fed. Appx. 890, 892 (CA 5th 2012)...............................5

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (CA 5th 2013).......................................13

*Wyatt v. Cole*, 928 F.2d 718 (5th Cir. 1991).......................................15

Congressional Reports

H.R. Rep. No. 103-9, 103rd Cong., 1 Sess., at 1, 56-6 (1993)...........................5

S. Rep. 103-6, at 39; H.R. Rep. 103-9, at 23, 1993 U.S.C.A.A.N. 105, at 127...............................5

Rules

FED. R. CIV. P. 56...........................................1,3-4

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**TRUE THE VOTE, ET AL.**                                    **PLAINTIFFS**

**v.**                                          **Cause No. 3:14cv00532-NFA**

**HON. DELBERT HOSEMANN, IN HIS OFFICIAL**           **DEFENDANTS**
**CAPACITY AS SECRETARY OF THE STATE OF MISSISSIPPI,**
**HINDS COUNTY ELECTION COMMISSION, ET AL.**

## HINDS COUNTY, MISSISSIPPI ELECTION COMMISSION'S MEMORANDUM
## OF AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, the Hinds County, Mississippi Election Commission

("Hinds Commission"), through counsel, pursuant to Rule 56 of the Federal Rules of Civil

Procedure and other applicable authority, and files their Memorandum of Authorities in

support Motion for Summary Judgment, respectfully requesting that this Court grant them

judgment as a matter of law against the Plaintiffs.  In support thereof, the Hinds Commission

states as follows:

### Statement of Nature and Stage of Proceedings

Plaintiffs, consisting of various individuals and an entity named True the Vote

(collectively "True Vote Plaintiffs"), instituted this action on July 9, 2014, by filing a

Complaint for Declaratory and Injunctive Relief against the Hinds Commission and other

Defendants, generally claiming that the True Vote Plaintiffs were denied access to voter poll

books, in violation of the National Voting Registration Act ("NVRA").[1]  The True Vote

---

[1] 42 U.S.C. § 1973gg-6(i).

Plaintiffs allege they are entitled to unredacted poll books from the Hinds Commission, despite the proof showing that the True Vote Plaintiffs never requested unredacted poll books from the Hinds Commission pursuant to the NVRA. On July 24, 2014, an evidentiary hearing was conducted on the True Vote Plaintiffs' request for relief. Thereafter, this Court entered its Order inviting the Defendants "to file motions for summary judgment on the NVRA claims to resolve on the merits Plaintiffs' claims..." [2]

The established facts (as relating to the Hinds Commission), show that the President of True Vote,[3] went to some unspecified court house located in Hinds County, Mississippi,[4] on either the preceding Thursday, Friday or Monday before the June 24 Run Off[5] and spoke to some unspecified person[6] requesting absentee ballot applications and envelopes[7] that had not yet been counted.[8] Ms. Englebrecht never referenced the NVRA during her single visit to a court house in Hinds County, Mississippi, nor did she request unredacted poll books[9]. Ms. Englebrecht thereafter departed.

---

[2]*See* Dock. No. 46.

[3]Catherine Englebrecht.

[4]See T. at 85-87;89;93-97.

[5]See T. at 85-87;89;93-96.

[6]See T. at 85-87;89;95.

[7]See T. at 27;85-87;89;96.

[8]See T. at 85-87;89;94;133;135-138.

[9]See T. at 27;85-87;89.

## Statement of the Issue

Whether the Hinds Commission is entitled to judgment as a matter of law on The True Vote Plaintiffs' NVRA claims.

On July 25, 2014, this Court entered its Order [Dock. No. 46], inviting the Hinds Commission "to file motions for summary judgment on the NVRA claims to resolve on the merits The True Vote Plaintiffs' claims under that statute." Rule 56 of the Federal Rules of Civil Procedure mandates entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Kibble v. Thomas*, 2007 U.S. Dist. LEXIS 42489 *11-12 (S.D. Tex. 2007)(other internal citations omitted).

At the summary judgment stage, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Id.* The moving party, however, need not negate the elements of the non-movant's case and may meet its burden by pointing out 'the absence of evidence supporting the nonmoving party's case. Once the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Id.* In the instant matter, the True Vote Plaintiffs cannot meet their burden as there is an absence of evidence against the Hinds Commission. As a result, the Hinds Commission is entitled to judgement as a matter of law.

## Summary of Argument

The Hinds Commission is entitled to dismissal of the Amended Complaint with

3

prejudice and an award of judgment as a matter of law in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.[10] The True Vote Plaintiffs' Amended Complaint (including The True Vote Plaintiffs' Bill of Particulars[11]), lack the required elements necessary for relief.[12] The NVRA is not applicable and does not apply to the unredacted poll books. Moreover, while the NVRA does applies to State Election officials, it does not apply to the Hinds Commission. These conclusions are coupled with the record evidencing that the True Vote Plaintiffs never sought disclosure of Hinds Commission information pursuant to NVRA, and the fact that the True Vote Plaintiffs' allegations in the Amended Complaint are conspicuously contradicted by the True Vote Plaintiffs' own hearing testimony and other proof adduced at the July 24 evidentiary hearing. This, *in toto*, likewise shows that the True Vote Plaintiffs fail to meet their burden for the underlying injunctive relief claim.

## Argument and Authorities

The NVRA was passed in order to "increase the number of eligible citizens who

---

[10] "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Samtech Corp. v. Fed. Express Corp.*, 2004 U.S. Dist. LEXIS 27123 *8-9 (S.D. Tex. 2004), quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,106 S. Ct. 2548 (1986)).

[11] Dock. No. 25. A Bill of Particulars is an "accusatory instrument," consisting of a formal detailed statement of the claims brought by a plaintiff. *United States v. Martinez*, 589 F. Supp. 784, 808 (M.D. Tex. 2009). Conspicuously absent from The True Vote Plaintiffs' appendices to Bill of Particulars is any documentary exhibit regarding the Hinds Commission. *See* Dock. No. 25.

[12] See *In Re Mastercard International*, 132 F. Supp. 2d 468, 480 (E.D. La. 2001).

4

register to vote in elections for Federal office," to "protect the integrity of the electoral process," and to "ensure that accurate and current voter registration rolls are maintained."[13] Section 8 of the NVRA requires, in part, that each state [i.e., Mississippi], "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the registrant dying or moving,"[14] and directs each state to designate "a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this subchapter."[15] In fact, the "entire purpose of §1973gg-6(i) is to facilitate public inspection of **public records** [it] **does not equate to a public record.**"[16] [17]

### I.      NVRA does not apply in this matter.

The True Vote Plaintiffs aver that the NVRA is applicable in this instance by a single, conclusory allegation that "immediately prior to the election [True Vote] requested records

---

[13]42 U.S.C. § 1973gg-6(b); *see also* H.R. Rep. No. 103-9, 103rd Cong., 1 Sess., at 1, 56-6 (1993).

[14]42 U.S.C. § 1973gg-6(a)(4).

[15]42 U.S.C. § 1973gg-8.

[16]*Voting for America, Inc. v. Andrade*, 488 Fed. Appx. 890, 892 (CA 5th 2012)(emphasis supplied). In *Andrade*, the Fifth Circuit Court of Appeals "recognized that 'simply showing some possibility of irreparable injury fails to satisfy the second factor [for injunctive relief].'"*Aviakian v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 49745 *6 (N.D. Miss. 2014).

[17]The House of Representatives and the Senate reports, in their descriptive language concerning state responsibilities: "each state would have to designate a chief state official responsible for implementing the state's functions under the bill." S. Rep. 103-6, at 39; H.R. Rep. 103-9, at 23, 1993 U.S.C.A.A.N. 105, at 127.

from Hinds [County]...pursuant to the NVRA Section 8(i)(1)" and that True Vote "was denied access to the records."[18]   This allegation is misleading.  True Vote, through Englebrecht, purportedly requested absentee voter ballot and envelopes from the Hinds Commission on a single pre-election vote count occasion.  The absentee voter ballots and envelopes are the "records"allegedly sought from the Hinds Commission.  It is undisputed that no True Vote Plaintiff did not requested the unredacted poll books they now seek, nor is there evidence before the Court that any True Vote Plaintiff made a request for "records pursuant to the NVRA."[19] [20]  This is due, in part, to the fact that the NVRA does not create an explicit right to the information now sought by the True Vote Plaintiffs.

A plain reading of Section 1973gg-6 of the NVRA yields the title: **"Requirements**

---

[18]Amended Complaint, ¶44, Dock. No. 58.  Notably, this allegation is made not by a person eligible to vote in Hinds County, Mississippi, but a corporation.  42 U.S.C. § 1973gg-9(b)(1)-(3) addresses a private right of action.  The statute provides that "a *person* who is aggrieved by a violation of this Act may provide written notice *to the chief election official of the state involved*..." (Emphasis supplied).

[19]Ms. Englebrecht "...asked to see absentee ballot applications and envelopes" [T. 27], not unredacted poll books. This is coupled with the facts that Ms. Englebrecht does not know: (1) what information is actually contained in a poll book in Mississippi [T.47-48];(2) when she made her request to see absentee ballot applications and envelopes to Hinds County (either the Thursday, Friday or Monday before the Run-Off election of July 24) [T.50], or (3) if True Vote has actually received poll books from Hinds County with unredacted birthdates [T.27;47-48;50;58].  She also does not know which court house she went to Hinds County, when she went there, or who she talked to [T.94-97].

[20]A claim is an as-applied challenge when it is based on the unconstitutional application of the statute to the plaintiff's conduct- to present an as-applied challenge plaintiff must present actual facts, not vague fears and rumors. *National Solid Wastes Management Assn. v. City of Dallas* 903 F. Supp. 2d 446, 465 (N.D. Tex. 2012).

with respect to administration of **voter registration**" (emphasis supplied).  42 U.S.C. §

1973gg-6(i) provides only that "each **State** shall maintain for at least 2 years and **shall make**

**available for public inspection** and, where available, photocopying at a reasonable cost, **all**

**records** *concerning the implementation of programs and activities conducted for the*

*purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to

the extent that such records relate to a declination to register to vote or to the identity of a

voter registration agency through which any particular voter is registered." (Emphasis

supplied).[21]

In the instant matter, the True Vote Plaintiffs ask this Court to don judicial blinders

while expanding the NVRA without any basis in legislative intent, history or logic.[22]

Alternately stated, the True Vote Plaintiffs seek disclosure of information that is not

specifically identified by statute as records "concerning the implementation of programs and

activities conducted for the purpose of ensuring the accuracy and currency of official lists of

eligible voters." This request demands that this Court read 42 U.S.C. § 1973gg-6 and Section

8 of the NVRA in isolation. To do so would be contrary to *Chevron*, supra, and ignore the

overall statutory scheme of the NVRA.  In construing a statute, Courts in the Fifth Circuit

focus on its plain language in context with its "design, object and policy. A statute must be

---

[21]See also *Fec v. Akins*, 524 U.S. 11, 21  (1998), holding that  "a plaintiff suffers an injury
in fact when the plaintiff fails to obtain information **which must be publicly disclosed pursuant
to a statute**"(emphasis supplied).

See also *Delta Metalforming Co. v. Commissioner*, 632 F. 2d 442, 449 (CA 5th 1980).

read as a whole, and individual terms or phrases should not be interpreted in isolation."
*Sealed Appellee 1 v. Sealed Appellant 1*, 2013 U.S. App. LEXIS 26127 *5 (CA 5[th] 2013).
The Fifth Circuit Court of Appeals has particularly opined that "[w]hen the plain language
of a statute is unambiguous and does not 'lead to an absurd result,' 'our inquiry begins and
ends with the plain meaning of that language.'" *Id.*

    Your Honor has previously applied the two-step framework for statutory interpretation
established by the Supreme Court in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 104 S. Ct.
2778 (1984). See *Morales v. Francis*, 2005 U.S. Dist. LEXIS 26253 (S.D. Tex. 2003). A
reviewing court, under the *Chevron* two-step analysis, first looks to the language of the
statute itself to determine "whether Congress has directly spoken to the precise question at
issue, i.e. is the statutory language clear and unambiguous?" *Id.* If the statutory language is
clear and unambiguous, "that is the end of the matter." *Id.* Alternatively, if the "statute is
silent or ambiguous with respect to the specific issue," then the question for the court is
"whether the agency's answer is based on a permissible construction of the statute. *Id.*[23]

    The NVRA contains clear and unambiguous language that it is not applicable to the

---

[23]Where a court is called upon to interpret a statute, it must "ascertain congressional
intent and give effect to legislative will," beginning with the language of the statute because
"judicial precedent repeatedly counsels that in statutory interpretation, courts must presume that a
legislature says in a statute what it means and means in a statute what it says." *Fernandez v.
Miller (In Re Fernandez)*, 2011 U.S. Dist. LEXIS 86528 *13-14 (W.D. Tex. 2011). Thus, when
the statutory language is plain, the sole function of the courts, at least where the disposition
required by the text is not absurd, is to enforce it according to its terms. *Id.* In addition, courts
"must read a statute as a whole, so as to give effect to each of its provisions without rendering
any language superfluous," and not piece meal as True Vote requests. *Id.*

instant matter.[24]  In fact, the NVRA's clear and unambiguous language used throughout is

replete with the word "voter registration" (not poll books) and provides:

- the term "voter registration agency" means an office designated under section 7(a)(1) means an office designated under section 7(a)(1) to perform **voter registration activities**.  42 U.S.C. § 1973gg-1(4)(emphasis supplied);
- National Procedures for **voter registration** for elections for Federal Office. 42 U.S.C. § 1973gg-2 (emphasis supplied);
- Simultaneous application for **voter registration** and application for motor vehicle driver's license.  42 U.S.C. § 1973gg-3 (emphasis supplied);
- **Voter Registration** Agencies 42 U.S.C. § 1973gg-4 (emphasis supplied);
- "Requirements with respect to administration of **voter registration** 42 U.S.C. § 1973gg-6 (emphasis supplied);
- "each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of **programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters**, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered. 42 U.S.C. § 1973gg-6(i)(emphasis supplied);
- a State officer or employee as the chief State **election** official to be responsible for coordination of **State responsibilities** under this subchapter. 42 U.S.C. § 1973gg-8 (emphasis supplied);
- "conduct a general program that makes a reasonable effort **to remove the names of ineligible voters from the official lists of eligible voters by reason of"** the registrant dying or moving" directs each state to designate "a State officer or employee as the chief State election official to be responsible **for coordination of State responsibilities**

---

[24]Assuming, *arguendo*, that the True Vote Plaintiffs did request these type of records, True Vote's request would still be denied: as stated by the United States District Court for the Eastern District of Louisiana, " a Court usually refuses to expand the scope of a statute unnecessarily without certainty as to Congress's intent to do so." *United States v. Kaluza*, 2013 U.S. Dist. LEXIS 173134 *88 (E.D. La. 2013).

> **under this subchapter.**" Section 8 of the NVRA (emphasis supplied), and

- a **person who is aggrieved** by a violation of this Act may provide written notice to the chief **election official of the state involved**... if the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation. 42 U.S.C. § 1973gg-9(b)(1)-(3)(emphasis supplied).

As a result, the True Vote Plaintiffs' attempts to isolate and rely on Section 8 of the NVRA and 42 U.S.C. § 1973gg-6 apart from the entire statutory scheme, instead of the context of the overall statutory scheme as required, fail as a matter of law. The plain language of the statutes contained in the NVRA address **voter registration**. The plain language of the NVRA does not apply to the True Vote Plaintiffs' unredacted poll book claims against the Hinds Commission.

### A.    NVRA does not apply to poll books.

The True Vote Plaintiffs' paucity under the NVRA does not end after a plain meaning reading of the applicable statutes. The True Vote Plaintiffs have not provided any authority that the NVRA is applicable to their purported single request made to Hinds County for pre-vote production of absentee voter ballots and envelopes. The True Vote Plaintiffs have likewise failed to articulate or provide any authority that unredacted poll books are information subject to public disclosure.[25] Stated alternatively, the True Vote Plaintiffs fail

---

[25]For example, voting information has been defined in the Help America Vote Act of 2002, 107 PL 252, 116 Stat. 1666
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

to meet their burden and show that the records they requested concern "the implementation

of programs and activities conducted for the purpose of ensuring the accuracy and currency

of official lists of eligible voters."

     While it is undisputed that the NVRA requires disclosure of certain information, the

---

TITLE III--

Uniform and Nondiscriminatory Election Technology and Administration Requirements

Provisional Voting and Voting Information Requirements.
*******************************************************************
Section 302
    (b) Voting Information Requirements.--

      (1) Public posting on election day.-- **The appropriate State** or local election official
shall cause voting information to be publicly posted at each polling place on the day of
each election for Federal office.

      (2) **Voting information defined.**-- In this section, **the term "voting information"
means**--

      (A) a sample version of the ballot that will be used for that election;

      (B) information regarding the date of the election and the hours during which polling
places will be open;

      (C) instructions on how to vote, including how to cast a vote and how to cast a
provisional ballot;

      (D) instructions for mail-in registrants and first-time voters under section 303(b);

      (E) general information on voting rights under applicable Federal and State laws,
including information on the right of an individual to cast a provisional ballot and
instructions on how to contact the appropriate officials if these rights are alleged to have
been violated; and

      (F) general information on Federal and State laws regarding prohibitions on acts of fraud
and misrepresentation.

(Emphasis supplied); *see also* T. at 122-124, wherein Counsel for the True Vote Plaintiffs
"defers to this Act."

11

"public information" that must be disclosed does not include poll books.[26] [27] This is coupled with the fact that Englebrecht asked Hinds County only for pre-election absentee voter ballots and envelopes, and never sought unredacted poll books.[28] In actuality, it appears that True Vote could not request unredacted poll books, as True Vote has no idea what a poll book is and what information a poll book contains.[29]

Kim Turner, an Assistant Secretary of State in charge of the Election Division, does know what a poll book is. Ms. Turner specifically testitfied that (1) "poll books are not subject to the NVRA" [T. at 106]; (2) poll books "...are not relevant to maintaining accurate voter rolls" [T. at 106]; (3) "affidavit ballot envelope requests different types of information that the voter may fill out, including old address and new address...that information is not

---

[26]See 11 CFR §4.1, Federal Election Commission, Part 4, Public Records and the Freedom of Information Act, Definitions, subsection (o), compared to Plaintiffs' claims that"voter records were not made publicly available..." and conspicuously that True Vote "examines **official lists of eligible voters and other voter registration data** to verify their accuracy and currency." *See* p. 11, ¶¶40,A., and 41 (emphasis supplied).

[27]11 CFR 100.33, entitled "Voter Registration and get-out-the-vote activities," provides that:

> Any cost incurred for **activity designed to encourage individuals to register to vote or to vote is not an expenditure if no effort is or has been made to determine the party or candidate preference of individuals before encouraging them to register to vote or to vote,** except that corporations and labor organizations shall engage in such activity in accordance with 11 CFR 114.4(c) and (d); see also 11 CFR 114.3(c)(4)

(emphasis supplied).

[28]See T. at 85-87;89;93-96;133;135-138.

[29]See T. at  85-87;89;93-96;133;135-138.

contained in poll book...no one signs the poll book" [T. at 111], and (4) voter statuses such as "pending, purging or rejected" are not contained in poll books; rather only active voters are contained in poll book [T. at 110-114].

Additionally, there is no legal authority concluding that poll books maintained by the Hinds Commission are "records concerning the implementation of programs and activities conducted" and "designed to encourage individuals to vote or vote."[30]  The Fifth Circuit Court of Appeals has addressed the scope of public records under the NVRA, in *Voting for America, Inc. v. Steen*, 732 F.3d 382 (CA 5th 2013) ("*Steen*").  In *Steen*, the Court of Appeals determined that the public records subject to disclosure under the NVRA "are records maintained by the State." [31]  See also *True the Vote v. Hosemann*, 2014 U.S. Dist. LEXIS 93822 (N.D. Miss. 2014).[32]  Accordingly, the NVRA does not apply to public disclosure of

---

[30] For example, states that "record and any other term used in this part in reference to information includes any information that would be a Commission record subject to the requirements of this part when maintained by the Commission in any format, including an electronic format."

[31]Specifically, the Fifth Circuit Court of Appeals concluded that completed voter registration applications in the possession of VDRs were not public records.

[32]Stating that True Vote's "vote dilution claim is ostensibly based upon the Equal Protection Clause," and finding that "the complaint wholly fails to allege facts detailing what role either defendant had in bringing about any double voting which may have occurred in the Republican and Democratic primary elections...the complaint [in] vague and conclusory terms [describes] how certain plaintiffs 'perceived,' from their review of poll books, that certain individuals may have voted in both the Democratic and Republican primary elections."  The District Court further concluded that "even assuming that the plaintiffs' perceptions in this regard are accurate...the fact remains that defendants cannot be held liable for acts of double voting by private individuals which it did not cause to occur. Persuasive authority from a different circuit

13

unredacted poll books.

### B.      NVRA only applies to state election officials.

As set forth previously herein, the overall statutory scheme and plain language of the NVRA apply to *State* election officials, not the Hinds Commission.  The first sentence of 42 U.S.C. § 1973gg-6(i): " each *State* shall maintain for at least 2 years and shall make available for public inspection..." (emphasis supplied).  More importantly, the NVRA contains certain definitions, in 42 U.S.C. § 1973gg-1. Subsection (4) of 42 U.S.C. § 1973gg-1 defines the term "State" as "**a *State* of the United States** and the District of Columbia" (emphasis supplied).

In other words, it is the State Board of Election Commissioners that is responsible for administering state election laws, not the Hinds Commission.  See *McLaughlin v. City of Canton*, 947 F. Supp. 954, 959 (S.D. Miss. 1995)("*McLaughlin*"). In *McLaughlin*, the District Court for the Southern District of Mississippi recognized that the plaintiff asserted he has been disenfranchised in violation of the United States Constitution. The court also recognized that the plaintiff **admitted that his name has not been removed from the voter rolls**. *Id*. The District Court also opined that "the **proper state defendants**...are those **state officials** ultimately responsive for enforc[ement], i.e., **the Attorney General and, or alternatively, the Governor**, in their official capacities." *McLaughlin*, 947 F. Supp. at 956 (emphasis

---

raises additional doubts in this regard."

14

supplied).[33] As a result, pursuant to the NVRA's statutory scheme and controlling case precedent, the Hinds Commission is not a proper party to this action and should be dismissed, with prejudice.

## II.     No one ever sought disclosure of Hinds Commission information pursuant to NVRA.

If the Hinds Commission is not entitled to judgment as a matter of law as argued *supra*, the True Vote Plaintiffs' claims against the Hinds Commission still fail due to a record void of necessary facts.  As it relates specifically to summary judgment, the True Vote Plaintiffs, as the parties opposing the motion, **must come** forward with competent summary-judgment evidence that shows the existence of a genuine issue of material fact. *Powell v. Dallas Morning News, L.P.*, 776 F. Supp. 2d 240, 256-57 (N.D. Tex. 2011)(emphasis supplied).  The True Vote Plaintiffs' conclusory allegations are not sufficient to defeat a motion for summary judgment, as they are not competent summary-judgment evidence. *Id.* All that is before this Court from the True Vote Plaintiffs are the unsubstantiated assertions and unsupported speculations in the "verified" Amended Complaint and miscellaneous filings. The True Vote Plaintiffs have not and cannot identify specific admissible evidence in the record and articulate the precise manner in which that evidence supports those claims

---

[33]The *McLaughlin* Court, relying on *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990), *Familias Unitas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) and *Wyatt v. Cole*, 928 F.2d 718 (5th Cir. 1991), concluded that "...the municipal defendants...like the local defendants in *Echols* and *Familias Unitas* were merely enforcing a state statutory scheme...believed to be unambiguous on its face..." *Id.* at 966.

against the Hinds Commission.[34]

Indeed, the True Vote Plaintiffs allege that the Hinds Commission "fail[ed] to maintain records and papers of a federal election" and resulting in a "claim for voter dilution."[35] The True Vote Plaintiffs likewise allege that "[i]mmediately prior to the election, True Vote requested records from Hinds County...requests were made pursuant to NVRA...True Vote was denied access to the records."[36] The True Vote Plaintiffs also contend that "[i]mmediately following the election in July 2014, True Vote again requested access to voter records pursuant to the NVRA from...Hinds County...via its volunteer base...True Vote was impermissibly denied access to complete voter records by these counties."[37] The problem is, however, that no record evidence exists supporting the True Vote Plaintiffs' claims.

### A.    Allegations of Amended Complaint versus hearing testimony.

A comparison of the True Vote Plaintiffs' Amended Complaint to the evidentiary hearing testimony to the True Vote Plaintiffs' claims in the Amended Complain reveals startling inconsistencies. At the evidentiary hearing, Catherine Englebrecht, President of True

---

[34]Rule 56 does not impose a duty on this court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment, as it is only those disputes over facts that might affect the outcome of the suit under the governing laws which would properly preclude the entry of summary judgment.

[35]See p. 2, ¶1, Amended Complaint, Dock. No. 58.

[36]See p. 11, ¶44, Amended Complaint, Dock. No. 58.

[37]See p. 12, ¶45, Amended Complaint, Dock. No. 58.

Vote, was the True Vote Plaintiffs' first witness. Ms. Englebrecht's testimony does not support the True Vote Plaintiffs' Amended Complaint: rather, it virtually eviscerates it.

For example, while True Vote claims it requested records pursuant to the NVRA prior to the Run-Off, Ms. Englebrecht actually testified that True Vote "...asked to see absentee ballot applications and envelopes" [T. at 27]. It is therefore a material misrepresentation for True Vote to now characterize its purported request to the Hinds Commission for absentee ballot applications and envelopes, before they were counted, as an NVRA poll book request. This mischaracterization by True Vote is somewhat disconcerting, as Ms. Englebrecht testified that the "voter roll, also called a voter registry [is] the registration information of an individual voter compiled into a mass document at the state level," thereby acknowledging "voting registration" [T. at 36].

Despite Ms. Englebrecht's alleged or self-professed knowledge of voting registration, her testimony explicitly shows that she really does not know what a county poll book in Mississippi shows. Ms. Englebrecht opined that "polling book the collection of pages that has the list of voters in a precinct...of people that the county believes are eligible to vote on the voting day or days....that is my understanding ..." [T.at 37]. Ms. Englebrecht does not know, however,

- what information is actually contained in a poll book in Mississippi [T. at 47-48);
- when the request to see absentee ballot applications and envelopes was made to Hinds County (either the Thursday, Friday or Monday before the Run-Off election of July 24)[T. at 50];
- whether the bill of particulars filed by True Vote is accurate [T. at 52-

17

53];
- whether True Vote has actually received poll books from county with unredacted birth dates [T. at 58], and
- whether the poll books that True Vote has received show that cross over voting has occurred [T. at 60].

This is compounded by the fact that Ms. Englebrecht did not "go to any election commission or election commission office in the 8 counties [T. at 75], does not know which court house she went to Hinds County, when she went there, or who to whom she spoke [T. at 94-97], and did not ask for "the voter roll from Hinds County" [T. at 54]. All of this from Ms. Englebrecht is topped off by her admissions that (1) True Vote "has Mississippi's list of eligible voters" which does not have the "date of birth" but does have the voter registration ID number" [T. at 55]; (2) that "cross over voting has nothing to do with the voter being properly registered" [T. at 57], and (3) her agreement that **"poll book and voter roll not the same thing"** [T. at 56, emphasis supplied]. To be clear, Ms. Englebrecht has no personal knowledge of anything [T. at 85-87;89;93]. To be more clear, applicable case authority requires the True Vote Plaintiffs, who invoke this Court's authority, to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and [will] likely to be redressed by the requested relief." *Scott v. Schedler* 2013 U.S. Dist. LEXIS 9302 (E.D. La. 2013).

## B.    Incident Reports fail.[38]

Even the "incident reports" submitted by The True Vote Plaintiffs do not support any claim against the Hinds Commission. *See* Dock. No. 49-3, TTV Exhibits 26-33. These

---

[38]By reference herein, the Hinds Commission does not confess that these incident reports are admissible evidence.

Incident Reports against the Hinds Commission, were authored by Melinda Kinley, Ruth Wall and Sharon Quinn on July 7 and 8, 2014. In fact, these Incident Reports contradict The True Vote Plaintiffs' claims. A cursory review of the Incident Reports on these dates is quite telling.

There are five incident reports made by Ms. Kinley on July 7-8, 2014 [Dock. No. 40-3, TTV Exhibit Nos. 26-29, 33]. Ms. Kinley's incident reports do not describe any specific request for poll books under the NVRA, and instead narrate her conversation with a member of the Madison County Election Board member and an exchange with the Hinds County Circuit Clerk, wherein Ms. Kinley compliments the Circuit Clerk's attire. *See* Dock. No. 49-3, TTV Exhibits 26-29. Most conspicuous is Ms. Kinley's admission in her Incident Report of July 7, 2014 [TTV Exhibit No. 33], where she states she **got to look at absentee ballots** but not the yet-to-be certified Run-Off election (emphasis supplied).

Ruth Walls' incident reports of July 7-8, 2014 [Dock. No. 40-3, TTV Exhibit Nos. 30-31], are of similar suit. In one of Ms. Walls' incident reports she claims about a reporter from the WLBT news station, followed by Ms. Walls' admission that Hinds County Election Commission member Connie Cochran told Ms. Walls that she was working on her request for information from the day before. Ms. Walls' other incident report complains that she was not given "immediate access to ballots." This, in turn, was the same complaint made the basis of Sharon Quinn's incident report of July 7, 2014 [Dock. No. 49-3, TTV Exhibit No. 32]. Ms. Quinn's complaint is she was denied some sort of **"immediate access."**

Conspicuously, there is nothing in the public disclosure statute, 42 U.S.C. §1973gg-6(i), requiring "immediate access."

### III.   True Vote Plaintiffs' injunctive relief request moot.

As set forth above, the True Vote Plaintiffs' case fails against the Hinds Commission on the merits, thereby negating the need to consider injunctive relief.  The Fifth Circuit Court of Appeals has opined that, in "any set of circumstances that eliminates actual controversy after the lawsuit renders the action moot." *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519, 527-528 (CA 5th 2008).  In other words, a case should not be declared moot where parties maintain a "concrete interest in the outcome and effective relief is available to remedy the effect of the violation." *Id.*  But, a case does become moot where there are no adverse parties with sufficient legal interests to maintain litigation or when the parties lack a legally cognizable interest in the outcome of the litigation. *Id.*  The Hinds Commission respectfully submits that the True Vote Plaintiffs' case fails on the merits, thus not requiring the Court to consider any tertiary request for injunctive relief.  Should the Court desire a specific briefing on injunctive relief, however, the Hinds Commission request the opportunity for leave to address same.

<u>Conclusion</u>

This case is not about voter fraud or the McDaniel/Cochran primary election.  Those are merely opacities to "justify" some unknown purpose in seeking personal data of active

registered voters.[39] And, to achieve this unknown purpose, the True Vote Plaintiffs ask this Court to embrace their attempts of NVRA alchemy.  But, unlike alchemy, a judicial decision must rest on statutes as applied to evidence.  For these reasons, the Hinds Commission respectfully requests judgment as a matter of law.

**WHEREFORE,** the Hinds County, Mississippi Election Commission respectfully requests that this Court enter its Order awarding Hinds County, Mississippi Election Commission judgment as a matter of law, including all attorneys' fees and costs to which the Hinds County, Mississippi Election Commission is entitled. Finally, the Hinds County, Mississippi Election Commission requests any and all other relief to which it is entitled.

**THIS** the __6th__ day of _August_, 2014.

> Respectfully submitted
>
> **HINDS COUNTY, MISSISSIPPI**
> **ELECTION COMMISSION**
>
> By:   /s/ Pieter Teeuwissen
>            Pieter Teeuwissen

OF COUNSEL:

Pieter Teeuwissen, Esquire (MSB No. 8777)
Anthony R. Simon, Esquire (MSB No. 10009)
**OFFICE OF THE BOARD ATTORNEY**
**Hinds County, Mississippi**
316 South President Street
Jackson, Mississippi 39205
Telephone: 601.968.6797
Facsimile: 601.948.1003
*Attorneys for the Hinds Commission*

---

[39]T. at 111-112.

21

## CERTIFICATE OF SERVICE

I, Pieter Teeuwissen, one of the attorneys for the Hinds County, Mississippi Election Commission, do hereby certify that the foregoing document has been filed with the Clerk of the Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

**THIS,** the _6th_ day of <u>August</u>, 2014.

<u>/s/ Pieter Teeuwissen</u>

Pieter Teeuwissen

22