IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik, | § § § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Cause No. 3:14-cv-00532-NFA |
| The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission, | § § § § § § § § § § § § § § § § § § § | |
| Defendants. | | |

**PLAINTIFFS TRUE THE VOTE, ET AL.'S
MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................. 1

SUMMARY OF ARGUMENT ........................................................................... 1

UNCONTROVERTED FACTUAL BACKGROUND ...................................... 2

A.   True the Vote requested records under the NVRA prior to a
     federal election ...................................................................................... 2

B.   True the Vote requested access to records immediately
     following the election ............................................................................ 3

C.   Mississippi voter requested access to records and were denied ............. 7

D.   The Secretary directed a policy disregarding the plain language
     of the NVRA .......................................................................................... 8

ARGUMENT AND AUTHORITIES ................................................................ 9

A.   Standard of review ................................................................................. 9

B.   Relief is properly sought against the Secretary of State under the NVRA ........... 10

C.   Plaintiffs complied with the NVRA in requesting records .................... 11

     1.   Plaintiffs' requests were sufficient to invoke the NVRA ............... 11

     2.   Plaintiffs requested records immediately in advance of an election .......... 12

D.   The plain language of the NVRA requires public disclosure of the records ........ 13

     1.   Standard of statutory construction .............................................. 14

     2.   The NVRA is broadly applied in accord with its plain meaning ............... 14

          a.   Voter rolls ......................................................................... 16

          b.   Voter pollbooks ................................................................. 18

          c.   Federal postcard applications ............................................ 21

          d.   Absentee ballot applications and envelopes ...................... 21

      3.     None of the records are excepted from the NVRA ..................................... 22

C.     Mississippi law conflicts with the NVRA, which requires transparency.............. 23

      1.     The NVRA requires public disclosure of voter birthdates......................... 23

      2.     Mississippi law conflicts with the NVRA.................................................. 27

CONCLUSION ............................................................................................................ 28

CERTIFICATE OF SERVICE........................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*City of Charleston, South Carolina v. A Fisherman's Best, Inc.,*
310 F.3d 155 (2002) ......................................................................................... 27

*Condon v. Reno,*
913 F. Supp. 946 (D.S.C. 1995) ..................................................................... 13

*Edwards v. Aguillard,*
482 U.S. 578 (1987) ........................................................................................ 10

*EEOC v. Chevron Phillips Chem. Co.,*
570 F.3d 606 (5th Cir. 2009) ............................................................................ 9

*FEC v. Akins,*
524 U.S. 11 (1998) ............................................................................................ 9

*Freightliner Corp. v. Myrick,*
514 U.S. 280 (1995) ........................................................................................ 27

*Gonzales v. Arizona,*
677 F.3d 383 (9th Cir. 2012) ...................................................................... 23, 25

*Grant ex rel. Family Eldercare v. Gilbert,*
324 F.3d 383 (5th Cir. 2003) ............................................................................ 9

*Harkless v. Brunner,*
545 F.3d 445 (6th Cir. 2008) .......................................................................... 10

*National Coalition for Students with Disabilities Educ. and Legal Defense Fund v. Scales,*
150 F. Supp. 2d 845 (D. Md. 2001).............................................................. 12, 13

*Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen,*
152 F.3d 283 (4th Cir. 1998) .......................................................................... 15

*Project Vote/Voting For Am., Inc. v. Long,*
752 F. Supp. 2d 697 (E.D. Va. 2010) ......................................................passim

*Project Vote/Voting for Am., Inc. v. Long,*
889 F. Supp. 2d 778 (E.D. Va. 2012) ......................................................passim

*Project Vote/Voting for America v. Long,*
682 F.3d 331 (4th Cir. 2012) ..................................................................passim

*Public Citizen v. U.S. Dept. of Justice,*
491 U.S. 440 (1989) .......................................................................................... 9

*Rosmer v. Pfizer, Inc.,*
272 F.3d 243 (4th Cir. 2001) .......................................................................... 22

*United States Student Ass'n Found. v. Land,*
   546 F.3d 373 (6th Cir. 2008) ................................................................ 14

*United States v. Rocha*,
   916 F.2d 219 (5th Cir. 1990) ................................................................ 22

*Willenbring v. United States*,
   559 F.3d 225 (4th Cir. 2009) ................................................................ 14

**Statutes**

42 U.S.C. § 1973gg *et seq.* ......................................................... passim

MISS CODE ANN. 23-15-911 .......................................................... 4, 7

MISS CODE ANN. § 23-15-627 ................................................... 21, 24

MISS CODE ANN. § 23-15-911 .......................................................... 5, 7

MISS. CODE ANN. § 23-15-11 ............................................................ 24

MISS. CODE ANN. § 23-15-125 ......................................................... 18

MISS. CODE ANN. § 23-15-165(6)(a) ........................................ 23, 27

MISS. CODE ANN. § 23-15-211.1 ................................................. 8, 10

MISS. CODE. ANN. 23-15-7(6) .......................................................... 19

MISS. CODE ANN. § 23-15-7-(8) ................................................ 19, 20

MISS. CODE ANN. 23-15-575 ...................................................... 19, 20

MISS. CODE ANN. 25-61-1 et seq. .................................................... 12

**Rules**

FED. R. CIV. P. 56 ............................................................................... 1

FED. R. CIV. P. 56(A) .......................................................................... 9

**Regulations**

11 C.F.R. 9428.4 ............................................................................... 23

TO THE HONORABLE DISTRICT COURT:

Plaintiffs True the Vote, et al. file this Memorandum of Law in Support of their Motion for Partial Summary Judgment on the National Voter Registration Act ("NVRA") claims.  As support, Plaintiffs show as follows:

## **INTRODUCTION**

This case is about the transparency of the electoral process. Plaintiffs requested access to complete voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications (collectively the "voter records") immediately prior to and following the now-contested 2014 Republican Primary Run-Off Election.  Plaintiffs requested these voter records in order to protect the integrity of the electoral process and to ensure that accurate and current voter rolls are maintained by Mississippi. *See* 42 U.S.C. § 1973gg(b)(3)-(4).  The NVRA is clear and unambiguous. It contains liberal provisions requiring the Secretary of State to make the requested records available for public inspection and copying. Plaintiffs ask the Court to enforce the NVRA in accord with its plain meaning by ordering Mississippi's designated Chief Election Officer under the NVRA, the Secretary of State (hereinafter the "Election Officer" or "Secretary of State"), to make the voter records available for copying and inspection without the redaction of voter birthdates.

## **SUMMARY OF ARGUMENT**

Plaintiffs are entitled to summary judgment on their claims seeking access to voter records under the National Voter Registration Act ("NVRA").  *See* Fed. R. Civ. P. 56; 42 U.S.C. § 1973gg *et seq.*  The Secretary of State contends Mississippi statutory law

precludes access to un-redacted voter records because Mississippi law either (1) forbids access to the documents altogether or (2) forbids disclosure of voter birthdates. The NVRA preempts state law and applies to the records made the subject of this lawsuit. Plaintiffs are entitled to summary judgment and a declaration by this Court that federal law requires disclosure of the requested voter records and preempts state law.

Plaintiffs are also entitled to injunctive relief directing the Election Officer to permit access to unredacted voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications. Without access to unredacted records, Plaintiffs will be unable to determine whether the Republican Senate Primary Run-Off Election was conducted with integrity, and the individual plaintiffs will be unable to determine whether irregularities in the election diluted their lawful votes. This type of harm is not one for which money damages are adequate relief. Rather, Plaintiffs will suffer irreparable harm in the absence of injunctive relief.

## UNCONTROVERTED FACTUAL BACKGROUND

**A.     True the Vote requested records under the NVRA prior to a federal election.**

True the Vote monitors elections for compliance with state and federal law. It identifies instances of voting irregularities, including the failure of election officials to verify the identities of voters and, as relevant here, the failure of election officials to disqualify ineligible voters from voting in both Republican and Democratic primaries. It trains volunteers to conduct these activities. *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p. 25:7-23; Declaration of Ms. Engelbrecht, attached hereto as Exhibit 2.

As part of its mission to protect electoral integrity, True the Vote examines official lists of eligible voters and other voter registration data to verify their accuracy and currency. *See id.* Its purpose in undertaking these efforts is to protect the integrity of the electoral process and to ensure states maintain accurate and current voter rolls. *See id.*

In June 2014, in an effort to investigate reports of irregularities in the run-up to the Mississippi Republican Primary Run-Off Election (the "Election"), True the Vote requested access to certain Mississippi voter records. Immediately prior to the election, True the Vote requested absentee ballot applications and envelopes from Hinds and Rankin Counties. *See* Exhibit 1 at pp. 27:23-25. The request was made pursuant to the NVRA, but True the Vote was denied access to the records it requested. *See* 42 U.S.C. § 1973gg-6(i); *see also* Exhibit 1 at pp. 27:12-21; 27:21-25 and 28:11-19; Exhibit 2.

**B.     True the Vote requested access to records immediately following the election.**

Immediately following the Run-Off Election, on July 7 and July 8, True the Vote again requested voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications from certain Mississippi counties. *See* 42 U.S.C. § 1973gg-6(i). True the Vote requested the documents to determine whether or not voters who had voted in the Democratic Primary unlawfully double voted in the Republican Primary Run-Off Election and whether any other irregularities had occurred during the Election.

By way of example, True the Vote volunteer Ellen Swenson testified she requested records from Leake, Jones and Covington counties between July 7 and 8. She was denied access to the requested records. *See* Exhibit 1, at pp. 203-05, 207-09.

Evidence documenting her requests was admitted into the record in this case during the July 24, 2014 preliminary injunction hearing. *See id.* at pp. 201-02 and 209-10.

Additional True the Vote volunteers requested and were denied access to voter records. In the days following the June 24 Republican Primary Run-Off Election, Julie Hoenig was part of a group of True the Vote volunteers who requested access to voting records from the Circuit Clerks of Rankin, Simpson and Jefferson Davis Counties. *See* Declaration of Julia Hoenig and Incident Reports, attached hereto as Exhibit 3. Ms. Hoenig made an oral request at the Jefferson Davis County circuit clerk's office on July 7, 2014 for voter pollbooks and absentee ballot applications and envelopes. *Id.* The circuit clerk's office did not allow the records to be made available to the general public for inspection, citing an email from the Secretary of State's Office. *Id.*

Ms. Hoenig also made an oral request for voter pollbooks, absentee ballot applications and envelopes, and electronic files from Circuit Clerk Becky Boyd of Rankin County. *Id.* Circuit Clerk Boyd did not allow the inspection of complete absentee ballot applications or voter pollbooks. *See* Declaration of Julia Hoenig and Incident Reports, attached hereto as Exhibit 3. She relied on Mississippi Election Code Section 23-15-911 and instructions from the Secretary of State as grounds for her decision, even though Ms. Hoenig cited the National Voter Registration Act in making her request. *Id.* Further, concerning the pollbooks, Circuit Clerk Boyd informed Ms. Hoenig that True the Vote would be granted access only to redacted records at a cost of $.50/page or $20/hour. *Id.* Redacted information included voter birthdates.

Finally, Ms. Hoenig made a written request for voter pollbooks and absentee ballot applications and envelopes from the Simpson County Circuit Clerk's office on July 7, 2014 and July 8, 2014 under the NVRA.   *Id.*   The clerk allowed inspection of the materials only with the redaction of voter birthdates.  Based on these events, Ms. Hoenig was unable to access or inspect the complete voter pollbooks, absentee ballot applications and envelopes in Jefferson Davis, Rankin and Simpson Counties. *Id.*

Mike Rowley was part of Ms. Hoenig's volunteer group and encountered the same barriers to accessing records under the NVRA. *See* Declaration of Mike Rowley and Incident Reports, attached hereto as Exhibit 4.   The Circuit Clerk of Rankin County, for example, did not allow him to inspect voter pollbooks because the books contained information deemed by the Secretary of State to be confidential.  *Id.*  The only concession made by Rankin County's Circuit Clerk was that pollbooks could be inspected if the dates of birth corresponding to each voter were redacted.  *Id.*   The Clerk instructed that Mr. Rowley had to pay for the cost of redaction. *Id.*    Mr. Rowley's requests of the Circuit Clerks in Simpson and Jefferson Davis Counties were similarly denied.  *See id.*

Jeanne Webb too documented rejections from Rankin and Copiah Counties as a True the Vote volunteer.  *See* Declaration of Jeanne Webb and Incident Reports, attached hereto as Exhibit 5.   Ms. Webb requested access to voter pollbooks and absentee ballot applications in person at the Copiah County Circuit Clerk's office on July 7, 2014 both orally and in writing.  Citing to section 23-15-911 of Mississippi's Election Code, Circuit Clerk Edna E. Stevens did not allow Ms. Webb to review unredacted records. *Id.*; *see* MISS CODE ANN. § 23-15-911 (governing inspection of ballot boxes by candidates). Ms.

Webb made an oral request for voter pollbooks from the Rankin County Circuit Clerk's office the same day of her request for records from Copiah County. *Id.* The Circuit Clerk of Rankin County, Becky Boyd, again denied full access to voter pollbooks. *Id.* Ms. Boyd allowed public inspection of voter pollbooks only if the records were redacted of voter birthdates at a cost of $.50/page or $20/hour. *Id.*

In other representative circumstances, John and Karen Hobson were denied access to voter pollbooks and absentee ballot applications and envelopes requested from Lauderdale County's Circuit Clerk, Donna Johnson. *See* Declarations of John Hobson and Karen Hobson and Incident Reports, attached hereto as Exhibit 6. Ms. Johnson denied the public inspection of such records, although Mr. and Mrs. Hobson showed her a copy of a memorandum from the undersigned detailing that the records were subject to the NVRA's public disclosure provision. *Id.* Madison County likewise denied access to records covered by the NVRA. *See* Declaration of Sandi Steinbacher and Incident Report, attached hereto as Exhibit 7; *see also* Letter from Madison County Circuit Clerk dated July 8, 2014, attached here as Exhibit 8. So, too, did Yazoo and Hinds Counties. *See* Declaration of Roberta Swank and Incident Report, attached hereto as Exhibit 9; Declaration of Melinda Kinley and Incident Report, attached hereto as Exhibit 10; Declaration of Ruth Wall and Incident Report, attached hereto as Exhibit 11.

Finally, Susan Morse faced obstacles to securing records under the NVRA. *See* Declaration of Susan Morse and Incident Reports, attached hereto as Exhibit 12. Ms. Morse made an oral request at the Leake County Circuit Clerk's office on July 7, 2014 for voter pollbooks and absentee ballot applications and envelopes. *Id.* She made the

6

request, along with Ellen Swenson, to Kathy Henderson, the Circuit Clerk of Leake County. *Id.* In the request, Ms. Morse mentioned the NVRA.  *Id.* After speaking with the attorney general's office, the Circuit Clerk Henderson denied Ms. Morse's request for complete records. *Id.* As support, the Circuit Clerk cited Mississippi Election Code Section 23-15-911 and an Attorney General Opinion.  *See* MISS CODE ANN. § 23-15-911 (governing inspection of ballot boxes by candidates). *Id.* Ms. Morse reduced her request to writing, asking for lists of the Republican and Democratic voters who voted in their respective primary and run-off elections in person or by absentee ballot. *Id.*  Ms. Morse was denied access to the requested records without redaction. *Id.*

C.    **Mississippi voters requested access to records and were denied.**

Mississippi voters were likewise unable to inspect records subject to the NVRA. On June 26, 2014, Roy Nicholson requested access to the voter pollbook used in the run-off election from Circuit Clerk Becky Boyd of Rankin County. *See* Exhibit 1 at pp. 180-81; *see* also Declaration of Roy Nicholson, attached hereto as Exhibit 13.   As Mr. Nicholson explained at the preliminary injunction hearing, pollbooks are significant to determining whether lawful votes were cast in a primary run-off election. *See* Exhibit 1 at pp. 180-81. The pollbook is a list of voters specific to the polling location that the two parties exchange or "swap" prior to a run-off election.  *Id.*   The poll workers see unredacted versions of these documents at the polls.  *Id.* at p. 131.  In swapping the books, each election officials party can "verify that the people that are coming to vote in the runoff had not previously voted in the other party's primary." *Id.* at pp. 181-82. "Looking at that book would tell [Mr. Nicholson] if people had voted [improperly],

because they would have already been marked as having voting in the June 3rd Democrat [primary election] and then showed up [to vote] on the Republican 24th runoff." *Id.* at 182; *see also* DX 5 and DX 6, Exhibit 1, p. 140, attached hereto as Exhibits 23 and 24.

While the pollbook holds special significance in determining the integrity of a primary run-off election, Mr. Nicholson was denied access to the requested records. *Id.* He was told by the Circuit Clerk of Rankin County that the Secretary of State ordered her not to allow any person to view unredacted, original pollbooks. *Id.*

Julie Patrick and Colonel Phil Harding also requested voter records and were denied access to such records. *See* Harding Affidavit, attached hereto as Exhibit 14; *see also* Exhibit 1.

**D.    The Secretary directed a policy disregarding the plain language of the NVRA.**

Mississippi has designated its Secretary of State as Chief Election Officer under the NVRA. *See* MISS. CODE ANN. § 23-15-211.1; *see also* Exhibit 1, at pp. 102:20-104:6. In that capacity, the Secretary of State is responsible for ensuring Mississippi complies with the NVRA.  *See* 42 U.S.C. § 1973gg-8.  Yet, his office has taken the position that the records requested by True the Vote, Plaintiffs, and others may not be provided in unredacted form pursuant to Mississippi Statute. *See* E-Mail Correspondence from Amanda Frusha dated June 26, 2014, attached hereto as Exhibit 15; *see also* June 10, 2014 Press Release from The Honorable Delbert Hosemann, attached hereto as Exhibit 16; Attorney General Opinion No. 94-0699 dated November 2, 1994, attached hereto as Exhibit 17; E-Mail Correspondence from Kimberly Turner, attached hereto as Exhibit 18.  By denying

access to unredacted records, the Secretary of State has failed in his duties under the NVRA.

The Court recently held a preliminary injunction hearing in this lawsuit. Plaintiffs presented evidence and testimony from witnesses regarding their requests for documents under the NVRA during the hearing. *See* Exhibit 1. At the Court's direction, Plaintiffs supplemented the record with additional documentation of their requests. *See* True the Vote's Incident Reports [Doc. 49] dated July 28, 2014. To date, none of the Defendants have offered evidence controverting Plaintiffs' factual allegations.

## ARGUMENT AND AUTHORITIES

### A.    Standard of review.[1]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).

Here, the uncontroverted summary judgment evidence conclusively establishes the Plaintiffs requested access to voting records before and after the 2014 Republican Primary Run-Off Election and were either denied access to the records outright or denied access to unredacted records. Whether the requested records are protected by the NVRA

---

[1] At the preliminary injunction hearing, the Court questioned whether Plaintiffs had standing to sue for violations of the NVRA. *See* Exhibit 1 at p. 15. Plaintiffs will detail their standing to sue in a separate brief and respond to the Court's other quesitons, but submit that they have standing to sue for an informational injury in accord with the holdings of *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989); *FEC v. Akins*, 524 U.S. 11 (1998); *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383 (5th Cir. 2003) and *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703-04 (E.D. Va. 2010), among other authorities.

and whether the NVRA requires disclosure of birthdates on such records are questions of law appropriate for summary judgment.  *See, e.g., Edwards v. Aguillard*, 482 U.S. 578, 595-96 (1987).

**B.      Relief is properly sought against the Secretary of State under the NVRA.**

The NVRA contemplates each State shall have one Chief Election Officer responsible for coordinating the State's compliance with the NVRA. *See* 42 U.S.C. § 1973gg-8 ("each state shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA].").   Mississippi has designated the Secretary of State as its Chief Elections Officer. *See* MISS. CODE ANN. § 23-15-211.1.  (Mississippi designates "Secretary of State [as] Mississippi's chief election officer. . . for purposes of the National Voter Registration Act of 1993."). Plaintiffs therefore seek judgment against the Secretary of State.

As the "chief election official responsible for the coordination of State responsibilities" under the NVRA, the Secretary of State directs Mississippi's eighty-two counties with regard to application of the NVRA, including its Public Disclosure Provision.  *See* 42 U.S.C. 1973gg-6, 1073gg-8.  Mississippi's Assistant Secretary of State conceded as much when she testified the Secretary of State is the Chief Election Officer of Mississippi, and that the office is "a resource for election officials and candidates and circuit clerks."  *See* Exhibit 1 at p. 103:1-9.

Given his role in administering both federal and state election law, the Secretary of State is a proper defendant in this lawsuit.  *See, e.g., Harkless v. Brunner*, 545 F.3d 445,

449 (6th Cir. 2008) (holding that chief election officials are proper defendants to lawsuits alleging NVRA violations).  No fact issue exists on this matter.

**C.     Plaintiffs complied with the NVRA in requesting records.**

The Secretary of State contends Plaintiffs did not jump through the procedural hoops necessary to invoke the NVRA. *See* Exhibit 1 at p. 138.  This argument is a nonstarter.  No talismanic language is necessary to invoke the protection of the NVRA or its public disclosure provision.   Further, Plaintiffs were not required to give pre-suit notice of an NVRA violation under the circumstances of this case.

**1.  Plaintiffs' requests were sufficient to invoke the NVRA.**

The NVRA requires states to make voting records available for public inspection and copying.  *See* 42 U.S.C. 1973gg-6(i).  But it is silent with respect to how a request for public records should be made.  Unlike the Freedom of Information Act and many state statutes governing public records requests, for example, the NVRA does not detail any information required to invoke its protections. *See id.* Nor does the NVRA require a party seeking public records to recite its provisions as a prerequisite to making a request for documents covered by the Act.  *See id.*

Plaintiffs nevertheless complied with traditional methods of requesting documents open for public inspection and specifically invoked the NVRA in support of their requests.  Plaintiffs requested access to voter records orally and in writing.  *See* Exhibits 3-13. The Secretary of State had notice of Plaintiffs' requests, even responding to questions Circuit Clerks asked of the Secretary of State regarding Plaintiffs' persistence in requesting such records. *See id.* Plaintiffs reduced many of their requests to written

11

form in a manner generally complying with Mississippi's Public Records Act of 1983, an act reflecting state policy of making public records available for inspection by any person. *See* MISS. CODE ANN. 25-61-1 et seq. Moreover, some True the Vote volunteers specifically mentioned the NVRA in making their requests. In light of these circumstances, Plaintiffs' requests were more than sufficient to invoke the NVRA.

### 2. Plaintiffs requested records immediately in advance of an election.

The NVRA provides a private right of action to enforce violations of the Act. *See* 42 U.S.C. § 1973gg. While a person aggrieved under the NVRA may typically need to provide notice of the violation involved prior to filing suit, notice need not be given if the violation occurred within 30 days of an election for federal office. *See* 42 U.S.C. § 1973gg-9. Because the violations alleged in this suit occurred within 30 days of the June 2014 Republican Primary Run-Off Election for a federal office, Plaintiffs were not required to give notice of the violations alleged in this lawsuit. *See* Exhibit 1 at pp. 27:12-21; 27:21-25 and 28:11-19 (detailing requests for records made in advance of election); Exhibit 2.

The court in *National Coalition for Students with Disabilities Educ. and Legal Defense Fund v. Scales*, 150 F. Supp. 2d 845 (D. Md. 2001), rejected the argument that a party's suit was barred because it failed to file a pre-suit complaint under the NVRA. In that case, the court held notice was not required under 42 U.S.C. § 1973gg-9(b)(3) because the alleged violation occurred within 30 days before the date of an election for federal office. The complaint stated DSS had 670 clients, of whom approximately 21 made their initial application for services or changed their address during the 30 days

preceding the November, 2000, federal elections, but none of the applicants were invited to register to vote. Those allegations, the court declared, were sufficient to dispense with the notice provisions of the NVRA.  Here, too, Plaintiffs made a pre-suit request.

Further, federal courts construe the notice provision as a practical guide for enabling states in violation of the NVRA to correct the violation.  It is not construed as a bar to relief.  In *Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995), for example, the court reasoned that a party's failure to provide written notice prior to filing an NVRA suit against South Carolina did not bar its suit. As the court observed, statutory notice is intended to give the state the opportunity to cure violations that are called to its attention. Where a state like Mississippi openly and plainly refuses to comply with the alleged violation, the purpose of statutory notice is fulfilled because exhaustion of a remedy— like giving notice as a prerequisite to suit—is not required when the act would be futile.

The uncontroverted facts of this case show Plaintiffs requested the records prior to the Election.  Not all Plaintiffs need have requested the records in order to maintain an action under the NVRA. *See National Coalition for Students with Disabilities Educ. and Legal Defense Fund v. Scales*, 150 F. Supp. 2d 845 (D. Md. 2001).  In any event, notice by all Plaintiffs would have been futile.  Mississippi openly and plainly refuses to comply with the NVRA.  Pre-suit notice would not change this circumstance.  Plaintiffs therefore have met the pre-suit requirements under the NVRA.

**D.     The plain language of the NVRA requires public disclosure of the records.**

The Secretary of State contends (1) the records made the subject of this lawsuit are not covered by the NVRA; therefore, (2) voter birthdates must be redacted from such

records pursuant to Mississippi statute.  The NVRA applies to the records requested in this case. And the Secretary of State has no authority to substitute his interpretation of federal law to prohibit full, public access to voter records.  *United States Student Ass'n Found. v. Land*, 546 F.3d 373, 382-383 (6th Cir. 2008) (holding that States have no power to interpret NVRA because a "federal statute cannot adequately protect the rights of individuals from actions of the [S]tate" if States have such power).

### 1.  Standard of statutory construction.

The first step in statutory interpretation is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009) (internal quotations omitted).  When the plain meaning of a statute is unambiguous, "this first canon is also the last [and] judicial inquiry is complete."  *Project Vote/Voting for America v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

The Fourth Circuit has determined the Public Disclosure Provision of the NVRA is plain and unambiguous. This Court should accord the statutory language its ordinary and common meaning, unless it is clear Congress intended terms to have a different meaning. *See Long*, 682 F.3d at 335.

### 2.  The NVRA is broadly applied in accord with its plain meaning.

The plain and common meaning of the Public Disclosure Provision leaves no doubt that voter rolls, pollbooks, federal post card applications and absentee ballot applications and envelopes must be made available for public inspection.  It provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, ***all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters***, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. § 1973gg-6(i)(1) (emphasis added).

The plain language of the NVRA requires disclosure of "*all records*" concerning programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. *Id.* As the Fourth Circuit explained in *Project Vote/Voting for America v. Long*, Congress's inclusion of modifiers in the statutory text such as the word "all" indicate its terms should be construed expansively. 682 F.3d at 336 (citing *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998)).

The Court's analysis in this case focuses on the meaning of the phrase "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." Its predicate— "all records"—is unbounded, and must be broadly construed. *See id.* The second part of the phrase—"concerning"—means "to relate or refer to," to "be about," or "to have an influence on." *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 707 (E.D. Va. 2010) (citing *Webster's Third New International Dictionary* 470 (2002)). Meanwhile, the term "implementation" means the act of "carry[ing] out" or "accomplish[ing]" or "giv[ing] practical effect to and ensur[ing] ... actual fulfillment by concrete measures." *Long*, 752 F. Supp. 2d at 707.

15

Turning to the phrase "activities," the NVRA requires states to both register eligible voters and remove ineligible voters.  Mississippi discloses document relevant to the registration of voters, *see* Exhibit 1 at p. 126, and would have the Court treat documents relevant to the removal or eligibility of voters differently.  However, the phrase "activities" is plural and includes both registration and removal activities when placed in the context of the statute.  *See* 42 U.S.C. § 1973gg *et seq*.  Evaluating official lists of existing eligible voters (and not just applications) are important means through which states comply with the NVRA by ensuring accurate and current voter lists are maintained.  Voter removal programs allow states to maintain updated lists and protect against voter fraud.

Based on these definitions, "a program or activity covered by the public disclosure provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified to vote."  *Id.* at 706.  In accord with this plain-meaning construction of the NVRA, *any* "records" which relate to "an activity" ensuring accurate "official lists" of "eligible voters" are subject to the NVRA. *Id.*  Plaintiffs now turn to bases supporting the disclosure of each category of requested records.  *See* 42 U.S.C. § 1973-gg6(i)(1).

### a.  Voter rolls.

There can be no reasonable dispute that evaluating voter rolls constitutes an activity ensuring accurate "official lists" of "eligible voters" are maintained. The voter roll is Mississippi's official, complete list of all Mississippi voters, both eligible and ineligible.  *See* Exhibit 1 at p. 107.  The roll is created from in-person and mail-in

registration applications placed in the Statewide Election Management System ("SEMS"). *Id*. at 125.

The roll is comprehensive. It encompass all registered voters and their designated status, whether active, inactive, purged, rejected or pending. *Id.* An active voter is one whose is eligible to vote and whose name will later be made part of a pollbook. *Id.* An inactive voter is one who has been moved to that status by virtue of documentation or information indicating a charge of address, including a returned voter confirmation card under the NVRA. *Id.* at p. 107-110. A purged voter is one ineligible to vote by reason of death, adjudication of incompetence, conviction of a disenfranchising crime, move, or voluntary request. *Id.* at p. 112. A rejected voter is one whose application to register to vote has been rejected, and a pending voter is one whose application is being processed. Id. at 112-114. Reviewing the voter rolls is therefore important to determining whether a voter has been given the appropriate designation by the state. It is necessary to determine, for example, whether a deceased person remains eligible to vote.

The significance of the voter roll is underscored by its use on election day. Mississippi election workers specifically examine the voter roll to determine whether voters not listed on pollbooks but who appear to vote on election day should have been included in the pollbook. *Id.* at 115. The election workers look at the voter roll as part of determining whether the voter has moved within the county and are eligible to vote. *Id.* Information gathered at the polling place on election day, like change of address is later used to update the voter rolls. *Id.* For these reasons, the voter roll is an official list that may be used in an activity to ensure accurate listings of "eligible voters" are maintained

17

### b.  Voter pollbooks.

Voter pollbooks are also covered by the NVRA.  A voter pollbook us the list of active voters eligible to vote in a particular election.  *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p. 106.  The pollbook contains the name of the voter, address, date of birth, and voter registration number.  *Id.* at p. 113; *See* MISS. CODE ANN. § 23-15-125.  The poll book also has columns for each applicable election with spaces to mark whether a given voter cast a ballot in a given election.  *Id.*  The pollbook is used during the election and marked by poll workers to indicate a voter has cast a ballot. *See* DX 5 and DX 6, admitted into evidence at Exhibit 1, p. 140.

Pursuant to Mississippi statute, "the pollbooks will show only the names of those qualified to vote at such election."  *See* MISS. CODE ANN. § 23-15-125.  "When election commissioners determine that any elector is disqualified from voting, by reason of removal from the supervisor's district, or other cause, that fact shall be noted on the registration book and his name shall be erased from the pollbook."  *Id.*  Thus, Mississippi law specifically contemplates the use and inspection of pollbooks "to ensure the accuracy and currency of official lists of eligible voters." *See id.*; *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

Reviewing the pollbook falls under the general umbrella of reviewing an "official list" of "eligible voters."  Further, reviewing the pollbook is necessary the accuracy of such a list because the pollbook should list only eligible voters.  If a deceased person is listed on the pollbook, the book is neither current nor accurate.  Reviewing the pollbook is therefore an activity to determine the accuracy of official state voter lists.

As the Court observed at the preliminary injunction hearing, pollbooks are especially significant in primary run-off elections.  In primary run-off elections, officials conducting the elections swap the list of voters who voted in each parties' primary election. The purpose of swapping the pollbooks is to ensure only eligible voters cast ballots in a particular primary run-off, i.e. that Democrats don't vote in the Republican primary and visa versa.  *See* MISS. CODE ANN. 23-15-575 ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates.").  To do this, the officials may print a VR-28 report.  The VR-28 report is an electronic rendering of the pollbook, and it lists all voters who voted in the each party's primary election.  *See* Exhibit 1 at 162-64; *see* Example VR-28 for June 3 and June 24 Primaries, attached hereto as Exhibits 20 and 21. Alternatively, the election officials switch the physical pollbooks used in the primary elections.  *Id.*  Like the VR-28 reports, the pollbooks contain notations next to each voter's name indicating whether he or she cast a ballot in the opposing party's primary election.  *See* DX 5 and DX 6, Exhibit 1, p. 140, attached hereto as Exhibits 22 and 23.

In summary, the pollbook is an official list of persons eligible to vote on election day.  It is checked by poll workers when a voter submits a photographic identification and requests a ballot or access to voting terminals to be certain the voter is eligible to vote.[2]  *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p. 115.

---

[2] It bears mentioning that Mississippi requires voters present valid photographic identification at the polls and when requesting an absentee ballot, including a Mississippi Voter Identification Card, driver's license, or other acceptable identification.  *See* MISS. CODE. ANN. 23-15-7(6) and 23-15-7(8).  Many of these photographic identifications contain the voter's birthdate. *See* "What

The pollbook not only prevents multiple votes by the same person on the same election day (by being the first line of defense for the one person, one vote rule, as the pollworker checks people off as having voted), but the pollbooks are switched in a primary run-off election, and reviewed to prevent double voting – an issue of eligibility.  *See* Miss. Code Ann. 23-15-575 ("No person shall be eligible to participate in any primary eleciton unless he intends to support the nominations made in the primary in which he participates.").  Reviewing and marking the pollbook is not a superfluous exercise without a purpose.  Rather, checking this list is an activity to ensure the accuracy and currency of an official list of eligible voters.

The NVRA itself contemplates pollbooks will be used as records to maintain accurate and current lists of eligible voters.  The NVRA requires States to remove ineligible voters from voting rolls, but simultaneously provides that voters may not be removed or purged from a state's voter registration roll except under specific circumstances. *See* 42 U.S.C. § 1973gg-6(d). One ground for removal or assigning a status of "purged" occurs when a voter does not respond to a registration notice and does not appear for voting for two years. *See* 42 U.S.C. § 1973gg-6(d)(1). The most accurate way to determine whether a voter has appeared in the prior two years to vote in a federal

___

will happen at the polls?" located at http://www.msvoterid.ms.gov/ (visited August 8, 2014). Under regulations promulgated by the Secretary of State, poll workers are required to verify the name on a voter's photographic identification is "substantially similar" to the name of the elector in the Statewide Election Management System ("SEMS"), as reflected on the pollbook.  *See* Miss. Code Ann. § 23-15-7-(8); *see* Administrative Regulations of Secretary of State, Part 16, Chapter 1, Rule 4.1, attached hereto as Exhibit 19.  If a voter's middle or last name on the photo identification is different from the poll book due to divorce or marriage, the voter may cast a regular ballot, if a part of the name, the address or *date of birth* on the presented matches a part of the name, address or *birthdate* on the poll book.  *Id.*

election is by reviewing the pollbook because the pollbook indicates whether a voter cast a ballot in each election.  Thus, pollbooks are protected by the NVRA.

### c.  Federal postcard applications.

A federal postcard application is one recognize method of registering to vote and it is later used to request an absentee ballot to vote overseas. The Assistant Secretary of State concedes federal postcard applications are subject to open disclosure and may not include redaction of birthdates under the NVRA.  *See* Exhibit 1, at p. 125-26.  Therefore, Plaintiffs are entitled to such records.

### d.  Absentee ballot applications and envelopes.

Review of absentee ballot applications and envelopes is also an activity "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i).  Similar to an overseas application (which the parties agree is protected by the NVRA), a Mississippi voter may vote by absentee ballot under enumerated circumstances by filling out an appropriate form.  *See* MISS CODE ANN. § 23-15-627.  If a voter does not meet Mississippi's criteria for an absentee ballot, she is ineligible to vote by absentee ballot.  Further, to count the absentee ballot toward the election total, the ballot must be properly executed in accord with Mississippi law.

Finally, information concerning a voter's history is included in the SEMS database.  Voter history includes whether the voter cast an absentee ballot.  Thus, review of absentee ballot applications and envelopes is an activity conducted with the purpose of ensuring that the voter lists remain accurate and current.

21

### 3. None of the records are excepted from the NVRA.

The conclusion that the NVRA applies to the voter records requested herein finds further support in the exceptions to the Public Disclosure Provision. The Provision excepts only two categories of records from its requirement that "all records" be disclosed: (1) records that relate to an individual's declination to register to vote; or (2) records that identify a voter registration agency through which a particular voter was registered. *Id.* The exceptions clause is a critical part of the Public Disclosure Provision.

Because Congress provided only two exceptions to the Public Disclosure Provision's otherwise broad requirements, it would be improper for the court to infer additional exceptions beyond those enumerated in the statute. Instead, *all* other types of records concerning the implementation of pertinent programs or activities must be made available for public inspection and copying. *See Long*, 682 F.3d at 336 ("Because the requested applications do not fall within either of these two exceptions . . . they must be made available for public inspection"); *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990) ("Under the principle of statutory construction *expressio unius est exclusio alterius*, the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."); *see also Rosmer v. Pfizer, Inc.*, 272 F.3d 243, 247 (4th Cir. 2001) (stating that inferring additional exceptions into a list of statutory exceptions drafted by Congress runs afoul of the doctrine of *expressio unius est exlusio alteriu*s and would amount to the court performing a "legislative trick").

None of the records requested in this case relates to an individual's declination to register to vote or identifies the voter registration agency through which an individual registered.  Because completed absentee ballot applications and envelopes, poll books, voter rolls, and federal postcard applications do not fall under the exceptions clause, those records must be included in the term "all records" and made subject to the NVRA's public disclosure provision.  *See Long*, 682 F.3d at 336.

## C.   Mississippi law conflicts with the NVRA, which requires transparency.

Federal courts conclude the NVRA mandates disclosure of voter birthdates in information covered by the Act.  Mississippi agrees records covered by the NVRA must disclose voter birthdates.  *See* Exhibit 1, at p. 126.  Mississippi has nevertheless denied access to the voter records and required redaction of birthdates from such records pursuant to MISS. CODE ANN. § 23-15-165(6)(a).  Because the NVRA covers the records request in this case and preempts state law, plaintiffs are entitled to unredacted records.

### 1.  The NVRA requires public disclosure of voter birthdates.

The Public Disclosure Provision of the NVRA encompasses the materials requested in this suit, including birthdate information.

First, the National Mail Voter Registration Form—a federally created form that states must accept under the NVRA—requires just the information Mississippi  now seeks to redact.  *See* 11 C.F.R. 9428.4; *Gonzales v. Arizona*, 677 F.3d 383, 395-96 (9th Cir. 2012).  The public disclosure provision allows for disclosure of NMVRF applications. *See* Exhibit 1, at p. 126. Given that the use of this form was authorized simultaneously with the public disclosure provision and contains voter birthdates, there

can be no question Congress intended such information to be disclosed under the statute.[3]

Second, *Project Vote/Voting for America, Inc. v. Long* addresses many of the questions raised in this suit. There, Project Vote sued the Virginia Secretary of State seeking an injunction requiring disclosure of completed voter registration applications based on claims of federal preemption. Virginia moved to dismiss the complaint, claiming Project Vote lacked standing to bring the suit and that completed voter applications are not subject to the Public Disclosure Provision. *Id.* at 740. Virginia further claimed birthdates were protected. The district court granted summary judgment in favor of Project Vote, holding that the Public Disclosure Provision unambiguously required disclosure of voter registration applications and that contrary Virginia law was preempted by the NVRA:

> The NVRA's public disclosure provision grants the plaintiff access to completed voter registration applications with voters' SSNs redacted for inspection and photocopying. Furthermore, to the extent that any Virginia

---

[3] Disclosure of birthdates is justified for at least six reasons, only some of which are due to the existence of numerous persons with the same name: (1) birthdates on election records, particular voter rolls and pollbooks, are necessary to connect such records with a voter's official registration and application to vote to ensure the voter is properly registered; (2) birthdates are necessary to search conflicting or duplicate voter registrations across counties; (3) age-related information ensures a citizen is age-eligible to vote. *See* MISS. CODE ANN. § 23-15-11; (4) birthdates ensure eligibility of absentee voters requesting to vote absentee because they are over sixty-five years of age. *See* MISS. CODE ANN. § 23-15-627; (5) birthdates on official voter rolls and pollbooks is necessary to detect persons who cast votes in the names of registered voters who are deceased by enabling a party to search by birthdate for corresponding death records. Because many people may share the same name, the date of birth match from a voter record is essential to make a match with external death records; and (6) birthdates are necessary to distinguish between voters with similar names or voters with duplicate entries in voter pollbooks with distinct voter identification numbers due to multiple registrations or a name change (due to marriage, etc.), among other reasons.

law, rule, or regulation forecloses disclosure of completed voter registration
applications with voters' SSNs redacted, the court FINDS that it is
preempted by the NVRA.

*Id.* at 744. The district court granted prospective relief requiring Virginia to permit

inspection and copying of the records with only social security numbers redacted. *Id.*

The Fourth Circuit affirmed. It held the Public Disclosure Provision encompassed

the requested records. 682 F.3d 331, 307-08 (4th Cir. 2012). The Fourth Circuit noted

that social security numbers are "uniquely sensitive" and could be subject to redaction.

Other information contained in voter applications, including voter birthdates, must be

included under the NVRA. *See Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp.

2d 778, 781 (E.D. Va. 2012).

The Fourth Circuit explained Congress struck a balance between transparency and

voter privacy in enacting the NVRA. According to the Court, Congress weighed privacy

interests against transparency and has come down on the side of disclosure:

It is not the province of the court . . . to strike the proper balance between
transparency and voter privacy. That is a policy question properly decided
by the legislature, not the courts, and Congress has already answered the
question by enacting NVRA Section [6](i)(1), which plainly requires
disclosure of completed voter registration applications. Public disclosure
promotes transparency in the voting process, and courts should be loathe to
reject a legislative effort so germane to the integrity of federal elections.

*Project Vote/Voting for America*, 682 F.3d at 308 (citing 42 U.S.C. 1973gg-6(i)(1)).

Further, the Court noted information subject to disclosure under the NVRA is important

to give effect to transparency in the electoral process:

[i]t is self-evident that disclosure will assist the identification of both error
and fraud in the preparation and maintenance of voter rolls. State officials
labor under a duty of accountability to the public in ensuring that voter lists

25

include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer.

*Id.* at 308.   The court of appeals then remanded the case to the district court, leaving open the question of whether information beyond social security numbers could be redacted under with the plain language of the statute.

On remand, Virginia asked the district court to redact additional information including month and date of voter birthdates. The district court denied Virginia's request, citing the Fourth Circuit's holding. *Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012), appeal dismissed (Jan. 31, 2013).  In so doing, the court held "the plain meaning of the NVRA's disclosure requirement" requires disclosure of full voter birthdates. *Id.* This is the only authority nationwide that specifically addresses the issue of whether the NVRA requires disclosure of birthdates.

Finally, Congress could have made the NVRA subject to additional restrictions on the public disclosure of information.  The Freedom of Information Act, for example, provides basic framework for restricting data requested from the federal government. Congress could have included provisions similar to FOIA within the NVRA.  But the NVRA contains no limitation on the public disclosure of documents beyond records that relate to an individual's declination to register to vote or records that identify a voter registration agency through which a particular voter was registered.  It would be improper to impose any additional limitation on the public disclosure of NVRA records.

## 2.   Mississippi law conflicts with the NVRA.

Federal and state law conflict where "state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).   A direct conflict "is most quickly apparent when the federal and state enactments are directly contradictory on their faces."   *City of Charleston, South Carolina v. A Fisherman's Best, Inc.*, 310 F.3d 155, 169 (2002).   But a conflict also exists when there is an "actual conflict with precise and sufficiently narrow objectives that underlie the federal enactment" or where is it "impossible to comply with both state and federal law." *Id.*   The intent of Congress is the ultimate touchstone of preemption.   *Id.* The question in this case is whether Mississippi's restrictions on the public disclosure of information conflicts with the NVRA.

Mississippi statute prohibits disclosure of information that federal law requires to be made public.   *See* MISS. CODE ANN. § 23-15-165(6)(a).   Because Mississippi prohibits the disclosure of information made public by the NVRA, there is a clear and direct conflict between the NVRA and the redactions Mississippi proposes.   The redactions also frustrate the "narrow objectives that underlie the federal enactment," *City of Charleston*, 310 F.3d at 169, which is unmistakably directed to providing transparency over voting records and processes.

The Secretary of State has taken the position that voter birthdates are private, sensitive information protected by Mississippi Statute.   This claim rings hollow.   The Assistant Secretary of State testified birthdates are already publicly available information. *See* Exhibit 1 at p. 121-22, 126-27. Ms. Turner testified birthdates are are available, without redaction, in requests for records of military absentee applications under the

NVRA.  *See id.*   Ms. Turner also testified voter registration applications may be requested and disclosed in unredacted form. *Id.* Ms. Turner explained her rationale:

> Q. You've already disclosed that the federal postcard application, which includes birth dates, is not subject to redaction.
> A. And neither are Mississippi state registration applications.
> Q. So the registration application, which includes birth dates, is not subject to birth date redaction?
> A. It may include a birth date, yes.
> Q. And it's not subject to a redaction?
> A. Not under the NVRA.

Exhibit 1, at p. 126.  Therefore, birthdate information is already publically available in certain Mississippi voting records when such records are deemed by the Secretary as covered by the NVRA.  While an interested person with sufficient time and money may reverse engineer voter applications to correspond to the state's redacted voter rolls, they should not be made to do so based on hollow claims that the voter roll itself or other associated records should be accorded special, private treatment.  If Mississippi is allowed to give special treatment to certain records but not others, it effectively makes the requested information available to a select class – a slice of the public who has enough time and enough money.  The NVRA does not contemplate such disparate treatment, but mandates that the public be able to inspect state voting records.

## CONCLUSION

Based on the foregoing, Plaintiffs ask the Court to grant summary  judgment on their National Voter Registration Act claims as a matter of law and declare that the plain meaning of NVRA public disclosure provision requires disclosure of complete voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard

applications without redaction of birthdates.  Plaintiffs re-urge their request that the Court

enter an injunction compelling the Secretary of State to make such records available for

public copying and inspection.

                                      Respectfully submitted,

                                      /s/  L. Eades Hogue

Joseph M. Nixon – *pro hac vice*            L. Eades Hogue
Texas State Bar No. 15244800               Mississippi State Bar No. 2498
jnixon@bmpllp.com                          Louisiana State Bar No. 1960
Kristen W. McDanald – *pro hac vice*        ehogue@bmpllp.com
Texas State Bar No. 24066280               BEIRNE, MAYNARD & PARSONS, LLP
kmcdanald@bmpllp.com                       Pan-American Life Center
Kelly H. Leonard – *pro hac vice*           601 Poydras Street
Texas State Bar No. 24078703               Suite 2200
kleonard@bmpllp.com                        New Orleans, LA 70130
BEIRNE, MAYNARD & PARSONS, LLP             (504) 586-1241 Tel.
1300 Post Oak Blvd, Suite 2500             (504) 584-9142 Fax
Houston, Texas  77056                      **Lead Counsel**
(713) 623-0887   Tel.
(713) 960-1527   Fax


James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax


                    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2014 a copy of the forgoing instrument and its exhibits were served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission and the Rankin County Mississippi Election Commission;  via the Court's ECF e-file service.  Plaintiffs have served the remaining Defendants, who have not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

*/s/  L. Eades Hogue*