**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**TRUE THE VOTE, ET AL.**                                         **PLAINTIFFS**

**V.**                              **Civil Action No.: 3:14-CV-00532-NFA**

**THE HONORABLE DELBERT HOSEMANN,
in his Official Capacity as Secretary of State
for the State of Mississippi, et al.**             **DEFENDANTS**

_____

**BRIEF IN SUPPORT OF MOTION OF THE REPUBLICAN PARTY TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
_____

Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141
*Counsel for Mississippi Republican Party*

**TABLE OF CONTENTS**

NATURE AND STATUS OF PROCEEDINGS ................................................................ 1

STATEMENT OF ISSUES AND STANDARD OF REVIEW .......................................... 1

SUMMARY OF THE ARGUMENT ............................................................................... 2

ARGUMENT ................................................................................................................... 4

    I.     NO RELIEF CAN BE GRANTED AGAINST THE PARTY
           UNDER COUNTS 1 AND 2. ................................................................... 4

          A.     Because there were no pre-election violations, this suit is
                 not exempt from the NVRAs pre-suit notice requirement,
                 42 U.S.C. § 1973gg-9(b), and is procedurally barred. ..................... 4

          B.     The NVRA imposes its obligations upon the State, not the Party. .... 7

          C.     The records sought by plaintiffs are not covered by the NVRA's
                 Public disclosure agreement. ........................................................... 10

               1.     The text of 8(i) provides for a much narrower universe
                       of records than that claimed by plaintiff. ............................ 10

                2.     Public disclosure under the NVRA does not provide
                       private parties with greater access and fewer restrictions
                       to records than that provided under the Civil Rights Act
                       of 1960 and FOIA. .............................................................. 12

               3.     Other records the plaintiffs presently seek are not covered
                       under § 8(i). ....................................................................... 14

                    a.   Absentee records are not covered by § 8(i). ................... 14

                    b.   Poll books and other derivative documents
                       are not covered. ........................................................... 16

    II.    PLAINTIFFS' RIGHTS UNDER THE FOURTEENTH AMENDMENT
           WERE NOT VIOLATED BY THE CONDUCT OF THE RUNOFF. ...... 17

CONCLUSION ............................................................................................................. 23

CERTIFICATE OF SERVICE ..................................................................................... 24

i

## TABLE OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)............................................................................ 2

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ...................................................................... 1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 2

*Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009),
    aff'd 381 F. App'x 370 (5th Cir. 2010) ........................................................... 5, 21

*Bush v. Gore*, 531 U.S. 98 (2000) ................................................................................. 4, 22

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995) ........................................ 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................... 2

*Colony Ins. Co. v. D & S Enterprises of Natchez, Mississippi, L.L.C.*,
    2011 WL 5138640 (S.D. Miss. Oct. 27, 2011) ......................................................... 2

*Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989) ............................................ 11

*Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981)......................................................... 21

*Goodloe v. Madison County Board of Election Commissioners*,
    610 F. Supp. 240 (S. D. Miss. 1985)...................................................................... 18

*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) .............................................................. 21

*Hohn v. United States*, 524 U.S. 236 (1998) .................................................................... 12

*Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir. 1972) ............................................... 4, 20

*In re McDaniel*, No. 1014-M-00967 (Miss. Jul. 17, 2014) .............................................. 22

*Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004)............................................................... 19

*Papasan v. Allain*, 478 U.S. 265 (1986)............................................................................. 1

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012)........... *passim*

*Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012) .................................................. 11

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) ................................... 13

*Upchurch v. City of Moss Point*, 2011 WL 5082224,
   (S.D. Miss. Oct. 26, 2010)........................................................................................... 2

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ............................... 3, 7, 8

*Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985).........................................4, 19, 20, 21, 22

**Constitution, Statutes, and Rules:**

U.S. Constitution, Fourteenth Amendment ..........................................................1, 4, 17-21

2 U.S.C. § 431 .................................................................................................................. 5

Freedom of Information Act, 5 U.S.C. § 552............................................................. 12, 13

28 U.S.C. § 1334 ............................................................................................................. 20

42 U.S.C. § 1973 ............................................................................................................. 19

National Voter Registration Act 42 U.S.C. §§1973gg *et seq.*....................................*passim*

Civil Rights Act of 1960, 42 U.S.C. §§ 1974 *et seq.* ...................................................... 12

Miss. Code Ann. § 23-15-113 .......................................................................................... 8

Miss. Code Ann. § 23-15-165 .......................................................................................... 8

Miss. Code Ann. § 23-15-211 .......................................................................................... 8

Miss. Code Ann. § 23-15-541 ........................................................................................ 16

Fed.R.Civ.P. 12.................................................................................................................. 1

Fed.R.Civ.P. 15.................................................................................................................. 1

Fed.R.Civ.P. 56............................................................................................................... 1, 2

**Other:**

H.R. Rep. 103-9 (1993) ................................................................................. 7

S. Rep. 103-6 (1993) ..................................................................................... 7

H.R. Conf. Rep. 103-66 (1993) .................................................................... 7

## NATURE AND STATUS OF PROCEEDING

Plaintiffs' amended complaint [Dkt. 58] asserts three claims for relief against the Mississippi Republican Party, Secretary of State Delbert Hosemann, and nine county election commissions.  Counts 1 and 2 attempt to allege violations of the National Voter Registration Act ("NVRA"), 42 U.S.C. §§ 1973gg *et seq.*  Count 3 claims that the conduct of the Republican runoff on June 24, 2014, deprived them of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment.  On July 24, 2014, this Court held an evidentiary hearing on the alternative claim for a preliminary injunction contained in ¶ 14 of their motion for temporary restraining order [Dkt. 8].

The Party's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is filed within 14 days after the filing of the amended complaint, as required by Fed.R.Civ.P. 15(a)(3).  Its alternative motion for summary judgment under Fed.R.Civ.P. 56(a) is filed sooner than 30 days after close of all discovery, as required by Fed.R.Civ.P. 56(b).

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

The principal issue presented by the motion is whether any of the three counts of the amended complaint [Dkt. 58] states a claim upon which relief may be granted against the Mississippi Republican Party.  In considering a motion under Rule 12(b)(6), the Southern District of Mississippi has stated:

> In considering a motion to dismiss, the court accepts as true all well-pleaded facts and views them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The plaintiff must plead sufficient facts to state a

> claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937,
> 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
> claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550
> U .S. at 570.)

*Upchurch v. City of Moss Point*, 2011 WL 5082224 (S.D. Miss. Oct. 26, 2011).

Alternatively, assuming that any one of the counts states a claim for relief against the Party, the issue is whether there is any evidence sufficient to create a genuine issue of material fact so as to forestall entry of summary judgment in the Party's favor under Fed.R.Civ.P. 56. "Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law." *Colony Ins. Co. v. D & S Enterprises of Natchez, Mississippi, L.L.C.*, 2011 WL 5138640 (S.D. Miss. Oct. 27, 2011). The rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.*, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## SUMMARY OF THE ARGUMENT

Plaintiffs have neither alleged nor proven the failure of any person to produce documents covered by § 8(i) of the NVRA at any time before the Republican runoff of June 24, 2014. Plaintiffs therefore are not exempt under § 11(b)(3) from the requirement

to give pre-suit notice to the chief State election officer under § 11(b)(1).  This alone is sufficient to require dismissal of their NVRA claims.

The NVRA imposes obligations upon the State, but not upon any political party, which falls within none of the definitional provisions of the statute.  The right of access to documents under § 8(i) "only pertains to records 'maintain[ed]' by the State."  *Voting for America, Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013).  Because the Party is not the State, no documents it may have are subject to production under § 8(i).

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012), required production of voter registration applications under § 8(i), but plaintiffs' counsel, at the hearing of July 24, 2014, did not assert a claim for such materials.  Plaintiffs now seek voter registration lists, poll books, absentee ballot applications, absentee ballot envelopes, and UOCAVA absentee ballot applications.  Tr. 268.  With the exception of the voter list itself, none of these documents constitute "records concerning the implementation of the programs and activities conducted for the purpose of insuring the accuracy and currency of official lists of eligible voters," within the meaning of § 8(i).  The fact that Congress did not provide for the protection of personal information, as it has under other statutes requiring production of documents, indicates that it did not intend that § 8(i) should reach so broadly as to encompass such documents.  Although absentee ballot material could arguably be used as part of a program to update voter registration lists, no such program exists in Mississippi.  The poll books do not constitute a complete list of everyone who has actually voted in a particular precinct, nor do they constitute a complete list of everyone who might be allowed to vote, since many people vote by affidavit ballot.  Once again,

they are not used in Mississippi as part of a program for maintaining accurate voter lists. The claims under the NVRA must therefore be dismissed.

Finally, the alleged participation of ineligible voters in the Republican runoff does not constitute a violation of the Fourteenth Amendment.  Violations of state election laws do not raise an issue subject to federal jurisdiction.  *Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir. 1972).   A federal issue may exist only in cases of "patent and fundamental unfairness" *Welch v. McKenzie*, 765 F.2d 1311, 1316-17 (5th Cir. 1985), which is neither alleged nor proven here.  This case does not fall within the scope of *Bush v. Gore*, 531 U.S. 98 (2000), because no court or officer has ordered "a statewide remedy." *Id.*, at 109.  The claims under the NVRA must therefore be dismissed.

**ARGUMENT**

## I.   NO RELIEF CAN BE GRANTED AGAINST THE PARTY UNDER COUNTS 1 AND 2.

In considering whether the Party has violated § 8(i) of the NVRA, 42 U.S.C. § 1973gg-6(i), the Court must consider the statute as an integrated whole.   Multiple provisions show that Congress never intended the NVRA to provide relief on these facts.

### A.   Because there were no pre-election violations, this suit is not exempt from the NVRA's pre-suit notice requirement, 42 U.S.C. § 1973gg-9(b), and is procedurally barred.

Plaintiffs failed to comply with the NVRA's pre-suit notice requirements, found in § 11(b), 42 U.S.C. § 1973gg-9(b), prior to initiating this action.  Section 11(b) of the NVRA establishes a private right of action for any person who is aggrieved by a violation of the NVRA, conditional upon written notice of the violation to the chief State election official

under § 11(b)(1).  If the violation is not cured within 90 days after receipt of the notice, or within 20 days if the violation occurs within 120 days before the date of a federal election, § 11(b)(2) permits the aggrieved person to bring suit.[1]  *Broyles v. Texas*, 618 F. Supp. 2d 661, 691 (S.D. Tex. 2009), aff'd, 381 F. App'x 370 (5th Cir. 2010) (dismissing private action because plaintiff failed to comply with the temporal and substantive notice requirements of § 11(b)).  If the violation occurred within 30 days *before* the date of an election for federal office, then the aggrieved party is exempt from the notice requirement, under § 11(b)(3).

In their amended complaint [Dkt. 58], plaintiffs do not claim that they provided pre-suit notice as required under the NVRA.  Rather, in ¶ 61 they claim that their suit is exempt from the notice requirement under § 11(b)(3) because the alleged violations occurred 30 days prior to a federal election.  To avail themselves of the notice exemption, plaintiffs need to show that a violation occurred prior to the June 24 runoff.  Here, not only do they fail to show any evidence of a pre-election violation, but virtually all of plaintiffs' allegations and evidence affirmatively show *post*-election conduct, relief from which is subject to the NVRA's notice requirements.

The record is limited with respect to alleged pre-election violations.  Primarily, information regarding these pre-election violations is alleged in ¶¶ 43-44 of the amended complaint.  In ¶ 43, plaintiffs suggest that the Party committed a pre-election violation, but

---

[1] "Election" under the NVRA includes general, special, primary, or runoff elections.  42 U.S.C. § 1973gg–1 (referencing 2 U.S.C. § 431(1)).

Exhibit D-1, admitted at the July 24 hearing, shows that the request for absentee ballot materials was made the day after the election.[2]  In ¶ 44, plaintiffs suggest that Hinds and Rankin Counties also committed pre-election violations.   Plaintiffs have since supplemented these vague allegations with testimony and documents.  Remarkably, none of the incident reports accompanying plaintiffs' bill of particulars [Dkt. 25, Ex. Nos. 1-3] or the post-hearing supplemental filing [Dkt. 49, Ex. Nos. 1-4] allege any pre-election violation.

During the July 24 hearing, the Court heard testimony and arguments regarding the alleged violations giving rise to this case and, in particular, the pre-election violations that plaintiffs claim exempt them from the NVRA's notice requirements.  Catherine Engelbrecht testified that she orally requested records from Panola, Hinds, and Rankin Counties two or three business days prior to the runoff.  Tr. 27:12-21.  With respect to Panola County, she admitted that she did not cite the NVRA in making her records requests, Tr. 33:2-4, and that she actually received the requested records. Tr. 28:24-29:5.  With respect to Hinds County, she again did not cite the NVRA in making her records request, Tr. 96:18-21, and in fact only requested absentee ballots and envelopes.  Tr. 30:5-8.  With respect to Rankin County, she was uncertain about whether she cited the NVRA in making her records request, Tr. 99:25-100:5, and again only requested absentee ballots and envelopes.  Tr. 99:4-16.

---

[2] In any event, the Mississippi Republican Party is not covered by the NVRA, as demonstrated in Part I. B hereafter.

Plaintiffs so far have submitted no case law to suggest that an oral request that does not mention the NVRA is sufficient to create an obligation under § 8(i).  In any event, the requests to the Party and to Hinds and Rankin Counties concerned only absentee ballot materials.  For reasons explained hereafter in Part I.C.3.a, such records area not covered by § 8(i).

On its face, plaintiffs' amended complaint fails to allege a request before the election for any documents within the scope of § 8(i). Because there is no allegation and no evidence of any pre-election violation by anybody, the exemption under § 11(b)(3) does not apply. For these reasons, the suit is procedurally barred.

**B.      The NVRA imposes its obligations upon the State, not the Party.**

The NVRA imposes its obligations upon the State, not upon local officials, and certainly not upon the Party.  The Party is not among any of the entities directly addressed by the statute.  The NVRA  specifically defines the relevant election officials covered by its provisions.  The Party is not a "State" under 42 U.S.C. § 1973gg-1(4), nor a "voter registration agency" under 42 U.S.C. § 1973gg-1(5), or a "chief State election official" under 42 U.S.C. § 1973gg-8.  Likewise, it is not charged with conducting any list maintenance program under § 8.  Neither the text of the NVRA nor the congressional reports related thereto suggest that political parties are covered by, or otherwise responsible for complying with, the NVRA. *See* H.R. Rep. 103-9 (1993); S. Rep. 103-6 (1993); H.R. Conf. Rep. 103-66 (1993).

Construing § 8(i), the Fifth Circuit has held that "the NVRA only pertains to records 'maintain[ed]' by the State." *Voting for America, Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir.

2013).  The Court therefore upheld a Texas law forbidding volunteer deputy registrars from copying registration applications in their possession before placing them into "the government's long-term possession."  *Id.*  The Court reasoned that permitting copies to be made by others "places at risk the private information, *e.g.*, social security numbers, they contain."  *Id.*, at 400.

Persons seeking covered records in Mississippi may get them under the NVRA just as they do in Texas.  All registration applications "shall be stored in an electronic format in the Statewide Election Management System."  Miss. Code Ann. § 23-15-113 (Rev. 2007).  SEMS is maintained by the Secretary of State under Miss. Code Ann. § 23-15-165 (Rev. 2007).  If registration applications are covered by § 8(i), as held by *Project Vote/Voting for America, Inc.  v. Long*, 682 F.3d 331 (4th Cir. 2012), then interested parties can obtain them from Secretary Hosemann.

The holding in *Steen* is fully consistent with the unequivocal requirement of § 11(b)(1) that notice of a violation be given to the chief election official of the State, who, for purposes of the NVRA, is Secretary Hosemann.  Miss. Code Ann. § 23-15-211.1 (Rev. 2007).  Where, as in Mississippi, the chief election official maintains the files covered by § 8(i), giving him notice is likely to resolve the dispute. Giving notice to Secretary Hosemann makes much less sense when he can do nothing but make a phone call to local officials.   The Fifth Circuit's declaration that § 8(i) applies to documents "in the government's long-term possession," 732 F.3d at 399, then, dovetails perfectly with the requirement of § 8(i) that the State maintain the documents and the requirement of § 11(b)(1) that notice be given to the chief election official.

**C.     The records sought by plaintiffs are not covered by the NVRA's public disclosure requirement.**

The NVRA does not cover the expansive universe of records sought by plaintiffs. Plaintiffs claim that the following records are subject to the public disclosure requirement in § 8(i): voter registration lists, poll books, absentee ballot applications and envelopes, all voter registration applications, and UOCAVA absentee applications.[3]  Section 8(i) provides for the public disclosure only of records related to the *implementation* of certain *programs* and *activities* described in § 8(b).[4]

Throughout the course of proceedings, plaintiffs have contended they need the demanded records to investigate claims of illegal or improper voting.  Paragraph 5 of the amended complaint says, "The purpose of its request was to investigate claims that voters illegally double-voted in both the democratic and republican primary races or cast improper absentee ballots."  According to their interpretation, this Court should extend the universe of records covered under the text of § 8(i) to include records necessary for facilitating an election contest.  Section 8(i) does not cover these records.  Reading § 8(i) as broadly as plaintiffs advocate would significantly alter the administration of elections and election records.  It would limit the ability of state and local election

---

[3] The Party explained at pages 4-5 of its motion for sanctions [Dkt 67] that Mississippi statutes create no role for the Party with regard to any of the requested documents. Plaintiffs rested on July 24 without introducing any evidence that the Party ever had possession of any of the documents.  This alone is sufficient to require entry of summary judgment in the Party's favor on Counts 1 and 2.

[4] The universe of records that plaintiffs seek remains unclear.  At the conclusion of the July 24 hearing, plaintiffs purportedly listed the five categories of records at issue:  voter registration list, poll books, absentee applications and envelopes, and UOCAVA absentee applications.  Tr. 268:6-10.  However, the amended complaint filed subsequently includes in ¶ 79 those five categories, as well as all non-UOCAVA voter registration applications.  The Party assumes that plaintiffs' omission of voter registration applications was intentional and that such documents are not presently sought.

9

officials to protect voter privacy and oversee their other election responsibilities.  Moreover, such a broad application of § 8(i) goes well beyond the statutory text and the Fourth Circuit's expanded interpretation in *Long*.

> **1.    The text of § 8(i) provides for a much narrower universe of records than that claimed by plaintiffs.**

Section 8(i) provides for public access to "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  The text of § 8(i) provides that only records concerning the *implementation* of certain *programs* and *activities* are covered. The specific programs and activities for which records are covered are those "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." This is a much narrower universe of covered records than that claimed by plaintiffs.

Plaintiffs rely on *Long* to support their expansive view of covered records.  The Fourth Circuit in *Long* concluded that § 8(i) "concerns voter registration, not simply voter removal," construing § 8(i) to cover records related to getting voters *on* the rolls as well as *off* the rolls.  682 F.3d at 337.  The Party does not here challenge the reasonableness of the Fourth Circuit's statutory interpretation that the text could be interpreted to cover voter registration applications, because plaintiffs' counsel indicated on July 24 that they no longer want those applications.  However, the reasoning of *Long* failed to reconcile its interpretation of § 8(i) with § 8's other provisions or with other federal disclosure laws.  In determining what records are covered by § 8(i), this Court should read the words of the statute in their context and with a view to their place in the overall statutory scheme.

*Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 (2012) (citing *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

The Court should consider the text of § 8 in its entirety when ascertaining what records are covered under § 8(i).  The text of § 8(i) parallels the NVRA's limitation on optional list maintenance programs set forth in § 8(b), which begins:  "Confirmation of voter registration— Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office…."  When interpreting § 8(i), the Court should look directly to the programs and activities contemplated under § 8(b).  Responsive records under this view of § 8(i) would include voter registration lists, registration summary data and statistics, voter registration deletions, list maintenance outreach and training materials, notices sent under § 8(d)(2), internal operating procedures, certain non-privileged communications between the Secretary of State and local election officials, death notices and the handling thereof, inactive voter lists, SEMS training manual, related internal policies, practices, and procedures, and documented voter complaints.  All these documents relate, not just to registration, but to programs for ensuring the accuracy of "official lists of eligible voters."

According to plaintiffs, records concerning the implementation of such programs and activities include poll books, absentee applications and envelopes, and UOCAVA absentee applications.  It is unclear how these documents relate to accuracy programs or what, if any, election or voting-related records would not be subject to plaintiffs' interpretation of § 8(i).  Indeed, plaintiffs seek for this Court to ignore all the qualifying language that expressly limits § 8(i)'s coverage.  Plaintiffs seek to expand the NVRA's

11

public disclosure requirements to be broader than the law enforcement disclosures granted to the Attorney General for the enforcement of civil rights laws under the Civil Rights Act of 1960 ("CRA of 1960"), 42 U.S.C. §§ 1974 *et seq.*, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

> **2.      Public disclosure under the NVRA does not provide private parties with greater access and fewer restrictions to records than that provided under the Civil Rights Act of 1960 and FOIA.**

In evaluating the NVRA's public disclosure requirement the Court should compare it to the law enforcement disclosure requirements provided to the Attorney General under the Civil Rights Act of 1960.  42 U.S.C. §§ 1974-1974c.  Unlike the text of the NVRA, the text of the CRA of 1960 provides an unquestionably broad disclosure requirement to the United States and explicitly covers "all records and papers … relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."  42 U.S.C. § 1974. Plaintiffs seek for the Court to create an equally broad right to disclosure here.  If the Court adopts plaintiffs' interpretation of § 8(i), then there will be no significant difference between the disclosure requirements under the NVRA and the CRA of 1960, except that the Attorney General will be forbidden by 42 U.S.C. §§ 1974c from disclosing such records while plaintiffs would be free to disseminate them at will.  Effectively, this would leave the law enforcement disclosure provisions of § 1974 superfluous.  *See Hohn v. United States*, 524 U.S. 236, 249 (1998) (providing that the Court is reluctant to adopt a construction making another statutory provision superfluous).

Plaintiffs' interpretation of § 8(i) would grant unrestricted, unlimited access to personal information which many voters reasonably consider private.  Notably, FOIA's

public disclosure provisions provide broad exemptions for personal information. 5 U.S.C.§ 552(b) (listing personal privacy protections exemptions to FOIA). Save for Social Security numbers, plaintiffs acknowledge no such exemption here. When faced with protecting personal information in public disclosures, both Congress and the courts commonly protect personal privacy. *See U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601 (1982) (finding that nonintimate personal information is considered personal under FOIA exemptions).

Unlike other federal statutes, the NVRA is silent with respect to restrictions on access to personal information and other privacy protections commonly found under federal law. There is a simple answer regarding Congress's silence and the lack of restrictions and privacy protections provided in § 8(i): Congress never intended for the public disclosure requirement to cover the breadth of information and records it is now alleged to cover. Considering the disclosure provisions in the CRA of 1960 and the exemptions for personal information provided under the FOIA, it is reasonable to conclude that Congress would have incorporated privacy protections had it intended that § 8(i) would be used to demand access to such a broad universe of records and personal information on voters.

Because plaintiffs do not presently seek voter registration applications, this Court need not address the propriety of the actual holding in *Long*. In light of the evidence that

Congress anticipated a narrow scope for § 8(i), this Court should not extend the *Long* holding to cover the documents presently requested.[5]

### 3.    Other records the plaintiffs presently seek are not covered under § 8(i).

#### a.    Absentee records are not covered by § 8(i).

Plaintiffs demand access to absentee applications and envelopes, including those related to UOCAVA (overseas) voters.  None of these absentee-related records are covered by the text of § 8(i).  Plaintiffs offer no precedent to support their contention that such records are subject to public disclosure and seek for this Court to extend § 8(i)'s coverage beyond *Long* or anything previously held by any court.  Seemingly, the only basis for claiming absentee-related records are covered is a short memo prepared by plaintiffs' counsel and admitted on July 24 as Exhibit P-12.

In that memo, plaintiffs' counsel erroneously contends that absentee ballot applications are subject to § 8(i) because Mississippi election officials could use the address information contained on such records to update voter registration lists.  The NVRA does not require, or even mention, updating voter registration information based on absentee

---

[5] The breadth of the information sought by plaintiffs here is exponentially larger than that at issue in *Long*.  The Fourth Circuit in *Long* was dealing with a significantly smaller universe of materials.  There, the only records at issue were voter registration applications for a period of several months in one county.  Here, plaintiffs employ § 8(i) to demand all primary records from several counties related to three statewide federal primaries (i.e., Republican and Democratic primaries and the Republican runoff). The Fourth Circuit might have been more circumspect in its ruling, or possibly ruled differently, had it been faced with the breadth of information demanded here.  Additionally, the plaintiffs in *Long* were seeking to audit the processing of voter registration applications to determine possible discrimination, something that is an explicit concern of the NVRA.  42 U.S.C. § 1973gg-9(d).  Rather than seeking to audit registration rejections, here plaintiffs admittedly seek to audit voter participation and facilitate an election challenge, something that has never been found to be covered by the NVRA's text.

applications.  There is no evidence that Mississippi has any *program*, the key word in §

8(i), to do that.  Should a State so desire, such information could provide a valid, race-

neutral trigger under § 8(b)(2) for targeting voters with confirmation notices under §

8(d)(2), which start the process to remove a voter from the list of eligible voters.  Certainly,

federal law does not preclude States from requiring registrars to update voter registration

based on information contained in absentee applications, but Mississippi has not done so.

Notably, the pre-election violations on which plaintiffs rely to exempt this suit from

the NVRA's pre-suit notice requirement are based on the alleged failures of Hinds and

Rankin Counties to produce absentee applications and envelopes shortly before the primary

runoff.  Assuming that the events occurred as Mrs. Engelbrecht testified, those events do

not constitute a pre-election violation.

Remarkably, plaintiffs contend that § 8(i) provides private parties the right to

demand access and copies of absentee-related records even while those records are sealed

prior to the election.  In Mississippi, absentee applications, envelopes, and ballots are

sealed and not opened until election night after the polls have closed.  Tr. 131:15-22;

130:20-25; 134:2-13.  There is no reason to believe that federal law would allow such an

invasion, unencumbered by judicial oversight or restrictions common to law enforcement

agencies, by the general public into the election administration process during the middle

of the actual election.

The absentee-related records requested by plaintiffs are not covered by § 8(i) of the

NVRA.  Accordingly, neither Hinds and Rankin Counties nor any other defendant violated

any provision of the NVRA in that regard.

**b.       Poll books and other derivative documents are not covered.**

Unlike the list of eligible voters, poll books are not covered by § 8(i)'s public disclosure requirement.[6]  Plaintiffs claim that poll books are covered by the plain text of § 8(i) and *Long*.  They argue that poll books are the "most accurate" way to confirm whether a voter participated in a federal election following an § 8(d)(2) notice [Dkt. 42 at 3].  There is no precedent on point addressing whether poll books are covered by § 8(i).  Section 8(i) relates to "official lists of eligible voters," such as the voter registration list.  Here, however, plaintiffs argue that § 8(i) covers derivative records created from the voter registration list.  Plaintiffs stress that they need the poll books to ascertain who participated on election day.[7]  The Court heard extensive testimony from Assistant Secretary Turner regarding Mississippi's election practices and law, including about poll books and voter registration list or rolls. Tr. 102-164.

In considering this argument and seemingly disparate coverage of poll books and voter registration lists under § 8(i), it is important consider how each record relates to the other and the different purpose each has in the administration of elections.  The voter registration list is a dynamic document that changes regularly based on transactions generally initiated by local election officials adding and removing voters to the SEMS system.  This list is maintained for keeping records of registered voters. On the other hand,

---

[6]  For this analysis, the "official lists of eligible voters" referenced in § 8(i) is the same record as the "voter registration list" or "voter roll."

[7]  The poll books, of course, do not contain those who vote by affidavit. The signatures of everyone who actually voted in person are in the receipt book described in Miss. Code Ann § 23-15-541 (Rev. 2007).

poll books are static printouts consisting of subsets of registered voters taken from the voter registration list.  Commonly, this subset of registered voters is limited based on date registration deadline for a particular election and geographic boundaries of the precinct. The purpose of a poll book is to ascertain who is eligible to vote at a particular precinct in a particular election.  Tr. 106:17-20.

Originally, § 8(i) provided public disclosure of certain records to allow outside parties to audit list maintenance practices to ensure that eligible voters were not being improperly removed from the list of eligible voters.  Following *Long*, the records subject to public disclosure in the Fourth Circuit were extended to cover records related to adding voters to the list of eligible voters.  While *Long* is a plausible interpretation of the statutory text, there is no basis now to further expand the universe of covered records to include records related to whether eligible voter registrants participated in an election.   In Mississippi, poll books are not used as part of a program for maintaining accurate voter rolls.  Tr. 117:24.  Therefore, they fall outside § 8(i),

## II.    PLAINTIFFS' RIGHTS UNDER THE FOURTEENTH AMENDMENT WERE NOT VIOLATED BY THE CONDUCT OF THE RUNOFF.

Count 3 of the amended complaint, alleging violations of plaintiffs' rights under the Fourteenth Amendment, is so peculiar that it is hard to know where to begin.  At no point do plaintiffs allege that the Party, Secretary Hosemann, or any of the defendant election commissions did anything wrong. Plaintiffs do not allege that any defendant owes them a duty to redress any injury they may have suffered.  Indeed, their prayer for relief asks for no remedy.  Judge Mills observed with regard to their original complaint that "the actual

relief sought in the complaint relates solely to the release of unredacted voter records, …
rather than for any vote dilution claims." July 7 Order at 2.**8** Since then, plaintiffs have
filed two more complaints, but they still seek no remedy for their supposed vote dilution
claim.

On the face of the amended complaint, then, it should be safe to say that, whatever
injury these plaintiffs may have suffered, they can secure no relief from these defendants
on this complaint. However, given their repeated expressions of bewilderment concerning
how Mississippi elections actually work, it may be prudent to address the merits of the
constitutional claim that they attempt to assert. Giving the most liberal possible reading to
the allegations of the amended complaint, plaintiffs have not suffered a constitutional
violation which this Court may redress.

The constitutional claim seems to have three parts. The first strand is found in ¶ 89:

> Individual Plaintiffs who have reviewed Mississippi's voter records in
> connection with the Republican Primary Run-Off, have perceived
> inaccuracies in the records causing them to believe that their lawful vote was
> diluted by an unlawful, double vote.

The term "double vote" is explained in ¶ 92: "Voters who cast ballots in the Democrat
Primary Election are prohibited by law from subsequently casting ballots in the opposite
party's primary run-off election." They continue in ¶ 93, "Plaintiffs further allege that any
absentee ballots improperly cast and counted toward the election results of the 2014
Republican Primary Run-Off dilute their lawful votes." Finally, they complain in ¶ 94 of

---

**8** A copy of Judge Mills's order of July 7, 2014, is attached as Exhibit 4 to the response of
the Mississippi Republican Party to motion for temporary restraining order [Dkt. 12].

supposed difficulties in identifying unlawful votes: "Differing treatment among counties with regard to such records results in unequal protection of voter's rights under the law to ascertain and investigate whether the state has employed proper voting practices and properly documented in recorded votes."

Plaintiffs do not appear to allege that the supposedly unlawful votes themselves violate their rights under the Fourteenth Amendment. That reluctance is wise. Judge Mills explained, before they ever filed their complaint in this case, that the Constitution does not preclude members of one party from participating in another party's primary:

> The plaintiffs in *Osburn* [*v. Cox*, 369 F.3d 1283 (11th Cir. 2004),] alleged that the crossover voting of the Republicans diluted the voting strength of African-American voters and resulted in the defeat of their preferred candidate. *Osburn*, 369 F.3d at 1286. The Eleventh Circuit in *Osburn* upheld the dismissal of plaintiffs' claims, writing that "the case law weighs against an individual's right to assert such a claim and is buttressed by the fact that the relief that plaintiffs seek, i.e., to limit the voters who could participate in a Democratic primary to those who plaintiffs consider to be open 'Democratic voters,' would likely be held unconstitutional if challenged by the state political party." *Osburn*, 369 F.3d at 1287.

July 7 Order at 4.[9] Likewise, in the absence of racial discrimination, the miscounting of absentee ballots is not actionable in federal court. *Welch v. McKenzie*, 765 F.2d 1311, 1316-17 (5th Cir. 1985).[10] Plaintiffs' argument seems to be that the counting of ballots

---

[9] The language quoted by Judge Mills related to a claim brought under the First Amendment. However, the Eleventh Circuit also rejected claims under the Fourteenth and Fifteenth Amendments, holding that "[t]he claim does not identify the violation of any fundamental right in relation to voting." 369 F.3d at 1288.

[10] A disparate racial impact in rejecting absentee ballots may violate § 2 of the Voting Rights Act, 42 U.S.C. § 1973, *Goodloe v. Madison County Board of Election Commissioners*, 610 F.Supp. 240 (S.D. Miss. 1985), but plaintiffs do not claim racial discrimination and do not rely on the Voting Rights Act.

which are illegal under Mississippi law violates their federal rights under the Fourteenth Amendment. Except in extreme circumstances, not alleged here, that argument is wrong.[11]

Over forty years ago, the Fifth Circuit determined that only 28 U.S.C. § 1334 grants a federal court jurisdiction "to hear and decide the issue of who has received the majority of the votes legally cast." *Hubbard v. Ammerman*, 465 F.2d 1169, 1180 (5th Cir. 1972). The Court refused to recognize jurisdiction over a Texas judgeship election because § 1334 is limited to cases alleging racial discrimination:

> The contest had then turned altogether toward state issues, that is, what to do about the counting the votes of those who had voted outside the precinct of their residence, a violation of state law.

*Id.* The Court concluded "that the District Court was clearly without jurisdiction to entertain this election contest." *Id.*

Later, in *Welch v. McKenzie*, the Court rejected a claim of a violation of the Equal Protection Clause in a Mississippi county election:

> On the facts as found by the district court, then, we are left with a case of election fraud that favored a white candidate over a black one. … Otherwise stated, stolen elections in which the losing candidate was black are, while decidedly suspicious, not necessarily violations of the Voting Rights Act or the Constitution. There is a place for state election laws to operate.

---

[11] Because their federal argument is wrong, this Court need not determine whether their arguments of Mississippi law are correct. Plaintiffs have not identified any controlling authority to support their argument that persons who voted in the first Democratic primary cannot vote in the Republican runoff. As for absentee ballots, Catherine Engelbrecht testified that she did not know of any votes that had been challenged at the polls or of any person who had been denied an opportunity to challenge absentee ballots at the polls. Tr. 80-81. Indeed, nothing in the complaint alleges that any absentee ballots were improperly cast.

765 F.2d at 1316-17.  The Court also explained that only in extreme circumstances would a violation of the Due Process Clause of the Fourteenth Amendment be found:

> If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under [42 U.S.C.] § 1983 may be in order.  Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots ….

*Id.*, at 1317, quoting *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. 1981), quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978).  By contrast, allegations of ordinary misapplication of state law "are not actionable in federal court because of our federal system's recognition that states are primarily responsible for regulating their own elections."  765 F.2d at 1317.  Accord, *Broyles*, 618 F. Supp. 2d at 693-94 (collecting cases).

Here, plaintiffs do not even allege any actual violations of Mississippi law, much less "patent and fundamental unfairness."  At most, they allege that mistakes may have been made with regard to absentee ballots and so-called double voting.  It is possible, of course, that massive discovery might uncover some mistakes, even though plaintiffs have alleged none.  However, given the extensive efforts made by these multiple plaintiffs to investigate the facts in the days after the June 24 runoff, it is impossible to imagine that they will uncover any "patent and fundamental unfairness" so as to meet the standard set by the Fifth Circuit in *Welch*.[12]

---

[12]  The Fifth Circuit election cases are consistent with the usual rule that "isolated violations," not amounting to a policy, are not actionable.  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

Because plaintiffs have not alleged election misconduct sufficient to satisfy the *Welch* standard, it makes no difference that allegedly differing county standards may make it difficult for them to prove their legally insufficient allegations.  In any event, any inconsistencies in access to county records have worked to their benefit.  We now know that Mississippi law does not entitle them to unredacted voting records at no cost.  *In re McDaniel*, No. 2014-M-00967 (Miss. Jul. 17, 2014).  Those Circuit Clerks who refused to provide unredacted records were properly following Mississippi law.  Any Circuit Clerks who nevertheless provided unredacted documents certainly did not injure these plaintiffs.  In any event, that inconsistency has now been remedied by the Supreme Court's order in *In re McDaniel*.

Only a brief word need be said concerning their reliance, in ¶ 56 of the amended complaint, on *Bush v. Gore*, 531 U.S. 98 (2000).  *Bush* did not create a constitutional right to uniform election procedures uniformly applied throughout any State.  The Court explained the narrow question before it for decision:

> The question before the Court is not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections.  Instead, we are presented with a situation where a state court with the power to assure uniformity has ordered statewide recount with minimal procedural safeguards.  When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied.

*Id.*, at 109.  Here, no Court has purported to order "a statewide remedy," and certainly no defendant has done so.  That the various counties may have employed "different systems for implementing elections" does not violate *Bush* and does not violate any constitutional right of these plaintiffs.

For these reasons, the allegations that plaintiffs have attempted to make in Count 3 of their amended complaint do not state any claim for any remedy against anybody.

## CONCLUSION

All claims of the amended complaint should be dismissed for failure to state a claim against the Party upon which the relief can be granted.  Alternatively, summary judgment should be entered on all counts in favor of the Party.

Respectfully submitted this the 6th day of August, 2014.

MISSISSIPPI REPUBLICAN PARTY

By:     *s/Michael B. Wallace*
        Michael B. Wallace (MSB No. 6904)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi 39202-0651
        Telephone: 601.968.5500
        mbw@wisecarter.com

        T. Russell Nobile (MSB No. 100682)
        WISE CARTER CHILD & CARAWAY, P.A.
        1105 30th Avenue, Suite 300
        Gulfport, Mississippi 39501
        Telephone: 228.867.7141
        trn@wisecarter.com

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Joseph M. Nixon
Kelly Hunsaker Leonard
Kristen W. McDonald
Lloyd Eades Hogue
BEIRNE, MAYNORD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas  77056
jnixon@bmpllp.com
kleonard@bmpllp.com
kmcdonald@bmpllp.com
ehogue@bmpllp.com

James Edwin Trainor
BEIRNE, MAYNORD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas  78701
ttrainor@bmpllp.com

*Counsel for Plaintiffs*

Robert E. Sanders
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 23059
Jackson, Mississippi  39225-3059
rsanders@youngwells.com

John Wesley Daughdrill, Jr.
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 6005
Ridgeland, Mississippi  39157
wes.daughdrill@youngwells.com

*Counsel for Jefferson Davis County,
Mississippi Election Commission*

Harold Edward Pizzetta, III
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi  39205-0220
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for The Hon. Delbert
Hosemann*

Elise Berry Munn
BERRY & MUNN, P.A.
Post Office Drawer 768
Hazlehurst, Mississippi  39083
emunn@berrymunnpa.com

*Counsel for Copiah County, Mississippi
Election Commission*

Pieter Teeuwissen
PIETER TEEUWISSEN, PLLC
Post Office Box 16787
Jackson, Mississippi  39236
adwoodard@bellsouth.net

*Counsel for Hinds County,
Mississippi Election Commission*

Jeffrey T. Webb
WEBB LAW FIRM, PLLC
Post Office Box 452
Carthage, Mississippi  39051
webblaw@bellsouth.net

*Counsel for Leake County, Mississippi
Election Commission*

24

Lee Thaggard
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, Mississippi  39302-2009
thaggard@barrpalmerlaw.com

    *Counsel for Lauderdale County,*
    *Mississippi Election Commission*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi  39042
cslay@rankincounty.org

    *Counsel for Rankin County, Mississippi*
    *Election Commission*

Mike Espy
MIKE ESPY, PLLC
317 East Capitol Street, Suite 101
Jackson, Mississippi  39201
mike@mikespy.com

    *Counsel for Madison County,*
    *Mississippi Election Commission*

This the 6th day of August, 2014.

    *s/Michael B. Wallace*
    Michael B. Wallace