**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**TRUE THE VOTE, et al.** **PLAINTIFFS**

**v.** **Civil Action No.: 3:14-cv-00532-NFA**

**THE HONORABLE DELBERT HOSEMANN,**
**in his official capacity as Secretary of State for**
**the State of Mississippi, et al.** **DEFENDANTS**

---

**BRIEF OF THE MISSISSIPPI REPUBLICAN PARTY**
**IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

---

Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141

*Counsel for the Mississippi Republican Party*

**TABLE OF CONTENTS**


NATURE AND STAGE OF PROCEEDINGS ..... 1

STATEMENT OF ISSUE AND STANDARD OF REVIEW ..... 1

SUMMARY OF THE ARGUMENT ..... 2

ARGUMENT ..... 3

I. BECAUSE MISSISSIPPI PRIMARIES, LIKE GENERAL ELECTIONS, ARE CONDUCTED AT THE COUNTY LEVEL, NO STATEWIDE RELIEF CAN BE ORDERED AGAINST THE MISSISSIPPI REPUBLICAN PARTY. ..... 3

II. PLAINTIFFS HAVE PROVEN NO IRREPARABLE INJURY. ..... 9

III. THE INTERESTS OF THE PARTIES AND THE PUBLIC PRECLUDE PRELIMINARY RELIEF. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases:**

*Barbour v. Gunn*, 890 So. 2d 843 (Miss. 2004) .......... 8

*Canal Auth. v. Callaway*, 489 F.2d 567 (5th Cir. 1974) .......... 2, 12

*Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246 (5th Cir. 1994) .......... 2

*Fisher v. Crowe*, 303 So. 2d 474 (Miss. 1974) .......... 10

*Jones v. Election Commissioners*, 187 Miss. 636, 193 So. 3d (1940) .......... 3, 10

*Kellum v. Johnson*, 237 Miss. 580, 115 So. 2d 147 (1959) .......... 11

*Ladner v. Necaise*, 771 So. 2d 353 (Miss. 2000) .......... 10

*In re McDaniel*, No. 2014-M-00967 (Miss. Jul. 17, 2014) .......... 12

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985) .......... 2

*Misso v. Oliver*, 666 So. 2d 1266 (Miss. 1996) .......... 5

*United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008) .......... 2, 8

*In re Wilbourn*, 590 So. 2d 1381 (Miss. 1991) .......... 10

**Statutes:**

National Voter Registration Act, 42 U.S.C. §§1973gg *et seq.* .......... *passim*

Miss. Code Ann. § 23-15-135 (Supp. 2013) .......... 6

Miss. Code Ann. § 23-15-211.1 (Rev. 2007) .......... 8

Miss. Code Ann. § 23-15-263 (Rev. 2007) .......... 5

Miss. Code Ann. § 23-15-265 (Rev. 2007) .......... 5

Miss. Code Ann. § 23-15-543 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-573 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-579 (Rev. 2007) ........................................ 5

Miss. Code Ann. § 23-15-591 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-597 (Supp. 2013) ........................................ 6, 7

Miss. Code Ann. § 23-15-623 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-637 (Supp. 2013) ........................................ 6

Miss. Code Ann. § 23-15-639 (Supp. 2013) ........................................ 5

Miss. Code Ann. § 23-15-641 (Rev. 2007) ........................................ 5

Miss. Code Ann. § 23-15-645 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-911 (Rev. 2007) ........................................ 6

Miss. Code Ann. § 23-15-923 (Rev. 2007) ........................................ 7, 10

Miss. Code Ann. § 23-15-951 (Rev. 2007) ........................................ 10

Miss. Code Ann. § 23-15-1053 (Rev. 2007) ........................................ 4

Miss. Code Ann. § 23-15-1054 (Supp. 2013) ........................................ 5

Miss. Code Ann. § 3107 (1942) ........................................ 4

Miss. Code § 6258 (1930) ........................................ 10

## NATURE AND STAGE OF THE PROCEEDING

The amended complaint [Dkt. 58] in this action names 22 individual Mississippi voters as plaintiffs, along with a Texas non-profit corporation called True the Vote. On the same day that they filed the complaint, plaintiffs sought a temporary restraining order [Dkt. 8] against Secretary of State Delbert Hosemann, the Mississippi Republican Party, and the election commissions of nine Mississippi counties, seeking to compel access to unredacted documents under the National Voter Registration Act ("NVRA"), 42 U.S.C. §§ 1973gg *et seq.* In ¶ 14 of the motion plaintiffs sought a preliminary injunction in the alternative. On July 24, 2014, this Court held a hearing to receive evidence on that aspect of plaintiffs' motion. In this brief, the Party explains why that evidence and the controlling law require the denial of a preliminary injunction.

## STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

The issue is whether plaintiffs have proven their entitlement to a preliminary injunction mandating that defendants provide them with unredacted copies of voter registration lists, poll books, absentee ballot applications, absentee ballot envelopes, and UOCAVA absentee ballot applications. Tr. 268.

The United States Court of Appeals for the Fifth Circuit long ago explained the four-part showing that a plaintiff must make to secure a preliminary injunction:

> The four prerequisites are as follows: (1) a substantial likelihood that plaintiffs will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiffs outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Plaintiffs must carry the burden on all four points:

> A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites. The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.

*Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994), quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**SUMMARY OF THE ARGUMENT**

An injunction against the Mississippi Republican Party could provide no relief to plaintiffs because the State Executive Committee has no authority to control the conduct of county executive committees with regard to primary elections. Each county committee is locally elected and is charged by statute with organizing primaries in their particular county. The county committee appoints the managers for each precinct, and those managers and clerks rule on any challenges to voters or to absentee ballots; the county committee has no authority to overrule those decisions. The mangers use certain election materials during the day and seal them in the ballot box to be returned to the courthouse. The county committee inspects the contents of each box in the process of canvassing the results. The boxes are then resealed and delivered to the Circuit Clerk, who maintains possession of all election documents. Such local autonomy is fully consistent with the NRA. Even the chief State election official acquires no authority to enforce the NVRA against local officials. *United States v. Missouri*, 535 F.3d 844, 851 (8th Cir. 2008).

Plaintiffs have suffered no irreparable injury. If plaintiffs are actually entitled to documents under § 8(i) of the NVRA, 42 U.S.C. § 1973gg-6, this Court can provide a full remedy by ordering production in its final judgment. It is already too late for plaintiffs to forestall certification of the primary results. They have no right to institute an election contest under Mississippi law. *Jones v. Election Commissioners*, 187 Miss. 636, 193 So. 3d (1940). If plaintiffs, in fact, have a federal claim, as pled in Count 3, this Court can grant them full discovery while protecting the privacy of individual voters.

The interests of the litigants and the public militate against a preliminary injunction. Regardless of the scope of the NVRA, plaintiffs are entitled to the requested documents under Mississippi law, except for birthdates. Their immediate need for birthdates appears to be quite limited, and this Court can furnish them at the end of the case if the NVRA so requires. If the Court orders production of that information now, and later concludes that the NVRA does not require it, hundreds of thousands of voters will be irreparably injured in violation of Mississippi law for no good reason.

## ARGUMENT

### I. BECAUSE MISSISSIPPI PRIMARIES, LIKE GENERAL ELECTIONS, ARE CONDUCTED AT THE COUNTY LEVEL, NO STATEWIDE RELIEF CAN BE ORDERED AGAINST THE MISSISSIPPI REPUBLICAN PARTY.

The Party has filed a separate motion to dismiss or, in the alternative, for summary judgment [Dkt. 87]. The brief [Dkt 88] in support of that motion fully explains why plaintiffs have no likelihood of success on any of the three counts of their amended complaint.

Even if plaintiffs were somehow able to establish that someone somewhere in the State of Mississippi had violated some provision of the NVRA, no relief would be appropriate against the Party. Although plaintiffs suggest that local officials somehow act as agents of State officials [Dkt. 44 at 3-5], an examination of Mississippi election law clearly shows that the Party has no authority to direct the conduct of primary elections at the local level.

This Court will recall the testimony by Assistant Secretary Turner concerning the election process in Mississippi: "We're a bottom-up state." Tr. 103. An examination of Mississippi statutes will show that characterization to be as true of the primary process as it is of general elections. Just as Secretary Hosemann and the other members of the State Board of Election Commissioners have no direct control over locally elected county election commissions, the Mississippi State Executive Committee has no direct control over locally elected county executive committees.

The current statute governing county committees simply says, "The state executive committee of the political party shall establish … procedures to be followed in the selection of county executive committees and the state executive committees." Miss. Code Ann. § 23-15-1053 (Rev. 2007). Historically, county executive committees have been elected at the county conventions held every four years. Each county convention elected three members from each supervisor's district and could elect three additional members at large. Miss. Code. § 3107 (1942). Although the Legislature has since authorized each party to change the process, Republican county executive committees are still elected at the county convention. The call for the state convention issued each four years by the State Executive

Committee requires each county to present "[t]he names and mailing addresses of every person elected by said County Convention as a member of the County Executive Committee."[1]

The county committees, not the State Executive Committee, have the responsibility for organizing party primaries in each county:

> Unless otherwise provided in this chapter, the county executive committee at primary elections shall perform all duties that relate to the qualification of candidates for primary elections, print ballots for primary elections, appoint the primary election officers, resolve contests in regard to primary elections, and perform all other duties required by law to be performed by the county executive committee ….

Miss. Code Ann. § 23-15-263(1) (Rev. 2007). In particular, the committee "appoint[s] the managers and clerks" for each precinct. Miss. Code Ann. § 23-15-265(1) (Rev. 2007).

The managers and clerks, not the county committees, have the sole power to determine the qualifications of persons seeking to vote. When a voter is challenged, the managers have the authority to accept or reject the ballot. Miss. Code Ann. § 23-15-579 (Rev. 2007). Similarly, the managers resolve challenges to absentee ballots after the polls have closed. Miss. Code Ann. § 23-15-639 (Supp. 2013) and § 23-15-641 (Rev. 2007). The Supreme Court has held that the election commission cannot overrule the decisions of precinct managers in a general election. *Misso v. Oliver*, 666 So. 2d 1366 (Miss. 1996). Although the issue has not yet been adjudicated, there is no reason to suspect that the Supreme Court would grant any greater authority to county executive committees.

---

[1] A copy of the 2012 call is attached hereto as Exhibit 1. If, for any reason, a county has no executive committee, a mass meeting can be called to elect one. Miss. Code Ann. § 23-15-1054 (Supp. 2013).

The statutes provide that the managers have possession of necessary documents during the course of election day. Each precinct keeps a receipt book, in which each voter signs his name, which is sealed in the ballot box at the close of the election. Miss. Code Ann. § 23-15-543 (Rev. 2007). The Circuit Clerk places all absentee ballots in the appropriate ballot boxes for each precinct, Miss. Code Ann. § 23-15-637 (Supp. 2013), and, after counting them, the managers return all absentee materials to the registrar. Miss. Code Ann. § 23-15-645 (Rev. 2007).[2] A person whose name does not appear in the pollbook may vote by affidavit ballot, Miss. Code Ann. § 23-15-573(1) (Rev. 2007), and those ballots, like all other ballots, are sealed in the ballot box and returned to the Circuit Clerk. Miss. Code Ann. § 23-15-591 (Rev. 2007). The pollbooks are not listed in the materials to be sealed in the ballot box, Miss. Code Ann. § 23-15-911(1) (Rev. 2007), but they must nevertheless be returned to the Circuit Clerk and preserved among his records. Miss. Code Ann. § 23-15-135(1) (Supp. 2013).

The contents of each ballot box are reviewed by the county executive committees under § 23-15-911(1), and the committees canvass the results by tabulating the vote totals for each precinct under Miss. Code Ann. § 23-15-597(1) (Supp. 2013). Section 23-15-911(1) also provides that the State Executive Committee receives the tabulations from each county and sends the statewide totals to the office of the Secretary of State. The certification letter for the June 24 runoff in this case is attached as Exhibit 2 to the response of the Mississippi Republican Party to motion for temporary restraining order [Dkt. 12].

[2] Overseas absentee ballots are handled in the same fashion. Miss. Code Ann. § 23-15-623 (Rev. 2007).

The county executive committees possess the relevant documents only for the short period of time necessary to canvass the results.[3] The State Executive Committee never possesses any of the documents at all. After the materials have been returned to the Circuit Clerk, the county committees cannot retrieve them. Accordingly, when Julie Patrick, Chairman of the Marshall County Committee, sought access to the contents of the ballot boxes, her Circuit Clerk would not permit it. Tr. 247.

Julie Patrick also testified that her committee contracted with the election commission to organize the primary. Tr. 245. That procedure is authorized by § 23-15-597(2)(a). This arrangement permits the election commission to handle preparations for the primary, including the hiring of the managers. The county executive committee can still retain the authority to canvass the results on election night, as is done in Marshall County. Tr. 246.

In light of this convoluted statutory scheme, it is a misnomer to say that a statewide election in Mississippi is "run" by anybody. Elections are organized at the county level, and the crucial decisions concerning voter qualifications are made at the precinct level. The statutes grant the State Executive Committee no authority to review those local decisions except in the context of an election contest filed under Miss. Code Ann. § 23-15-923 (Rev. 2007). For that reason, an injunction directed to the Mississippi Republican

[3] Not surprisingly, none of the affidavits attached to plaintiffs' motion for summary judgment [Dkt. 83] contain any evidence that any county committee was even asked to produce any documents.

Party in this action can serve no purpose. The State Executive Committee has no authority to require local election officials to obey it.[4]

Nor does the NVRA impose new duties or grant new powers not otherwise provided by Mississippi law. The Legislature in Miss. Code Ann. § 23-15-211.1 (Rev. 2007) designated the Secretary of State as the chief election official for purposes of 42 U.S.C. § 1973gg-8. That designation, however, does not grant to Secretary Hosemann, much less the Party, authority to enforce the NVRA against local election officials. The Eighth Circuit, in *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008), rejected an effort by the United States to enforce the NVRA against local election officials by suit against the Secretary of State. The Court held that "Missouri cannot be required to *enforce* the NVRA against" local officials, *id.*, at 851 (emphasis in original), although the State did have a federal responsibility to develop a reasonable program to secure accuracy in the voter rolls, *id.*, at 849-50. Particular violations by local officials could only be remedied by suits against those officials, and the Court rejected the argument of the United States that such a rule would complicate its enforcement efforts: "[I]t is not the place of the courts to 'rework' a statute to simplify enforcement when Congress could have written the legislation differently." *Id.*, at 851 n.3.

Mississippi has 82 counties and thousands of election precincts. It is certainly possible, despite plaintiffs' complete lack of evidence, that somebody violated some provision of the NVRA in the days surrounding the June 24 Republican runoff. What is

[4] Nor, contrary to plaintiffs' suggestion [Dkt. 63 at 2 n.1], is the Party a necessary party for purposes of granting relief, even in the unlikely event that this Court should order a new election to be held. See *Barbour v. Gunn*, 890 So. 2d 843 (Miss. 2004).

not possible is that any liability could have accrued to the Republican Party for such a violation or that any injunction against the Republican Party could provide any relief. For these reasons, plaintiffs have no likelihood of success on the merits against the Party.

## II. PLAINTIFFS HAVE PROVEN NO IRREPARABLE INJURY.

Plaintiffs claim that they have suffered an "informational injury" under the NVRA. They assert that Congress intended them to have access to certain documents maintained by the State of Mississippi; the denial of their supposed statutory right of access to those documents injures them in that they are denied information.

As demonstrated in the Party's brief in support of its separate dispositive motion, Congress did not in fact intend plaintiffs to have access to these particular documents under § 8(i) of the NVRA, 42 U.S.C. § 1973gg-6(i). However, any statutory violation which this Court might find can be fully remedied by giving them the access they seek. Once this Court has fully resolved the first two counts of their complaint, the Court can give them what they ask. There is nothing irreparable about their alleged statutory injury.

Their claim of irreparable injury, vague as it is, depends on considerations outside the NVRA. They seem to claim that, if they had access to these documents, they could do things now that they may not be able to do later. Their motion for a TRO suggests that they originally wanted these documents to forestall certification of the runoff result by the Republican State Executive Committee. The record shows, however, that the certification took place on July 7, 2014, two days before they filed their motion.[5] There is nothing that

[5] A copy of the certification letter is attached as Exhibit 2 to the Party's response to motion for temporary restraining order [Dkt. 12].

a preliminary injunction can do to change that fact.[6]

At the hearing on the motion, plaintiffs suggested that they want to use the documents somehow to preserve the integrity of the election process. Although they have done nothing to clarify this argument, presumably they seek to pursue some sort of challenge to the results of the June 24 runoff. Neither Mississippi nor federal law, however, offers them any remedy.

Mississippi law is quite clear that "the statutory provision is the exclusive remedy for deciding election content issues." *Wilbourn*, 590 So. 2d at 1386. Any such election contest involves only the two candidates. Forty years ago, the Supreme Court explained that the county election commission is not even a proper party to such a challenge:

> The only proper defendant in an election contest under this section is the successful party in the election. The issues which are made up and joined are between the unsuccessful and the successful candidate in the election and no others.

*Fisher v. Crowe*, 303 So. 2d 474, 475 (Miss. 1974). In an earlier case, the Supreme Court had interpreted Miss. Code § 6258 (1930), now codified as Miss. Code Ann. § 23-15-951 (Rev. 2007), as "limit[ing] the right to contest in the person or persons who were candidates in the election." *Jones v. Election Commissioners*, 187 Miss. 636, 193 So. 3 (1940).[7] Although that statute involves general elections, there is no reason that the holding should not apply equally to primary contests under § 23-15-923. Because no plaintiff in this case

[6] Nor does certification impose any injury, irreparable or otherwise. Certification is the beginning, not the end, of any election contest. Until a winner has been certified, "the candidates do not know which one of them should file a contest." *In re Wilbourn*, 590 So. 2d 1381, 1384 (Miss. 1991).

[7] The Supreme Court reaffirmed the *Jones* holding in *Ladner v. Necaise*, 771 So. 2d 353, 355 (Miss. 2000).

was a candidate in the Republican runoff, no plaintiff can challenge its outcome under Mississippi law.[8]

Plaintiffs claim that they have a right to relief under federal law as set forth in Count 3 of their complaint. For the reasons set forth in the Party's brief in support of its dispositive motion, Count 3 fails to state a claim for relief. However, even if some relief might be available to plaintiffs under federal law, they are not irreparably injured by denial of immediate access to the documents they seek under the NVRA under Counts 1 and 2.

As Mr. Pizzetta explained on behalf of Secretary Hosemann at page 309 of the transcript of the July 24 hearing, plaintiffs do not need the NVRA to get access to any documents that may be relevant to their claim under Count 3. They can ask this Court to require production of any documents relevant to Count 3 under the ordinary procedures of discovery. Under those procedures, this Court can give them the information they need while protecting the privacy of voters through a protective order issued under Fed.R.Civ.P. 26(c). Accordingly, denial of a preliminary injunction will not in any way inhibit the ability of plaintiffs to seek relief under Count 3.

For these reasons, any injury which plaintiffs may presently be suffering under the NVRA cannot be considered irreparable. Enforcement of their statutory rights, if any, may safely await the final resolution of this action.

[8] In any event, any such challenge would be untimely. A complaint contesting the outcome of a primary must be filed with the State Executive Committee within 20 days after the election. *Kellum v. Johnson*, 237 Miss. 580, 115 So. 2d 147 (1959).

## III. THE INTERESTS OF THE PARTIES AND THE PUBLIC PRECLUDE PRELIMINARY RELIEF.

Under the peculiar circumstances of this case, the third and fourth *Callaway* factors merge. The third factor concerns the comparative injuries to the two sides, while the fourth factor requires consideration of the public interest. Here, Secretary Hosemann represents the interests of Mississippians as a whole, while the election commissions represent the interests of the public in their particular counties. The Party operates through its executive committee, the members of which are elected quadrennially at the State convention to represent Republicans throughout Mississippi.

*In re McDaniel*, No. 2014-M-00967 (Miss. Jul. 17, 2014), makes clear that plaintiffs are entitled even under Mississippi law to the documents they seek, provided only that birthdates are redacted. If plaintiffs are also entitled to the documents under federal law, the remaining question for decision by this Court is whether the NVRA entitles them to receive birthdates that Mississippi law denies them. The question at this stage is the extent to which plaintiffs will be injured by waiting until final judgment, assuming it is in their favor, to get those birthdates.

Plaintiffs suggest multiple uses for birthdates [Dkt. 84 at 24 n.3]. They suggest that birthdates are essential to distinguish between similar names, but Exhibit D-6 shows that every voter has a unique identification number that can serve the same purpose. Birthdates can certainly be useful in determining whether a voter is over 65 and therefore entitled to an absentee ballot, but there is no suggestion how many such ballots may be in dispute; after plaintiffs have actually examined the absentee ballot materials available to them, it

may be that very few are disputed. It seems unlikely that plaintiffs really want to review all 382,187 voters in the June 24 runoff to see if each will really be 18 years old before the date of the general election. If that is what they want to do, they have yet to say so.

By contrast, it is now clear that Mississippi law respects and defends the interests of each of its citizens in preserving the privacy of their birthdates. Should this Court at the end of this litigation determine that federal law overrides that interest, then it can order that the information be made available to plaintiffs. However, if it orders that information provided now and later concludes that federal law establishes no such right, then hundreds of thousands of Mississippi voters will have been injured in violation of Mississippi law for no good reason. The information cannot be secured again after it has been released into the wider world.

Accordingly, the injury from disregarding Mississippi law at this preliminary stage is concrete and permanent. Even if plaintiffs do have a right to that information under federal law, no significant injury will accrue to them by awaiting this Court's final judgment.

## CONCLUSION

For the reasons stated herein, this Court should deny the plaintiffs' request for a preliminary injunction.

Respectfully submitted this the 7th day of August, 2014.

MISSISSIPPI REPUBLICAN PARTY

By: *s/Michael B. Wallace*
Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500
mbw@wisecarter.com

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141
trn@wisecarter.com

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Joseph M. Nixon
Kelly Hunsaker Leonard
Kristen W. McDanald
Lloyd Eades Hogue
BEIRNE, MAYNORD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
jnixon@bmpllp.com
kleonard@bmpllp.com
kmcdanald@bmpllp.com
ehogue@bmpllp.com

James Edwin Trainor
BEIRNE, MAYNORD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas 78701
ttrainor@bmpllp.com

*Counsel for Plaintiffs*

Robert E. Sanders
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 23059
Jackson, Mississippi 39225-3059
rsanders@youngwells.com

John Wesley Daughdrill, Jr.
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 6005
Ridgeland, Mississippi 39157
wes.daughdrill@youngwells.com

*Counsel for Jefferson Davis County, Mississippi Election Commission*

Harold Edward Pizzetta, III
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205-0220
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for The Hon. Delbert Hosemann*

Elise Berry Munn
BERRY & MUNN, P.A.
Post Office Drawer 768
Hazlehurst, Mississippi 39083
emunn@berrymunnpa.com

*Counsel for Copiah County, Mississippi Election Commission*

Pieter Teeuwissen
PIETER TEEUWISSEN, PLLC
Post Office Box 16787
Jackson, Mississippi 39236
adwoodard@bellsouth.net

*Counsel for Hinds County, Mississippi Election Commission*

Jeffrey T. Webb
WEBB LAW FIRM, PLLC
Post Office Box 452
Carthage, Mississippi 39051
webblaw@bellsouth.net

*Counsel for Leake County, Mississippi Election Commission*

Lee Thaggard
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, Mississippi 39302-2009
thaggard@barrypalmerlaw.com

*Counsel for Lauderdale County, Mississippi Election Commission*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi 39042
cslay@rankincounty.org

*Counsel for Rankin County, Mississippi Election Commission*

Mike Espy
MIKE ESPY, PLLC
317 East Capitol Street, Suite 101
Jackson, Mississippi 39201
mike@mikespy.com

*Counsel for Madison County, Mississippi Election Commission*

This the 7th day of August, 2014.

*s/Michael B. Wallace*
Michael B. Wallace