IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik, | § § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Cause No. 3:14-cv-00532-NFA |
| The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission, | § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | | |

**PLAINTIFFS TRUE THE VOTE, ET AL.'S BRIEF IN SUPPORT OF
OMNIBUS RESPONSE TO THE COUNTY DEFENDANTS'
<u>SUMMARY JUDGMENT MOTIONS</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................iii

INTRODUCTION ......................................................................................... 1

SUMMARY OF ARGUMENT......................................................................... 2

RESPONSIVE FACTUAL BACKGROUND ...................................................... 2

      A.   True the Vote requested records under the NVRA prior to a federal
           election ......................................................................................... 2

      B.   True the Vote requested access to records immediately following the
           election from each of the County Defendants.................................... 3

      C.   Mississippi voters requested access to records and were denied.................... 7

      D.   At the Secretary's direction, the County Defendants have carried out a
           policy disregarding the plain language of the NVRA...................................... 8

      E.   Procedural history ........................................................................... 9

OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE ............................................. 9

ARGUMENT AND AUTHORITIES ............................................................... 10

      A.   Standard of review....................................................................... 10

      B.   Standing to sue ............................................................................ 10

      C.   County Commissions are subject to the NVRA and share in NVRA
           tasks ........................................................................................... 13

      D.   Plaintiffs complied with the NVRA ............................................. 19

           1. Violations occurred thirty-days before a federal election ..................... 19

           2. The NVRA notice requirement is practically construed ....................... 20

      E.   The plain language of the NVRA requires public disclosure of the
           records ....................................................................................... 22

           1. Standard of statutory construction........................................... 23

           2. The NVRA is broadly applied on accord with its plain meaning .......... 23

a. Voter rolls ........................................................................... 25

b. Voter pollbooks ................................................................... 27

c. Federal postcard applications ............................................. 29

d. Absentee ballot applications and envelopes ....................... 30

3. None of the records are excepted from the NVRA ................................. 30

F.     The NVRA requires public disclosure of voter birthdates ......................... 32

CONCLUSION ........................................................................................... 35

CERTIFICATE OF SERVICE ..................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*ACORN v. Miller*,
129 F.3d 833 (6th Cir. 1997) ............................................................... 20, 21

*Alford v. Telapex, Inc.*,
1:94CV53-S-O, 1995 WL 1945456 (N.D. Miss. Mar. 7, 1995) ................................. 10

*American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*,
389 F.3d 536 (6th Cir. 2004) ................................................................. 12

*Boudreaux v. Swift Transp. Co., Inc.*,
402 F.3d 536 (5th Cir. 2005) ................................................................. 10

*Broyles v. Texas*,
618 F. Supp. 2d 661 (S.D. Tex. 2009) ........................................................ 22

*Condon v. Reno*,
913 F. Supp. 946 (D.S.C. 1995) ........................................................... 20, 21

*Cummock v. Gore*,
180 F.3d 282 (D.C. Cir. 1999) ............................................................... 12

*FEC v. Akins*,
524 U.S. 11 (1998) ....................................................................... passim

*Gonzales v. Arizona*,
677 F.3d 383 (9th Cir. 2012) .............................................................. 32, 33

*Grant ex rel. Family Eldercare v. Gilbert*,
324 F.3d 383 (5th Cir. 2003) ................................................................. 12

*National Coalition for Students with Disabilities Educ. and Legal Defense Fund v. Scales*,
150 F. Supp. 2d 845 (D. Md. 2001) .................................................. 19, 20, 21, 22

*Nat'l Coal. For Students for Disabilities Educ. & Legal Def. Fund v. Allen*,
152 F.3d 283 (4th Cir. 1998) ................................................................. 24

*Nissho-Iwai Am. Corp. v. Kline*,
845 F.2d 1300 (5th Cir. 1988) ................................................................. 9

*Project Vote/Voting For Am., Inc. v. Long*,
752 F. Supp. 2d 697 (E.D. Va. 2010) ..................................................... 13, 24

*Project Vote/Voting for Am., Inc. v. Long*,
889 F. Supp. 2d 778 (E.D. Va. 2012) ..................................................... 34, 35

*Project Vote/Voting for America v. Long*,
   682 F.3d 331 (4th Cir. 2012) ...................................................................passim

*Public Citizen v. U.S. Dept. of Justice*,
   491 U.S. 440 (1989) .................................................................... 11, 12, 13

*Rosmer v. Pfizer, Inc.*,
   272 F.3d 243 (4th Cir. 2001) ................................................................ 31

*U.S. v. Missouri*,
   535 F.3d 844 (8th Cir. 2008) ........................................................ 14, 17

*United States v. Rocha*,
   916 F.2d 219 (5th Cir. 1990) ................................................................ 31

*Willenbring v. United States*,
   559 F.3d 225 (4th Cir. 2009) ................................................................ 23

*Young v. Fordice*,
   520 U.S. 273, 117 S. Ct. 1228 (1997) .................................................. 15

**Statutes**

2 U.S.C. § 431(1) .................................................................................... 19

2 U.S.C. § 434(a)(11)(B) ........................................................................ 12

42 U.S.C. § 1973 .................................................................................... 25

42 U.S.C. § 1973gg ......................................................................... 21, 25

42 U.S.C. § 1973gg-1 ............................................................................ 19

42 U.S.C. § 1973gg-(6) ..................................................................passim

42 U.S.C. § 1973gg-8 ................................................... 8, 13, 14, 21

42 U.S.C. § 1973gg-9 ................................................... 19, 20, 22

5 U.S.C. app. 2 § 10(b) ........................................................................ 12

Election Code Section 23-15-911 .................................................... 4, 7

Miss Code Ann. § 23-15-627 ........................................................ 30, 32

Miss. Code Ann. § 23-15-11 ................................................................ 32

Miss. Code Ann. § 23-15-125 ........................................................ 27, 28

Miss. Code Ann. § 23-15-127 .............................................................. 16

Miss. Code Ann. § 23-15-165(6)(a) .................................................... 32

Miss. Code Ann. § 23-15-211.1 ...................................................... 8, 13

Miss. Code Ann. § 23-15-231 .............................................................. 15

Miss. Code Ann. § 23-15-235 .............................................................. 15

MISS. CODE ANN. § 23-15-7-(8) .................................................................. 29

MISS. CODE ANN. § 23-15-911 .................................................................. 5, 7

MISS. CODE ANN. §§ 23-15-211, 23-15-135 ................................................ 16

MISS. CODE ANN. §§ 23-15-215, 23-15-217(2) ............................................ 15

MISS. CODE ANN. §§ 23-15-265, 23-15-239, 23-15-333, 23-15-335 ............... 15

MISS. CODE ANN. §§ 23-15-603, 23-15-153(1) ............................................ 16

MISS. CODE ANN. § 23-15-575 .............................................................. 28, 29

**Rules**

FED. R. CIV. P.  19 ..................................................................................... 18

FED. R. CIV. P. 56 .............................................................................. 2, 9, 10

**Regulations**

11 C.F.R. 9428.4....................................................................................... 32

**Other Authorities**

MS Prac. Encyclopedia MS Law Election Law § 7 ............................ 14, 16, 26

MS Prac. Encyclopedia MS Law Election Law § 9 ...................................... 16

S. Rep. No. 103-6, 1993 WL 54278 (1993) ..................................................... 14

TO THE HONORABLE DISTRICT COURT:

Plaintiffs True the Vote, et al. file this Memorandum of Law in Response to the County Defendants' Motions for Summary Judgment on the National Voter Registration Act ("NVRA") claims. *See* Docs. 79, 80, 81, 82, 85, 86, 89, 102 and 103.

## **INTRODUCTION**

This case is about the transparency of the electoral process and uniform application of federal law. Plaintiffs requested access to complete voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications (collectively the "voter records") prior to and following the now-contested 2014 Republican Primary Run-Off Election.  Plaintiffs were denied complete access to these records although the NVRA requires voter records be made available to the public for copying and inspection.

The County Defendants have moved for summary judgment on Plaintiffs' NVRA claims.  As grounds, the County Defendants collectively argue: (1) no request was made of the County Election Commissions as opposed to the Circuit Clerk of the County; thus, the County Election Commissions are improper parties to this suit[1]; (2) Plaintiffs did not give pre-suit notice of their claims[2]; (3) the NVRA does not apply to this case because the

---

[1] *See* Hinds County Motion for Summary Judgment, Dkt. 80-81, p. 15; Copiah County Motion for Summary Judgment, Dkt. 79, p. 5-7; Jefferson Davis County Motion for Summary Judgment, Dkt. 82, p. 5-6; Lauderdale County Motion for Summary Judgment, Dkt. 89, p. 5-9; *cf.* Rankin County Motion for Summary Judgment, Dkt. 85, 86 p. 3-4.

[2] *See* Copiah County Motion for Summary Judgment, Dkt. 79, p. 3-4; Jefferson Davis County Motion for Summary Judgment, Dkt. 82, p. 3-5; Lauderdale County Motion for Summary Judgment, Dkt. 89, p. 3-5; Rankin County Motion for Summary Judgment, Dkt. 85, 86 p. 3-4; *cf.* Hinds County Motion for Summary Judgment, Dkt. 81, p. 5-6.

Act applies only to registration records[3]; and (4) the NVRA applies only to "state election officials" as opposed to county election officials.[4]   Each of these arguments overlooks significant aspects of Mississippi's electoral system and the plain language of the NVRA.

## SUMMARY OF ARGUMENT

Summary judgment against the Plaintiffs is not appropriate for the reasons set forth herein.  The County Defendants' summary judgment evidence does not controvert Plaintiffs' factual allegations.  Rather, the evidence submitted by the County Defendants confirms Plaintiffs made requests for records and were denied access to complete records.  The County Defendants' remaining complaints concern questions of law, which are properly resolved in the Plaintiffs' favor.

## RESPONSIVE FACTUAL BACKGROUND

The relevant factual background is set forth in Plaintiffs' Motion for Summary Judgment.  *See* Docs. 83 and 84.   Nevertheless, Plaintiffs provide the following responsive factual background.  *See* FED. R. CIV. P. 56.

**A.    True the Vote requested records under the NVRA prior to a federal election.**

True the Vote monitors elections for compliance with state and federal law. It identifies instances of voting irregularities, and trains volunteers to conduct its activities. *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p. 25:7-23; Declaration of Ms. Engelbrecht, attached hereto as Exhibit 2.

---

[3] *See* Hinds County Motion for Summary Judgment, Dkt. 80-81, p. 5-13, p. 14-15.
[4] *See id.*

As part of its mission to protect electoral integrity, True the Vote examines official lists of eligible voters and other voter registration data to verify their accuracy and currency. *See id.* Its purpose in undertaking these efforts is to protect the integrity of the electoral process and to ensure states maintain accurate and current voter rolls. *See id.*

In June 2014, in an effort to investigate reports of irregularities in the run-up to the Mississippi Republican Primary Run-Off Election (the "Election"), True the Vote requested access to certain Mississippi voter records. Immediately prior to the election, True the Vote requested absentee ballot applications and envelopes from Hinds and Rankin Counties. *See* Exhibit 1 at pp. 27:23-25. The request was made pursuant to the NVRA, but True the Vote was denied access to the records it requested. *See* 42 U.S.C. § 1973gg-6(i); *see also* Exhibit 1 at pp. 27:12-21; 27:21-25 and 28:11-19; Exhibit 2.

**B.      True the Vote requested access to records immediately following the election from each of the County Defendants.**

Immediately following the Run-Off Election, on July 7 and July 8, True the Vote again requested voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications from certain Mississippi counties. *See* 42 U.S.C. § 1973gg-6(i). True the Vote requested the documents to determine whether or not voters who had voted in the Democratic Primary unlawfully double voted in the Republican Primary Run-Off Election and whether other irregularities had occurred during the Election.

By way of example, True the Vote volunteer Ellen Swenson testified she requested records from Leake, Jones and Covington counties between July 7 and 8. She

was denied access to the requested records. *See* Exhibit 1, at pp. 203-05, 207-09. Evidence documenting her requests was admitted into the record in this case during the July 24, 2014 preliminary injunction hearing. *See id.* at pp. 201-02 and 209-10.

Additional True the Vote volunteers requested and were denied access to voter records. In the days following the June 24 Republican Primary Run-Off Election, Julie Hoenig was part of a group of True the Vote volunteers who requested access to voting records from the Circuit Clerks of Rankin, Simpson and Jefferson Davis Counties. *See* Declaration of Julia Hoenig and Incident Reports, attached hereto as Exhibit 3. Ms. Hoenig made an oral request at the Jefferson Davis County Circuit Clerk's office on July 7, 2014 for voter pollbooks and absentee ballot applications and envelopes. *Id.* The Circuit Clerk's Office did not allow the records to be made available to the general public for inspection, citing an e-mail from the Secretary of State's Office. *Id.*

Ms. Hoenig also made an oral request for voter pollbooks, absentee ballot applications and envelopes, and electronic files from Circuit Clerk Becky Boyd of Rankin County. *Id.* Circuit Clerk Boyd did not allow the inspection of complete absentee ballot applications or voter pollbooks. *See* Declaration of Julia Hoenig and Incident Reports, attached hereto as Exhibit 3. She relied on Mississippi Election Code Section 23-15-911 and instructions from the Secretary of State as grounds for her decision, even though Ms. Hoenig cited the National Voter Registration Act in making her request. *Id.* Further, concerning the pollbooks, Circuit Clerk Boyd informed Ms. Hoenig that True the Vote would be granted access only to redacted records at a cost of $.50/page or $20/hour. *Id.* Redacted information included voter birthdates.

Finally, Ms. Hoenig made a written request for voter pollbooks and absentee ballot applications and envelopes from the Simpson County Circuit Clerk's office on July 7, 2014 and July 8, 2014 under the NVRA.  *Id.*  The clerk allowed inspection of the materials only with the redaction of voter birthdates.  Based on these events, Ms. Hoenig was unable to access or inspect the complete voter pollbooks, absentee ballot applications and envelopes in Jefferson Davis, Rankin and Simpson Counties. *Id.*

Mike Rowley was part of Ms. Hoenig's volunteer group and encountered the same barriers to accessing records under the NVRA. *See* Declaration of Mike Rowley and Incident Reports, attached hereto as Exhibit 4.   The Circuit Clerk of Rankin County, for example, did not allow him to inspect voter pollbooks because the books contained information deemed by the Secretary of State to be confidential.  *Id.*  The only concession made by Rankin County's Circuit Clerk was that pollbooks could be inspected if the dates of birth corresponding to each voter were redacted.  *Id.*   The Clerk instructed that Mr. Rowley had to pay for the cost of redaction. *Id.*   Mr. Rowley's requests of the Circuit Clerks in Simpson and Jefferson Davis Counties were similarly denied. *See id.*

Jeanne Webb too documented rejections from Rankin and Copiah Counties as a True the Vote volunteer. *See* Declaration of Jeanne Webb and Incident Reports, attached hereto as Exhibit 5.   Ms. Webb requested access to voter pollbooks and absentee ballot applications in person at the Copiah County Circuit Clerk's office on July 7, 2014 both orally and in writing.  Citing to section 23-15-911 of Mississippi's Election Code, Circuit Clerk Edna E. Stevens did not allow Ms. Webb to review unredacted records. *Id.*; *see* Miss. Code Ann. § 23-15-911 (governing inspection of ballot boxes by candidates). Ms.

Webb made an oral request for voter pollbooks from the Rankin County Circuit Clerk's office the same day as her request for records from Copiah County. *Id.* The Circuit Clerk of Rankin County, Becky Boyd, again denied full access to voter pollbooks. *Id.* Ms. Boyd allowed public inspection of voter pollbooks only if the records were redacted of voter birthdates at a cost of $.50/page or $20/hour. *Id.*

In other representative circumstances, John and Karen Hobson were denied access to voter pollbooks and absentee ballot applications and envelopes requested from Lauderdale County's Circuit Clerk, Donna Johnson. *See* Declarations of John Hobson and Karen Hobson and Incident Reports, attached hereto as Exhibit 6.  Ms. Johnson denied the public inspection of such records, although Mr. and Mrs. Hobson showed her a copy of a memorandum from the undersigned detailing that the records were subject to the NVRA's public disclosure provision.  *Id.*   Madison County likewise denied access to records covered by the NVRA.  *See* Declaration of Sandi Steinbacher and Incident Report, attached hereto as Exhibit 7; *see also* Letter from Madison County Circuit Clerk dated July 8, 2014, attached here as Exhibit 8.  So, too, did Yazoo and Hinds Counties. *See* Declaration of Roberta Swank and Incident Report, attached hereto as Exhibit 9; Declaration of Melinda Kinley and Incident Report, attached hereto as Exhibit 10; Declaration of Ruth Wall and Incident Report, attached hereto as Exhibit 11.

Finally, Susan Morse faced obstacles to securing records under the NVRA.  *See* Declaration of Susan Morse and Incident Reports, attached hereto as Exhibit 12.  Ms. Morse made an oral request at the Leake County Circuit Clerk's office on July 7, 2014 for voter pollbooks and absentee ballot applications and envelopes. *Id.*  She made the

request, along with Ellen Swenson, to Kathy Henderson, the Circuit Clerk of Leake County. *Id.* In the request, Ms. Morse mentioned the NVRA. *Id.* After speaking with the attorney general's office, Circuit Clerk Henderson denied Ms. Morse's request for complete records. *Id.* As support, the Circuit Clerk cited Mississippi Election Code Section 23-15-911 and an Attorney General Opinion. *See* MISS. CODE ANN. § 23-15-911 (governing inspection of ballot boxes by candidates). *Id.* Ms. Morse reduced her request to writing, asking for lists of the Republican and Democratic voters who voted in their respective primary and run-off elections in person or by absentee ballot. *Id.* Ms. Morse was denied access to the requested records without redaction. *Id.*

## C.    Mississippi voters requested access to records and were denied.

Mississippi voters were likewise unable to inspect records subject to the NVRA. On June 26, 2014, Roy Nicholson requested access to the voter pollbook used in the run-off election from Circuit Clerk Becky Boyd of Rankin County. *See* Exhibit 1 at pp. 180-81; *see also* Declaration of Roy Nicholson, attached hereto as Exhibit 13.   As Mr. Nicholson explained at the preliminary injunction hearing, pollbooks are significant to determining whether lawful votes were cast in a primary run-off election. *See* Exhibit 1 at pp. 180-81. The pollbook is a list of voters specific to the polling location that the two parties exchange or "swap" prior to a run-off election. *Id.* The poll workers see unredacted versions of these documents at the polls. *Id.* at p. 131. In swapping the books, election officials can "verify that the people that are coming to vote in the runoff had not previously voted in the other party's primary." *Id.* at pp. 181-82. "Looking at that book would tell [Mr. Nicholson] if people had voted [improperly], because they would

have already been marked as having voting in the June 3rd Democrat [primary election] and then showed up [to vote] on the Republican 24th runoff." *Id.* at 182; *see also* DX 5 (Doc. 107-4) and DX 6 (Doc. 107-5), Exhibit 1, p. 140.

While the pollbook holds special significance in determining the integrity of a primary run-off election, Mr. Nicholson was denied access to the requested records. *Id.* He was told by the Circuit Clerk of Rankin County that the Secretary of State ordered her not to allow any person to view unredacted, original pollbooks. *Id.*

Julie Patrick and Colonel Phil Harding also requested voter records and were denied access to such records. *See* Harding Affidavit, attached hereto as Exhibit 14; *see also* Exhibit 1.

**D.    At the Secretary's direction, the County Defendants have carried out a policy disregarding the plain language of the NVRA.**

Mississippi has designated its Secretary of State as Chief Election Officer under the NVRA. *See* MISS. CODE ANN. § 23-15-211.1; *see also* Exhibit 1, at pp. 102:20-104:6. In that capacity, the Secretary of State is responsible for ensuring Mississippi complies with the NVRA.   *See* 42 U.S.C. § 1973gg-8.   The Secretary relies on the County Defendants to carry out his responsibilities under the NVRA.  *See infra* at 13-19.

The Secretary of State has taken the position that the records requested by True the Vote, Plaintiffs, and others may not be provided in un-redacted form pursuant to Mississippi Statute. *See* E-Mail Correspondence from Amanda Frusha dated June 26, 2014, attached hereto as Exhibit 15; *see also* June 10, 2014 Press Release from The Honorable Delbert Hosemann, attached hereto as Exhibit 16; Attorney General Opinion

No. 94-0699 dated November 2, 1994, attached hereto as Exhibit 17; E-Mail Correspondence from Kimberly Turner, attached hereto as Exhibit 18.  The County Defendants have followed the Secretary of State's direction and denied access to voting records without redaction.  *Supra* at 2-8.

**E.    Procedural History.**

The Court held a preliminary injunction on July 24, 2014.  Plaintiffs presented evidence and testimony from witnesses regarding their requests for documents under the NVRA during the hearing.   *See* Exhibit 1.   At the Court's direction, Plaintiffs supplemented the record with additional documentation of their requests.  *See* Doc. 40, True the Vote's Incident Reports dated July 28, 2014.

Following the hearing, the Court invited the parties to file summary judgment motions.  Plaintiffs filed a summary judgment motion on August 8, 2014 against the Secretary of State, *see* Docs. 83 and 84, and the County Defendants moved for summary judgment against Plaintiffs that day.  *See* Docs. 79, 80, 81, 82, 85, 86, 89, 102 and 103.

<u>**OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE**</u>

Rule 56(c)(2) permits a party to object to material cited in support of a summary judgment motion.  Jefferson Davis County submitted an unexecuted affidavit in support of its summary judgment motion as Exhibit "A."  Jefferson Davis County promised to "substitute shortly" an executed version of the document.  *See* Doc. 82, p. 6.  The County has not sought leave to substitute an executed affidavit.

An affidavit must be properly executed in order to constitute competent summary judgment evidence. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.

1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."). It is improper to submit an unexecuted affidavit with the promise of later supplementation for two reasons. *Alford v. Telapex, Inc.*, 1:94CV53-S-O, 1995 WL 1945456, n.7 (N.D. Miss. Mar. 7, 1995). "First, it is a misrepresentation to the court that the motion is based on the sworn statement of the affiant, when it is not; and, second, it lends itself to over-sight in that the court record must be supplemented later with a properly executed and attested affidavit. If that is not done, the court may not consider the unsigned, unsworn papers filed with the motion." *Id.* Because Exhibit "A" to Jefferson Davis County's Summary Judgment Motion is not competent summary judgment evidence, Plaintiffs object to consideration of Exhibit "A".

## ARGUMENT AND AUTHORITIES

### A.    Standard of review.

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In addressing a summary judgment motion, a reviewing court is required to construe "all facts and inferences ... in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

### B.    Standing to sue.

On page 18 of its motion, Hinds County argues "applicable case authority requires [Plaintiffs], who invoke this Court's authority, to allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and [that is] likely to be redressed by the

requested relief." *See* Doc. 81, p. 18.  While this argument is not fully developed in Hinds County's briefing, Plaintiffs address their standing to sue out of an abundance of caution and in response to the Court's questions at the preliminary injunction hearing.

Supreme Court and Circuit precedent establishes that informational injuries are sufficient for standing purposes.  In *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989), the Supreme Court held that the denial of a Freedom of Information Act ("FOIA") request brought under the Federal Advisory Committee Act ("FACA") constituted an injury sufficient to confer Article III standing.  The Court stated that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue," and that the Court's prior decisions interpreting FOIA had never required more of a showing from those requesting information "than that they sought and were denied specific agency records."  *Id.* at 449.  Thus, where a statute mandates the disclosure of information, and that information is refused to a party who seeks it, the party has suffered a redressable harm that confers Article III standing.

The Supreme Court reaffirmed this principle in *FEC v. Akins*, 524 U.S. 11 (1998), a case that involved a request for records under the Federal Election Campaign Act ("FECA").  The plaintiffs asserted injury-in-fact consisted of the denial of their request to obtain information that FECA required to be made public.  Again, the Court held the injury was "concrete and particular."  In concluding the *Akins* plaintiffs had standing to sue, the Court observed it "held [in *Public Citizen*] that a plaintiff suffers an 'injury in

fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*. at 21 (citing *Public Citizen*, 491 U.S. at 449-450).

Federal circuit and district courts embrace the *Public Citizen* and *Akins* informational injury doctrine. For example, in *American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536 (6th Cir. 2004), the Sixth Circuit found an informational injury in an agency's failure to comply with public disclosure requirements of the Clean Water Act. The Fifth Circuit held in *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383 (5th Cir. 2003), that "the 'inability to obtain information' required to be disclosed by statute constitutes a sufficiently concrete and palpable injury to qualify as an Article III injury-in-fact." *Id.* at 387 (quoting *Akins*, 524 U.S. at 21). Similarly, the D.C. Circuit held in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), that, as a member of a committee regulated by the Federal Advisory Committee Act, the plaintiff had a right of participation that created a right to information, and that "she suffered an injury under FACA insofar as the Commission denied her requests for information that it was required to produce." *Id.* at 290.

Like the statutes at issue in *Public Citizen* and *Akins*, the NVRA creates a right to information by requiring that certain records be made accessible to the public and allowing a private right of action to enforce the NVRA. *See* 42 U.S.C. § 1973gg-6(i)(1) (emphasis added) *compare* FACA, 5 U.S.C. app. 2 § 10(b) ("[T]he records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection."); FECA, U.S.C. § 434(a)(11)(B)2 U.S.C.

§ 434(a)(11)(B) ("The Commission shall make a designation, statement, report, or notification that is filed with the Commission under this Act available for inspection by the public."). The district court in *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703-04 (E.D. Va. 2010) relied on *Public Citizen* and *Akins* to hold a voting rights organization had standing to sue for an informational injury under the NVR. It reasoned that, like *Public Citizens* and *Akins*, the NVRA too provides a public right to information and a private right of action to any person who is aggrieved by a violation of the Public Disclosure Provision.

In accord with these authorities, Plaintiffs have standing to sue for an informational injury.

## C. County Commissions are subject to the NVRA and share in NVRA tasks.

The NVRA mandates that each State have one Chief Election Official responsible for coordinating the State's compliance with the NVRA. *See* 42 U.S.C. § 1973gg-8. Mississippi has designated the Secretary of State as its Chief Election Official. *See* MISS. CODE ANN. § 23-15-211.1.

The legislative history of the NVRA makes clear, however, that its dual purposes of voter registration and removal may be carried out at both the State and local levels. In particular, Congress envisioned local involvement would more efficiently enable eligible persons to register to vote while creating more efficient purge systems:

> One of the advantages of the bill is the fact that the motor-voter and agency-based programs are ongoing and that applications and renewals may serve as updating the addresses of registered voters. Thus, the need for large scale purges and list cleaning systems becomes superfluous. Nevertheless, the bill requires States to conduct a program to maintain the

integrity of the rolls. The Act requires that any program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll must be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965. Merely because a program was conducted under the National Voter Registration Act would not be a defense to any claim which might be asserted under the Voting Rights Act. The requirements of the two acts are distinct and complementary. The States must comply with the National Voter Registration Act in a manner which does not violate the Voting Rights Act.

…

Agency-based registration on a year-round basis may also indirectly minimize the necessity for periodic, large scale purges of voter registration lists by election registrars. With an effective agency-based registration system, voters would have the opportunity not only to register, but also to update their registrations each time they sought services at the government agency. Persons who receive social services–welfare, unemployment checks–must keep their addresses up-to-date in order to receive the benefit. Similarly, public housing recipients must keep their address information up-to-date. Like the motor-voter program, any application for renewal, recertification, or change of address would serve as an update for that person's registration to vote unless the applicant declines in writing.

S. REP. No. 103-6, at 18-20, 1993 WL 54278 (1993) (Conf. Rep.).

The Secretary of State enlists counties to assist in NVRA compliance, although the Secretary remains "responsible for coordination of State responsibilities under the NVRA" and cannot delegate his ultimate "responsibility" for NVRA compliance. 42 U.S.C. § 1973gg-8; *see U.S. v. Missouri*, 535 F.3d 844, 850-51 (8th Cir. 2008). According to the Secretary, "perhaps as powerful in the area of elections in our state as any other person or group, local election commissions conduct all general and special elections." MS Prac. Encyclopedia MS Law Election Law § 7, MSPRAC-ENC ELECTLAW § 7, attached hereto as Exhibit 19.

14

Election commissioners are required to be trained and certified at least once a year by the Secretary of State.  MISS. CODE ANN. §§ 23-15-215, 23-15-217(2).   Their power during elections is felt by their authority over all critical aspects of the electoral process, including in primary elections.  *See* MISS. CODE ANN. §§ 23-15-265, 23-15-239, 23-15-333, 23-15-335.  The Commissions appoint election managers, known as poll managers or poll workers.  MISS. CODE ANN. § 23-15-235.  Election managers ensure the election "is conducted fairly and agreeable to law, and they shall be judges of the qualifications of electors, and may examine, on oath, any person duly registered and offering to vote touching his qualifications as an elector, which oath any of the managers may administer …." MISS. CODE ANN. § 23-15-231. The Commissions also designate precinct bailiffs, who keep order at each precinct.  MISS. CODE ANN. § 23-15-231.

One of the most important duties of County Election Commissions is voter roll maintenance. According to the Secretary of State:

> There is no responsibility more important to the voter on election day than that he be recorded as registered so his cast ballot may be counted. Proper voter roll maintenance requires the removal of the names of registered voters who have died, who have moved from the local jurisdiction, who have been convicted of disenfranchising crimes, or who have been declared mentally incompetent by a court.  An integral part of proper voter roll maintenance is the duty to keep accurate voter addresses so that as voters move, even within the same county or municipality, they are assigned to the proper voting precinct and vote in appropriate county or municipal elections. The local election commission's duty to conduct voter roll maintenance is ongoing, restricted only by the number of allowable per-diem days for which they may be paid pursuant to state law.

> With the United States Supreme Court decision mandating Mississippi's compliance with the National Voter Registration Act (NVRA) in 1997, [*Young v. Fordice*, 520 U.S. 273, 117 S. Ct. 1228 (1997)], election commissions are required to follow a federally mandated procedure when

removing the names of voters from the rolls based on change of residence. According to complying state law and the NVRA, such registrants may be removed from a local voter roll due to a change of residence only after the registrant is mailed a card or written notice seeking confirmation of the change in address. The notice is forwardable, is mailed to the registrant's last known address, and must contain a postage prepaid, preaddressed response card for the voter to confirm or not the change of address. If the mailing is returned as nondeliverable, or if no voter response is received, or the notice is returned by the voter confirming the change of address to one outside the jurisdiction, then the voter's name may be removed from the rolls if he does not vote in the next two federal general elections occurring after the mailing. During this period, the voter's name is placed on an "inactive" list. If he votes in one of the next two federal general elections, he must do so by affidavit ballot and his name is automatically returned to the roll of active voters in the county.

*See* Exhibit 19, MS Prac. Encyclopedia MS Law Election Law § 7, MSPRAC-ENC ELECTLAW § 7 (citing MISS. CODE ANN. §§ 23-15-603, 23-15-153, and 23-15-153(1)).

The Election Commissioners' role in maintaining accurate and current voter records does not cease in primary elections.  Instead, Election Commissioners are required to assess and revise "pollbooks" in relation to primary elections.  *See* MISS. CODE ANN. § 23-15-127.

The importance of County Election Commissions cannot be overstated.  County Circuit Clerks may hold voter records subject to the authority of the Secretary of State and Election Commissions, and the Clerk may register voters, *see* MISS. CODE ANN. §§ 23-15-211, 23-15-135, and MS Prac. Encyclopedia MS Law Election Law § 9, MSPRAC-ENC ELECTLAW § 9, attached hereto as Exhibit 20, but the Secretary of State (by and through the Election Commission) is responsible for ensuring those records are current and accurate.  It is undisputed that the County Commissions have access to voter records and are responsible for them.  Therefore, a program or activity necessary to

16

ensuring voter records are current or accurate implicates the County Election Commissions. *See* Exhibit 1 at p. 328. Plaintiffs were carrying out such activities when they made requests for records from the County Defendants. *Supra* at 2-8. It is immaterial for purposes of the NVRA that some requests were directed to Circuit Clerks instead of Election Commissioners who have equal access to the records and are ultimately responsible for their maintenance.

Due to significant county involvement in federal elections and voter registration and removal activities, the County Defendants are subject to the NVRA. Hinds County nevertheless contends the NVRA does not apply to "county officials" but only "state election officials." *See* Doc. 81, at p. 14-15. The argument attempts to draw a distinction without a difference so far as the NVRA is concerned. *see U.S. v. Missouri*, 535 F.3d 844, 850-51 (8th Cir. 2008). Mississippi is a "bottom-up" state in which counties (units of the State) implement federal elections. *See* Exhibit 1 at p. 102-03. Counties register voters. *Supra* at 13-16. Counties conduct "purging" activities. *Id.* The Secretary of State relies on counties in carrying out the NVRA. Mississippi Election Commissions are charged by statute with carrying out NVRA list maintenance programs. *Id.* Not only does Hinds County's argument ignore these relevant provisions of Mississippi law, it also relies on authority holding municipal officials—not county officials—are not regulated by the NVRA and authority construing the implementation of state elections. Counties (and not municipalities) are arms of the State, and they are responsible for implementing many provisions of the NVRA at the Secretary of State's direction in the context of federal elections. The NVRA therefore applies to Hinds County.

Even assuming the County Circuit Clerks should be named as parties in this suit, the remedy for naming the County Commissions in lieu of the Circuit Clerks is not dismissal of Plaintiffs' claims in their entirety. Rather, the remedy is to join the County Circuit Clerks under Federal Rule of Civil Procedure 19 or substitute the Circuit Clerks as defendants. As the Court understands, substitution would involve the same attorneys and claims:

> The Court:   Okay. If the plaintiffs were to substitute the circuit clerk for the election commission, would that solve your problem or add them?
>
> Mr. Sanders: It would solve the election commission's problem, yes.
>
> ***
>
> The Court:   But the point is the---the enforcement of any order or the benefit of any order that I issued would be important to the election commissions, would it not?
>
> Mr. Sanders: Your Honor, the election commissioner follows the law, whether it's from –the law comes from—the order comes from the Congress or from the state legislature or from Her Honor . . .
>
> The Court:   If the county got sued, would you be hired?
>
> Mr. Sanders: . . . yes, I'd probably be back in front of you. . .
>
> ***
>
> The Court:   I'm not sure where this is all going to come out, but it does seem to me from what I just heard that the NVRA—that some of the programs or the maintenance of documents or the like that the NVRA clearly covers under those sections that Mr. Nobile was pointing out do fall within the bailiwick of the election commission for the counties. . . .. [W]hen we're looking for who it is that needs to be in the suit or who needs to be on notice of whatever rulings there are, the election commissions are in that group. Doesn't mean anybody committed a wrong or should be held liable, but it does mean that need to know what the rules are. . . . I'm sympathetic about the costs, but I'm questioning whether it pays for us to spend a whole lot of time deciding whether it's the election commissions or the county—or the circuit clerk in the official capacity or what that should be in this lawsuit. . . . I'm not minimizing the important of the different agencies or

> departments.  I'm only saying that I'm trying to focus on
> what I think are dispositive issues.

Exhibit 1 at p. 328-31.  Plaintiffs have since made an offer to the County Commissions in

an attempt to give effect to this colloquy, but no County has agreed to the terms of such

offer.

**D.     Plaintiffs complied with the NVRA.**

The County Defendants argue Plaintiffs failed to give pre-suit notice of an NVRA

violation under 42 U.S.C. § 1973gg-9(b) and that notice is a jurisdictional prerequisite.

But Plaintiffs were not required to give notice of an NVRA violation under the

circumstances of this case, and notice is not a defense to jurisdiction.

**1.   Violations occurred thirty-days before a federal election.**

While a person aggrieved under the NVRA may typically need to provide notice

of the violation involved prior to filing suit, notice need not be given if the violation

occurred within 30 days of an election for federal office.  *See* 42 U.S.C. § 1973gg-

9(b)(3).  Because violations alleged in this suit occurred 30 days before the Republican

Primary Run-Off Election for federal office, Plaintiffs were not required to give notice of

the violations alleged in this lawsuit.[5]   *See* Exhibit 1 at pp. 27:12-21; 27:21-25 and

28:11-19 (detailing requests for records made in advance of election); Exhibit 2.

The court in *National Coalition for Students with Disabilities Educ. and Legal

Defense Fund v. Scales*, 150 F. Supp. 2d 845, 851-52 (D. Md. 2001), rejected the

argument that a party's suit was barred because it failed to file a pre-suit complaint under

---

[5] "Election" under the NVRA includes general, special, primary or run-off elections.  42
U.S.C. § 1973gg-1.  (referencing 2 U.S.C. § 431(1)).

the NVRA.  In that case, the court held notice was not required under 42 U.S.C. § 1973gg-9(b)(3) because the alleged violation occurred within 30 days before the date of an election for federal office. *Id.* at 852. The complaint in *Scales* stated DSS had 670 clients, of whom approximately 21 made their initial application for services or changed their address during the 30 days preceding the November 2000, federal elections, but none of the applicants were invited to register to vote. *Id.*  Those allegations, the court declared, were sufficient to dispense with the notice provisions of the NVRA. *Id.*  Here, too, Plaintiffs made a pre-suit request within thirty days before an election for Federal office.  Under *Scales*, not all Plaintiffs need have made requests for specific documents prior to the election.  Therefore, Plaintiffs were not required to give notice of any violation prior to filing suit. *See* 42 U.S.C. § 1973gg-9(b)(3).

## 2.  The NVRA notice requirement is practically construed.

Further, federal courts construe the notice provision as a practical guide for enabling states in violation of the NVRA to correct the violation.  It is not construed as a bar to relief. *See, e.g., ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997); *Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995).

In *Condon v. Reno*, 913 F. Supp. 946, 960 (D.S.C. 1995), for example, the court reasoned a party's failure to provide written notice prior to filing an NVRA suit against South Carolina did not bar its suit.  *Id.*  As the court observed, statutory notice is intended to give the state the opportunity to cure violations that are called to its attention. *Id.*  Because South Carolina made plain that it refused to comply with the NVRA, the Court held the purpose of the notice provision had been fulfilled.

20

The Sixth Circuit followed *Condon v. Reno* in *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).  There, the Court concluded that requiring Plaintiffs "to give actual notice [of the lawsuit as a prerequisite to maintaining the suit] would have been unnecessary with regard to the purpose of the notice requirement" because "the language and legislative history of 42 U.S.C. § 1973gg–9(b) indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *ACORN v. Miller*, 129 F.3d at 838.  Because Michigan made clear its refusal to comply with the NVRA, notice would have been futile. *Id.* Michigan would continue to refuse to comply with the Act until forced to do so by judicial intervention.  *Id.*

The parties here are at loggerheads. The Secretary of State and County Defendants openly and plainly refuse to comply with the NVRA violation alleged in this case. The County Defendants have submitted summary judgment evidence indicating their County Circuit Clerks will make the requested voter records available with redaction, but still refuse to make the records available without redaction as Plaintiffs have requested. *See*, e.g., Doc. 79, "Exhibit A," Affidavit of Edna Stevens; Doc. 89, "Exhibit D," Affidavit of Donna Johnson. In circumstances such as these, the purpose of statutory notice is fulfilled because exhaustion of a remedy—like giving notice as a prerequisite to suit—is not required when the act would be futile.

The uncontroverted facts show Plaintiffs requested the records prior to a Federal Election. *See* 42 U.S.C. § 1973gg-8(b)(3).  Not all Plaintiffs need have requested the records in order to maintain an action under the NVRA. *See National Coalition for*

21

*Students with Disabilities Educ. and Legal Defense Fund v. Scales*, 150 F. Supp. 2d 845 (D. Md. 2001). In any event, notice by all Plaintiffs would have been futile. Mississippi and the County Defendants openly and plainly refuse to comply with the NVRA. Pre-suit notice would not change this circumstance.

For these reasons, the County Defendants' reliance on dicta in *Broyles v. Texas*, 618 F. Supp. 2d 661, 691-92 (S.D. Tex. 2009) is misplaced. The *Broyles* court was faced with an NVRA challenge in the context of a municipal election, not a federal election. The Court in *Broyles* held the NVRA did not apply to municipal elections, and it dismissed the suit for failure to state a claim upon which relief could be granted. *Id.* The court supported its order of dismissal, noting that "even if the NVRA otherwise applied to municipal registration issues, the plaintiffs [did] not satisfy the 1973gg-9 [notice] prerequisite." *Id.* According to the Court, "although many of the violations the plaintiffs allege[d] occurred within 30 days before the municipal incorporation vote, that vote was not 'an election for Federal office.'" Thus, no exception to the notice provision applied.

Here, Plaintiffs requested records subject to the NVRA prior to a federal election. They were denied access to complete records. Mississippi and the County Defendants continue to refuse access to unredacted records. No pre-suit notice would change their position. Thus, Plaintiffs have met 42 U.S.C. § 1973gg-9(b)(3).

## E.     The plain language of the NVRA requires public disclosure of the records.

The County Defendants contend summary judgment should be entered in their favor because the records made the subject of this lawsuit are not covered by the NVRA. As explained in Plaintiffs' Motion for Summary Judgment, the NVRA applies to the

records requested in this case, and the Act has been construed to require disclosure of birthdates.

### 1. Standard of statutory construction.

The first step in statutory interpretation is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009) (internal quotations omitted). When the plain meaning of a statute is unambiguous, "this first canon is also the last [and] judicial inquiry is complete." *Project Vote/Voting for America v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

The Fourth Circuit has determined the Public Disclosure Provision of the NVRA is plain and unambiguous. This Court should accord the statutory language its ordinary and common meaning. *See Long*, 682 F.3d at 335.

### 2. The NVRA is broadly applied in accord with its plain meaning.

The plain and common meaning of the Public Disclosure Provision leaves no question that voter rolls, pollbooks, federal post card application and absentee ballot applications and envelopes must be made available for public inspection. It provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, ***all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters***, except to the extent that such record relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. § 1973gg-(6)(i)(1) (emphasis added).

The plain language of the NVRA requires disclosure of "all records" concerning programs or activities conducted for the purpose of ensuring the accuracy and currency of

official lists of eligible voters. *Id.*   As the Fourth Circuit explained in *Project Vote/Voting for America v. Long*, Congress's inclusion of modifiers in the statutory text such as the word "all" indicate its terms should be construed expansively.   682 F.3d at 336 (*citing Nat'l Coal. For Students for Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998)).

The plain language of the NVRA requires disclosure of "*all records*" concerning programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. *Id.*   As the Fourth Circuit explained in *Project Vote/Voting for America v. Long*, Congress's inclusion of modifiers in the statutory text such as the word "all" indicate its terms should be construed expansively.   682 F.3d at 336 (citing *Allen*, 152 F.3d at 290).

The Court's analysis in this case focuses on the meaning of the phrase "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."   Its predicate— "all records"—is unbounded, and must be broadly construed.  *See id*.  The second part of the phrase—"concerning"—means "to relate or refer to," to "be about," or "to have an influence on." *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 707 (E.D. Va. 2010) (citing *Webster's Third New International Dictionary* 470 (2002)). Meanwhile, the term "implementation" means the act of "carry[ing] out" or "accomplish[ing]" or "giv[ing] practical effect to and ensur[ing] ... actual fulfillment by concrete measures." *Long*, 752 F. Supp. 2d at 707.

Turning to the phrase "activities," the NVRA requires states to "ensure that accuracy and currency" of official lists of "eligible voters". 42 U.S.C. § 1973gg-(6)(i)(1) Mississippi discloses documents relevant to the registration of voters, *see* Exhibit 1 at p. 126, and would have the Court treat documents relevant to other factors of accuracy and currency of *eligible* voters on official lists differently.  However, the phrase "activities" is plural and includes all activities with regard to reviewing whether an official list is "current" and "accurate".  *See* 42 U.S.C. § 1973gg *et seq*.

Based on these definitions, "a program or activity covered by the public disclosure provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified to vote." *Long*, F.Supp.2d at 706.  In accord with this plain-meaning construction of the NVRA, *any* "records" which relate to "an activity" ensuring accurate "official lists" of "eligible voters" are subject to the NVRA. *Id.* Plaintiffs now turn to bases supporting the disclosure of each category of requested records.  *See* 42 U.S.C. § 1973-gg6(i)(1).

### a.  Voter rolls.

There can be no reasonable dispute that evaluating voter rolls constitutes an activity ensuring accurate "official lists" of "eligible voters" are maintained. The voter roll is Mississippi's official, complete list of all Mississippi voters, both eligible and ineligible.  *See* Exhibit 1 at p. 107.  The roll is created from in-person and mail-in

registration applications placed in the Statewide Election Management System ("SEMS"). *Id*. at 125.[6]

The roll is comprehensive. It encompasses all registered voters and their designated status, whether active, inactive, purged, rejected or pending. *Id.* An active voter is one whose is eligible to vote and whose name will later be made part of a pollbook. *Id.* An inactive voter is one who has been moved to that status by virtue of documentation or information indicating a charge of address, including a returned voter confirmation card under the NVRA. *Id.* at p. 107-110. A purged voter is one ineligible to vote by reason of death, adjudication of incompetence, conviction of a disenfranchising crime, move, or voluntary request. *Id.* at p. 112. A rejected voter is one whose application to register to vote has been rejected, and a pending voter is one whose application is being processed. *Id.* at 112-114. Reviewing the voter rolls is therefore important to determining whether a voter has been given the appropriate designation by the state. It is necessary to determine, for example, whether a deceased person remains eligible to vote.[7] The registered status of an individual is thus maintained in the voter

---

[6] As the pollbooks are created from the SEMS database, and the pollbooks include birthdates, the representation that the voter roll printouts do not include a field for birthdates is misleading.

[7] *See* MS Prac. Encyclopedia MS Law Election Law § 7 ("One of the most important duties of election commissions is voter roll maintenance. … Proper voter roll maintenance requires the removal of the names of registered voters who have died, who have moved from the local jurisdiction, who have been convicted of disenfranchising crimes, or who have been declared mentally incompetent by a court. The local election commission's duty to conduct voter roll maintenance is ongoing, restricted only by the number of allowable per-diem days for which they may be paid pursuant to state law.")

roll.  And thus the voter roll is a record of an activity utilized to make the official list of eligible voters (the pollbook). As such, it is a record to be disclosed under the NVRA.

### b.  Voter pollbooks.

Voter pollbooks are clearly covered by the NVRA.  A voter pollbook is the list of active voters eligible to vote in a particular election by precinct, and is created from the voter roll.  *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p. 106.  The pollbook contains the name of the voter, address, date of birth, and voter registration number.  *Id.* at p. 113; *See* MISS. CODE ANN. § 23-15-125.  The poll book also has columns for each applicable election with spaces to mark whether a given voter cast a ballot in a given election.  *Id.*  The pollbook is used during the election and marked by poll workers to indicate a voter has cast a ballot. *See* DX 5 and DX 6, admitted into evidence at Exhibit 1, p. 140.  Once a particular individual is noted by a pollworker as "voted" they are not "eligible[8]" to cast another ballot in the same election.  Thus, on election day the pollbook is the most current (to the minute) and accurate list of eligible voters. And marking "voted" in the pollbook is certainly a recorded activity conducted to ensure the accuracy of that list.  Thus, pollbooks must be disclosed under the NVRA.

Mississippi code also identifies another activity regarding the pollbooks' status as an NVRA document.  Pursuant to Mississippi statute, the pollbooks only show voters

---

[8] The Secretary of State's interpretation of the statute appears to restrict the definition of "eligible" to be synonymous with "registered". But that interpretation leads to illogical results, because not all registered voters are eligible to vote in a given election, including the deceased (especially including those recently deceased allowing their registration status to continue to be "Active", and their names to still be in the pollbook on election day).

with an "active" registration status.  *See* MISS. CODE ANN. § 23-15-125.   "When election commissioners determine that any elector is disqualified from voting, by reason of removal from the supervisor's district, or other cause [such as death], that fact shall be noted on the registration book and his name shall be erased from the pollbook."  *Id*. Thus, Mississippi law specifically contemplates the use and inspection of pollbooks "to ensure the accuracy and currency of official lists of eligible voters." *See id*.; *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

As the Court observed at the preliminary injunction hearing, pollbooks are especially significant in primary run-off elections.  In primary run-off elections, officials conducting the elections swap the list of voters who voted in each parties' primary election. The purpose of swapping the pollbooks is to ensure only eligible voters cast ballots in a particular primary run-off, i.e. that Democrats don't vote in the Republican primary and visa versa.  *See* MISS. CODE ANN. 23-15-575 ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates.").  To do this, the officials may print a VR-28 report.  The VR-28 report is an electronic rendering of the pollbook, and it lists all voters who voted in the each party's primary election.  *See* Transcript, Exhibit 1 at p. 162-64. Alternatively, the election officials switch the physical pollbooks used in the primary elections.  *Id.*  Like the VR-28 reports, the pollbooks contain notations next to each voter's name indicating whether he or she cast a ballot in the opposing party's primary election. *See* Exhibit 1, p. 140.

In summary, the pollbook is an official list of persons eligible to vote on election day. It is checked by poll workers when a voter submits a photographic identification and requests a ballot or access to voting terminals to be certain the voter is eligible to vote.[9] *See* Hearing Transcript, Exhibit 1 at p. 115. The pollbook not only prevents multiple votes by the same person on the same election day (by being the first line of defense for the one person, one vote rule, as the pollworker checks people off as having voted), but the pollbooks are switched in a primary run-off election, and reviewed to prevent double voting – an issue of eligibility. *See* MISS. CODE ANN. 23-15-575 ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates."). Reviewing and marking the pollbook is not a superfluous exercise without a purpose. Rather, checking this list is an activity to ensure the accuracy and currency of an official list of eligible voters.

### c. Federal postcard applications.

A federal postcard application is one recognize method of declaring eligibility and registering to vote and it is later used to request an absentee ballot to vote overseas. The Assistant Secretary of State concedes federal postcard applications are subject to open

---

[9] Many of these photographic identifications contain the voter's birthdate. *See* "What will happen at the polls?" located at http://www.msvoterid.ms.gov/ (visited August 8, 2014). Under regulations promulgated by the Secretary of State, poll workers are required to verify the name on a voter's photographic identification is "substantially similar" to the name of the elector in the Statewide Election Management System ("SEMS"), as reflected on the pollbook. *See* MISS. CODE ANN. § 23-15-7-(8); *see* Administrative Regulations of Secretary of State, Part 16, Chapter 1, Rule 4.1. If a voter's middle or last name on the photo identification is different from the poll book due to divorce or marriage, the voter may cast a regular ballot, if a part of the name, the address or *date of birth* on the presented matches a part of the name, address or *birthdate* on the pollbook. *Id.*

disclosure and may not include redaction of birthdates under the NVRA. *See* Exhibit 1, at p. 125-26. Therefore, Plaintiffs are entitled to such records.

### d. Absentee ballot applications and envelopes.

Review of absentee ballot applications and envelopes is also an activity "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i). Similar to an overseas application (which the parties agree is protected by the NVRA), a Mississippi voter may vote by absentee ballot under enumerated circumstances by filling out an appropriate form. *See* MISS CODE ANN. § 23-15-627. If a voter does not meet Mississippi's criteria for an absentee ballot, she is ineligible[10] to vote by absentee ballot. Further, to count the absentee ballot toward the election total, the ballot must be executed in accord with Mississippi law.

Finally, information concerning a voter's history is included in the SEMS database. Voter history includes whether the voter cast an absentee ballot. Thus, review of absentee ballot applications and envelopes is an activity conducted with the purpose of ensuring that an official voter list remains accurate and current.

### 3. None of the records are excepted from the NVRA.

The conclusion that the NVRA applies to the voter records requested herein finds further support in the exceptions to the Public Disclosure Provision. The Provision excepts only two categories of records from its requirement that "all records" be disclosed: (1) records that relate to an individual's declination to register to vote; or (2)

---

[10] Again, "eligible" is different than "registered".

records that identify a voter registration agency through which a particular voter was registered.  *Id.*  The exceptions clause is a critical part of the Public Disclosure Provision.

Because Congress provided only two exceptions to the Public Disclosure Provision's otherwise broad requirements, it would be improper for the court to infer additional exceptions beyond those enumerated in the statute.  Instead, *all* other types of records concerning the implementation of pertinent programs or activities must be made available for public inspection and copying.  *See Long*, 682 F.3d at 336 ("Because the requested applications do not fall within either of these two exceptions . . . they must be made available for public inspection"); *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990) ("Under the principle of statutory construction *expressio unius est exclusio alterius*, the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."); *see also Rosmer v. Pfizer, Inc.*, 272 F.3d 243, 247 (4th Cir. 2001) (stating that inferring additional exceptions into a list of statutory exceptions drafted by Congress runs afoul of the doctrine of *expressio unius est exlusio alteriu*s and would amount to the court performing a "legislative trick").

None of the records requested in this case relates to an individual's declination to register to vote or identifies the voter registration agency through which an individual registered.  Because completed absentee ballot applications and envelopes, poll books, voter rolls, and federal postcard applications do not fall under the exceptions clause, those records must be included in the term "all records" and made subject to the NVRA's public disclosure provision.  *See Long*, 682 F.3d at 336.

**F.     The NVRA requires public disclosure of voter birthdates.**

Federal courts conclude the NVRA mandates disclosure of voter birthdates in information covered by the Act.  Mississippi agrees records covered by the NVRA must disclose voter birthdates.   *See* Exhibit 1, at p. 126.   The County Defendants have nevertheless denied access to the voter records and required redaction of birthdates from such records pursuant to MISS. CODE ANN. § 23-15-165(6)(a), relying on directions from the Secretary of State.  Because the NVRA covers the records request in this case and preempts state law, Plaintiffs are entitled to unredacted records.

First, the National Mail Voter Registration Form—a federally created form that states must accept under the NVRA—requires just the information Mississippi  now seeks to redact.  *See* 11 C.F.R. 9428.4; *Gonzales v. Arizona*, 677 F.3d 383, 395-96 (9th Cir. 2012).  The public disclosure provision allows for disclosure of NMVRF applications. *See* Exhibit 1, at p. 126. Given that the use of this form was authorized simultaneously with the public disclosure provision and contains voter birthdates, there can be no question Congress intended such information to be disclosed under the statute.[11]

---

[11] Disclosure of birthdates is justified for at least six reasons, only some of which are due to the existence of numerous persons with the same name: (1) birthdates on election records, particular voter rolls and pollbooks, are necessary to connect such records with a voter's official registration and application to vote to ensure the voter is properly registered; (2) birthdates are necessary to search conflicting or duplicate voter registrations across counties; (3) age-related information ensures a citizen is age-eligible to vote. *See* MISS. CODE ANN. § 23-15-11; (4) birthdates ensure eligibility of absentee voters requesting to vote absentee because they are over sixty-five years of age. *See* MISS. CODE ANN. § 23-15-627; (5) birthdates on official voter rolls and pollbooks is necessary to detect persons who cast votes in the names of registered voters who are

Second, *Project Vote/Voting for America, Inc. v. Long* addresses many of the questions raised in this suit.  There, Project Vote sued the Virginia Secretary of State seeking an injunction requiring disclosure of completed voter registration applications based on claims of federal preemption. Virginia moved to dismiss the complaint, claiming Project Vote lacked standing to bring the suit and that completed voter applications are not subject to the Public Disclosure Provision. *Id.* at 740. Virginia further claimed birthdates were protected.  The district court granted summary judgment in favor of Project Vote, holding that the Public Disclosure Provision unambiguously required disclosure of voter registration applications and that contrary Virginia law was preempted by the NVRA:

> The NVRA's public disclosure provision grants the plaintiff access to completed voter registration applications with voters' SSNs redacted for inspection and photocopying.  Furthermore, to the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with voters' SSNs redacted, the court FINDS that it is preempted by the NVRA.

*Id.* at 744. The district court granted prospective relief requiring Virginia to permit inspection and copying of the records with only social security numbers redacted.  *Id.*

The Fourth Circuit affirmed. It held the Public Disclosure Provision encompassed the requested records. 682 F.3d 331, 307-08 (4th Cir. 2012).  The Fourth Circuit noted

---

deceased by enabling a party to search by birthdate for corresponding death records. Because many people may share the same name, the date of birth match from a voter record is essential to make a match with external death records; and (6) birthdates are necessary to distinguish between voters with similar names or voters with duplicate entries in voter pollbooks with distinct voter identification numbers due to multiple registrations or a name change (due to marriage, etc.), among other reasons.

that social security numbers are "uniquely sensitive" and could be subject to redaction. Other information contained in voter applications, including voter birthdates, must be included under the NVRA. *See Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012).

The Fourth Circuit explained Congress struck a balance between transparency and voter privacy in enacting the NVRA. According to the Court, Congress weighed privacy interests against transparency and has come down on the side of disclosure:

> It is not the province of the court . . . to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section [6](i)(1), which plainly requires disclosure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loathe to reject a legislative effort so germane to the integrity of federal elections.

*Project Vote/Voting for America*, 682 F.3d at 308 (citing 42 U.S.C. 1973gg-6(i)(1)). Further, the Court noted information subject to disclosure under the NVRA is important to give effect to transparency in the electoral process:

> [i]t is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls. State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer.

*Id.* at 308. The court of appeals then remanded the case to the district court, leaving open the question of whether information beyond social security numbers could be redacted under with the plain language of the statute.

On remand, Virginia asked the district court to redact additional information

including month and date of voter birthdates. The district court denied Virginia's request, citing the Fourth Circuit's holding. *Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012), appeal dismissed (Jan. 31, 2013).  In so doing, the court held "the plain meaning of the NVRA's disclosure requirement" requires disclosure of full voter birthdates. *Id.* This is the only authority nationwide that specifically addresses the issue of whether the NVRA requires disclosure of birthdates.

Finally, Congress could have made the NVRA subject to additional restrictions on the public disclosure of information.  The Freedom of Information Act, for example, provides basic framework for restricting data requested from the federal government. Congress could have included provisions similar to FOIA within the NVRA.  But the NVRA contains no limitation on the public disclosure of documents beyond records that relate to an individual's declination to register to vote or records that identify a voter registration agency through which a particular voter was registered.  It would be improper to impose any additional limitation on the public disclosure of NVRA records.

For the reasons stated herein, the County Defendants are not entitled to summary judgment.  Plaintiffs hereby incorporate by reference their other filings in this case to the extent such filings are responsive to the County Defendants' Partial Summary Judgment Motions, which incorporate too various documents by reference.

## CONCLUSION

Based on the foregoing, Plaintiffs ask the Court to deny the County Defendants' motions for summary judgment on the National Voter Registration Act claims.

Respectfully submitted,

/s/  L. Eades Hogue

Joseph M. Nixon – *pro hac vice*
Texas State Bar No. 15244800
jnixon@bmpllp.com
Kristen W. McDanald – *pro hac vice*
Texas State Bar No. 24066280
kmcdanald@bmpllp.com
Kelly H. Leonard – *pro hac vice*
Texas State Bar No. 24078703
kleonard@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887   Tel.
(713) 960-1527   Fax

L. Eades Hogue
Mississippi State Bar No. 2498
Louisiana State Bar No. 1960
ehogue@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
Pan-American Life Center
601 Poydras Street
Suite 2200
New Orleans, LA 70130
(504) 586-1241 Tel.
(504) 584-9142 Fax
**Lead Counsel**

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2014 a copy of the forgoing instruments and their exhibits were served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission; the Rankin County, Mississippi Election Commission;  and the Simpson County, Mississippi Election Commission via the Court's ECF e-file service.  Plaintiffs have served the remaining Defendants, who have not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

*/s/  L. Eades Hogue*