IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

True the Vote, et al.
PLAINTIFFS

V.  Cause No. 3:14-cv-00532-NFA

The Honorable Delbert Hosemann,
in his official capacity as Secretary
of State for the State of Mississippi,
et al.

DEFENDANTS

DECLARATION OF MADALAN LENNEP

I hereby make the following declaration pursuant to 28 U.S.C. §1746:

1. I am an adult resident of the State of Mississippi over the age of twenty-one. I have personal knowledge of the facts testified to in this declaration.

2. I am a Mississippi voter and employed by Pharos Consulting Services as a certified Project Management Professional and Elections Consultant. In that capacity, I began working with the Mississippi Secretary of State Elections Division staff in 2003 on the selection, implementation, and installation of the Statewide Elections Management System (SEMS), the statewide voting machine system, and other election related projects. I currently work closely with the Elections Division staff to provide support and project assistance for those programs.

EXHIBIT 2

3. SEMS is the Statewide Election Management System used by all 82 counties for voter registration, election management, and other voter roll related activities.

## Voter Rolls

4. SEMS is designed so that voter registration records are maintained in a manner that complies with state and federal law, including the National Voting Rights Act ("NVRA"). A voter roll includes a list of all registered voters, both active and inactive voters, in a county and contains the voter's name, address, date of registration, precinct, voting districts, and voting history. The voter roll does not include a voter's date of birth. Pursuant to state law, maintenance of the voter registration records, including voting rolls, is the responsibility of the circuit clerk and election commission in each county. A copy of the voter rolls for all counties is available for purchase at a cost of $2,100.

## Poll Books

5. Unlike voter rolls, a poll book does not contain a list of all registered voters. Instead, a poll book contains only active voters. Active voters listed in the poll book may cast a regular (in most cases, electronic) ballot in a specified precinct on election day. There were approximately 1.8 million active voters who were listed on poll books during the June 2014 primaries. Inactive voters are not listed in the poll books but are still registered voters.

Inactive voters are able to cast an affidavit ballot.

6. Poll books contain the following information for each voter: name, address, date of registration, unique statewide voter registration number assigned to that voter, date of birth, voting district, and blank columns for the dates of the election and run-off election.

7. Poll books are created through a reporting feature in SEMS. Approximately a week before the election, the county circuit clerk clicks a button to create and print a poll book to be used for that election for each precinct. For example, poll books were printed in the days before the June 3, 2014 primaries. Those same poll books were used for the June 24, 2014 run-off. In the days prior to the November 4 general election, new poll books will be created and printed using the same method.

8. Poll books are not used for adding or subtracting voters from the voter rolls. Poll books are generally not printed until the week before the election. There is a 30 day election registration deadline in Mississippi. NVRA requires systematic purging of voter rolls cease 90 days before an election. Poll books are not used by election officials as an independent source to confirm the accuracy of the voter rolls.

9. No voter is physically erased or removed from a poll book. Instead, new poll books are printed for each primary and general election. The removal of a person as a registered voter occurs through the SEMS system before poll books are printed.

10. Poll books provide poll workers with names of active voters in that precinct. In a primary election, the voter will decide which party he wants to vote in and will go to that table. He will give his name and show his photo identification. The poll manager will find his name in the poll book and write "VOTED" in the appropriate date column on the poll book. The voter will then be directed to sign his name in the receipt book. At that point, the poll manager will provide a ballot style card or ballot as indicated in the poll book by a ballot style number.

11. A receipt book is the document required by the Mississippi law in which the voter signs his or her name. A receipt book contains only the signature of the voter. Voters participating in the Democratic primary will sign one receipt book while voters participating in the Republican primary will sign a separate receipt book.

12. Poll workers also record whether a person cast an absentee ballot by noting such on the poll book after the polls have closed.

13. The poll books are returned to circuit clerks and can be used for verifying during the processing of affidavit ballots and during canvassing of results by election officials. Poll books are delivered to and remain within the exclusively custody of the circuit clerks following the close of election day.

14. Poll books are not involved in the process of removing a voter from the voter rolls. A

voter can be removed from the voter rolls because of death, prior conviction of a disenfranchising crime, moving out of the jurisdiction, voter request, or a declaration of incompetence.

## Plaintiffs' Stated Need for Access to the Birth Dates of Millions Voters

15. A voter's date of birth which is printed on the poll book is generated from information stored within SEMS. Because a voter's actual date of birth (month, day, and year) is sensitive and private, SEMS is also designed to calculate and report a voter's age in years without disclosing a voter's actual date of birth. For example, instead of printing a report disclosing John Smith's birthday of August 1, 1971, SEMS can report that John Smith is 43 years old. Both the age and the actual date of birth come from the same source: SEMS.

16. Plaintiffs claim a need to review dates of birth in order to determine whether a voter who voted in the June 3 Democratic primary election may have then voted in the June 24 Republican primary run-off election. Whether such a cross-over vote occurred can be determined by a review of the poll books, including a review of a voter's name and unique registration number, and without the need to review a voter's date of birth. The poll books will indicate which primary and/or run-off a voter participated in and that participation can be verified by checking for the voter's signatures in the receipt book for the Democratic or Republican primary. There is no birth date listed on the receipt books, which makes

verification using poll book's date of birth impossible.

17. Plaintiffs claim a need to review dates of birth in order to "connect" a voter appearing on the voter roll to that voter's registration application. Voter registration applications are linked to the voter in the SEMS system.

18. Plaintiffs claim a need to review dates of birth in order to search for "conflicting or duplicate voter registrations across counties," to "distinguish between voters with similar names," and to search for duplicate registrations based on name changes "due to marriage." Disclosure of dates of birth is unnecessary for this purpose. Each registered voter is assigned a unique, statewide voter registration number and SEMS will not allow the same voter registration number to be registered in multiple jurisdictions at the same time. Since SEMS is a statewide voter roll system, it allows for the immediate move of the voter record from the previous county to the new county of registration. Also, a search for possible duplicate registrations could be accomplished by reviewing a SEMS report containing the voters name, address, and age (but not date of birth). For example, a John Smith registered in Copiah County who is 65 years old is not the same John Smith registered in Leake County who is 23 years old.

19. Plaintiffs claim a need to review dates of birth in order to determine whether each registered voter is old enough to vote. Disclosure of dates of birth is unnecessary for this

purpose. While a person may register to vote at 17, a person may only vote in a primary if they will be 18 at the time of the general election. First, SEMS is designed so that only voters who will be 18 at the time of the general election appear on the poll books printed from SEMS. Second, instead of printing the date of birth of each voter from SEMS, SEMS can calculate and report the names of any voter who voted on June 24 and who will not be 18 years old at the time of the November 4, 2014, general election.

20. Plaintiffs claim a need to review dates of birth in order to determine whether any voter who requested an absentee ballot because they were sixty-five years or older was in fact sixty-five years or older. Disclosure of dates of birth for this purpose is unnecessary. Instead of having SEMS list the date of birth of all voters, SEMS can report which voters who voted absentee in the June 24 primary were under the age of sixty-five on June 24. Plaintiffs can then match that list to the actual absentee ballot applications to determine whether any person under the age of sixty-five requested an absentee ballot based on the sixty-five and older provision.

21. Plaintiffs claim a need to review dates of birth in order to "detect persons who cast votes in the names of registered voters who are deceased." Disclosure of dates of birth for this purpose is unnecessary. First, Mississippi has enacted a voter photo identification statute requiring each voter to present a valid photo identification before casting a ballot in person

either in the precinct on election day or in the circuit clerk's office during the absentee voting period. Second, SEMS includes an electronic interface with the Department of Health Vital Statistics and receives death record files each month. SEMS then electronically runs a potential match query against all active and inactive voters and provides a report and functionality to assist the county election commission in removing those voters. Additionally, at registration, SEMS runs a query against the DOH data to make sure the voter registration is not for a deceased individual. In the last year, approximately 34,000 deceased voters have been removed from the voter roll through SEMS. Third, SEMS could produce a report listing voters and their age (but not date of birth). Plaintiffs can match voters names and ages with their unnamed and unspecified "external death records" without needing to know the exact date of birth for the voter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 14th, 2014.

*[signature]*
MADALAN LENNEP