IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TRUE THE VOTE, *ET AL*.                                        PLAINTIFFS

V.                                        CIVIL ACTION NO.: 3:14cv532-NFA

THE HONORABLE DELBERT
HOSEMANN, in his official capacity
as Secretary of State for the State
of Mississippi, *ET AL*.                                        DEFENDANTS

_____

**BRIEF OF SECRETARY OF STATE DELBERT HOSEMANN IN
SUPPORT OF MOTION TO STRIKE**

_____

JIM HOOD, ATTORNEY GENERAL

Harold E. Pizzetta, III (Bar No. 99867)
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for Delbert Hosemann, in his
official capacity as Secretary of State
for the State of Mississippi*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

NATURE AND STATUS OF THE PROCEEDINGS ...........................................1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW....................1

RELEVANT FACTS OF RECORD ....................................................2

SUMMARY OF THE ARGUMENT ...................................................3

ARGUMENT ....................................................................4

    A.   The incident reports cannot be presented in a form that would be admissible in evidence ....................................................4

    B.   The incident reports contain inadmissible hearsay under FRE 801(c) as well as hearsay within hearsay not admissible under FRE 805.................................................................7

        1.  Summary Judgment Exhibits – Volume 2:  Declarations of Julia Hoenig and Mike Rowley and Incident Reports [Dkt. 83-2]....................................................9

        2.  Summary Judgment Exhibits – Volume 3:  Declarations of Jeanne Webb; John Hobson and Karen Hobson and Sandy Steinbacher and Incident Reports [Dkt. 83-3].................. 12

        3.  Summary Judgment Exhibits – Volume 4:  Declarations of Roberta Swank, Melinda Kinley and Ruth Wall and Incident Reports [Dkt. 83-4]........................................ 14

        4.  Summary Judgment Exhibits – Volume 5:  Declaration of Susan Morse and Incident Report [Dkt. 83-5] ............................ 15

    C.   The commonality of the declarations and incident reports............. 17

CONCLUSION.................................................................................................18

CERTIFICATE OF SERVICE...................................................................... 19

# TABLE OF AUTHORITIES

## Federal Cases

*Calderon v. Bank of America,*
  941 F. Supp.2d 753, (W.D. Tex. 2013) ....................................................... 2, 5

*Cutting Underwater Technologies, USA, Inc. v. Con-Dive*, LLC,
  *et al.*, 2011 WL 1103679 (E.D. La. March 22, 2011) ...................................... 4

*Eason v. Thaler,*
  73 F.3d 1322 (5th Cir. 1996) ........................................................................... 5

*Estate of Thompson v. Sun Life Assur. Co. of Canada,*
  354 Fed.Appx. 183 (5th Cir. 2009) ................................................................. 2

*Jacobs v. Port Neches,*
  7 F. Supp.2d 829 (E.D. Tex. 1998) ................................................................. 6

*Manis v. Lawson,*
  585 F.3d 839 (5th Cir. 2009) ........................................................................... 6

*Martin v. John W. Stone Oil Distributor, Inc.,*
  819 F.2d 547 (5th Cir. 1987) ........................................................................... 5

*McIntosh v. Partridge,*
  540 F.3d 315 (5th Cir. 2008) ........................................................................... 5

*Pegram v. Honeywell, Inc.,*
  361 F.3d 272 (5th Cir.2004) ............................................................................ 5

*Resolution Trust Corp. v. Starkey,*
  41 F.3d 1018 (5th Cir.1995) ............................................................................ 5

*Rock v. Huffco Gas & Oil Co., Inc.,*
  922 F.2d 272 (5th Cir. 1991) ...................................................................... 6, 11

*Snapt Inc. v. Ellipse Communications Inc.,*
  430 Fed.Appx. 346 (5th Cir. 2011) ............................................................. 5, 8

*Spring Street Partners-IV, L.P. v. Lam,*
   730 F.3d 427 (5th Cir. 2013) ........................................................................ 5

*U.S. v. Obregon-Reyes,*
   507 Fed.Appx. 413 (5th Cir. 2013) ................................................................ 5

*United States v. Dotson,*
   821 F.2d 1034 (5th Cir. 1987) ....................................................................... 6

*United States v. Jimenez,*
   275 Fed. Appx. 433 (5th Cir. 2008) .............................................................. 6

*Wellogix, Inc. v. Accenture, LLP,*
   788 F. Supp.2d 523 (S.D. Tex. 2011) ........................................................... 5

## Federal Statutes

42 U.S.C. § 1973gg-6(i) .................................................................................. 1

## Federal Rules

F.R.C.P. 56(e)(1) ............................................................................................. 5

FRE 805 ..................................................................................................passim

FRE 807(1) .................................................................................................... 12

Rule 56(c)(2) of the Federal Rules of Civil Procedure.................................. 2, 4

Rule 56(c)(4) of the Federal Rules of Civil Procedure............................. 3, 4, 17

Rule 801(c) of the Federal Rules of Evidence.......................................... 3, 5, 7, 8

## NATURE AND STATUS OF THE PROCEEDINGS

True the Vote and its individual co-plaintiffs ("plaintiffs") are suing Mississippi Secretary of State Delbert Hosemann ("Secretary Hosemann"), the Mississippi Republican Party, and nine Mississippi County Election Commissions for allegedly violating the National Voter Registration Act's ("NVRA") provisions for "public disclosure of voter registration activities,"  42 U.S.C. § 1973gg-6(i), and on a Fourteenth Amendment vote dilution claim targeting the June 24, 2014 run-off between Thad Cochran and Chris McDaniel that decided the Party's nominee for United State Senator in the Fall general election.  *See* First Amended Complaint [Dkt. 58].  Plaintiffs moved for a temporary restraining order, or  in the alternative, preliminary injunction seeking the full and final relief sought on their NVRA counts. [Dkt. 8].  Plaintiffs have now moved for partial summary judgment on their claims under the public disclosure provision of the NVRA.  [Dkt. 83].

On July 24, 2014, the Court conducted an evidentiary hearing on plaintiffs' motion for preliminary injunction and established a briefing schedule.  Secretary Hosemann submits this brief in support of his motion to strike certain exhibits from plaintiffs' motion for partial summary judgment.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The issue presented by Secretary Hosemann's motion to strike is whether the Court should exclude certain declarations and exhibits, *i.e.,*

incident reports, submitted by plaintiffs in support of their motion for partial summary judgment on their NVRA claims.  The admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial.  C*alderon v. Bank of America*, 941 F. Supp.2d 753 (W.D. Tex. 2013).  Rule 56(c)(2) of the Federal Rules of Civil Procedure ("FRCP") provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  *Id.*  A motion to strike is reviewed for abuse of discretion.  *Estate of Thompson v. Sun Life Assur. Co. of Canada,* 354 Fed.Appx. 183, 187 (5th Cir. 2009).

## RELEVANT FACTS OF RECORD

On August 6, 2014, plaintiffs filed their motion for partial summary judgment on their claims under the public disclosure provision of the NVRA submitting, *inter alia*, certain declarations and incident reports of True the Vote volunteers.  [Dkt. 83] at pp. 2-3; *see also* [Dkt. 83-2, 83-3, 83-4 and 83-5 and accompanying exhibits].  According to the declarations, the incident reports were prepared by volunteers sent out by True the Vote after the run-off election to inspect and/or obtain copies of specific election-related documents used in the run-off from county officials.  [Dkt. 83-2, 83-3, 83-4 and 83-5].

Secretary Hosemann submits this brief in support of his motion to strike, or in the alternative, his objections to certain declarations and

2

exhibits filed by plaintiffs in support of their motion for partial summary judgment.  [Dkt. 83].  Secretary Hosemann moves the Court for an order striking the following exhibits from plaintiffs' motion for partial summary judgment:  [Dkt. 83-2, Exhs. 3, 3-A through 3-H; Exhs. 4, 4-A & 4-B]; [Dkt 83-3, Exhs. 5, 5-A through 5-D; Exhs. 6, 6-A & 6-B; Exhs. 7, 7-A]; [Dkt. 83-4, Exhs. 9, 9-A; Exhs. 10, 10-A through 10-F; Exhs. 11, 11-A & 11-B]; [Dkt. 83-5, Exhs. 12, 12-A through 12-D; Exh. 13].

## SUMMARY OF THE ARGUMENT

Plaintiffs have submitted a number of documents in support of their motion for partial summary judgment captioned "True the Vote Incident Report," purportedly filled out by volunteers sent out by True the Vote following the run-off election to certain counties throughout Mississippi. [Dkt. 83-2; 83-3; 83-4; 84-5 and accompanying exhibits].  These incident reports contain inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence ("FRE") and in some instances, contain hearsay within hearsay not meeting the criteria for admissibility under FRE 805.  Rule 56(c)(4) of the FRCP provides that an affidavit or declaration used to support or oppose a motion for summary judgment must set out the facts that would be admissible in evidence.  Here, the identified declarations and exhibits do not meet the standards for admissibility under the applicable rules of civil procedure or rules of evidence and should be stricken accordingly.

## ARGUMENT

### A.  The incident reports cannot be presented in a form that would be admissible in evidence.

Rule 56(c)(2) of the FRCP provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[1]  *Id.*  FRCP 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, *set out the facts that would be admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated."  *Id.*  (emphasis supplied).  The fatal flaw here is that plaintiffs cannot set out facts contained in the incident reports that would be admissible in evidence as required by FRCP 56(c)(4).  The out-of-court statements contained in the cited incident reports, even if offered by a True the Vote volunteer on the witness stand, would not be admissible in evidence and thus should be excluded at the summary judgment stage.

---

[1]      Some courts have held that "[u]nder the now-applicable Rule 56(c)(2) . . . it is no longer necessary for a party to file . . . a motion [to strike]; instead, the party may simply object to the material.  *Cutting Underwater Technologies,USA, Inc. v. Con-Dive*, LLC, *et al.*, 2011 WL 1103679 (E.D. La. March 22, 2011) (holding that in light of the change, the motion to strike will be treated as an objection).  Thus, Secretary Hosemann submits this motion to strike, or in the alternative, his objections to the hearsay material submitted in support of Plaintiffs' motion for partial summary judgment pursuant to FRCP 56(c)(2).

Rule 801(c) of the FRE defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.*; *see also U.S. v. Obregon-Reyes*, 507 Fed.Appx. 413, 424 (5th Cir. 2013). Statements of a third party in a summary judgment affidavit, offered to prove the truth of the matter asserted, constitute inadmissible hearsay. *Snapt Inc. v. Ellipse Communications Inc.,* 430 Fed.Appx. 346, 352 (5th Cir. 2011); *see also Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 549 (5th Cir. 1987).

The Fifth Circuit has said "the admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial." *Calderon v. Bank of America*, 941 F. Supp.2d 753, 758 (W.D. Tex. 2013) (citing *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 285 (5th Cir.2004) (quoting *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir.1995)); *see also Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 442 (5th Cir. 2013) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

"Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence." W*ellogix, Inc. v. Accenture, LLP*, 788 F. Supp.2d 523 (S.D. Tex. 2011) (citing F.R.C.P. 56(e)(1)); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008). With respect

to hearsay within hearsay, each part of the combined statement must conform with an exception to the hearsay rule to be admissible under FRE 805.  *See* FRE 805; *see also Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272 (5th Cir. 1991).[2]

The hearsay material in the incident reports is being offered by plaintiffs for the truth of the matter asserted, *i.e.*, that True the Vote volunteers were denied access to election-related document used in the run-off in what plaintiffs' contend is a violation of the NVRA.  *See* First Amended Complaint [Dkt. 58] at p. 12 ¶¶ 45, 48.  ("Immediately following the election in July 2014, True the Vote again requested voter records pursuant to the NVRA Section 8(i)(l) from Copiah County, Hinds County, Jefferson Davis

---

[2]    Some of the incident reports contain hearsay within hearsay similar to witness statements within police reports which are inadmissible hearsay if offered to prove the truth of the matter asserted. *See Manis v. Lawson*, 585 F.3d 839, 844 n.3 (5th Cir. 2009) ("Third party statements included in a police report are not admissible under the public records exception to the hearsay rule."); *Jacobs v. Port Neches*, 7 F. Supp.2d 829, 835 (E.D. Tex. 1998); *Martin v. Strain*, No. 08–1197, 2009 WL 1565869(E.D. La. June 2, 2009 ("To the extent that defendants proffer the police reports to prove the truth of the hearsay statements of the . . . witnesses to the incident, which are contained in, they are not admissible."); *Automatique New Orleans, Inc. v. U–Select–It, Inc.*, No. 94–3179, 1995 WL 569226 (E.D. La. Sept. 25, 1995) (holding a police report was inadmissible because the officer who wrote the report "did not observe anything but merely recorded the observations of another person."). Witness statements within a police report are hearsay within hearsay. *See United States v. Jimenez*, 275 F. App'x 433, 437 n.1 (5th Cir. 2008) ("Police reports are generally excludable as hearsay."); *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987) (holding that statements within a police report should have been excluded as hearsay within hearsay); *Martinez v. Aetna Ins. Co.*, No. 97–2388, 1999 WL 169434 at *3 (E.D. La. Mar. 24, 1999) (noting that information in police reports that does not reflect the maker's personal knowledge, such as witness statements, is hearsay within hearsay and does not fall under the business records exception to the hearsay rule).

County, Lauderdale County, Leake County, Madison County, Rankin County, Simpson County, and Yazoo County.  True the Vote was impermissibly denied access to the complete voter records . . . .") ("True the Vote has expended significant time and resources to investigate the issues concerning the Republican Primary Run-Off Election, and to assist its local community partners with voting concerns, including potentially improper election administration practices in local jurisdictions of Mississippi.  By preventing access to these records, Defendants are denying True the Vote's rights under the NVRA, subverting the Act's purpose and inhibiting True the Vote's efforts to carry out its voter protection and election administration programs and activities.").  *See also* [Dkt. 83] at p. 2.  ("Defendants have unlawfully denied plaintiffs access to these records in violation of the NVRA, relying on Mississippi state law.").

### B. The incident reports contain inadmissible hearsay under FRE 801(c) as well as hearsay within hearsay not admissible under FRE 805.

Plaintiffs offer a number of documents captioned "True the Vote Incident Report," purportedly filled out and signed by volunteers sent out by True the Vote following the run-off election to certain counties throughout Mississippi.  [Dkt. 83-2; 83-3; 83-4; 84-5 and accompanying exhibits].  These incident reports contain volunteers' written summaries of conversation with county officials in Simpson, Rankin, Leake, Jefferson Davis and Yazoo

7

counties.  *Id.*  In some instances, the True the Volunteer could not even identify the name of the person to whom they were speaking but whose statements have nonetheless been recounted in the incident reports.

Other incident reports include hearsay within hearsay – that is – statements that were made by a particular county official recounting their conversation with yet another person such as representatives from the Secretary of State and/or Attorney General's office.  For hearsay within hearsay to be admissible under FRE 805, each part of the combined statement must conform with an exception to the hearsay rules.  The hearsay within hearsay statements presented do not conform to an exception to the hearsay rules.

Furthermore, despite what plaintiffs will no doubt argue, the hearsay incident reports are being offered for the truth of the matter asserted – namely that True the Vote volunteers were denied access to specific election-related documents as alleged in the First Amended Complaint and in the motion for partial summary judgment.  The fact that the hearsay material has been reduced to writing by the True the Vote volunteers in the incident reports does not obviate the fact that the incident reports contain inadmissible hearsay material under FRE 801(c).  *See Snapt Inc.,* 430 Fed.Appx. at  352 ("Neither the district court nor this court may properly consider hearsay evidence in affidavits...").  As such, the declarations and the

8

incident reports should be stricken and not considered in support of plaintiffs'
motion for partial summary judgment.

In all, plaintiffs have attached nine (9) declarations and thirty (30)
incident reports summarizing encounters with county officials in the Rankin,
Simpson, Leake, Jefferson Davis and Yazoo County Circuit Clerk's Offices on
July 7 and 8, 2014. [Dkt 83-2, 83-3, 83-4 and 83-5]. Plaintiffs divided the
declarations and incident reports into four (4) Exhibit groups for purposes of
the motion for partial summary judgment, and each group is addressed
accordingly below.[3]

> 1. **Summary Judgment Exhibits – Volume 2:
> Declarations of Julia Hoenig and Mike Rowley and
> Incident Reports [Dkt. 83-2].**

Plaintiffs' motion for partial summary judgment includes eight (8)
incident reports prepared by Julia Hoenig ("Hoenig") recording purported
conversations with county officials in the Simpson, Rankin, and Jefferson
Davis counties. [Dkt. 83-2], Exhs. 3-A through 3-H. These incident reports
contain inadmissible hearsay and should be stricken. For example, Exhibit
3-A includes Hoenig's recitation of an alleged voice mail left by LuAnn Baily,
the Interim Circuit Clerk for Simpson County, pertaining to Hoenig's visit

---

[3]    This motion does not endeavor to quote from every individual declaration or
incident report separately, but instead sets forth for illustrative purposes, the types
of inadmissible hearsay material contained in the declarations and incident reports
from each of Plaintiffs' exhibit groups.

the previous day.  Hoenig reports the contents of the voice mail in the

following terms:

> LuAnn Bailey left a voicemail pertaining to our visit to her
> county yesterday.  Her response:
>
> 1.      We could come at 2:00 p.m. to see poll books only if they
> redacted BD
>
> 2.      We are unable to see absentee apps/envelopes b/c this
> doesn't fall under the NVRA law.  It cannot be reviewed by
> anyone other than campaign affiliated volunteers or candidate b/c
> they are considered part of the ballot box.  We may submit
> written request and the AG's lawyers will review

[Dkt. 83-2], Exh. 3-A.  (punctuation omitted in original).  Likewise in Exhibit

3-D, Hoenig recounts a conversation she had with Rebecca Boyd, the Rankin

County Circuit Clerk, on July 7, 2014:

> Rebecca Boyd came out of office stating we must leave.  She gave
> us the attached email & statue that dictates we are not, as
> regular citizens, allowed to view absentee ballot info.  She stated
> that she just called the SOS who told her we must leave.
> However, this was clarified in the attachment that she actually
> spoke to the Sr. Attorney for the SOS.  Rebecca was insistent that
> we leave asap, so much so, that she asked we leave all contents
> as is instead of putting back in their order we found them in.  We
> left, but came back 5 min. later to request Rebecca give us this
> order in writing.  She did – she [sic] attachments.

[Dkt. 83-2], Exh. 3-D.  Not only are the statements by Boyd hearsay, but the

statements regarding Boyd's alleged conversation with an attorney for the

Secretary of State's Office constitute hearsay within hearsay for which no

exception applies.  *See Rock,* 922 F.2d at 272; *see also* FRE 805.

Accompanying Mike Rowley's ("Rowley") declaration are two (2) incident reports, both recounting interactions with Rankin County election officials.  [Dkt. 83-2], Exhs. 4-A and 4-B.  Both incident reports are replete with inadmissible hearsay and should be stricken.  *Id.; see e.g.*, Exhibit 4-A ("Upon requesting the above mentioned items at the Circuit Court office, I was told they are separate from the ballot at the Bd. of Elections the evening of the election.  I requested to see the Absentee App and envelopes.  She stated that there was information such as Social Security numbers and Driver License numbers on some that need redacted, and it would take 'several days.'").  *Id.*  In Exhibit 4-B, Rowley writes:

> While sorting precinct 119 in Ranking County's Absentee paperwork I uncovered one envelope with no accompanying application and one application with no accompanying envelope. When I asked the Deputy Clerk if she was aware, she stated 'I recognize that signature, its mine'[.]  I asked her if her name (which was reprinted on the envelope) she would not answer. The application I had in hand was for a Frank [illegible] I asked if her name was Frank, she laughed and said no.

[Dkt. 83-2], Exh. 4-B.  In Exhibit 4-B, Rowley also acknowledges that he could not identify the person to whom he was speaking.  ("At no time would she give her name.  She wore no nametag.").  *Id.*  Thus, Exhibit 4-B is the hearsay statement of an unidentified individual and hardly provides the guarantees of trustworthiness required under FRE 807(1) when analyzing

the hearsay under the rule's residual exception.  Therefore, the incident

reports in this exhibit group should be stricken.

> **2.** **Summary Judgment Exhibits – Volume 3:**
> **Declarations of Jeanne Webb; John Hobson; Karen**
> **Hobson and Sandy Steinbacher and Incident Reports**
> **[Dkt. 83-3].**

In this group, plaintiffs' offer four (4) more declarations along with

eight (8) incident reports.  [Dkt. 83-3].  Like the previous exhibit group of

incident reports in subsection (1), *supra*, the incident reports of Jeanne Webb

("Webb"), John and Karen Hobson and Sandy Steinbacher ("Steinbacher") are

a virtual catalogue of hearsay material and should be stricken.  For instance

in Exhibit 5-A, Webb describes the type of incident as "Denial of Access of

June 2014 Election Absentee Ballots and Poll Books" and recounts a

conversation with a Copiah County election official.  Webb writes:

> I was advised there was a group who was there who had just
> reviewed the ballots, she had just sealed the box and was not
> sure if she could unseal the box, there might be a possible time
> frame involved.  She stated she had to call the Secretary of State
> to find out, but was tied up with the group reviewing the Poll
> Books and needed to be there to redact the DOB.  She stated I
> could leave a Public Information Request of needed material and
> she would call me tomorrow or I could call her.  Edna also quoted
> statute 23-15-911 and stated she needed to contact the Secretary
> of State to verify if we could review the absentee ballots & poll
> books**.**

[Dkt. 83-3], Exh. 5-A.  In Exhibit 5-D, Webb describes at length a

conversation with the Circuit Clerk of Rankin County, Rebecca Boyd:

> According to Circuit Clerk Boyd, the procedure for the absentee ballots and the affidavit ballot is, once the ballots are completed by the elector, the ballots are placed in the appropriate envelopes and sealed. The envelopes are then given to the Election Commission Board who then opens the envelopes and removes the ballots. If this is the procedure, where did these accepted ballots which had no folds in them come from??

*Id.* Not only does Exhibit 5-D contain inadmissible hearsay, but the last sentence contains random speculation on the part of Webb. *Id.* Similarly, Karen Hobson describes, in Exhibit 6-A, a conversation with Donna Jill Johnson, the Circuit Clerk for Lauderdale County, in the following terms:

> Ms. Johnson said she believed she could comply [&] email them week of July 14. Note: Re: viewing of Absentee Ballot Materials, she (Ms. Johnson) revealed that she just Found out <u>today</u> that we couldn't review them. The Circuit Clerk also said she wasn't sure how much personal voter info would be included in the docs. . . . No "<u>DNA</u>" for sure!

[Dkt. 83-3], Exh. 6-A (punctuation and emphasis in original). Because Exhibit 6-B is signed by both John Hobson and Karen Hobson, it cannot be ascertained who actually recorded the hearsay statements of Ms. Johnson. In Exhibit 7-A, Steinbacher reported the following conversation with the Rankin County Circuit Clerk:

> - told by circuit clerk we must give written notice of intent to look @ absentee ballots
>
> - told we must be certified/credentialed to look at ballots-certificate of service from Secretary of State.

*Id.* at Exh. 7-A.

3. **Summary Judgment Exhibits – Volume 4:**
   **Declarations of Roberta Swank, Melinda Kinley and**
   **Ruth Wall and Incident Reports [Dkt. 83-4].**

In Exhibit 9-A, the incident report signed by Roberta Swank ("Swank")

summarizes a conversation with the Yazoo County Circuit Clerk.  [Dkt. 83-4],

Exh. 9-A.  Here Swank writes:  *"[a]ll* said we couldn't review because we did

not have 'credentials.'  *They* said we could have looked at document before

the records were 'locked.'"  *Id.*  (emphasis added).  In addition to the hearsay,

the identities of "all" and "they" referenced in Exhibit 9-A are not known.  In

Exhibit 10-C, True the Vote volunteer Melinda Kinley ("Kinley") writes that

she was told by Bill Billingsly that "[c]itizens can't participate in the

examination process.  Only the McDaniel [&] Cochran people."[4]  [Dkt. 83-4],

Ex. 10-C.  In a separate incident report dated July 8, 2014, Kinley recounts a

conversation with Barbara Dunn, the Circuit Clerk for Hinds County, which

reads in part:

> Ruth and I asked if it was true that only 2 people from each party
> were allowed to be in the examination room.  B. Dunn made a
> quizzical face (a face that said why not?)  I asked if she could find
> out what the rule is for this.  She very quickly said 'Oh, it's too
> crowded in there.  There is not enough room.
>
> B. Dunn said we could bring 2 chairs where we had been
> standing for 3 hours.  (Ruth and I were told 1st thing in the
> morning that when they finished examining 1 box they would let

---

[4]      According to the July 7, 2014 incident report of Kinley, Bill Billingsly is a
volunteer for the McDaniel campaign.

us start looking at the box so – we stood outside the door + waited
+ waited!). . . .

[Dkt. 83-4], Exh. 10-D.

Finally, in Exhibit 11-A, Ruth Wall, another True the Vote volunteer,

describes a conversation with someone she identified as Bill Billingsly:

Bill Billingsly, a volunteer for McDaniel's campaign, was walking
out of Clerk's ofc + stated they were about to begin examining the
ballots in the conference room.  Told us we could not see the
absentee docs or be in exam room because State law says only 2
reps for each candidate were allowed.  Bill agreed that when they
were finished he could bring the docs back to Clerk + then we
could see them.  He volunteered to call Melinda + said it might be
an hour or so before they were finished.

*Id.*, Exh. 11-A.

### 4.   <u>Summary Judgment Exhibits – Volume 5</u>: Declaration of Susan Morse and Incident Report [Dkt. 83-5].

Finally, plaintiffs offer several incident reports prepared by volunteer

Susan Morse ("Morse").  [Dkt. 83-5], Exhs. 12-A through 12-D.  Like the other

incident reports, the Morse reports represent more of the same – inadmissible

hearsay.  For instance, in Exhibit 12-B, Morse describes a conversation with

Kathy Henderson, the Leak County Circuit Clerk:

Clerk Kathy Henderson called me this [illegible] at
approximately 9:43 a.m. to say we could come in to the office
today and view the poll books but could not view the absentee
Ballot Applications . . . .

15

*Id.*  In Exhibit 12-D, Morse records another conversation with Ms. Henderson

which reads, in part:

> At noon, Ms. Henderson called us up to the counter to give us an
> update.  She had spoken to the Attorney General's office + had
> given him our memo from Atty Hogue mentioned above.  The
> AG's opinion was that we did not have a right to inspect the
> Ballot Box documents requested that only a candidate or a
> candidate rep can inspect these documents.

*Id.*  Thus, Exhibit 12-D not only contains inadmissible hearsay material, *i.e.,*

the alleged statements of the Leake County Circuit Clerk, but the exhibit

also contains hearsay within hearsay – that being the alleged comments of

the Attorney General relayed back to the circuit clerk.

While not providing an incident report, Exhibit 13, a declaration from

Roy Nicholson ("Nicholson"), describes a conversation he had with Becky

Boyd, the Rankin County Circuit Clerk.  [Dkt. 83-5], Exh. 13.  According to

Nicholson:

> 4.     In the presence of three witnesses whose names are Sandra
> Inman, Larry and Elva Eubanks, Ms. Boyd informed me that she
> could not and would not permit me to access and inspect the
> voter poll books because the books contained information deemed
> by the Secretary of State to be confidential.  She explained she
> was in possession of an e-mail from the Secretary of State
> instructing not to disclose poll books to the public with
> confidential information contained therein.
>
> 5.     In addition to claiming the Secretary of State's instructions
> as reason to not allow us to even view the original poll books she
> added that the County Attorney told her that the poll books are
> not subject to public information requests because they are not
> public records but county property.

*Id.*  Again, this declaration contains both hearsay and hearsay within hearsay as it purports to explain others' explantion of why the election material could not be provided.

### C.     The commonality of the declarations and incident reports.

The incident reports offered by plaintiffs in support of their motion for partial summary judgment share one thing in common – they contain statements, other than one made by the declarant while testifying at trial or hearing – offered in evidence to prove the truth of the matter asserted; that the True the Vote volunteers were denied access specific election-related documents used in the run-off by county election officials.

The incident reports contain not only first level hearsay, but also inadmissible hearsay within hearsay.  These second level hearsay statements are not admissible under FRE 805 and thus not proper for consideration under FRCP 56(c)(4).  While plaintiffs will no doubt offer a multitude of reasons why the declarations and incident reports fall under one or more hearsay exceptions – they do not – and should be stricken from consideration in connection with the motion for partial summary judgment.

# CONCLUSION

For all of the reasons set forth, Secretary Hosemann respectfully requests that the Court strike the exhibits identified herein.

This the 15th day of August, 2014

Respectfully submitted,

DELBERT HOSEMANN, in his official capacity as Secretary of State for the State of Mississippi

By:    JIM HOOD, ATTORNEY GENERAL


By:    */S/ Harold E. Pizzetta, III*
Harold E. Pizzetta, III (Bar No. 99867)
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record having entered an appearance in this action to date.

*/S / Harold E. Pizzetta, III*