IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik, | § § § § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Cause No. 3:14-cv-00532-NFA |
| The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission, | § § § § § § § § § § § § § § § § § § § § | |
| *Defendants*. | § § | |

**PLAINTIFFS' REPLY BRIEF**
**IN SUPPORT OF A PRELIMINARY INJUNCTION**

Case 3:14-cv-00532-NFA   Document 119   Filed 08/15/14   Page 2 of 30


## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

I.   SUMMARY OF ARGUMENT ........................................................... 1

   A.   The Preliminary Injunction hearing ................................................. 1

   B.   Elements in Support of Preliminary Injunction Have Been Met ................... 3

II.   ARGUMENT AND AUTHORITIES ..................................................... 3

   A.   Plaintiffs have demonstrated a substantial likelihood of success on the merits ................................................................................. 4

      1.   Statutory notice was provided ................................................. 4

      2.   Any lack of notice is not a bar to this action ............................... 4

      3.   The records requested are contemplated by the NVRA ..................... 6

         a.   Standard of statutory construction ...................................... 7

         b.   The NVRA is broadly applied in accord with its plain meeting ........... 7

            i.  Voter rolls .......................................................... 10

            ii. Voter pollbooks ..................................................... 11

            iii. Federal postcard applications ....................................... 14

            iv. Absentee ballot applications and envelopes ......................... 14

         c.   None of the records are excepted from the NCRA ........................ 14

      4.   The Chief Election Official should direct those to whom it has delegated authority to comply with the NVRA – to produce documents with birthdates unredacted ................................................... 15

         a.   Defendants' representation that courts find the Secretary of State may shed its responsible under the NVRA by delegating its authority to local officials is misleading and wrong ............................... 18

         b.   Courts have foreclosed this issue, finding delegation is not a defense ........................................................... 19

      B.     The NVRA provides the public the opportunity to audit States' elections. 20

      C.     Plaintiffs will be harmed by a denial of the relief requested ....................... 20

      D.     Public interest is best served by ensuring Mississippi complies with
              the NVRA .............................................................................................. 21

V.     CONCLUSION ..................................................................................................... 22

CERTIFICATE OF SERVICE ............................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ass'n of Cmty. Organizations for Reform Now v. Miller*,
    129 F.3d 833 (6th Cir. 1997) ............................................................................ 6

*ACORN v. Edgar*,
    56 F.3d 791 (7th Cir. 1995) ............................................................................ 7

*Condon v. Reno*,
    913 F. Supp. 946 (D.S.C. 1995) .................................................................... 6

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
    324 F. Supp. 2d 1358 (N.D. Ga. 2004) ........................................... 20, 21, 22

*Elrod v. Burns*,
    427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ............................... 22

*Harkless v. Brunner*,
    545 F.3d 445 (6th Cir. 2008) ......................................................... 16, 19, 20

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ........................................................................ 16

*League of Women Voters v. Cobb*,
    447 F. Supp. 2d 1314 (S.D. Fla. 2006) ....................................................... 21

*Nat'l Coal. For Students with Disabilities Educ. & Legal Def. Fund v. Scales*,
    150 F. Supp. 2d 845 (D. Md. 2001) .............................................................. 5

*Nat'l Coal. For Students with Disabilities Educ. & Legal Def. Fund v. Allen*,
    152 F.3d 283 (4th Cir. 1998) ..................................................................... 8, 9

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*,
    579 F.3d 502 (5th Cir. 2009) ...................................................................... 22

*Project Vote v. Blackwell*,
    455 F. Supp. 2d at 707 (N.D. Ohio 2006) .................................................. 21

*Project Vote/Voting For Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ........................................................... 9

*Project Vote/Voting for American v. Long*,
    682 F.3d 331 (4th Cir. 2012) ...............................................................passim

*Scott v. Schedler,*
    2013 WL 264603 (E.D. La. Jan. 23, 2013) ................................................... 16

*Tex. Med. Providers Performing Abortion Services v. Lakey,*
    667 F.3d 570 (5th Cir. 2012) ..................................................................... 3

*United States v. Missouri,*
    535 F.3d 844 (8th Cir. 2008) ..........................................................passim

*United States v. New York,*
    255 F. Supp. 2d 73 (E.D.N.Y. 2003) ................................................. 16, 20

*United States v. Rocha,*
    916 F.2d 219 (5th Cir. 1990) .................................................................. 15

*Willenbring v. United States,*
    559 F.3d 225 (4th Cir. 2009) .................................................................... 7

## Statutes

42 U.S.C. § 1973gg ........................................................................................ 4

42 U.S.C. § 1973gg-(6)(i)(1) ................................................................. 8, 9, 10

42 U.S.C. § 1973gg-2(a) ................................................................................ 7

42 U.S.C. § 1973gg-6(i) ........................................................................... 14, 17

42 U.S.C. § 1973gg-8 ................................................................................... 16

42 U.S.C. § 1973gg-9 ................................................................................ 4, 18

42 U.S.C. § 1973gg-9(b) ................................................................................. 6

42 U.S.C. § 1973gg-9(b)(3) ............................................................................ 5

MISS. CODE ANN. § 23-15-125 ............................................................... 11, 12

MISS. CODE ANN. § 23-15-627 .................................................................... 14

MISS. CODE ANN. § 23-15-7-(8) .................................................................. 13

MISS. CODE ANN. 23-15-575 ................................................................. 12, 14

**OTHER**

*Webster's Third New International Dictionary* 470 (2002) ................................................. 9

TMS Prac. Encyclopedia MS Law Election Law § 7 ........................................................ 11

TO THE HONORABLE DISTRICT COURT:

Plaintiffs True the Vote, et al. ("True the Vote") file this reply brief in support of a preliminary injunction (in connection with Docs. 115 and 118, and respectfully show the Court the following:

## I.
## SUMMARY OF ARGUMENT

This case considers whether federal voters' rights are being inhibited in the State of Mississippi.  The alleged violations are ones for which monetary relief is not available, as in the case of political speech and access to public records; therefore, injunctive relief is appropriate.  There is already undisputed evidence that the one-person, one-vote rule was violated in the June 24, 2014 Senate Primary Run-Off election, and continued efforts to prevent further investigation constitute immediate, irreparable harm.

**A.     The Preliminary Injunction Hearing**

On July 24, 2014, the Court held an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction. *See* Exhibit 1.  At the hearing, testimony was offered by Ms. Engelbrecht (True the Vote officer), Ms. Turner (Assistant Secretary of State), Colonel Philips (concerned Mississippi citizen), Mr. Nicholson, Ms. Swenson (True the Vote volunteer), and Ms. Patrick.  *Id.*

Plaintiffs testified they requested access to complete voter rolls, voter pollbooks, absentee ballot applications and envelopes and federal postcard applications (collectively the "voter records") immediately prior to and following the now-contested 2014 Republican Primary Run-Off Election. Plaintiffs' requests were either denied in full, or

Plaintiffs were informed that any responsive documents would require the redaction of birthdates. In some cases, Plaintiffs were told they had to pay for the cost of such redactions at unreasonable fees. Defendants have agreed to make the requested records available with the birthdates redacted—disclosure itself being a burden which Defendants do not contest is already required by the NVRA. Therefore, the injunctive relief issues remaining include (1) whether the requested voter records are protected by the NVRA, and (2) whether birthdates are properly redacted from the records. Both questions are legal issues which must be answered in the affirmative to maintain the bright line rule set by the Fourth Circuit, as intended by Congress.

Plaintiffs are likely to succeed on the merits of these issues, and Defendants' counterarguments that the requests were not properly made and/or that the requested records are not protected by the NVRA are based on overly strained statutory interpretations. The voter roll, absentee ballot applications and envelopes, pollbooks and federal post card applications are all key pieces of information concerning accurate and current official lists of eligible voters. The NVRA does not require a particularly phrased request[1] to invoke its provisions and the Defendants have not cited any case law or

---

[1] The Secretary of State has claimed responsibility of voter roll maintenance and overseeing receivership of pollbooks lies with the County Election Commissions, even though Circuit Clerks actually maintain pollbook information, and Ms. Turner testified the Secretary of State manages the SEMS database. *See* MS Prac. Encyclopedia MS Law Election Law § 7 ("Local election commissioners are responsible for other critical election responsibilities—procuring and distributing ballot boxes to each voting precinct in their jurisdiction before the opening of polls on election day; designation of each precinct's receiving manager who receives and distributes ballots, the ballot boxes, poll books, tally sheets, and blank forms for reporting returns at each precinct; certifying election day workers to be paid; counting absentee ballots; and certifying actual election results. …The local election commission's duty to conduct voter roll maintenance is ongoing, restricted only by the number of allowable per-diem days for which they may be paid

authority requiring specific words to unlock the NVRA public disclosure provision. Finally, Defendants' representation that irreparable harm will be done by disclosure of voter birthdates rings hollow. As Ms. Turner testified: voter birthdates are already publicly available through records requests. Instead, irreparable harm will result in failure to disclose the birthdates. Plaintiffs are a key component in the election review process, analyzing whether voter's rights were violated and elections were conducted with integrity.[2]  Birthdates are already required to be disclosed under the NVRA, and public interest supports application of federal law.

## B.     Elements in Support of Preliminary Injunction Have Been Met.

Plaintiffs have demonstrated (1) a likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest. *Tex. Med. Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (internal citation omitted).

---

pursuant to state law.").  Because these entities are clearly acting in concert and frequently communicate, a request for records from one should be effective under the statute, and Plaintiffs should not be punished for making requests for voter rolls to the very entity which allegedly has the records per Defendants' own misleading published representations.

[2] Plaintiffs incorporate their Bench Brief "Indicating NVRA Requires Disclosure of Voter Birthdates", Doc. 45, as if set forth fully herein.  Additionally, through its research True the Vote is aware that a majority of states permit disclosure of voter birthdates, and the testimony of Ms. Swenson indicates the most populous state in the nation, California, permits disclosure. *See* Exhibit 1, pp. 241-42 (Ms. Swenson testifying that California registration information, with expanded database and voting history is available for $30).

**II.**
**ARGUMENT AND AUTHORITIES**

Defendants' Responses argue injunctive relief should not be granted because: (1) the NVRA's conditions precedent to filing suit have not been met; (2) "nobody can be compelled to produce any voter rolls to plaintiffs under NVRA"[3]; (3) NVRA is "not a federal device for private individuals or organizations to audit state elections"[4]; (4) pollbooks are not records contemplated by the NVRA; (5) Plaintiffs are not harmed by lack of relief; and (6) privacy protections should prevent disclosure of voter birthdates. Plaintiffs further address these issues herein.

**A.     Plaintiffs have demonstrated a substantial likelihood of success on the merits.**

1.     <u>Statutory notice was provided</u>.

The NVRA provides a private right of action to enforce violations of the Act.  *See* 42 U.S.C. § 1973gg; *see also United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008). While a person aggrieved under the NVRA may typically need to provide notice of the violation involved prior to filing suit, notice need not be given if the violation occurred within 30 days of an election for federal office.  *See* 42 U.S.C. § 1973gg-9.  Because the violations alleged in this suit occurred within 30 days of the June 2014 Republican Primary Run-Off Election for a federal office, Plaintiffs were not required to give notice of the violations alleged in this lawsuit.  *See* Hearing Transcript[5], at pp. 27:12-21; 27:21-

---

[3] *See* Doc. 93, p. 8.

[4] *Id.*

[5] Attached hereto as Exhibit 1.

25 and 28:11-19 (detailing requests for records made in advance of election); *see also* August 5, 2014 Declaration by Ms. Engelbrecht[6].

>      2.    Any lack of notice is not a bar to this action.

The court in *Nat'l Coal. for Students with Disabilities Educ. and Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845 (D. Md. 2001) rejected the argument that a party's suit was barred because it failed to file a pre-suit complaint under the NVRA.  In that case, the court held notice was not required under 42 U.S.C. § 1973gg-9(b)(3) because the alleged violation occurred within 30 days before the date of an election for federal office. The complaint stated the Office of Disability Support Services at the University of Michigan had 21 blind applicants who made their initial application for services or changed their address during the 30 days preceding the November 2000, federal elections, but none of the applicants were invited to register to vote or given registration materials in response to a request[7] for same.  150 F. Supp. 2d at 852.  The court found "the statement that DSS failed to provide voter registration services to its *clients* that *made their initial application for services* within 30 days of the November 2000 election is sufficient to dispense with the notice provisions of the NVRA." *Id*.  Here, too, Plaintiffs made a pre-suit request.

Further, federal courts construe the notice provision as a practical guide for enabling states in violation of the NVRA to correct the violation.  It is not construed as a

---

[6] Attached hereto as Exhibit 2.

[7] Clearly, an NVRA document request need not be in writing or titled "NVRA" request as Defendants suggest.

bar to relief.  In *Condon v. Reno*, 913 F. Supp. 946, 960 (D.S.C. 1995), for example, the court reasoned that a party's failure to provide written notice prior to filing an NVRA suit against South Carolina did not bar its suit.  *Id.*  As the court observed, statutory notice is intended to give the state opportunity to cure violations called to its attention.  *Id.* Because South Carolina made plain that it refused to comply with the NVRA, the Court held the purpose of the notice provision had been fulfilled even in the absence of any.

The Sixth Circuit followed *Condon v. Reno* in *Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).  In that case, the Court concluded that requiring Plaintiffs "to give actual notice [of the lawsuit as a prerequisite to bringing one] would have been unnecessary with regard to the purpose of the notice requirement" because "the language and legislative history of 42 U.S.C. § 1973gg–9(b) indicate Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *ACORN v. Miller*, 129 F.3d at 838.  Because Michigan made clear its refusal to comply with the NVRA, notice would have been futile.  *Id.*  Michigan would continue to refuse to comply with the Act until forced to do so by judicial intervention.  *Id.*

The parties here are at loggerheads.   The Secretary of State and County Defendants openly and plainly refuse to comply with the NVRA by producing certain records with birthdate information unredacted. Because Defendants assert **codified** Mississippi law requires nondisclosure/redaction of birthdates in the requested records, the facts of this case support a finding of futility. No amount of notice to Defendants will change this codified law, which Defendants argue is not preempted by the NVRA here.

In circumstances such as these, the purpose of statutory notice is fulfilled because exhaustion of a remedy—like giving notice as a prerequisite to suit—is not required when the act would be futile.

3.    The records requested are contemplated by the NVRA.

The Defendants contend (1) the records made the subject of this lawsuit are not covered by the NVRA; therefore, (2) voter birthdates must be redacted from such records pursuant to Mississippi statute.  The NVRA applies to the records requested however, and the federal law must apply.[8]

a.    Standard of statutory construction.

The first step in statutory interpretation is "to determine whether the language at issue has a plan and unambiguous meaning with regard to the particular dispute in the case." *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009) (internal quotations omitted).  When the plain meaning of a statute is unambiguous, "this first canon is also the last[.]"  *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

The Fourth Circuit has already determined that the Public Disclosure Provision of the NVRA is plain and unambiguous.  *Id.*  This Court should likewise accord the

---

[8] "If [state] law is inconsistent with the NVRA, the former must give way to the latter." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1366 (N.D. Ga. 2004); (citing *ACORN v. Edgar*, 56 F.3d 791, 795 (7th Cir. 1995)). "Writing for the court in *Edgar*, Judge Posner noted that to the extent that a state has a statutory provision regulating a subject covered by the NVRA, and to the extent the state statute differs from the NVRA, the federal law must be read to alter the state statute." *Cox*, 324 F. Supp. 2d at 1366-67, citing *Edgar*, 56 F.3d at 795. Indeed, Congress explicitly noted that the states must follow the NVRA 'notwithstanding any other Federal or State law.' *Cox*, 324 F.Supp.2d at 1366, (quoting 42 U.S.C. § 1973gg-2(a)).

statutory language its ordinary and common meaning, unless it is clear Congress intended terms to have a different meaning.  *See Long*, 682 F.3d at 335.

               b.        <u>The NVRA is broadly applied in accord with its plain meaning</u>.

The plain and common meaning of the Public Disclosure Provision leaves no question that voter rolls, pollbooks, federal post card application and absentee ballot applications and envelopes must be made available for public inspection.  It provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, ***all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters***, except to the extent that such record relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. § 1973gg-(6)(i)(1) (emphasis added).

The plain language of the NVRA requires disclosure of "all records" concerning programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.  *Id*.  As the Fourth Circuit explained in *Project Vote/Voting for Am., Inc. v. Long*, Congress's inclusion of modifiers in the statutory text such as the word "all" indicate its terms should be construed expansively.  682 F.3d at 336 (*citing Nat'l Coal. For Students With Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998)).

The plain language of the NVRA requires disclosure of "*all records*" concerning programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. *Id*.  As the Fourth Circuit explained in *Project Vote/Voting for America v. Long*, Congress's inclusion of modifiers in the statutory text such as the

word "all" indicate its terms should be construed expansively.  682 F.3d at 336 (citing *Allen*, 152 F.3d at 290).

The Court's analysis in this case focuses on the meaning of the phrase "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."   Its predicate— "all records"—is unbounded, and must be broadly construed.  *See id*.  The second part of the phrase—"concerning"—means "to relate or refer to," to "be about," or "to have an influence on." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 707 (E.D. Va. 2010) (citing *Webster's Third New International Dictionary* 470 (2002)). Meanwhile, the term "implementation" means the act of "carry[ing] out" or "accomplish[ing]" or "giv[ing] practical effect to and ensur[ing] ... actual fulfillment by concrete measures." *Long*, 752 F. Supp. 2d at 707.

Turning to the phrase "activities," the NVRA requires states to "ensure that accuracy and currency" of official lists of "eligible voters". 42 U.S.C. § 1973gg-(6)(i)(1) Mississippi discloses documents relevant to the registration of voters, *see* Exhibit 1 at p. 126, and would have the Court treat documents relevant to other factors of accuracy and currency of *eligible* voters on official lists differently.  However, the phrase "activities" is plural and includes all activities with regard to reviewing whether an official list is "current" and "accurate".  *See* 42 U.S.C. § 1973gg *et seq*.

Based on these definitions, "a program or activity covered by the public disclosure provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified to vote." *Long*, F. Supp. 2d at 706.  In accord

with this plain-meaning construction of the NVRA, *any* "records" which relate to "an activity" ensuring accurate "official lists" of "eligible voters" are subject to the NVRA. *Id.* Plaintiffs now turn to bases supporting the disclosure of each category of requested records. *See* 42 U.S.C. § 1973-gg6(i)(1).

### i. Voter rolls.

There can be no reasonable dispute that evaluating voter rolls constitutes an activity ensuring accurate "official lists" of "eligible voters" are maintained. The voter roll is Mississippi's official, complete list of all Mississippi voters, both eligible and ineligible. *See* Exhibit 1 at p. 107. The roll is created from in-person and mail-in registration applications placed in the Statewide Election Management System ("SEMS"). *Id*. at 125.[9]

The roll is comprehensive. It encompasses all registered voters and their designated status, whether active, inactive, purged, rejected or pending. *Id.* An active voter is one whose is eligible to vote and whose name will later be made part of a pollbook. *Id.* An inactive voter is one who has been moved to that status by virtue of documentation or information indicating a charge of address, including a returned voter confirmation card under the NVRA. *Id.* at p. 107-110. A purged voter is one ineligible to vote by reason of death, adjudication of incompetence, conviction of a disenfranchising crime, move, or voluntary request. *Id.* at p. 112. A rejected voter is one whose application to register to vote has been rejected, and a pending voter is one whose

---

[9] As the pollbooks are created from the SEMS database, and the pollbooks include birthdates, the representation that the voter roll printouts do not include a field for birthdates is misleading.

application is being processed.  *Id*. at 112-114.   Reviewing the voter rolls is therefore

important to determining whether a voter has been given the appropriate designation by

the state.  It is necessary to determine, for example, whether a deceased person remains

eligible to vote.[10]   The registered status of an individual is thus maintained in the voter

roll.  And thus the voter roll is a record of an activity utilized to make the official list of

eligible voters (the pollbook). As such, it is a record to be disclosed under the NVRA.

### ii.      Voter pollbooks.

Voter pollbooks are clearly covered by the NVRA.   A voter pollbook is the list of

active voters eligible to vote in a particular election by precinct, and is created from the

voter roll.  *See* Hearing Transcript dated July 24, 2014, attached hereto as Exhibit 1 at p.

106.   The pollbook contains the name of the voter, address, date of birth, and voter

registration number.  *Id.* at p. 113; *see* MISS. CODE ANN. § 23-15-125.   The poll book

also has columns for each applicable election with spaces to mark whether a given voter

cast a ballot in a given election.  *Id.*  The pollbook is used during the election and marked

by poll workers to indicate a voter has cast a ballot. *See* DX 5 and DX 6, admitted into

evidence at Exhibit 1, p. 140.   Once a particular individual is noted by a pollworker as

---

[10] *See* MS Prac. Encyclopedia MS Law Election Law § 7 ("One of the most important duties of
election commissions is voter roll maintenance. . . . Proper voter roll maintenance requires the
removal of the names of registered voters who have died, who have moved from the local
jurisdiction, who have been convicted of disenfranchising crimes, or who have been declared
mentally incompetent by a court.  The local election commission's duty to conduct voter roll
maintenance is ongoing, restricted only by the number of allowable per-diem days for which
they may be paid pursuant to state law.")

"voted" they are not "eligible[11]" to cast another ballot in the same election.  Thus, on election day the pollbook is the most current (to the minute) and accurate list of eligible voters. And marking "voted" in the pollbook is certainly a recorded activity conducted to ensure the accuracy of that list.  Thus, pollbooks must be disclosed under the NVRA.

Mississippi code also identifies another activity regarding the pollbooks' status as an NVRA document.  Pursuant to Mississippi statute, the pollbooks only show voters with an "active" registration status.  *See* MISS. CODE ANN. § 23-15-125.   "When election commissioners determine that any elector is disqualified from voting, by reason of removal from the supervisor's district, or other cause [such as death], that fact shall be noted on the registration book and his name shall be erased from the pollbook."  *Id*. Thus, Mississippi law specifically contemplates the use and inspection of pollbooks "to ensure the accuracy and currency of official lists of eligible voters." *See id*.; *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

As the Court observed at the preliminary injunction hearing, pollbooks are especially significant in primary run-off elections.  In primary run-off elections, officials conducting the elections swap the list of voters who voted in each parties' primary election. The purpose of swapping the pollbooks is to ensure only eligible voters cast ballots in a particular primary run-off, i.e. that Democrats don't vote in the Republican primary and visa versa.  *See* MISS. CODE ANN. 23-15-575 ("No person shall be eligible to

---

[11] The Secretary of State's interpretation of the statute appears to restrict the definition of "eligible" to be synonymous with "registered".  But that interpretation leads to illogical results, because not all registered voters are eligible to vote in a given election, including the deceased (especially including those recently deceased allowing their registration status to continue to be "Active", and their names to still be in the pollbook on election day).

participate in any primary election unless he intends to support the nominations made in the primary in which he participates."). To do this, the officials may print a VR-28 report. The VR-28 report is an electronic rendering of the pollbook, and it lists all voters who voted in the each party's primary election. *See* Transcript, Exhibit 1 at 162-64; Example VR-28 for June 3 and June 24 Primaries, (Doc. 107-6). Alternatively, the election officials switch the physical pollbooks used in the primary elections. *Id.* Like the VR-28 reports, the pollbooks contain notations next to each voter's name indicating whether he or she cast a ballot in the opposing party's primary election. *See* Exhibit 1, p. 140, DX 5 (Doc. 107-4); DX 6(Doc. 107-5).

In summary, the pollbook is an official list of persons eligible to vote on election day. It is checked by poll workers when a voter submits a photographic identification and requests a ballot or access to voting terminals to be certain the voter is eligible to vote.[12] *See* Hearing Transcript, Exhibit 1 at p. 115. The pollbook not only prevents multiple votes by the same person on the same election day (by being the first line of defense for the one person, one vote rule, as the pollworker checks people off as having voted), but the pollbooks are switched in a primary run-off election, and reviewed to

---

[12] Many of these photographic identifications contain the voter's birthdate. *See* "What will happen at the polls?" located at http://www.msvoterid.ms.gov/ (visited August 8, 2014). Under regulations promulgated by the Secretary of State, poll workers are required to verify the name on a voter's photographic identification is "substantially similar" to the name of the elector in the Statewide Election Management System ("SEMS"), as reflected on the pollbook. *See* MISS. CODE ANN. § 23-15-7-(8); *see* Administrative Regulations of Secretary of State, Part 16, Chapter 1, Rule 4.1 (Doc. 83-6). If a voter's middle or last name on the photo identification is different from the poll book due to divorce or marriage, the voter may cast a regular ballot, if a part of the name, the address or *date of birth* on the presented matches a part of the name, address or *birthdate* on the pollbook. *Id.*

prevent double voting – an issue of eligibility.  *See* MISS. CODE ANN. 23-15-575 ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates.").  Reviewing and marking the pollbook is not a superfluous exercise without a purpose.  Rather, checking this list is an activity to ensure the accuracy and currency of an official list of eligible voters.

### iii.    Federal postcard applications.

A federal postcard application is one recognize method of declaring eligibility and registering to vote and it is later used to request an absentee ballot to vote overseas. The Assistant Secretary of State concedes federal postcard applications are subject to open disclosure and may not include redaction of birthdates under the NVRA.  *See* Exhibit 1, at p. 125-26.  Therefore, Plaintiffs are entitled to such records.

### iv.    Absentee ballot applications and envelopes.

Review of absentee ballot applications and envelopes is also an activity "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i).  Similar to an overseas application (which the parties agree is protected by the NVRA), a Mississippi voter may vote by absentee ballot under enumerated circumstances by filling out an appropriate form.  *See* MISS. CODE ANN. § 23-15-627.  If a voter does not meet Mississippi's criteria for an absentee ballot, she is ineligible[13] to vote by absentee ballot.  Further, to count the absentee ballot toward the election total, the ballot must be executed in accord with Mississippi law.

---

[13] Again, "eligible" is different than "registered".

Finally, information concerning a voter's history is included in the SEMS database. Voter history includes whether the voter cast an absentee ballot. Thus, review of absentee ballot applications and envelopes is an activity conducted with the purpose of ensuring that an official voter list remains accurate and current.

c.  None of the records are excepted from the NVRA.

The conclusion that the NVRA applies to the voter records requested herein finds further support in the exceptions to the Public Disclosure Provision. The Provision excepts only two categories of records from its requirement that "all records" be disclosed: (1) records that relate to an individual's declination to register to vote; or (2) records that identify a voter registration agency through which a particular voter was registered. *Id.* The exceptions clause is a critical part of the Public Disclosure Provision.

Because Congress provided only two exceptions to the Public Disclosure Provision's otherwise broad requirements, it would be improper for the court to infer additional exceptions beyond those enumerated in the statute. Instead, *all* other types of records concerning the implementation of pertinent programs or activities must be made available for public inspection and copying.[14]

None of the records requested in this case relate to an individual's declination to register to vote or identifies the voter registration agency through which an individual registered. Because completed absentee ballot applications and envelopes, poll books,

---

[14] *See Long*, 682 F.3d at 336 ("Because the requested applications do not fall within either of these two exceptions . . . they must be made available for public inspection"); *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990) ("Under the principle of statutory construction *expressio unius est exclusio alterius*, the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded.").

voter rolls, and federal postcard applications do not fall under the exceptions clause, those records must be included in the term "all records" and made subject to the NVRA's public disclosure provision.  *See Long*, 682 F.3d at 336.

    4.    <u>The Chief Election Official should direct those to whom it has delegated authority to comply with the NVRA – to produce documents with birthdates unredacted.</u>

Defendants argue that the Secretary of State is not responsible for, and cannot direct, lower election agencies ("LEAs") (including county election commissions, circuit clerks, or executive committees) with regard to NVRA compliance.  This is a position already firmly dismissed by the Second, Sixth and Eighth Circuits, and the Eastern District of Louisiana.[15]  The Secretary of State is the chief State election official of the State of Mississippi ("SOS/CEO").  He is "responsible for coordination of State responsibilities under [42 USC 1973]."  *See* 42 U.S.C. 1973gg-8.

Regarding State responsibilities, "[u]nder the plain language of the statute, states must take specific actions." *Missouri*, 535 at 849.  Some of the statute's provisions allow delegation of specific actions.  *Id*.  But where a state is directly responsible, "it may not

---

[15] *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008); *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008); *United States v. New York*, 255 F. Supp. 2d at 79 ("It would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies."); *Scott v. Schedler*, 2013 WL 264603 (E.D. La. 2013) ("the SOS, as Louisiana's chief election officer, is ultimately responsible for the compliance for the State of Louisiana under the NVRA… Ultimately, the Louisiana SOS may not delegate its responsibilities under the NVRA thereby avoiding responsibility[.]"); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003) (holding that New York could not avoid its obligations under the Rehabilitation Act by delegating authority to localities to deliver federally funded services).

delegate the responsibility … to a local official and thereby avoid responsibility." *See id*. at 850.

> For example, Congress expressly used the term 'ensure' for the requirement that 'the identity of the voter registration agency through which any particular voter is registered is not disclosed to the public.' *See* 1973gg-6(a)(6). Missouri is directly responsible for ensuring this identity remains undisclosed, and if Missouri delegated this responsibility, it could not avoid liability for any failure to maintain such nondisclosure. The same would be true for the provision 'ensur[ing] that any eligible applicant is registered to vote in an election.' *See* 1973gg-6(a)(1).

*Id*. at 849. Applying this reasoning to the portion of the same statute at issue in this case, the same should be true for the provision that the "State shall maintain … and make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 1973gg-6(i). The disclosure provision is clear that the SOS/CEO is directly responsible for maintaining and making available certain records, and if tasks relating to that responsibility are delegated, the SOS/CEO remains responsible for ensuring assisting parties comply with the NVRA.

The Eighth Circuit has provided a road map where parties exercising delegated authority are inhibiting a State's compliance with the NVRA, stating a district court may order the chief election officer "either to (1) develop different or improved methods for encouraging LEA compliance, or (2) assume direct responsibility for some or all the activities needed [to maintain … and make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters]." *United States v. Missouri*, 535 F.3d at 851.

Here, it appears that the LEAs are following the direction of the SOS/CEO, so it does not appear that the SOS/CEO should be ordered to directly maintain and make available in its office pollbooks, etc. itself, but the SOS/CEO should "encourage" the LEAs to act appropriately to assist Mississippi in accomplishing its statutory responsibilities. *See* 535 F.3d at 851; 42 U.S.C. 1973gg-9.  Specifically, the SOS/CEO should be ordered that NVRA compliance requires disclosure of birthdates on the requested records, and that the SOS should direct the LEAs to stop redacting birthdates from records requested under the NVRA public disclosure provision.  And as the Eighth Circuit noted –"after one or two LEAs are held liable others are more likely to fall in line without lengthy litigation".  535 F.3d at 851, fn.3.

      a.    <u>Defendants' representation that courts find the Secretary of State may shed its responsible under the NVRA by delegating its authority to local officials is misleading and wrong.</u>

The Republican Party of Mississippi has cited *United States v. Missouri* for the misleading proposition that the "Chief State Election Official acquires no authority to enforce the NVRA against local officials".  (*See* Doc. 91, p. 2) (citing 535 F.3d 844 (8th Cir. 2008)).  Without greater context, the Republican Party appears to imply what the Secretary of State also argues – that the Secretary of State has no responsibility to direct the LEAs to comply with the NVRA.  The Eighth Circuit in *U.S. v. Missouri*, actually however, held the exact opposite.

In *U.S. v. Missouri*, the United States brought suit against the Missouri Secretary of State in her official capacity and Missouri alleging Missouri was in violation of its obligations under the NVRA to conduct a reasonable program to remove ineligible voters

from the official list of eligible voters.  535 F.3d at 846.  The district court found Missouri and its SOS met the NVRA's obligation to make a reasonable effort to conduct a general program of voter list maintenance.  *Id.*  To the extent some NVRA violations existed, the district court found those violations were the responsibility of individual local election agencies (LEAs) pursuant to Missouri statute, and the SOS was not directly responsible for enforcement of the NVRA against the LEAs.  *Id.*  The district court granted summary judgment on this point for Missouri and its secretary of state, but the Eighth Circuit reversed the summary judgment.  He explained the SOS/CEO is responsible for directing LEAs to comply with the NVRA.  *Id.*  In considering the district court's ruling; quoted by the Republican Party here, the court stated:

> The district court found Missouri could not be '[held] responsible for the enforcement of the NVRA against local election authorities.'  This determination was technically correct.  The plain language of the NVRA provides a right of enforcement to only two categories of plaintiffs—the United States and '[a] person who is aggrieved by a violation of [the NVRA].'  1973gg-9(a) and (b).  The State of Missouri would not necessarily be a 'person aggrieved by' a violation of the NVRA.

*United States v. Missouri*, 535 F.3d at 851.  Similarly, the Mississippi Secretary of State is a proper party to this suit, and is responsible for coordinating state compliance with the NVRA.  *See id.*  There is a difference between *enforcement* of the statute (a right of an "aggrieved party" pursuant to the statute) and *responsibility* for carrying out statutory obligations.  *Id.* at 851.

### b. Courts have foreclosed this issue, finding delegation is not a defense.

The Eighth Circuit is not the only court to address this issue.  Recently, the Sixth Circuit comprehensively addressed the issues in *Harkless v. Brunner*, and found that the

Secretary of State (the designated CEO in Ohio) could not delegate its authority to local officials and avoid responsibility under the NVRA for State compliance.  545 F.3d 445, 456-57 (6th Cir. 2008).   The Sixth Circuit concluded, as this Court should, that designation of a chief state election official hardly makes sense, "if that official did not have the authority to remedy NVRA violations."  545 F.3d at 453.  Also, in *United States v. New York,* 255 F. Supp. 2d 73, 78 (E.D.N.Y. 2003), the district court considered whether two state agencies were required to ensure NVRA compliance by district offices run by local governments.  The court concluded that "[i]t would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies."  *Id.* at 79.  Thus, Defendants' alleged "bottom up" defense to liability, must fail.  The Secretary of State and the local authorities both played a role in failing to provide the requested records in unredacted form, and must share responsibility for that. *See* 545 F.3d at 454-58 (finding parties responsible for complying with NVRA are jointly liable for violations).

## B.   The NVRA provides the public the opportunity to audit States' elections.

The Secretary of State has taken the position that the NVRA is not a means for auditing whether eligible voters are voting in elections, but that is simply not the case. The NVRA was passed to counteract the effects of individual state policies that led to unequal access to voting among different categories of citizens.[16]  The NVRA's public

---

[16] *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1366 (N.D. Ga. 2004) ("The National Voter Registration Act was passed in 1993 after repeated hearings over a period

disclosure requirement gives individuals the teeth needed to effectuate the bite of a private right of enforcement.

**C.     Plaintiffs will be harmed by a denial of the relief requested.**

Injunctive relief is warranted where no monetary remedy will cure the harm caused.  *Cox*, 324 F. Supp. 2d 1358, 1368-69 (N.D. Ga. 2004).  Plaintiffs are seeking to canvass the vote, and determine whether sufficient illegal ballots were cast in the Republican Primary (Defendants already admit to some), such that Mississippi voters' voices are properly heard, and the proper candidate is ensured to be a participant in the November general election for Senate office.  *See Project Vote v. Blackwell,* 455 F. Supp. 2d at 707-08 (N.D. Ohio 2006) ("But for the issuance of an injunction, Plaintiffs will continue to be dissuaded from engaging in an important political activity, and will no longer enjoy the freedom they once had to enthusiastically register Ohio citizens to vote, and to encourage participation in the electoral process.")  Plaintiffs are "losing valuable time to engage in core political speech".  *See League of Women Voters v. Cobb*, 447 F. Supp. 2d 1314, 1340 (S.D. Fla. 2006) ("Plaintiffs have suffered and will continue to suffer irreparable harm unless the Court enjoins the challenged statute. The undisputed evidence demonstrates that Plaintiffs have halted or significantly scaled back their voter registration operations and are losing valuable time to engage in core political speech . . .

---

of several years. Congress' … findings show that Congress was concerned that current registration requirements create two types of problems:  low voter turnouts and unequal access to voting among different categories of citizens.  Witnesses repeatedly told Congress that registration, rather than being simply a mechanism to facilitate orderly elections, was in fact a significant barrier to voting" because a number of "gotcha" schemes were being employed, such as Defendants are attempting to do now by stating the records requests did not name the NVRA) (internal citations omitted).

.").  The loss of the ability to engage in political speech, a First Amended freedom, for "even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *see also Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (quoting *Elrod* in finding that the district court abused its discretion in holding that the claimed First Amendment injury could not irreparably harm the plaintiff).

**D. Public interest is best served by ensuring Mississippi complies with the NVRA**.

Courts have "easily" concluded "that an injunction would not be contrary to the public interest" in the context of NVRA compliance, as the "public has an interest in seeing that the State of [Mississippi] complies with federal law, especially in the important area of voter registration."  *Cox*, 324 F. Supp. 2d 1358, 1369 (N.D. Ga. 2004). "Ordering the state to comply with a valid federal statute is most assuredly in the public interest."  *Id*.

The only response to disclosure Defendants have raised in the public interest context continues to be a claim of privacy concerns.  However, Defendants failed to site any case law contrary to that provided in Plaintiffs' Bench Brief indicating the NVRA requires disclosure of voter birthdates. And further, Assistant Secretary of State Ms. Turner testified that this information is already available for public disclosure in Mississippi.  Thus, Defendants' own representative debunked the myth that birthdates are private information in Mississippi.  The evidence clearly favors that public interest is best served through enforcement of the NVRA.

# V.
# CONCLUSION

Wherefore, premises considered, Plaintiffs ask the court to enter an injunction ordering the Secretary of State to comply with the public disclosure provision of the NVRA and direct the counties to do the same.

Respectfully submitted,

/s/    *L. Eades Hogue*

Joseph M. Nixon – *pro hac vice*
Texas State Bar No. 15244800
jnixon@bmpllp.com
Kristen W. McDanald – *pro hac vice*
Texas State Bar No. 24066280
kmcdanald@bmpllp.com
Kelly H. Leonard – *pro hac vice*
Texas State Bar No. 24078703
kleonard@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887   Tel.
(713) 960-1527   Fax

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax

L. Eades Hogue
Mississippi State Bar No. 2498
Louisiana State Bar No. 1960
ehogue@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
Pan-American Life Center
601 Poydras Street
Suite 2200
New Orleans, LA 70130
(504) 586-1241 Tel.
(504) 584-9142 Fax
**Lead Counsel**

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2014 a copy of the forgoing, and its exhibits were served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission, the Rankin County, Mississippi Election Commission, and the Simpson County, Mississippi Election Commission;  via the Court's ECF e-file service.  Plaintiffs have served the remaining Defendant, who has not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

/s/    _L. Eades Hogue_