IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik<br>    Plaintiffs,<br><br>v.<br><br>The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission<br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 3:14-cv-00532-NFA |

**PLAINTIFFS TRUE THE VOTE ET AL.'S RESPONSE TO THE
REPUBLICAN PARTY OF MISSISSIPPI'S MOTION FOR SANCTIONS**

TO THE HONORABLE DISTRICT COURT:

Plaintiffs True the Vote, et al. ("True the Vote") file this Response to the Republican Party of Mississippi's ("RPM") Motion for Sanctions [Doc. 67], and respectfully show the Court the following:

1

## I. Summary of Response

1. This suit, regarding election integrity and public disclosure pursuant to the National Voter Registration Act ("NVRA"), properly includes the Republican Party of Mississippi ("RPM").[1] A real question exists as to whether the 2014 Mississippi Republican Primary Election Run-Off for the office of United States Senator (the "Run-Off") was conducted pursuant to the laws of Mississippi and the United States. The Run-Off was largely staffed and coordinated by the RPM. *See* MS Prac. Encyclopedia MS Law Election Law § 8[2], citing Miss. Code Ann. § 23-15-171. In fact, the Mississippi Secretary of State's Office has indicated "[s]ince political parties conduct primary elections in Mississippi, the nomination process may appear to be more of a private activity than a governmental one." *Id*.

2. In furtherance of their investigation, Plaintiffs took lawful actions to obtain records that, once analyzed, would reveal whether improperly cast votes in the Run-Off were isolated or epidemic[3]. Plaintiffs brought this lawsuit to obtain an order requiring Defendants to produce unredacted records as the law requires. Plaintiffs noted in their lawsuit that "time is of the essence." Although the RPM's motion argues that it was not

---

[1] Because of numerous reports of election irregularities surrounding the Run-Off, prior to, and immediately after, the Republican Primary Senate Run-Off Election, Plaintiffs attempted to gain access to relevant election records. (*See* e.g., Bill of Particulars, Doc. 25). The records Plaintiffs did review indicated unlawful voting occurred. *See*, *e.g.*, Incident Report by Susan Morse (Doc. 25, Exhibits 19, 20) (identifying crossover vote); *see also* July 17, 2014 e-mail by Mr. Sanders (indicating identified crossover votes in Jefferson Davis County), attached hereto as Exhibit 2. By law, "crossover" voting is not permissible. *See* Mississippi Code § 23-15-575. The casting and counting of improper votes like "crossover" votes toward an election result dilutes the votes of lawful voters.
[2] (attached hereto as Exhibit 1).
[3] Plaintiffs recognize that limited violations may not give rise to a constitutional claim. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

2

responsible for the election records, and that even if it had the records during the Run-Off it did not maintain possession of them after the Run-Off, the Circuit Clerk of Harrison County informed Plaintiffs that post-election the RPM had absentee ballot applications and envelopes. (*See* Doc. 43-9/106-2 (dated July 17, 2014, weeks after the June 24, 2014 Run-Off)). The Circuit Clerk specifically stated as follows:

> Because the Harrison County Circuit Clerk's Office had no involvement in the sealing of the ballot bags or the cleaning of the supply bags, we have no knowledge of the whereabouts of the requested [absentee ballot applications and envelopes]. **As the Republican Party was in charge of the conduct of the Republican Runoff Election**, you should contact one of the other executive committee members that worked with you in the conduct of the June 24, 2014 Republican Election for the requested information.

Doc. 43-9 (Exhibit 9 to Plaintiffs' Exhibit List, re-filed by Court at Doc. 106-2) (emphasis added).

3. The RPM apparently seeks to shield itself from responsibility by arguing that the official acts of the RPM's county executive committees on behalf of the Party are not at the direction of the RPM. This is incorrect, Mr. Nosef, the chairman of the RPM[4], provided direction to the committees throughout the certification process.[5] And further, Mississippi law contemplates that county executive committees may only contract with local election commissions for assistance with primary elections only *because* of their agency relationship to the RPM. See Exhibit 1, ¶ 4 (citing Miss. Code. Ann. § 23-15-266) (stating that a committee seeking to share election responsibility with an election

---

[4] *See* http://www.msgop.org/chairman/.
[5] *See, e.g*. Exhibit 3 (June 29, 2014 e-mails between Mr. Nosef and Marshall County Executive Committee member Ms. Patrick).

3

commission must have garnered a sufficient amount of support in the race for Mississippi Governor).

4.      Because RPM controlled aspects of its primary election, the RPM is an appropriate party to whom NVRA[6] and/or Section 1983 relief is directed. To avoid an inefficient and inequitable result, Plaintiffs reasonably joined RPM in this lawsuit, and RPM's Motion for Sanctions should be denied.

## II.     Federal Rule of Civil Procedure 11

5.      RPM moves for sanctions against True the Vote based upon Federal Rule of Civil Procedure 11. Citing Rule 11(b)(2), RPM alleges that True the Vote's claims against it are frivolous and not warranted by existing law; thus, the Court should award it monetary sanctions against True the Vote and it's counsel. RPM's arguments in support of its sanctions motion are infirm.

6.      First, Rule 11 specifically prohibits an award of monetary sanctions against a represented party, such as True the Vote, based upon a violation of 11(b)(2). *See* Fed. R. Civ. P. 11(c)(5)(A). Accordingly, monetary sanctions cannot be awarded against True

---

[6] Plaintiffs directed their motion for summary judgment to the State's Chief Election Official as no fact issue exists regarding his responsibility, no matter the involvement of other local election agencies, as a matter of law.  *See United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008); *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008); *United States v. New York*, 255 F. Supp. 2d at 79 ("It would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies."); *Scott v. Schedler*, 2013 WL 264603 (E.D. La. 2013) ("the SOS, as Louisiana's chief election officer, is ultimately responsible for the compliance for the State of Louisiana under the NVRA… Ultimately, the Louisiana SOS may not delegate its responsibilities under the NVRA thereby avoiding responsibility[.]"); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003) (holding that New York could not avoid its obligations under the Rehabilitation Act by delegating authority to localities to deliver federally funded services).

the Vote (or any individual Plaintiffs in this suit) based upon the allegations in RPM's Motion and the Federal Rules of Civil Procedure. *Id.*

7. Second, Rule 11 sanctions may not be awarded unless there is a showing of "culpable carelessness" on the part of the offending party. *See Citi-Bank Global Mkts., Inc. v. Rodriguez Santana*, 573 F.3d 17, 32 (1st Cir. 2009). To determine whether sanctionable conduct has occurred, a court should ask itself whether the attorney made a ***reasonable inquiry*** into the facts and law before filing the pleading in issue. *See Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 538 (5th Cir. 1990). To decide whether an inquiry was reasonable, a court should look at the circumstances and facts available to the attorney when the document in question was filed, including:

- The time available for investigation prior to filing – *Thornton v. General Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998);

- The feasibility of the investigation – *Thornton*, 136 F.3d at 454;

- The factual or legal complexity of the case – *Thornton*, 136 F.3d at 454;

- Whether the opposing party controls the relevant facts or the allegations relate to the opposing party's knowledge, purpose, intent or state of mind – *Nassau-Suffolk Ice Cream v. Integrated Res.*, 114 F.R.D. 684, 689 (S.D.N.Y. 1987); and

- Whether discovery is necessary – *Thornton*, 136 F.3d at 454.

As discussed below, Plaintiffs' decision to include RPM in this lawsuit was reasonable.

### III. Sanctions Are Not Warranted

**A.    Claims asserted by True the Vote against RPM have merit.**[7]

8.     The RPM's motion for sanctions claims that the only allegation against the RPM in complaint is found in ¶35.  Not only is this inaccurate (as it appears the RPM reviewed only the original complaint and not the amended complaint in filing its Rule 11 motion), but it is wrong.  Factual allegations against the RPM are specifically pled in Paragraphs 29, 43, 48, 52, 53, and 54 of the First Amended Complaint (*See* Doc. 58)[8].

9.     Mississippi law enables the Republican Party to enter into voluntary agreements with county election commissions to perform aspects of primary elections:

> During the 2001 Mississippi legislative session, in direct response to a breakdown in the conduct of political party primary elections in 1999, two pieces of legislation were passed. These laws enable and provide authority for municipal and county party executive committees to enter into voluntary written agreements with municipal or county election commissions and/or municipal or circuit clerks to perform certain specified duties in primary elections. The six major duties which may be transferred or shared upon timely signing of the agreements and their filing with the Secretary of State are: (1) appointment of poll managers; (2) training of poll managers; (3) distribution of ballot boxes; (4) printing of ballots; (5) distribution of ballots to poll managers; and (6) canvassing returns and certifying election results.

Exhibit 1, ¶3 (internal citations omitted). Here, the RPM managed its own election in some counties but shared its authority with county officials in others. *See* (Doc. 106-2)

---

[7] Plaintiffs incorporate by reference all evidence attached to their Response to RPM's Motion for Summary Judgment.  Additionally, Plaintiffs attach the declaration of Eades Hogue hereto as Exhibit 4.

[8] As Plaintiffs' First Amended Complaint was filed prior to the RPM's motion for sanctions, the RPM was on notice of the amended pleading before filing its motions.  Nonetheless, the factual allegations from the selected paragraphs are likewise found in the original complaint.  *See* Doc. 1, ¶¶ 22, 35, 38, 41, 42, 43.

6

(Harrison County stating the RPM managed election materials both during and after election day); *see also* Exhibit 3, p.2 (Mr. Nosef directing County Executive Committees).

10. The NVRA-protected records at issue in this lawsuit were requested from the RPM pursuant to the NVRA's Public Disclosure Provisions. (*See, e.g*. Doc. 107) (letter requesting records from RPM). The RPM acknowledged the request, but stated it did not have custody of the requested records. *See* Letter by RPM dated June 27, 2014 (Doc. 107-1). Despite the RPM's representations, evidence reveals that the RPM has maintained (or destroyed) voter poll books, absentee ballot applications and envelopes and federal post card applications (the "records") for at least one defendant county. *See* letter from Harrison County (Doc. 106-2) (indicating that the RPM, not the circuit clerk, has custody of absentee ballot applications and envelopes)[9]; Declaration by Colonel Harding (Doc. 25, Exhibit 1). Plaintiffs suspect the majority of Mississippi's county election commissions contracted primary election responsibilities to local arms of the RPM, and that the RPM exercised more authority than it is letting on. Thus, the RPM is a proper party.

11. With respect to Plaintiffs' equal protection claim, voters cast ballots in the Republican Party's Primary – which was largely staffed by RPM. The Party was responsible in many counties (including Harrison) for the appointment and training of

---

[9] This letter providing direct factual evidence against the RPM was filed July 22, 2014 and July 24, 2014. Thus, despite statutory law indicating the Party may run its own primary, and the letters to the Party requesting records, the RPM had notice of additional evidence supporting Plaintiffs' claims prior to the RPM filing its Rule 11 motion on August 4, 2014. Thus, both law and fact support the RPM's direct role in this matter, and the Rule 11 motion is harassing.

7

poll managers.  *See* Exhibit 1 (stating the political party may appoint and train poll managers in its primaries).  In other words, RPM violated the law when its pollworkers (RPM volunteers, managed by appointed RPM poll managers) allowed double voting violations in the Run-Off.  *See* Mississippi Code § 23-15-57.  That violation of the law by RPM is what diluted Plaintiffs' votes, and thus RPM is a proper Defendant in this lawsuit.

**B.     The standard for proper "joinder" of the RPM has been met.**

12.     Federal Rule of Civil Procedure 19 requires the joinder of all people or entities without whom a court cannot accord complete relief among the parties.  Fed. R. Civ. P. 19(a)(1)(A).

13.     Federal Rule of Civil Procedure 20 allows for the joinder of all people or entities as defendants if a right to relief is asserted against them, jointly or severally or in the alternative, with respect to or arising out of the same series of transactions or occurrences and any question of law of fact is common to all defendants.  Fed. R. Civ. P. 20 (a)(2).

14.     Here, it appears the RPM is working in concert with other Defendants to deny Plaintiffs access to the records in question.  The RPM was responsible for organizing and conducting the Run-Off, and thus had custody of the very records Plaintiffs are trying to obtain.  As such, and despite RPM's denial of control of these records, the relief sought by Plaintiffs relates to all of the Defendants' actions, including RPM, with respect to the records from the June 24th Run-Off.

15. Moreover, when taking into account all of the factors outlined by the 5th Circuit in *Thornton* as noted above, it is clear that True the Vote acted reasonably by joining RPM in this lawsuit. Specifically:

- True the Vote had very little time to conduct an investigation and get this lawsuit on file after the June 24th Run-Off.[10] As certification of an election is usually done quickly, and considering that if a re-count or another Run-Off has to be held due to the double voting violations prior to the November general elections, True the Vote needed to get this lawsuit on file as quickly as possible so that it could obtain the records necessary to determine the extent voting violations diluted legitimate voters' votes;

- Plaintiffs cannot investigate the number of voting violations in the Run-Off with proper accuracy without access to (unredacted) records that the RPM is, in part, in control of; and

- True the Vote clearly has a good faith belief that the RPM is a necessary party to a remedy fashioned to correct violations of Plaintiffs' rights. However, discovery on Count III is necessary to verify Plaintiffs' claim.

16. Despite the RPM's attempts to shield itself from responsibility for an election it managed (through appointment of poll managers), conducted (through staffing polling locations with volunteers), and certified, the RPM is a responsible party. Courts have already found that the Secretary of State cannot isolate itself from responsibility by delegating authority to election commissions. Similarly, the Republican Party cannot

---

[10] As a matter of law, where voting rights (political speech rights) are violated, time is of the essence. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (The loss of the ability to engage in political speech for "even minimal periods of time, unquestionably constitutes irreparable injury."). Plaintiffs' counsel needed to conduct a quick investigation and then immediately file suit to obtain the records necessary to determine whether those that legitimately voted in the Run-Off had their votes wrongfully diluted in a RPM election.

9

isolate itself from responsibility by delegating authority to executive committees.  *See* Exhibit 1, ¶ 4.

### IV.    Conclusion

17.    There is absolutely no evidence that True the Vote's decision to include RPM in this lawsuit was done for any other reason but a good faith belief that RPM is controlling, and/or has controlled, certain records at issue and is responsible for the conduct of its agents in the Run-Off.  Accordingly, Plaintiffs' request that the Court order the Secretary of State, and those entities to whom the Secretary of State has delegated its authority (including the RPM), to turn over the requested records to Plaintiffs is proper.  Thus, RPM is a proper defendant to Counts I and II.

18.    Facts and law support that the RPM exercises substantial control over its primary elections.  Thus, the RPM is a proper defendant to Count III of Plaintiffs' complaint.

19.    As such, the RPM has failed to meet the requisite burden of indicating that the pleadings against the RPM violate Rule 11(b).

WHEREFORE, and for the reasons stated above, Plaintiffs respectfully pray that RPM's Motion for Sanctions [Doc. 67] be denied, and that Plaintiffs be granted all other relief to which they are justly entitled.

Dated: August 18, 2014

Respectfully Submitted,

*L. Eades Hogue*

| | |
|---|---|
| Joseph M. Nixon – *pro hac vice* | L. Eades Hogue |
| Texas State Bar No. 15244800 | Mississippi State Bar No. 2498 |
| jnixon@bmpllp.com | Louisiana State Bar No. 1960 |
| Kristen W. McDanald – *pro hac vice* | ehogue@bmpllp.com |
| Texas State Bar No. 24066280 | BEIRNE, MAYNARD & PARSONS, LLP |
| kmcdanald@bmpllp.com | Pan-American Life Center |
| Kelly H. Leonard – *pro hac vice* | 601 Poydras Street |
| Texas State Bar No. 24078703 | Suite 2200 |
| kleonard@bmpllp.com | New Orleans, LA 70130 |
| BEIRNE, MAYNARD & PARSONS, LLP | (504) 586-1241 Tel. |
| 1300 Post Oak Blvd, Suite 2500 | (504) 584-9142 Fax |
| Houston, Texas  77056 | **Lead Counsel** |
| (713) 623-0887   Tel. | |
| (713) 960-1527   Fax | |

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

      I hereby certify that on August 18, 2014, a copy of the forgoing was served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission; Rankin County Mississippi Election Commission; and Simpson County, Mississippi Election Commission via the Court's ECF e-file service. Plaintiffs have served the remaining Defendants, who have not yet registered with the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

                                                    /s/    *L. Eades Hogue*