IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TRUE THE VOTE, ET AL.                                      PLAINTIFFS

V.                                         CIVIL ACTION NO. 3:14cv532-NFA

THE HONORABLE DELBERT
HOSEMANN, in his official capacity
as Secretary of State for the State
of Mississippi, ET AL.                                     DEFENDANTS

---

SECRETARY OF STATE DELBERT HOSEMANN'S
SUR-REPLY SUPPORTING OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

---

Defendant Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi ("Secretary of State") submits this brief Sur-reply supporting his opposition to plaintiffs' alternatively requested preliminary injunctive relief in their Motion for Temporary Restraining Order [Docket No. 8].

### I. NVRA's Limited Public Disclosure Provision is not a Tool for Investigating or Challenging Elections, and does not Encompass the Election-related Documents at Issue

Among all the numerous independent and previously explained reasons plaintiffs have not established any of the required elements for preliminary injunctive relief, the key reason their NVRA claims lack any merit is the limited scope of the Act's provision for "public disclosure of voter registration



activities." Pub. L. No. 103-31, § 8(i)(1), 42 U.S.C. § 1973gg-6(i). Secretary Hosemann has extensively briefed the point. *See* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Preliminary Injunction at pp. 16-24, Docket No. 93; *see also* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Partial Summary Judgment at pp. 12-24, Docket No. 114. Subsection 8(i)'s text, its context, and reading it together with the entire statutory scheme proves NVRA does not require on-demand production of any and all documents containing information about voters. NVRA, and specifically its public disclosure provision, is not a tool for auditing state elections or ginning up election contests in their aftermath.

Subsection 8(i)(1)'s plain language mandates disclosure of "all records concerning the implementation of programs and activities conducted for ***the purpose*** of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1) (emphasis added). The subsection's text is strictly limited to documents related to programs or activities for registering and removing voters from the State's voter rolls, in other words, those registration and/or removal programs or activities conducted for the purpose of keeping the voter rolls accurate and up-to-date.

Subsection 8(i)(1)'s context reaffirms its limitation to documents regarding registering and removing voters from the voter rolls. The very next

subsection specifies two kinds of documents related to voter removal programs which fall within subsection 8(i)(1). 42 U.S.C. § 1973gg-6(i)(2). Every other section and subsection in NVRA describes programs and activities regarding registering and removing voters from the voter rolls. *See, e.g.*, 42 U.S.C. §§ 1973gg-4(b); 1973gg-6(a)(1), (4); 1973gg-6(c)(2)(A).

NVRA's stated goals and purposes evidence Congress's intent to increase voter registration and participation in federal elections while protecting federal elections' integrity with specific procedures to ensure States maintain accurate and current voter registration rolls leading up to those elections. 42 U.S.C. § 1973gg(b). The entire statutory scheme regulates different ways of accomplishing voter registration and procedures for removing registered voters from the voter rolls. *See, e.g.*, 42 U.S.C. §§ 1973gg3(c)(2); 1973gg-6(a)(3), (4); 1973gg-7(b). NVRA targets how States add and remove voters from voter rolls. No provision of NVRA regulates how States conduct their elections, how the voters on voter rolls vote, or how officials track and count votes, or certify the winner of an election. Obviously, the scope of NVRA's public disclosure provision is limited to those areas actually regulated by NVRA. Plaintiffs err in interpreting NVRA's document provisions to be a freestanding federal public records act authorizing access to documents which are not directly related to NVRA's limited substantive

scope.

States laws, like Mississippi's Election Code and Public Records Act, govern how elections are conducted and winners determined, and when, how and what documents involved in the process may be reviewed by candidates and the public during and following the election process. Meanwhile, NVRA deals with adding and removing voters from the voter rolls before the election process takes place, and after the election process is completed.

Plaintiffs are not entitled to review or copy, at a reasonable cost, election-related documents, such as poll books or absentee ballot materials, pursuant to NVRA's public disclosure provision. The preliminary injunction record proves that poll books and absentee ballot materials have nothing to do with programs or activities with the purpose of registering or removing voters from the voter rolls. *See* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Preliminary Injunction at pp. 16-24, Docket No. 93. Likewise, the summary judgment record, now simultaneously before the Court, further and conclusively establishes poll books and absentee ballot materials are entirely unrelated to registering or removing voters from the voter rolls. *See* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Partial Summary Judgment at pp. 12-24, Docket No. 114. Plaintiffs' NVRA claims lack merit.

## II. No Defendants have Violated NVRA's
## Limited Public Disclosure Provision

Plaintiffs' motion, bench briefs, and thirty page Reply brief fail to establish the scope of NVRA's public disclosure provision expands to reach any Mississippi election-related documents at issue, and fail to prove any NVRA violation. With respect to their Reply brief, three of its easily distinguished red herring arguments deserve brief attention.

First, the proposition that completed voter registration applications, unlike any documents at issue here, are subject to NVRA's limited public disclosure provision is of no moment. Plaintiffs have never requested any Mississippi voters' registration applications from any defendants or anyone not before the Court. No dispute exists here regarding whether voter registration applications must be produced under NVRA, or the Mississippi Public Records Act, with or without redacting voters' dates of birth.

A professional research outfit like True the Vote could undoubtedly, whether legitimately or illegitimately, discover individual Mississippi voters' dates of birth from a variety of sources. But, that does not validate their NVRA claims in this lawsuit.[1] If plaintiffs want registration applications,

---

[1] Contrary to plaintiffs' contention, Secretary Hosemann has never conceded they would be entitled to an *en mass* disclosure of Mississippi voters' dates of birth, if they ever made a request for voter registration applications under NVRA. Plaintiffs have previously misstated Assistant Secretary of State Turner's actual

they must follow the procedure for requesting them and then, if necessary, follow the procedure for suing about them. In the meantime, the fact that the State or local officials could, or could be required to, produce any voter registration applications does not bring other documents unquestionably outside the scope of NVRA's public disclosure provision within it.

Second, and related, plaintiffs' claims are not improved by the possibility that some UOCAVA voters might have registered to vote and requested an absentee ballot by submitting a federal post card application for the June 2014 primary and run-off elections. Secretary Hosemann

---

testimony on that point, which did not admit they would ever be entitled to an *en mass* disclosure of unredacted voter registration applications:

> Q. [Mr. Nixon]: Do we agree – do you and I agree that Social Security numbers are protected under a separate federal statute?
> A. [Ms. Turner]: Yes.
> Q.: Okay. So if a person filled out the voter – the voter registration application with their birth date and not with their last four digits of their Social and I asked to see that, I could receive that under the – under the NVRA with the birth date information included?
> A.: Yes.
> Q.: For every person who's ever filled out an application in the state of Mississippi?
> A.: There's different facts and circumstances that are – you can't be that unilateral across the board.

Turner Testimony, Tr. 128:13 - 25. If plaintiffs ever seek a universal production of voter registration applications including voters' dates of birth (which they have not), then Secretary Hosemann should not be required to make an *en mass* production for all the reasons explained in his Supporting Brief on that point. *See* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Preliminary Injunction at pp. 24-31, Docket No. 93.

acknowledges that a combined UOCAVA completed registration form and absentee request included in a post card application could be a voter registration application subject to NVRA's public disclosure provision and may need to be produced in unredacted form. Turner Testimony, Tr. 120:19 - 121:17. However, the potential existence of a very small number of, or any, such documents does not prove anyone has violated NVRA entitling plaintiffs to any relief here.

At the time of plaintiffs' purported requests for UOCAVA materials in July – as was the case with all their absentee balloting material requests – Mississippi election law required Circuit Clerks to safeguard UOCAVA absentee materials in sealed ballot boxes and only reviewed by authorized persons. Miss. Code Ann. § 23-15-911. The documents will be available following completion of candidate McDaniel's ongoing election contest. *See* Complaint in *McDaniel v. Cochran*, No. 2014-76-CV8, Jones County, Mississippi Circuit Court (August 14, 2014), Docket No. 114-5.

UOCAVA post card registration applications may be subject to NVRA's public disclosure provision because they concern an activity with the purpose of registering voters on the voter rolls. But the facts that a few such documents might exist, and were allegedly requested by plaintiffs, do not mean anybody violated NVRA's public disclosure provision in this case by

preserving any such documents for only official review during the pendency of an election challenge.

Third, poll books cannot be conflated with voter rolls as plaintiffs erroneously urge to suit their arguments here. Plaintiffs variously blur the differences between poll books and voter rolls by claiming poll books function as voter rolls on election day, serve as "the list" of eligible voters on election day, and/or touting their uses for deciding whether a voter is "eligible" to vote. Poll books are entirely different from the voter rolls and serve entirely different purposes than voter rolls. None of those purposes brings poll books within the scope of NVRA's limited public disclosure provision.

As explained in Secretary Hosemann's Response Brief, poll books only contain names of active status voters who may cast a regular ballot in an election. They do not include everyone who can vote in the election. They are not dispositive of whether any voter can vote in the election. More important than any uses for poll books plaintiffs have ever identified, all the proof here establishes that poll books are not part of any program or activity with the purpose of registering or removing voters from the voter rolls. They are not used for registering voters. They have no bearing on removing anyone from the voter rolls. Even their chief application in tracking voter history, demonstrated by a "voted" mark, or lack of such a mark, next to each voter's

-8-

name has nothing to do with registering or removing voters from the voter rolls. *See* Brief of Secretary of State Delbert Hosemann in Opposition to Motion for Preliminary Injunction at pp. 16-24, Docket No. 93.

FOR THESE REASONS, and those previously set forth in Secretary Hosemann's Opposition to plaintiffs' motion and Supporting Brief, Secretary Hosemann respectfully requests that the Court enter an order denying Plaintiffs' Motion for Preliminary Injunction.

THIS the _____ day of August, 2014.

          Respectfully submitted,

          DELBERT HOSEMANN, in his
          official capacity as Secretary of State
          for the State of Mississippi

    By: JIM HOOD, ATTORNEY GENERAL

    By: _____
       Harold E. Pizzetta, III (Bar No. 99867)
       Justin L. Matheny (Bar No. 100754)
       Office of the Attorney General
       P.O. Box 220
       Jackson, MS 39205-0220
       Telephone: (601) 359-3680
       Facsimile: (601) 359-2003
       *hpizz@ago.state.ms.us*
       *jmath@ago.state.ms.us*

       *Counsel for Delbert Hosemann, in his*
       *official capacity as Secretary of State*
       *for the State of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the _____ day of August, 2014.

_____<br>Harold E. Pizzetta, III