# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**TRUE THE VOTE, et al.**                                            **PLAINTIFFS**

**v.**                                  **Civil Action No.:  3:14-cv-00532-NFA**

**THE HONORABLE DELBERT HOSEMANN,**
**in his official capacity as Secretary of State for**
**the State of Mississippi, et al.**                                 **DEFENDANTS**

_____

## REBUTTAL BRIEF OF MISSISSIPPI REPUBLICAN PARTY
## IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE
## ALTERNATIVE, FOR SUMMARY JUDGMENT
_____

Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141

*Counsel for the Mississippi Republican Party*

The brief [Dkt. 88] of the Mississippi Republican Party in support of its motion to dismiss or, in the alternative, for summary judgment [Dkt. 86] demonstrated that plaintiffs have no possibility of success on any of the three counts of their amended complaint [Dkt. 58]. Plaintiffs' brief in response to the Party's motion [Dkt. 124] fails to establish any possibility of relief against the Party.

## ARGUMENT

## I.   BECAUSE THE MISSISSIPPI REPUBLICAN PARTY HAS NO LIABILITY UNDER THE NVRA, IT MUST BE DISMISSED FROM COUNTS 1 AND 2.

Counts 1 and 2 of the amended complaint allege liability against all defendants for failing to produce documents claimed to come within the scope of § 8(i) of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg-6(i). The allegations are legally insufficient for multiple reasons described in the surrebuttal brief of the Mississippi Republican Party in opposition to motion for preliminary injunction filed yesterday [Dkt. 137]. They are also factually insufficient.

It seems finally to have begun to dawn on plaintiffs that the Party has none of the documents they seek. They have acknowledged that, "if the Republican Party no longer has custody of the requested records, then it need not produce same." [Dkt. 115 at 3] As the Party explained in the motion for sanctions it served upon plaintiffs' counsel as long ago as July 11, 2014 [Dkt. 67], Mississippi statutes have never placed any of those documents in the hands of the State Executive Committee at any time.

Despite the clarity of the Mississippi statutory scheme, plaintiffs assert that the Party "at least at one point had control of the records at issue in this case." [Dkt. 124 at 8] Of

course, at the hearing on July 24, 2014, this Court explicitly refused to receive the Circuit Clerk's letter to Colonel Harding, marked as Exhibit P-9, into evidence against the Republican Party.  Tr. 176.  Had plaintiffs questioned Colonel Harding before attempting to use the evidence in opposition to the Party's summary judgment motion, he would have explained to them that it has nothing to do with the Mississippi Republican Party.  Colonel Harding testified that he volunteered to help conduct the runoff, Tr. 167, which, as this Court now understands, was supervised by the county executive committee in Harrison County.  When the Clerk wrote to Colonel Harding that "you should contact one of the other executive committee members who worked with you in the conduct of the June 24, 2014, Republican Election for the requested information," she was obviously speaking of Colonel Harding's colleagues on the county executive committee.  No one familiar with Mississippi election law would believe for a minute that she was suggesting that the documents had been stolen away to Jackson and hidden in the state headquarters.

Indeed, there is some indication that plaintiffs have begun to understand the role of county executive committees in conducting primaries.  They characterize as an "admission by Republican Party" [Dkt. 124 at 8] the simple statement of law at page 3 of the Party's brief in opposition to the motion for partial summary judgment [Dkt. 110] that "[t]he county executive committees had possession of some of those documents only during the course of election day and its immediate aftermath."  In response, they now claim for the first time that those county executive committee are "agents of the Party."  [Dkt. 124 at 12]  No such allegation appears in the amended complaint, and, in any event, it is false as a matter of law.

It is certainly true, as plaintiffs urge at some length [Dkt. 124 at 11-14], that the Party is a private organization protected by the First Amendment.  Nevertheless, the State can impose reasonable regulations on all sorts of organizations protected by the First Amendment, from political parties, to newspapers, to churches.  In 1906, when the Legislature required parties to employ primaries to choose their nominees to be placed on the general election ballot, it specified how those primaries would be organized.  The Party explained those regulations at some length in Part I of its brief in opposition to motion for preliminary injunction [Dkt. 91].  When a county executive committee holds temporary custody over the documents necessary to conduct the primary, it acts as the agent, not of the State Executive Committee or of the Party as a whole, but of the State itself.  Just as Secretary Hosemann helps local officials understand their statutory responsibilities, so too the State Executive Committee assists the county committees in understanding theirs, but local officials are agents of the sovereign people, and nobody else.

The fact that plaintiffs must seek county documents in 82 separate counties no doubt complicates their lives, Tr. 279, but it is one more practical reason for believing that, when Congress said "State" in § 8(i), it never meant to include county documents.  *See Voting for America, Inc. v. Steen*, 732 F.3d 382, 389 (5th Cir. 2013).  In any event, even if the county documents are covered by § 8(i), "it is not the place of the courts to 'rework' a statute to simplify enforcement when Congress could have written the legislation differently."  *United States v. Missouri*, 535 F.3d 844, 851 n.3 (8th Cir. 2008).

It is now apparent that the allegations in Counts 1 and 2 against the Party are legally and factually insufficient.  The Party should be dismissed as a defendant in those claims.

## II.    THE MISSISSIPPI REPUBLICAN PARTY IS NOT A PROPER DEFENDANT UNDER COUNT 3.

### A.    Plaintiffs have not alleged a constitutional violation.

Plaintiffs offer not a word to explain how the actual allegations of their amended complaint take Count 3 past the barrier of Fed.R.Civ.P. 12(b)(6).  Instead, they simply assume that they have stated a claim for relief, and criticize the Party for not presenting evidence to disprove their supposed allegations.  Because the Party has admitted that some mistakes of state law might have occurred in the conduct of the runoff, plaintiffs argue that "[e]ntering summary judgment on Count 3 in the absence of any opportunity for discovery would be improper."  [Dkt. 124 at 27]

The Party, however, has admitted nothing more than what plaintiffs' counsel admitted at the July 24 hearing, when he said, "There are mistakes in every election."  Tr. 341.  The Fifth Circuit has made plain that garden variety violations of state law do not give rise to a federal claim for relief.  *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985).  Plaintiffs cite no case that suggests that mere allegations of garden variety mistakes are sufficient to open up discovery in the hope that plaintiffs can find some sort of an unconstitutional plot.

Indeed, in *Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004), which Judge Mills explained to plaintiffs before they filed their complaint in this Court, plaintiffs alleged a plot, but to no avail:

> The gravamen of the Plaintiffs' amended complaint was that the Georgia and DeKalb County Republican party members conceived a plan to run a candidate (Majette) in the Democratic Primary, funded that candidate, and then encouraged Republican voters to crossover and vote for that

4

candidate.

*Id.*, at 1285-86.  The trial court dismissed the complaint, and the Eleventh Circuit agreed that "the amended complaint fails to state a claim for either a Fourteenth or Fifteenth Amendment violation." *Id.*, at 1288.  Within the Fifth Circuit, Judge Rosenthal dismissed a constitutional claim brought under 42 U.S.C. § 1983 on its face because "[t]he alleged election irregularities … do not give rise to a constitutional claim." *Broyles v. Texas*, 618 F.Supp. 2d 661, 696 (S.D. Tex. 2009).

In one of its earliest cases to consider a complaint contesting a state election, *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980), the Fifth Circuit strongly indicated that the evidence need not have been explored.  The trial court found that innocent state law mistakes in counting the ballots had been followed by intentional efforts to cover up those mistakes.  *Id.*, at 451-52.  The Fifth Circuit reversed, explaining:

> The complaint contended only that an inadvertent error denied them equal protection. … While the case proceeded precipitately to trial on the merits, and *it is doubtful that the pleadings can be considered enlarged by the evidence presented*, *see Fed.R.Civ.P. 15(b)*, the record does not support the conclusion that the incorrect preparation of the matrices for three precincts resulted from aught but human error and the trial judge found no calculation in it. … Even if the attempt to cover-up what had happened was malign, there was neither allegation nor evidence that the ballot error was deliberate.

*Id.*, at 454 (emphasis added).  While not necessary to its disposition of the case, the Court strongly suggested that the trial court had acted "precipitately" in proceeding with pleadings that failed to state a claim.  Indeed, the Fifth Circuit later held that a complaint alleging that improper votes of nonresidents had changed the result of an election failed to state a claim under § 1983.  *Angel v. City of Fairfield*, 793 F.2d 737 (5th Cir. 1986).

5

Here, plaintiffs do not allege that anybody did anything wrong.  They suggest in ¶¶ 92-93 that, if state law was violated, their federal rights were infringed.[1]  Indeed, their counsel admitted to this Court that "nobody's really done anything bad."  Tr. 347.  If nobody has even done anything bad as a matter of Mississippi law, then certainly no defendant could have committed acts sufficient to meet the constitutional standard set by the Fifth Circuit in *Welch*.  Because plaintiffs have not even alleged such a constitutional violation, they are entitled to no discovery in an effort to find one.

**B.    Even if Count 3 states a claim against somebody, the Republican Party is not  a necessary defendant.**

Even without alleging that anybody did anything wrong, much less anything unconstitutional, plaintiffs argue that "the RPM is a necessary party because adjudication of this case in the absence of the party would result in incomplete relief to Plaintiffs."  [Dkt. 124 at 12][2]  Plaintiffs do not explain how they might suffer "incomplete relief" in the Party's absence.

---

[1] However, plaintiffs' claims that improper recognition of state law challenges to their ballots somehow violated the Equal Protection Clause were deemed "patently insubstantial" in *Johnson v. Hood*, 430 F.2d 610, 613 (5th Cir. 1970).  The same opinion emphasized the importance of allowing States to rule on challenges to voter qualifications, but here there is no evidence that any voter was challenged at the polls.  Tr. 81.

[2] At least they appear to have abandoned their counsel's argument that they were doing the Party a favor by suing it:

> But as to Party, it's their primary.  And to the extent the primary is affected in some respect, we'd like them to be here.  In fact, I think that they, you know, would like to be here too.

Tr. 347.  As counsel knew at that time, the Party 13 days previously had served a motion for sanctions [Dkt. 67], Exhibit 3 to which was a letter of July 3, 2014, demanding to be dismissed from the complaint previously filed in Oxford.  Plaintiffs' counsel were well aware when they filed their complaint in this case that the Republican Party would not like to be here.

It is particularly hard to understand plaintiffs' argument that the absence of the Party would result in incomplete relief when plaintiffs have asked for no relief at all under Count 3. Judge Mills explained that defect in their complaint before they ever filed their action in this Court. They have now filed two complaints in this Court without ever asserting any prayer for relief under Count 3. No relief at all is certainly incomplete, but that has nothing to do with whether or not the Party is a defendant in the case.

Case law examines the requested relief very carefully to determine whether a party is indispensable under Fed.R.Civ.P. 19. For instance, in *Armco Steel Corp. v. United States*, 490 F.2d 658 (8th Cir. 1974), the trial court had ordered the joinder of two corporations which owned all the stock in the original defendant. Even though plaintiffs acknowledged their effort to "establish a basis for attributing the liability, if any, to its corporate shareholders," *id.*, at 691, the Eighth Circuit reversed the joinder order as being premature: "The necessity of joinder here relates only to a possible remedy in overcoming the effects of pollution. The justification for joinder thus rests on mere hypothetical speculation." *Id.* Here, plaintiffs' amended complaint does not even bother to speculate on what the remedy might be. They simply assert, without explanation, that the Party must be here, whatever relief may be provided.

More recently, and closer to home, another court in the Fifth Circuit applied Rule 19 in a dispute over insurance coverage. *In re Chinese Manufactured Drywall Prod. Liability Litig.*, 273 F.R.D. 380 (E.D. La. 2011). Various plaintiffs sued contractors and commercial general liability insurers, including the insurers of subcontractors who had not been joined as defendants. The insurers argued that the subcontractors were indispensable

parties because their entire coverage could be depleted as a result of litigation in which they had not been joined. *Id.*, at 383. Judge Fallon disagreed: "However, the present cases do not seek the award and allocation of certain insurance funds, but rather, a declaratory judgment action seeking a ruling from the Court as to insurance language in coverage." *Id.*, at 387. Because only declaratory relief was sought, "'this court has great flexibility in framing its relief so as to avoid prejudice to absent parties.' *Okada* [*v. MGIC Indem. Corp.*], 608 F.Supp. [383,] 390 [(D.C. Haw. 1985)] (citing 7 Wright, Miller & Kane, [*Federal Practice & Procedure*] § 1616 [(3d ed. 2010)]." 273 F.R.D. 391. As in *Armco Steel*, the precise relief being sought determined whether a particular defendant was truly indispensable.

Plaintiffs have not yet explained what they want this Court to do. If they want this Court to declare the true winner of the runoff, full relief can be granted to plaintiffs by ordering Secretary Hosemann to put the winner's name on the sample ballot that he sends to each county, pursuant to Miss. Code Ann. § 23-15-367(3) (Rev. 2007).[3] Should plaintiffs ask this Court to order a new runoff that relief would require the cooperation of county executive committees all over the State, none of whom have been named as defendants. However, state court judgments requiring new elections are routinely followed without joining executive committees as parties. *See, e.g., Barbour v. Gunn*, 890 So. 2d 843 (Miss. 2004). Indeed, when a final judgment is rendered in the current election contest,

---

[3] The same statute ordinarily requires Governor Bryant's consent but, as plaintiffs note, an injunction extends under Fed.R.Civ.P. 65(d)(2)(C) to "other persons who are in active concert or participation with" Secretary Hosemann.

to which the State Executive Committee is not a party,[4] the law declares that "it shall be the duty of the State Executive Committee forthwith to reassemble and revise any decision theretofore made by it so as to conform to the judicial judgment."  Miss. Code Ann. § 23-15-931 (Supp. 2013).  Plaintiffs have not attempted to explain why the Party is any more indispensable in a federal election challenge then in the state proceeding.

Plaintiffs' insistence on the presence of the Party suggests that they envision some sort of relief that would void the runoff.  Their problem is that the Fifth Circuit almost never approves much relief:

> The decisions in this Circuit that have voided a state election have involved either:  1) egregious conduct striking at the very heart of the fairness of an election, *Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967); 2) an improper refusal by a district court to enjoin an election prior to its occurrence, *Hamer v. Campbell*, 358 F.2d 215 (5th Cir. 1966); or 3) constitutionally suspect racially discriminatory practices and a strong showing that the results of the election had possibly been affected, *Toney v. White*, 488 F.2d 310, 315 (5th Cir. 1973) (en banc).  In cases not involving "serious violations of voting rights," *Hamer v. Ely*, 410 F.2d 152, 156 (5th Cir. 1969), and in cases presenting only issues of state law, *Hubbard v. Ammerman*, 465 F.2d 1169, 1181 (5th Cir. 1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 967, 35 L.Ed.2d 272 (1973), this court has refused to order the "drastic, if not staggering" remedy of voiding a state election.  *Bell v. Southwell*, 376 F.2d at 662.

*Saxon v. Fielding*, 614 F.2d 78, 79 (5th Cir. 1980).  Nothing they have said so far demonstrates any reason to depart from the general rule.

If plaintiffs were really worried about the presence of indispensable parties, one might reasonably wonder what relief they could possibly request that would not require the

---

[4] A copy of Senator McDaniel's complaint against Senator Cochran is attached as Exhibit 5 to Secretary Hosemann's response in opposition to motion for partial summary judgment [Dkt. 113].

presence of Senator McDaniel and Senator Cochran.  Secretary Hosemann and the State Executive Committee simply carry out the duties assigned to them by statute,[5] but the two candidates have a personal interest in the outcome of the race.  The Party has not moved to dismiss Count 3 under Fed.R.Civ.P. 12(b)(7) precisely because plaintiffs have not bothered to say what relief they want.  Given their utter failure to state a claim for relief, Count 3 should be dismissed under Rule 12(b)(6) without the need to reach the question of whether indispensable defendants are missing.

No party is indispensable to a claim that plaintiffs have failed to state.  In the unlikely event this Court should conclude that Count 3 has been properly pled, plaintiffs can receive any imaginable relief without the Party's presence.  The Party's motion to be dismissed from Count 3 should be granted.

### CONCLUSION

All counts of the amended complaint should be dismissed for failure to state a claim against the Party upon which relief can be granted.  Alternatively, summary judgment should be entered on all counts in favor of the Party.

Respectfully submitted this the 22nd day of August, 2014.

MISSISSIPPI REPUBLICAN PARTY

By:   *s/Michael B. Wallace*
      Michael B. Wallace (MSB No. 6904)
      WISE CARTER CHILD & CARAWAY, P.A.
      Post Office Box 651
      Jackson, Mississippi 39202-0651
      Telephone: 601.968.5500
      mbw@wisecarter.com

---

[5] The election commissions have no role whatsoever in party primaries, except in those counties where they contract to supervise the process.

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141
trn@wisecarter.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Joseph M. Nixon
Kelly Hunsaker Leonard
Kristen W. McDanald
Lloyd Eades Hogue
BEIRNE, MAYNORD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas  77056
jnixon@bmpllp.com
kleonard@bmpllp.com
kmcdanald@bmpllp.com
ehogue@bmpllp.com

James Edwin Trainor
BEIRNE, MAYNORD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas  78701
ttrainor@bmpllp.com

*Counsel for Plaintiffs*

Robert E. Sanders
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 23059
Jackson, Mississippi  39225-3059
rsanders@youngwells.com

John Wesley Daughdrill, Jr.
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 6005
Ridgeland, Mississippi  39157
wes.daughdrill@youngwells.com

*Counsel for Jefferson Davis County, Mississippi Election Commission*

Harold Edward Pizzetta, III
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi  39205-0220
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for The Hon. Delbert Hosemann*

Elise Berry Munn
BERRY & MUNN, P.A.
Post Office Drawer 768
Hazlehurst, Mississippi  39083
emunn@berrymunnpa.com

*Counsel for Copiah County, Mississippi Election Commission*

Pieter Teeuwissen
PIETER TEEUWISSEN, PLLC
Post Office Box 16787
Jackson, Mississippi  39236
adwoodard@bellsouth.net

*Counsel for Hinds County, Mississippi Election Commission*

Jeffrey T. Webb
WEBB LAW FIRM, PLLC
Post Office Box 452
Carthage, Mississippi  39051
webblaw@bellsouth.net

*Counsel for Leake County, Mississippi Election Commission*

Lee Thaggard
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, Mississippi  39302-2009
thaggard@barrypalmerlaw.com

    *Counsel for Lauderdale County,*
    *Mississippi Election Commission*

Mike Espy
MIKE ESPY, PLLC
317 East Capitol Street, Suite 101
Jackson, Mississippi  39201
mike@mikespy.com

    *Counsel for Madison County,*
    *Mississippi Election Commission*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi  39042
cslay@rankincounty.org

    *Counsel for Rankin County, Mississippi*
    *Election Commission*

    This the 22nd day of August, 2014.

                 *s/Michael B. Wallace*
                 Michael B. Wallace