IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik | § § § § § § § § § § § | |
| Plaintiffs, | § | Cause No. 3:14-cv-00532-NFA |
| | § | |
| v. | § | |
| | § | |
| The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission | § § § § § § § § § § § § § § § § § § § | |
| Defendants. | | |

**PLAINTIFFS' REPLY TO SECRETARY OF STATE'S RESPONSE
TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE DISTRICT COURT:

Plaintiffs True the Vote, et. al. ("Plaintiffs") file this Reply to Documents 113 and 114, and any joinders thereto, and respectfully show the Court the following:

## I.   SUMMARY OF REPLY

The Secretary of State ("SOS") seeks to revise the NVRA's plain language.  But the NVRA applies to this case and authorizes the disclosure of voter records, as follows:

(1) Ms. Turner admitted what courts already hold, that the NVRA requires disclosure of voter birthdates without redaction, and further testified birthdates are already publicly available under the act in Mississippi.[1]

(2) The NVRA casts a wide net when considering which documents are relevant to maintaining the accuracy and currency of official lists of eligible voters, and the documents at issue fall squarely within the definition, *not* the exception.

(3) A State's burden that it "***shall make*** [the NVRA records] ***available*** for public inspection" is ongoing, and the plain language includes no specific request to 'invoke' or 'trigger' the burden. Attempts to create a burden are improper.

(4) The federal title of "chief State election official" ("CEO") is not honorary.  A number of SOS's have made that argument, and courts uniformly strike it down. "Coordinating" compliance with the NVRA requires the CEO to direct the state arms with NVRA responsibility to comply with the NVRA.

## II.   ARGUMENT AND AUTHORITIES

**A.   Limited privacy concerns do not create an exception to disclosure rule**.

The plain language of the public disclosure provision does not allow redaction. The SOS agrees NVRA records are "not subject to a redaction" and must include birthdates.[2] There is no fact issue here. Further, in passing the NVRA, Congress weighed privacy concerns against the importance of transparency. It came down on the side of

---

[1] Defendants cite no cases of abuse of "sensitive" information through voter record disclosures, and the SOS admits this information is already public.  The SOS's briefing conveniently ignores Ms. Turner's admission in this case.

[2] *See* Doc. 83-1, Exhibit 1, at p. 126.

transparency.[3] Congress included a field for birthdates in registration materials and enacted a statute requiring voter records to be publically disclosed. *Id*. Courts uphold this rule,[4] and Ms. Turner admits Mississippi selectively discloses birthdates in partial compliance with the NVRA.[5] It is therefore immaterial whether Defendants agree with the NVRA or the reasons Plaintiffs seek the records and information therein.

Eight years prior to *Long*, the court in *Cox* invalidated a Georgia law requiring individual submission of voter registration applications (as opposed to a bundle) that sought to protect privacy of the registrant's personal information and prevent voter fraud. *See Cox*, 324 F. Supp. at 1367. Though Georgia argued it could "avoid the plain language of the statute if it has a good policy reason for doing so," the court disagreed, reasoning, "[h]ad Congress meant to allow for exceptions, it would have so provided." *Id*. at 1367. Here, §1973gg-6(i) provides two exceptions to blanket disclosure. Birthdates do not fall within the exceptions. *See id*.[6] Applying the NVRA's plain language, and the reasoning in *Cox* and *Long*, policy arguments prohibiting disclosure of birthdates are unavailing.[7]

## B.    The state has an ongoing burden to permit public disclosure.

Defendants rewrite the NVRA to shift the statutory burden (to maintain and make records fully available for inspection), to not be "triggered" until a specific request

---

[3] *Project Vote/Voting for America v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) ("Congress has already answered the question" of privacy v. transparency "by enacting NVRA Section 8(i)(1) which plainly requires disclosure.").

[4] *Id.*; *see also Charles H. Wesley Educ. Fndtn., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1367 (N.D. Ga. 2004).

[5] *See* Doc. 83-1, Exhibit 1 at p. 126; *but see* p. 127 (stating birthdates in voter roll are not disclosed).

[6] And, unlike the exception that records relating to a registration agency not be disclosed, the NVRA imposes no obligation to ensure voter birthdates are confidential. *Compare* 42 U.S.C. § 1973gg-6(i) *with* 1973gg-6(a)(6).

[7] "It is not the province of the court, however, to strike the proper balance between transparency and voter privacy." *Long*, 682 F.3d at 339.

invokes the NVRA. But the NVRA has no request requirement – the NVRA places a trigger-less burden on states stating "[e]ach State **shall maintain and make available for public inspection** and, where available, photocopying at a reasonable cost, all records…[.]" 42 U.S.C. § 1973gg-6(i). Where the State already has the obligation to do something, a request to do it should not be required.[8] Ms. Turner testified the SOS does not provide the voter roll with birthdate information, although such information is maintained by the SOS.[9] The counties have filed declarations promising to produce only redacted records.[10] Defendants do not contradict Ms. Engelbrecht's testimony that she has the voter roll for Mississippi and it does not include birthdates.[11] Thus, no fact issue exists to indicate Defendants are "making available for public inspection and photocopying" complete, un-redacted records as required by the NVRA.[12]

## C.    Further notice unnecessary and futile.

The NVRA does not require pre-suit notice if an alleged violation (here, the failure to maintain and make information available) "occurred within 30 days before the date of an election for Federal office." *Id*. It is undisputed that Mississippi has not made unredacted records available. State officials rely on MISS. CODE ANN.§23-15-165(6) to

---

[8] *See Nat'l Coal. for Students with Disabilities Educ. and Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845 (D. Md. 2001) (State's argument that voter need request a registration record and then be denied before the voter has standing struck down); *U.S. v. Missouri*, 535 F.3d 844 (8th Cir. 2008) (Where a state must take specific action, it may not delegate the responsibility and thereby avoid responsibility).
[9] *See* Doc. 83-1, Exhibit 1 at p. 126-27.
[10] *See, e.g.*, Doc. 79-1, ¶6 Affidavit of Edna Stevens; Doc. 89-4, ¶15, Affidavit of Donna Johnson; Doc. 83-1, Exhibit 1, p. 127; *see also* Doc. 23-2 (Jefferson Davis Circuit Clerk will provide redacted pollbook).
[11] *See* Doc. 114, p. 25.
[12] Additionally, no evidence contrary to Ms. Patrick's testimony at Doc. 83-1, Exhibit 1, pp. 249-50, 254 (Marshall and Tunica counties both denied access to pollbooks at the SOS's direction).

require redaction[13], and argue the records at issue are not protected by the NVRA, so only state law applies. No pre-suit notice would alter this statute. Given these circumstances, no fact issue exists regarding the futility of further notice.[14]

**D.  No fact issue exists to dispute the records are protected by the NVRA.**

The Defendants' Response contains self-serving testimony that the requested records are not "generally" used to register or remove active voters from the voter roll and contradicting representations concerning the inclusion of birthdates on the voter roll.[15] The testimony does not bear, however, on the NVRA requirement that the records are "relevant to the currency and accuracy of official lists of *eligible* voters."  Eligibility is different from registration. Mississippi allows any registered voter to challenge the eligibility of a person to vote on election day.[16] While the NVRA protects "eligible" voters from unauthorized removal, "Congress did not intend to bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place." *Bell v. Marinko*, 367 F.3d 588, 591-92 (6th Cir. 2004). Thus, even assuming Mississippi law does not use the records requested in this case to add or subtract eligible, active voters from its voter rolls, pollbooks are still relevant to challenging the designation of an ineligible voter as "active" and any later request to

---

[13] Thus establishing direct conflict between federal and state law, contrary to the 'coinciding' argument against preemption.

[14] *See, e.g., ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997); *Condon v. Reno*, 913 F.Supp. 946 (D.S.C. 1995).

[15] Kim Turner testified the voter roll contains birthdate information but the information is not publically disclosed. *See* Doc. 83-1, Exhibit 1 at p. 126-27. The declaration of Madalan Lennep indicates the voter roll can produce age information but somehow does not contain a voter's birthdate. *Compare* Doc. 113-2, ¶ 4 *with* ¶ 15.  The only conclusion to draw from this evidence is that the voter roll contains birthdate information, which is accessible by the state but prohibited from public disclosure in spite of the NVRA.

[16] MISS. CODE ANN. § 23-15-571; *see also* Doc. 83-1, Exhibit 1, p. 140-41 (poll workers see birthdates in pollbooks).

remove that voter from the roll. Pollbooks are therefore covered by the NVRA. Moreover, this Court should construe the NVRA to give effect to its purposes. The NVRA was enacted to provide uniform procedures relating to federal elections. It anticipated states may conduct elections differently, but conceived that the records requested in this case would be used in carrying out purging activities. The Court should give effect to the goal of the NVRA to provide uniformity when considering whether the requested records are subject to its provisions. The pollbook (made from the voter roll) is itself an official list of potentially eligible voters made 30 days before the election from voter registration materials.[17] The pollbook must contain a column to mark a voter as "Voted," preventing the same person from voting twice on the same day. The pollbook is therefore relevant to eligibility to vote on election day. Finally, pollbooks are switched for purposes of determining who is eligible to vote in a run-off.

As for absentee ballot applications and envelopes, they are directly relevant to whether a voter has voted in the last two years,[18] which is a factor in active vs. inactive vs. purged registration status.  And, since ballots may be cast on behalf of the 65 and over population voting from home, and overseas military, those voters will never sign the registration list at the polling location.  The method to review such voting attendance is by checking absentee ballot applications and envelopes, or the pollbook.

---

[17] *See also* MISS. CODE ANN. § 23-15-125 "Form of Pollbooks" (inclusion of birthdate required); *Id.* ("[A]ll who register within thirty (30) days before any regular election shall be entered on the pollbooks immediately after such election, and not before[.]"); *see* MISS. CODE ANN. § 23-15-153 ("[N]o person shall vote at any election whose name is not on the pollbook.").

[18] *See* 42 U.S.C. § 1973gg-6(d) (whether a voter "has not voted" in two years after failing to respond to a notice is a basis for removal from voter roll.  The over 65 demographic may vote from home, so their names will not appear on the sign in sheets at polling locations).

**E.      The role of chief State election official is not honorary.**

Secretary Hosemann, the "CEO", argues he does not have "any authority or duty to enforce NVRA's public disclosure provision" against circuit clerks. (Doc. 114, p. 33). But Congress did not create an honorary figure head. To suggest individual voters must chase 82 counties in order for the NVRA to protect them leads to cluttered dockets and crowded courtrooms. Instead, the opposite is true. In *Missouri*, the Eighth Circuit observed: "after one or two [local election authorities] are held liable others are more likely to fall in line without lengthy litigation." 535 F.3d at 851 fn.3.

Federal courts uniformly reject the argument that a CEO has no authority under the NVRA because he delegated his responsibilities. *See id*. at 849-850.  In *Missouri*, the Eighth Circuit overturned an order absolving the Missouri SOS of responsibility for NVRA violations by local authorities on the grounds the SOS could not "enforce" the NVRA against them. *Id*. at 846. The Eighth Circuit held that, while "enforcement" means a right to bring a cause of action as an aggrieved plaintiff, the State and SOS/CEO cannot be aggrieved under the NVRA because they are not protected parties (voters are). *Id*. Thus, lack of "enforcement" power is not a defense to the CEO for its responsibilities to "coordinate" NVRA compliance. *Id*. The court concluded:  "[u]nder the NVRA's plain language Missouri may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility[.]"*See id.*

Additionally, the Sixth Circuit in *Harkless v. Brunner* found the Ohio SOS could not delegate its authority to local officials and avoid responsibility under the NVRA for State compliance.  545 F.3d 445, 456-57 (6th Cir. 2008).  The Sixth Circuit concluded, as

this Court should, that designation of a CEO hardly makes sense, "if that official did not have the authority to remedy NVRA violations." 545 F.3d at 453.  Also, in *United States v. New York*,[19] the district court considered whether two New York state agencies were required to ensure NVRA compliance by district offices run by local governments. The court concluded "[i]t would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies." *Id.* at 79. The SOS and local authorities jointly fail to make available NVRA records in unredacted form, and both are responsible for their noncompliance. *See* 545 F.3d at 454-58 (imposing joint liability).

### III.   CONCLUSION

Plaintiffs represent the right to election integrity, not the interests of a candidate. Argument that Plaintiffs are "intruding" on an election contest is an excuse for nondisclosure that should not be indulged by the Court.[20]  Plaintiffs are not seeking originals, but non-redacted duplicates. The SOS's rate of $2,100[21] for the Mississippi voter roll, where median household income is $38,882[22], is another way to avoid disclosure.  Because these excuses and others do not and cannot provide reason to ignore the NVRA, Plaintiffs ask the Court to enter partial summary judgment in their favor, and all other relief to which they are justly entitled.

---

[19] 255 F. Supp. 2d 73, 78 (E.D.N.Y. 2003).
[20] *See e.g. Scales*, 150 F. Supp. 2d at 855-56 (assertion that "agency personnel are 'too busy'" or that "two totally separate functions are somehow mutually exclusive is ridiculous and insulting[.]").
[21] *See* Doc. 113-2, ¶4.
[22] *See U.S. Census "Mississippi Quick Facts"* http://quickfacts.census.gov/qfd/states/28000.html, attached hereto as Exhibit 1.

Respectfully submitted,

/s/     *L. Eades Hogue*

Joseph M. Nixon – *pro hac vice*          L. Eades Hogue
Texas State Bar No. 15244800              Mississippi State Bar No. 2498
jnixon@bmpllp.com                         Louisiana State Bar No. 1960
Kristen W. McDanald – *pro hac vice*      ehogue@bmpllp.com
Texas State Bar No. 24066280              BEIRNE, MAYNARD & PARSONS, LLP
kmcdanald@bmpllp.com                      Pan-American Life Center
Kelly H. Leonard – *pro hac vice*         601 Poydras Street
Texas State Bar No. 24078703              Suite 2200
kleonard@bmpllp.com                       New Orleans, LA 70130
BEIRNE, MAYNARD & PARSONS, LLP            (504) 586-1241 Tel.
1300 Post Oak Blvd, Suite 2500            (504) 584-9142 Fax
Houston, Texas  77056                     **Lead Counsel**
(713) 623-0887  Tel.
(713) 960-1527  Fax

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700  Tel.
(512) 623-6701  Fax

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2014 a copy of the forgoing, and its exhibits were served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission, the Rankin County, Mississippi Election Commission, and the Simpson County, Mississippi Election Commission;  via the Court's ECF e-file service.  Plaintiffs have served the remaining Defendant, who has not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.

/s/    *L. Eades Hogue*