IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| True the Vote, Jane Coln, Brandie Correro, Chad Higdon, Jennifer Higdon, Gene Hopkins, Frederick Lee Jenkins, Mary Jenkins, Tavish Kelly, Donna Knezevich, Joseph Knezevich, Doris Lee, Lauren Lynch, Norma Mackey, Roy Nicholson, Mark Patrick, Julie Patrick, Paul Patrick, David Philley, Grant Sowell, Sybil Tribble, Laura VanOverschelde, and Elaine Vechorik<br>    Plaintiffs,<br><br>v.<br><br>The Honorable Delbert Hosemann, in his official capacity as Secretary of State for the State of Mississippi, The Republican Party of Mississippi, Copiah County, Mississippi Election Commission, Hinds County, Mississippi Election Commission, Jefferson Davis County, Mississippi Election Commission, Lauderdale County, Mississippi Election Commission, Leake County, Mississippi Election Commission, Madison County, Mississippi Election Commission, Rankin County, Mississippi Election Commission, Simpson County, Mississippi Election Commission, and Yazoo County, Mississippi Election Commission<br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 3:14-cv-00532-NFA |

**PLAINTIFFS TRUE THE VOTE ET AL.'S RESPONSE TO SECRETARY OF STATE'S MOTION TO STRIKE INCIDENT REPORTS**

Plaintiffs True the Vote, et al. ("True the Vote") file this Response to the Secretary of State's Motion to Strike Declarations and Incident Reports [Doc. 116], Brief in Support [Doc. 117], and all joinders thereto, and respectfully show the Court the following:

A. **The True the Vote incident reports reflect information that could otherwise be testified to at trial.**

Defendants submit that the incident reports are improper evidence because the information therein could not be testified to by the True the Vote volunteer. This is incorrect. A True the Vote volunteer could testify, based on her personal knowledge, that on X date at X time she went with a group of volunteers to X office in X city to inspect X records. Volunteers can also testify they were unable to publicly inspect X records. Because this information is not describing an "out of court statement" the statements are facts that could be testified to in court and may be considered as summary judgment evidence. *See* FED. R. EVID. 801 (a)-(c); 802.

B. **True the Vote incident reports are not produced by police officers or other state official, and therefore do not fall into the FRE 803(8)(B),(C) exceptions.**

The comparison of the True the Vote incident reports to police reports is misplaced. There is a specific rule of evidence, FED. R. EVID. 803(8)(B),(C) that excepts police reports from the "Public Records and Reports" hearsay exception. These exceptions exist – specific to police officers – due to the inherent hostile relationship between officers and those they are investigating.[1]

---

[1] *See United States v. Dowdell*, 595 F. 3d 50, 70-71 (1st Cir. 2010) ("The Rule's [803(8)] enactment history indicates that 'the reason for this exclusion is that observations by police officers at the scene of the crime or apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases."); *United States v. Hatfield*, 591 F.3d 945, 952 (7th Cir. 2010) (noting that the concern of the drafters of the exception in Rule 803(8)(B) was "that reports by law enforcers are less reliable than reports by other public officials because of law enforcers' adversary relation to a defense against whom the records are sought to be used"); *United States v. Russell*, 156 F.3d 687, 691-92 (6th Cir. 1998) ("[W]e are also mindful that police investigative reports used against a defendant in a criminal

2

Unlike police officers, True the Vote volunteers are not in an inherently adversarial position with the Circuit Clerks or other officers of Mississippi. It is improper to suggest a volunteer faces similar adversarial situations, heightened emotions and a physical encounter that may skew the recollection when conferring with Circuit Clerks or other other election officials. (*See, e.g*. Doc. 89-2[2], ¶5, ¶7) ("In a brief exchange of pleasantries") ("They apologized for their misunderstanding and very politely left the vault[.]"). The incident reports are simply not based on the volunteers' recollection of "the heat of the moment." And, because the documents were not drafted by police officers, or public officials, the case law interpreting Rule 803(8) to argue the reports are not business records under 803(6) is inapposite[3].

Also unlike officers, True the Vote volunteers record events they personally experience. Less adversarial descriptions in a police report, such as a recording of a

---

trial are generally regarded as unreliable and are excluded as a matter of law as inadmissible hearsay at trial.").

[2] Of note, Doc. 89-1, 89-2, 89-3, 89-4, and 89-5 aver that a request for 'pollbooks' was not "heard", but then show a written request was made for all Republican Voters and all Democratic Voters who voted on Election Day by precinct. Clearly, that would be the pollbook. Also, Defendants make statements that though the contents of ballot boxes were requested, but 'absentee applications and envelopes' were not. Since those are the contents of ballot boxes, Defendants gamesmanship is not well taken, and a fact issue as to the request made by True the Volunteers has not been raised to indicate untrustworthiness. *See* Doc. 83-1, Exhibit 1, p. 130 (Ms. Turner testifying the absentee ballot applications and envelopes are in the ballot boxes).

[3] The foundation for a public record or report under Rule 803(8) need only establish that the document is authentic and that it contains one of the three types of matters specified in the rule. It is not necessary to show that the public record or report was regular or made at or near the time of the event recorded. *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1308 (7th Cir. 1992) ("The public-document exception to the hearsay rule does not contain the requirement of the business records exception (Rule 803(6)) that the documents be kept in the course of a regularly conducted activity."); *United States v. Versaint*, 849 F.2d 827, 832 (3rd Cir. 1988) ("FED. R. EVID. 803(8) does not require that a report be made at or near the time of the event it is describing).

witness statement, are not based on firsthand knowledge of the officer and thus may be excluded as hearsay. *See Martinez v. Aetna Ins. Co.*, No. 97-2388, 1999 WL 169434 at *3 (E.D. La. Mar. 24, 1999) (noting that information in police report that does not reflect the maker's personal knowledge, such as witness statements, is hearsay within hearsay and does not fall under the business records exception to the hearsay rule). Such statements are unreliable because they are not based on firsthand knowledge. They are not excluded based on the fact that the statement appears in an incident report. *United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir. 1986), cert. denied, 479 U.S. 836 (1986) ("thus, it is well established that although entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted, statements made to the officer by third parties under no business duty to report may not."). Here, the purpose for which the incident reports (and declarations) are offered– that the requests were made and denied—are based on the firsthand knowledge of the declarant. The situations are again dissimilar.

**C.     The Incident Reports are excepted from the hearsay rule.**

    1.     <u>Hearsay Tier One: The Incident Reports are business records.</u>

The Incident Reports are offered under FED. R. EVID. 803(6) business records of True the Vote, by its custodian of records Ms. Engelbrecht. At the July 24, 2014 hearing, Ms. Engelbrecht testified that: (1) the Incident Reports are records of a regularly conducted business activity of True the Vote; (2) that they were made at or near the time

by someone with knowledge of their contents[4]; (3) that the reports are kept in the regular course of True the Vote's business; and (4) that making the Incident Reports is a regular practice of True the Vote. *See* Fed. R. Evid. 803(6); (Doc. 83-1, Exhibit 1, pp. 40-47) (Ms. Engelbrecht is presented with a select Incident Report as example, and testifies to the 803(6) criteria); *cf. also United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir. 1986), *cert denied*, 479 U.S. 836 (1986) ("[I]t is well established that [] entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted, [though] statements made to the officer by third parties under no business duty to report may not."). Ms. Engelbrecht again established the admissibility of the reports as business records in her Declaration attached to Plaintiffs' Motion for Partial Summary Judgment. (*See* Doc. 83-1, Exhibit 2). "The term 'business' as used in [Rule 803(6)] includes business institution, association, profession, occupation of every kind, whether or not conducted for profit." FED. R. EVID. 803(6). The rule therefore includes a non-profit entity like True the Vote.

Though Ms. Engelbrecht did not demonstrate personal knowledge regarding the actual contents of the Incident Reports, the custodian of the records need only know how the records are kept, that the records are regularly made in the regular course of business, and are made by someone with personal knowledge of their contents. *See U.S.*

---

[4] An "other qualified witness" may testify to the 803(6) elements as well. An "other qualified witness" is any person who can credibly testify that the records satisfy the requirements of the exception. *United States v. Console*, 13 F.3 641, 657 (3rd Cir. 1993); *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1060-61 (1st Cir. 1985). Ms. Swenson also testified that the records are made at or near the time of their occurrence. *See* (Doc. 83-1, Exhibit 1, 200-202; 209-210) (Ms. Swenson testifying that she was trained to fill out the Incident Reports, that volunteers filled the reports out immediately, and were able to submit them to True the Vote immediately via a cell phone "app").

*Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415-16 (5th Cir. 2010) ("[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy."); *see also Thanongsih v. Board of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) ("the custodian need not be the individual who 'personally gather[ed] … a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices."). Ms. Engelbrecht's testimony therefore meets the requirements of Rule 803(6) and allows the records to be admitted as an exception to the rule against hearsay.

    2.    <u>Hearsay Tier One:  The Incident Reports are present sense impressions</u>.

Moreover, the reports are, on their face, made at or near the time of the date the events are observed, and excepted from the hearsay rule as present sense impressions. *See* FED. R. EVID. 803(1). ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."). Testimony regarding the "present sense impression" exception was offered by a True the Vote volunteer, Ellen Swensen, who filled out some of the Incident Reports offered by Plaintiffs, and who witnessed volunteer Susan Morse fill out hers. (*See* Doc. 83-1, Exhibit 1, 200-202; 209-210) (Ms. Swensen testifying that she was trained to fill out the Incident Reports, that volunteers filled the reports out immediately, and were able to submit them to True the Vote immediately via a cell phone "app"). Ms. Swensen's testimony supports a finding that the records were prepared at or near the time of the events described therein, and are quickly submitted to True the Vote for internal filing. *See id*. The declarations of True

6

the Vote's volunteers submitted as summary judgment evidence likewise were submitted to confirm that the reports were made at or near the time of the events described therein, thus supporting the foundation of reliability. The records may therefore be admitted under the present sense impression exception to the rule against hearsay.

    3.    <u>The second tier of statements are not offered for the truth of the matter asserted, and are thus not hearsay statements</u>.

Finally, with regard to hearsay within the statements that are otherwise hearsay exempt, other rules of evidence permit their admission. For example, statements that a Circuit Clerk indicated the Secretary of State or Attorney General directed him or her to redact records were not offered (for purposes of the Preliminary Injunction Hearing) for the truth of the matter asserted. *See* FED. R. EVID. 801(c)(2); 802. Whether or not the Circuit Clerk's recount of what the Secretary of State or Attorney General stated is true is not the purpose for which the Incident Reports are offered at this stage of the litigation. The purpose of offering the Incident Reports is to show that True the Vote volunteers requested certain un-redacted records, but were denied access. *See, e.g., Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1061 (8th Cir. 1995) ("The Hoseltons are correct when they argue that the out-of-court statements in Williams's notes by other declarants do not meet the requirements of Rule 803(6). In the case of Exhibit A-60, however, the statements of the other declarant or declarants are not offered to show the truth of the matters asserted in the statements."). The reports were also offered to show that the circuit clerks receive direction from the SOS and therefore recognize the SOS as the CEO of Mississippi. Thus, the statements contained within the Incident Reports are not hearsay as defined by

7

the Federal Rules of Evidence. *See* Fed. R. 801(c)(2) ("'Hearsay' means a statement that … a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also* Fed. R. Evid. 802.[5]

    4.    <u>The second tier of statements are public records and reports.</u>

Pursuant to Federal Rule of Evidence 803(8), records, reports, or statements in any form of public offices setting forth the activities of the office or matters observed pursuant to duty imposed by law as to which there was duty to report, are excepted from the hearsay rule. Therefore, the documents attached to the incident reports that are made or signed by the circuit clerks which she drafted in her role as circuit clerk, and records filed with the circuit clerk, may be considered by the Court.

    5.    <u>Hearsay Tier Two:  Letters, or statements, regarding requests made for records are either 'verbal acts' or not excluded hearsay due to the 'adoptive admissions rule'</u>.

Even assuming the statements were offered for the truth of the matters asserted therein, at least two hearsay exceptions apply to such statements. First, the Incident Reports were offered to show a request to each county was made, and that no records were produced in response. Therefore, the Incident Reports potential hearsay within hearsay are not excluded due to the "adoptive admissions rule":

> The law of evidence long has recognized 'adoptive admissions.'  This

---

[5] Nonetheless, any imperative statements within the Incident Reports are not hearsay, such as statements by Circuit Clerks telling volunteers to leave. See *U.S. v. Waters,* 627 F.3d 345, 358 (9th Cir. 2010) (An imperative statement is not an assertion of fact, and therefore "does not fall within the meaning of 'statement' in Rule 801(a) and cannot be hearsay, "because a nonassertion cannot have been offered to prove the truth of the matter asserted."); *see also Katzenmeier v. Blackpowder Prds.*, 628 F.3d 948, 951 (8th Cir. 2010) (instruction to someone to do something is not hearsay).

doctrine provides that, in certain circumstances, a party's agreement with a fact stated by another may be inferred from (or 'adopted' by) silence. Such an inference may arise when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception. In such an instance, the statement may be considered 'adopted' by virtue of the party's failure to respond.

*Id*.

For example, Jeanne Webb's [Doc. 25-1] Incident Report includes a letter requesting records from Ms. Edna Stevens, the Copiah County Circuit Clerk. The letter itself would generally necessitate a response, but none was made. The failure to respond to the letter by Ms. Webb, operates as "silence". Therefore, again, the rule against hearsay does not apply to the Incident Reports, for the purposes for which they are offered. *See* Fed. R. Evid. 802; *c.f. U.S. v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004) (adoptive statements are not excluded under the hearsay rule).

Second, the letter and statements constitute "verbal acts," and are therefore not "statements" under FED. R. EVID. 801(a). *See U.S. v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) ("[O]ut-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay"). Declining to disclose documents protected by the National Voter Registration Act ("NVRA") is legally operative verbal conduct as it gives rise to a claim under the NVRA.

D.      **The incident reports do not determine the outcome of this lawsuit.**

The incident reports have been offered to show that the State is not following its burden that it "shall make maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records

9

concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]"  42 U.S.C. 1973gg-6(i).  Because Congress does not include an exception for birthdates, and because the Fourth Circuit (and other district courts) have recognized an exception cannot be drafted into the NVRA for birthdate information where Congress did not so include it, the issue only remains whether the State is failing to make available birthdate information where it must – in NVRA records.  Because the Defendants have submitted testimony and declarations indicating that they refuse to provide birthdate information in disclosing voter pollbooks, the voter roll, postcard applications, ballot applications and envelopes, etc.[6], Plaintiffs burden to show a violation is complete – so long as the Court determines that these records are in fact protected by the NVRA, as it must.[7]  Because the statute places the "shall maintain" and "shall make available" burden on Defendants with no contemplated trigger, and Defendants are affirmatively admitting they are not making available this information, whether one request or one thousand requests were made for the information has little effect on this suit.  The real issue is whether the records the birthdates are sitting in are NVRA-protected records.  For the reasons within Plaintiffs' motion for partial summary judgment and preliminary injunction briefing, the NVRA net

---

[6] *See*, *e.g.*, Doc. 79-1, ¶6 Affidavit of Edna Stevens; Doc. 89-4, ¶15, Affidavit of Donna Johnson; Doc. 83-1, Exhibit 1, p. 127; *see also* Doc. 23-2 (Jefferson Davis Circuit Clerk will provide redacted pollbook).

[7] Congress intended birthdates to be disclosed in records contemplated by the NVRA's public disclosure provision, and it is "not the province of this court, however, to strike the proper balance between transparency and voter privacy.  That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires disclosure of completed voter registration applications." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).

squarely covers the records Defendants affirmatively submit they will only make available in redacted form.

## RELIEF REQUESTED

Based on the foregoing, Plaintiffs True the Vote, et. al., request that this Court consider the Incident Reports in connection with the motion for summary judgment, and that Defendant Secretary of State's objections thereto, as asserted in Docs. 116, 117, be denied.  Plaintiffs further request all other relief to which they are justly entitled.

Respectfully submitted,

/s/     *L. Eades Hogue*

| | |
|---|---|
| Joseph M. Nixon – *pro hac vice* | L. Eades Hogue |
| Texas State Bar No. 15244800 | Mississippi State Bar No. 2498 |
| jnixon@bmpllp.com | Louisiana State Bar No. 1960 |
| Kristen W. McDanald – *pro hac vice* | ehogue@bmpllp.com |
| Texas State Bar No. 24066280 | BEIRNE, MAYNARD & PARSONS, LLP |
| kmcdanald@bmpllp.com | Pan-American Life Center |
| Kelly H. Leonard – *pro hac vice* | 601 Poydras Street |
| Texas State Bar No. 24078703 | Suite 2200 |
| kleonard@bmpllp.com | New Orleans, LA 70130 |
| BEIRNE, MAYNARD & PARSONS, LLP | (504) 586-1241 Tel. |
| 1300 Post Oak Blvd, Suite 2500 | (504) 584-9142 Fax |
| Houston, Texas  77056 | **Lead Counsel** |
| (713) 623-0887   Tel. | |
| (713) 960-1527   Fax | |

James E. "Trey" Trainor, III. – *pro hac vice*
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700   Tel.
(512) 623-6701   Fax

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 22, 2014 a copy of Plaintiffs' Response to Copiah County's Objection to Notice of Filing of Incident Reports was served on The Honorable Delbert Hosemann, The Republican Party of Mississippi; The Copiah County Mississippi Election Commission; the Hinds County, Mississippi Election Commission; the Jefferson Davis County, Mississippi Election Commission; the Lauderdale County, Mississippi Election Commission, the Leake County Mississippi Election Commission; the Madison County, Mississippi Election Commission; the Rankin County Mississippi Election Commission; and the Simpson County, Mississippi Election Commission via the Court's ECF e-file service.  Plaintiffs have served the remaining Defendants, who have not yet registered to the Court's ECF system for this matter, via United States Postal Service, in accordance with Federal Rules of Civil Procedure.


                                                        /s/    *L. Eades Hogue*