## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**TRUE THE VOTE, et al.**                                               **PLAINTIFFS**

**v.**                                               Civil Action No.:  **3:14-cv-00532-NFA**

**THE HONORABLE DELBERT HOSEMANN,**
**in his Official Capacity as Secretary of State**
**for the State of Mississippi, et al.**                                **DEFENDANTS**

---

## REBUTTAL BRIEF OF MISSISSIPPI REPUBLICAN PARTY
## IN SUPPORT OF MOTION FOR SANCTIONS

---

Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141

*Counsel for Mississippi Republican Party*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...................................................1

STATEMENT OF THE ISSUE..................................................................1

SUMMARY OF THE ARGUMENT ...........................................................1

ARGUMENT .........................................................................................3

    I.     LIABILITY UNDER RULE 11 IS DETERMINED AS OF THE
           DATE OF PRESENTATION TO THE COURT, SUBJECT TO
           CORRECTION DURING THE 21 DAYS AFTER THE FILING
           OF A MOTION.....................................................................3

    II.    COUNTS 1 AND 2 LACK LEGAL OR EVIDENTIARY
           SUPPORT AGAINST THE PARTY. ...........................................6

    III.   PLAINTIFFS HAD NO BASIS FOR BELIEVING THE PARTY
           TO BE A PROPER DEFENDANT UNDER COUNT 3. ..........................10

    IV.   MONETARY SANCTIONS SHOULD BE ASSESSED AGAINST
           TRUE THE VOTE AND ITS LAWYERS.................................................14

CONCLUSION .....................................................................................17

CERTIFICATE OF SERVICE ..................................................................18

# TABLE OF AUTHORITIES

**Cases:**

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995)...........................................11

*Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981) ........................................................11

*Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir. 1972)...................................................11

*Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004) ..............................................................11

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564 (5th Cir. 2006)...............................1, 3, 15

*Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988) ..........................3

*Thornton v. General Motors Corp.*, 136 F.3d 450 (5th Cir. 1998)...................................16

*Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985).....................................................2, 11

*Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796 (5th Cir. 2003) ...............................16

**Constitution, Statutes, and Rules:**

U.S. Constitution, Fourteenth Amendment.................................................................1, 10

National Voter Registration Act, 42 U.S.C. §§ 1973gg *et seq.* ................................ *passim*

Fed.R.Civ.P. 11 ..................................................................................... *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

On July 9, 2014, plaintiffs filed a complaint [Dkt. 1] against the Mississippi Republican Party including two counts which attempted to allege violations of the National Voter Registration Act ("NVRA"), 42 U.S.C. §§ 1973gg *et seq.*, and one count alleging dilution of plaintiffs' voting rights in violation of the Equal Protection Clause of the Fourteenth Amendment. On July 11, 2014, the Party served plaintiffs' counsel with a motion for sanctions under Fed.R.Civ.P. 11 and filed that motion with the Clerk on August 4, 2014 [Dkt. 67]. Plaintiffs filed their response [Dkt. 131] on August 18, 2014.

On July 24, 2014, this Court held an evidentiary hearing concerning the request for a preliminary injunction contained in plaintiffs' motion for temporary restraining order [Dkt. 8]. All briefing on the preliminary injunction motion has now been completed. All parties, except Secretary of State Delbert Hosemann, have moved for summary judgment in whole or in part. All briefing on the summary judgment motions has been completed.

## STATEMENT OF THE ISSUE

Whether this Court should impose sanctions upon True the Vote and its lawyers for violations of Rule 11(b)(3), and whether this Court should impose sanctions upon plaintiffs' lawyers for violation of Rule 11(b)(2).

## SUMMARY OF THE ARGUMENT

Compliance with Rule 11 is determined as of the time a challenged pleading or other representation is presented to the Court. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 569 (5th Cir. 2006). Plaintiffs are protected against liability if they withdraw the challenged

paper within 21 days after service of a Rule 11 motion, but plaintiffs have not withdrawn anything.

Whether or not plaintiffs are entitled under the NVRA to access to the documents they seek, Mississippi statutes make clear that none of those documents are ever in the possession of the Republican State Executive Committee. County executive committees possess those documents briefly on election day and thereafter, but they were legally required to return them to the Circuit Clerks before plaintiffs filed their complaint. The Chairman of the State Executive Committee explained the law to plaintiffs' counsel 13 days before the filing of the complaint, and two individual plaintiffs were aware that the process had been completed. Plaintiffs have no evidence that the requirements of the law were not followed anywhere in Mississippi.

Plaintiffs have failed to allege facts sufficient to constitute a violation of their constitutional rights under the standard set in *Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985). The hearsay evidence on which they rely would establish a miniscule level of error. The argument that the Mississippi Republican Party is a necessary party for the imposition of any remedy fails because their complaint requests no remedy.

Plaintiffs' lawyers are subject to sanctions for frivolous legal claims under Rule 11(b)(2). Both the lawyers and their clients are subject to sanctions for frivolous factual allegations under Rule 11(b)(3). Plaintiff True the Vote took the responsibility for investigating the facts after the July 24 runoff, and its president, Catherine Engelbrecht, swore to those supposed facts in her verification attached to the motion for temporary

restraining order.  Because True the Vote had no evidence to support its allegations, True

the Vote should be sanctioned along with its lawyers.

## ARGUMENT

**I.    LIABILITY UNDER RULE 11 IS DETERMINED AS OF THE DATE OF PRESENTATION TO THE COURT, SUBJECT TO CORRECTION DURING THE 21 DAYS AFTER THE FILING OF A MOTION.**

Plaintiffs filed their complaint in this Court on July 9, 2014.  Their response [Dkt.

131] to the motion for sanctions filed by the Mississippi Republican Party [Dkt. 67] relies

on several documents which did not even exist at that time, much less when they filed an

identical complaint in Oxford on July 1, 2014 [Dkt. 12, Ex. 3].  The question before this

Court is not what plaintiffs can demonstrate now, which, as will be seen, is still not very

much.  The question is whether plaintiffs had conducted "an inquiry reasonable under the

circumstances," within the meaning of Rule 11(b), into the controlling facts and law at the

time they presented their complaint to this Court.

In considering Rule 11 motions, the Fifth Circuit continues to follow what it

describes as the snapshot test:

> "Like a snapshot, Rule 11 review focuses upon the instant when the picture
> is taken – when the signatures placed on the document." Therefore, "in
> considering the nature and severity of the sanction to be imposed under Rule
> 11, the court should consider the state of mind of the attorney when the
> pleading or other paper was signed."

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 569 (5th Cir. 2006), quoting *Thomas v.*

*Capital Security Services, Inc.*, 836 F.2d 866, 874-75 (5th Cir. 1988) (footnotes omitted).[1]

---

[1] The *Thomas* rule continues to apply, but under the 1993 amendments to Rule 11, conduct
is now evaluated at the time of "presenting to the Court" a challenged representation, in the current
language of Rule 11(b).

3

The question, then is whether plaintiffs and their counsel had conducted "an inquiry reasonable under the circumstances" as of July 9, 2014.

The 1993 amendment to Rule 11 gave litigants and their counsel an opportunity to correct any initial failure to conduct such a reasonable inquiry. Rule 11(c)(2) now requires that a motion be served upon the litigants, but not filed until 21 days later. The motion may not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected with 21 days after service." The official comment explains the purpose of the amendment:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. ... [U]nder the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Here, 45 days after service of the Party's motion on July 11, 2014, plaintiffs have not withdrawn anything. Paragraph 8 of their response stresses that their amended complaint, filed July 30, 2014 [Dkt. 58], precisely duplicates the allegations of the original complaint challenged by this motion.[2] By presenting the same allegation to the Court again, they continue to certify that they have conducted a reasonable inquiry into the facts and the law.

---

[2] It should be noted that only ¶¶ 22 and 35 of the original complaint [Dkt. 1] actually say anything about the Party. The other cited allegations, ¶¶ 38, 41, 42, 43, at best refer to all defendants collectively. Plaintiffs now apparently include the Party among those defendants whom ¶ 38 accuses of "preventing access to these records," even though they elsewhere seem to concede that "the Republican Party no longer has custody of the requested records." [Dkt. 115 at 3] Of course, the Party has never had custody of any of the requested records.

4

Plaintiffs' perseverance in these baseless claims is contravened by the reassurances they gave to the Court after a full day of testimony on July 24, 2014. Speaking of the Party, their counsel said that "he keeps saying we haven't accused them of anything, and he's right." Tr. 346. He later reiterated that "nobody's really done anything bad." Tr. 347. Attempting to explain why he was suing the Party when it had done nothing wrong, he continued:

> But as to Party, it's their primary. And to the extent that the primary is affected in some respects, we'd like them to be here. In fact, I think that they, you know, would like to be here too.

Tr. 347. Counsel had no reason to think that the Party would want to be here, having been advised on July 3, 2014, by the letter attached as Exhibit 3 to the sanctions motion, that the Party demanded to be dismissed from the case.

Not only have plaintiffs declined to withdraw their charges against the Party, they are still manufacturing new ones. They assert in ¶ 14 of their response, "Here, it appears the RPM is working in concert with other Defendants to deny Plaintiffs access to the records in question." After a full day of testimony, and with a basket full of so-called incident reports, they cannot point to a single piece of evidence to support such a conspiracy. That baseless charge, while not the subject of the instant motion, demonstrates that plaintiffs' ability to conduct a reasonable investigation has not improved since July 9, 2014. At that time, plaintiffs had no basis whatsoever for any of the claims they asserted against the Party.

## II.   COUNTS 1 AND 2 LACK LEGAL OR EVIDENTIARY SUPPORT AGAINST THE PARTY.

While plaintiffs' efforts to seek relief under the NVRA lack merit for the many reasons explained in the briefs on summary judgment and preliminary injunction, those arguments do not form the basis of the Party's motion.  Even if the NVRA entitles plaintiffs to the Mississippi election documents they seek, the Party explained in Part II of its motion for sanctions that Mississippi law places custody of those documents in other officials. Plaintiffs have never disputed the Party's explanation of Mississippi law, but they seek to evade the reality of the statutory scheme by now arguing in ¶ 3 of their response that the county executive committees act on behalf of the Party.  The complaint plaintiffs filed on July 9 did not allege any such agency theory, and, as the Party explained at pages 2-3 of its rebuttal brief in support of its motion to dismiss [Dkt. 141], it finds no support in Mississippi law.

Plaintiffs' failure to read the statutes, however, would not have been terribly significant if they had read their correspondence.  The letter attached as Exhibit 2 to the motion demonstrates that Chairman Nosef told them where to find the documents they wanted.   Having no evidence to contravene the Chairman's factual and legal representations, plaintiffs nevertheless sued everybody except the Circuit Clerks.

In evaluating the claim of plaintiffs' counsel that he had little time to research the law and the facts [Dkt. 131, Ex. 4 ¶ 4], it is helpful to review what he said he was doing in his letter of June 25, 2014, attached as Exhibit 1 to the motion.  He said nothing at all about so-called "double voting," which appears in ¶¶ 71, 72, and 75 as the gravamen of Count 3.

Instead, he asked about absentee ballots, which entered this case for the first time as ¶ 93 of the amended complaint [Dkt. 58].   In particular, his letter speculated about "[t]he systematic refusal to allow qualified poll watcher the ability to be present, to examine absentee voter qualifications and challenge where appropriate."   His client, Catherine Engelbrecht, president of True the Vote, testified on July 24 that she had no knowledge of any person being denied the opportunity to challenge absentee ballots.  Tr. 79-80.  The letter made no effort to investigate so-called "double voting."

Although counsel's affidavit asserts a shortage of time to investigate the case, the response gives no coherent explanation of the rush.  Paragraph 14 asserts, "True the Vote had very little time to conduct an investigation and get this lawsuit on file after the June 24th Run-Off," apparently because "certification of an election is usually done quickly." However, plaintiffs attach as Exhibit 3 to their response two emails from Chairman Nosef to Julie Patrick, one of the plaintiffs in this case, who is Chairman of the Marshall County Republican Executive Committee.  His second email explained that he had acted because of "the confusion about the impact of the certification process."  His original email explained that "a complaint may be filed with the state committee after we finish the process of reporting the vote to the Secretary of State on July 7.  Some have said that the meeting on July 1 ends the time for which a complaint may be filed but that is not the case." Plaintiffs have never contested the accuracy of this explanation of the certification process, and Chairman Nosef explained it to plaintiff Patrick three days before they filed their first complaint in Oxford and 11 days before plaintiffs filed their complaint in this Court, which is the subject of this motion.

Whatever the state of plaintiffs' knowledge of Mississippi law, they knew as a fact when they filed their complaint that the Party's role in the process was over. Chairman Nosef informed plaintiff Patrick that the totals would be sent to Secretary Hosemann on July 7, and his transmittal letter of that date appears in this record as Exhibit 2 to the Party's response to plaintiffs' motion for temporary restraining order [Dkt. 12]. Plaintiff Sybil Tribble, who is a member of the State Executive Committee, certainly understood that the tabulated results would be transmitted to Secretary Hosemann on that date. She attended the State Executive Committee meeting on July 1 at which the Committee unanimously authorized the Chairman to transmit the totals on July 7, as verified by Chairman Nosef's affidavit attached hereto as Exhibit 1. Plaintiffs' response offers no suggestion of why they were in too big a rush to make a reasonable investigation when they knew that the certification process was already complete.

Despite what Chairman Nosef had told plaintiffs' counsel, plaintiff Patrick, and plaintiff Tribble long before July 9, ¶ 10 of the response now claims that his representations were false. "Despite the RPM's representations, evidence reveals that the RPM has maintained (or destroyed) voter pollbooks, absentee ballot applications and envelopes and federal postcard applications (the "records") for at least one defendant county." Plaintiffs rely on precisely two pieces of supposed evidence, neither of which involves pollbooks or federal postcard applications. The first is a letter from Gayle Parker, Circuit Clerk of Harrison County, marked at the July 24 hearing at Exhibit P-9. The second is a declaration

by Colonel Phillip Harding.[3]

The Party has already explained at page 2 of its rebuttal brief supporting its motion to dismiss [Dkt. 141] that the Clerk's letter suggested that the Harrison County Executive Committee, not the Mississippi Republican Party, might know the location of the missing absentee ballots.  Even if plaintiffs might have misunderstood the letter, it was not even written until July 17, 2014, eight days after they filed their complaint.  The letter could not possibly have been part of the supposedly reasonable investigation upon which they based their complaint.

More importantly, plaintiffs agreed with this Court at the July 24 hearing that the Harrison County evidence was not even relevant to their claims under the NVRA.  In response to an objection, their counsel said, "Well, it would be relevant to show that there's a question as to the validity of the election.  What this man is going to testify to, ma'am, is about observing the destruction of absentee ballot materials."  Tr. 168.  This Court ruled that the hearing concerned "issues that involve the National Voter Registration Act.  This alleged destruction of something is not part of that case.  Objection sustained."  Tr. 168. Plaintiffs cannot now rely on that evidence in support of their claims under the NVRA.

Colonel Harding's declaration now is just as irrelevant as when he tried to testify on the stand.  The possible loss or destruction of absentee ballot materials is a serious matter

---

[3] The response identifies the declaration as having been attached to Court document 25. No declaration by Colonel Harding is attached to that document.  Instead, Colonel Harding signed a document described as a verification to plaintiffs' motion for a temporary restraining order which is found as Exhibit 1 to a letter of July 10, 2014, from plaintiffs' counsel to Judge Wingate [Dkt. 9].

which may have some relevance to the claims asserted in Count 3, but it has no bearing on the NVRA claims. Moreover, Colonel Harding signed his verification on July 9, 2014, the same day that this complaint was filed. Plaintiffs do not claim that his testimony was part of their supposedly reasonable investigation, and they clearly had no knowledge of this testimony when they filed exactly the same allegations in Oxford eight days earlier. Colonel Harding's testimony is of no use to plaintiffs in meeting their responsibilities under Rule 11.

In short, what plaintiffs see as a vast conspiracy is simply the ordinary working of Mississippi election law. It is true, as ¶ 14 of the response contends, that all defendants are working in concert. However, they are working in concert to make the primary process work, not to hide anything from anybody. As Chairman Nosef explained to plaintiff Patrick in Exhibit 3 to the response, "the committees need those boxes to complete the work required by statute, and two sets of people can't be working with the ballots at the same time." The county executive committees have completed their work, and the Circuit Clerks now have the ballots. Neither the Mississippi Republican Party nor any of its county executive committees have violated any portion of the NVRA, and plaintiffs never had any reason to think they had.

## III.   PLAINTIFFS HAD NO BASIS FOR BELIEVING THE PARTY TO BE A PROPER DEFENDANT UNDER COUNT 3.

Similarly, plaintiffs had no legal or factual basis for their claim in Count 3 that the Republican runoff on June 24, 2014, was conducted in such a way as to deprive them of their rights under the Equal Protection Clause of the Fourteenth Amendment. Their

response cites not a single case to support the reasonableness of their legal theory. Their hearsay evidence from Noxubee County and Jefferson Davis County, cited in footnote 1 of their response, actually demonstrates that no constitutional deprivation occurred.

Judge Mills explained the law to plaintiffs two days before they ever filed their complaint in this Court. At pages 3 and 4 of his order of July 7, 2014, attached as Exhibit 4 to the Party's response to motion for temporary restraining order [Dkt. 12], he discussed *Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004), which demonstrates that plaintiffs' theory of "double voting" does not itself violate the Equal Protection Clause. *Osburn*, of course, is not binding on this Court, but it should have spurred plaintiffs' counsel to seek support in Fifth Circuit cases. A reasonable inquiry would have disclosed controlling cases like *Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985), *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981), and *Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir. 1972), discussed at pages 19-21 of the Party's brief in support of its motion to dismiss [Dkt. 88]. To this day, plaintiffs have ignored *Welch* and *Hubbard*, although they admitted at page 26 of their brief opposing the Party's motion to dismiss [Dkt. 124] that *Duncan* holds that mere "administrative infirmities in an election" do not create a federal right of action. Footnote 3 of their response to the Party's motion for sanctions acknowledges that *Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995), cited at page 7 of the motion for sanctions, demonstrates that limited violations will not support a constitutional claim. Indeed, plaintiffs' counsel admitted at the July 24 hearing that "standard mistakes" would not create a right to relief. Tr. 341.

11

Plaintiffs' utter failure to plead a constitutional violation might not be sanctionable if they had anything remotely resembling the evidence necessary to prove it. To this day, however, their evidence of so-called double voting, the only irregularity alleged in their complaint,[4] is almost non-existent.

Footnote 1 of the response cites two exhibits submitted by Susan Morse from her investigation in Noxubee County. Those county records, if accurate, indicate that two persons who voted in the Democratic Primary on June 3, 2014, also voted in the Republican runoff on June 24. The final official tabulations, attached as Exhibit 2 to the Party's response to the motion for a temporary restraining order [Dkt. 12], show a total of 703 voters in Noxubee County. Susan Morse's notes do not reveal whether she investigated all 703 voters, but, if she did, two mistakes out of 703 votes hardly suggest a constitutional violation.

The email attached as Exhibit 2 to plaintiffs' response is even weaker. Counsel for the Jefferson Davis County Election Commission acknowledged that he was providing hearsay on what Senator McDaniel's representatives had found: "As I understand it, they found three voters who voted in the democratic primary, and then voted in the republican runoff." The final tabulation for Jefferson Davis County shows a total of 1,310 votes. Presuming the accuracy of the hearsay and the likelihood that Senator McDaniel's representatives did a thorough job that represents an error rate of 0.229%. That does not

---

[4] The original complaint did not allege the improper counting of absentee ballots, rendering the Harrison County evidence irrelevant to this sanctions motion.

remotely prove that anyone's constitutional rights have been violated. What it does prove is that Jefferson Davis County election officials should be hired to run the IRS.

Indeed, it is entirely unlikely that plaintiffs knew any of this when they filed the complaint, since defense counsel's email is dated July 17 and Susan Morse's notes are dated July 9, the day the complaint was filed. Their lawyer says in ¶ 3 of his affidavit that "my law firm was alerted by Plaintiffs regarding numerous voting irregularities in the Primary." He does not say what those irregularities might have been or what plaintiffs knew about them. On this record, then, there is no demonstration that plaintiffs had any evidence of any irregularities at the time they filed their complaint.

Finally, even if there were some basis on July 9 for believing that plaintiffs' constitutional rights had been violated, there was no reason to believe "that the RPM is a necessary party to a remedy fashioned to correct violations of Plaintiffs' rights." [Dkt. 131 ¶ 15] Since the complaint does not ask for a remedy for Count 3, as Judge Mills had pointed out to them two days before at page 2 of his opinion, it is hard to imagine how the Party could be a necessary party to a non-existing remedy. Plaintiffs cite no authority to support that assertion, and the Party has demonstrated in Part II.B of its rebuttal brief in support of its motion to dismiss [Dkt. 141] that the assertion is wrong.

Count 3 of the original complaint lacks any legal or factual support. Plaintiffs should be sanctioned for presenting it to this Court.

## IV.   MONETARY SANCTIONS SHOULD BE ASSESSED AGAINST TRUE THE VOTE AND ITS LAWYERS.

The unreasonable insufficiency of plaintiffs' legal investigation throughout this litigation is typified by ¶ 6 of its response:

> First, Rule 11 specifically prohibits an award of monetary sanctions against a represented party, such as True the Vote, based upon a violation of 11(b)(2). *See* Fed.R.Civ.P. 11(c)(5)(A). Accordingly, monetary sanctions cannot be awarded against True the Vote (or any individual Plaintiffs in this suit) based upon the allegations in RPM's Motion and the Federal Rules of Civil Procedure. *Id.*

The first sentence is absolutely true; the second sentence is absolutely false.

Rule 11(b)(2) sets forth the requirement that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The Party does assert in Part II of its motion that there is no legal support for the three counts of the original complaint. Plaintiffs' lawyers, not plaintiffs themselves, are responsible for that failure.

However, Part I of the motion contends that the claims against the Party have no evidentiary support. That defect violates Rule 11(b)(3), not Rule 11(b)(2). Rule 11(c)(5)(A), upon which plaintiffs rely, does not relieve plaintiffs from monetary sanctions for violating Rule 11(b)(3).

Little more need be said about the liability of plaintiffs' lawyers under Rule 11(b)(2). Their understanding of Rule 11 itself is no more defensible than the legal theories on which their complaint rests. The lawyers should compensate the Party for its fees and expenses.

14

True the Vote itself shares responsibility for the factually frivolous allegations of the complaint. The Fifth Circuit has upheld the imposition of monetary sanctions on clients for violating Rule 11(b)(3). The discussion of the trial court's analysis in *Skidmore Energy* could equally well apply here:

> The court discussed in detail the testimony of Michael Gustin, Skidmore's owner, who assured the court that he had reviewed the pleadings before they were filed. Nevertheless, the district court found he was "entirely unable to articulate a factual nexus between any of the Defendants and verifiable money laundering activity," organized crime, terrorism financing, or any of the other "sensational allegations peppered throughout the complaint and RCS." The court found "[t]he bulk of Plaintiff[s'] causes of action … are without evidentiary support and thus appear to have been 'instigated as a gamble that something might come of it rather than on the basis of the facts at hand.'"

455 F.3d at 568 (footnote omitted). Similarly, this Court has already said of Catherine Engelbrecht, president of True the Vote, "It's perfectly clear she does not have personal knowledge of anything." Tr. 93. She might have reasonably relied upon her lawyers to investigate the facts, except that she swore to the truth of those facts in her verification attached to the motion for temporary restraining order [Dkt. 8]. The lawyers relied on her, not the other way around.

The Party does not seek the imposition of monetary sanctions against the individual plaintiffs. Certainly, plaintiff Patrick and plaintiff Tribble had factual knowledge inconsistent with the allegations of the complaint, but there is no reason to suppose plaintiffs' lawyers talked to them before July 9, much less explained to them the full meaning of the complaint. Plaintiffs' counsel has never responded to Judge Mills's speculations at pages 1-3 of his opinion of why the individual plaintiffs are in this case in

15

the first place but there is no suggestion in the affidavit of plaintiffs' counsel or anywhere else that any of them were consulted regarding the factual allegations of the complaint.

True the Vote is an entirely different animal. This Court already knows that True the Vote has used this litigation as an opportunity to raise money. Tr. 93. Plaintiffs' counsel described Exhibit D-4, admitted at the July 24 hearing as "misworded," but it was worded exactly like the other communications attached hereto as Exhibits 2 and 3. Indeed, the day before the July 24 hearing, she accused the Party of "a statewide scheme to prevent citizens from exercising their legal right to review election documents," a baseless allegation found nowhere in the complaint but repeated in ¶ 14 of the response to this motion. If the Party had known on July 11 that True the Vote was using this litigation to raise money, then it would have alleged a violation of Rule 11(b)(1), which forbids the presentation of a complaint "for any improper purpose." *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796 (5th Cir. 2003) (en banc). That allegation is not in this motion and therefore cannot form the basis of sanctions.

However, this Court should take all the facts into consideration in evaluating the claim in ¶ 15 of their response that "True the Vote had very little time to conduct an investigation," a factor that is certainly worthy of consideration under *Thornton v. General Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998). Here, 55 days after True the Vote first filed suit in Oxford, plaintiffs have had plenty of time to investigate, but have neither withdrawn nor supported the material allegations. What possible reason is there to believe that more time would have resulted in a different complaint? True the Vote and its lawyers

sued the Mississippi Republican Party for the same reason that Willie Sutton robbed banks. This Court should not allow them to get away with it.

## CONCLUSION

For these reasons, and for the reasons set forth in the Party's original motion, this Court should issue its order directing True the Vote and its counsel to pay all of the Party's reasonable attorneys' fees and expenses in the defense of this action, together with all costs. The Party should be granted leave to submit appropriate affidavits and evidence to establish that amount.

Respectfully submitted this the 25th day of August, 2014.

MISSISSIPPI REPUBLICAN PARTY

By:    s/Michael B. Wallace
       Michael B. Wallace (MSB No. 6904)
       WISE CARTER CHILD & CARAWAY, P.A.
       Post Office Box 651
       Jackson, Mississippi 39202-0651
       Telephone: 601.968.5500
       mbw@wisecarter.com

       T. Russell Nobile (MSB No. 100682)
       WISE CARTER CHILD & CARAWAY, P.A.
       1105 30th Avenue, Suite 300
       Gulfport, Mississippi 39501
       Telephone: 228.867.7141
       trn@wisecarter.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Joseph M. Nixon
Kelly Hunsaker Leonard
Kristen W. McDanald
Lloyd Eades Hogue
BEIRNE, MAYNORD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas  77056
jnixon@bmpllp.com
kleonard@bmpllp.com
kmcdanald@bmpllp.com
ehogue@bmpllp.com

James Edwin Trainor
BEIRNE, MAYNORD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas  78701
ttrainor@bmpllp.com

*Counsel for Plaintiffs*

Harold Edward Pizzetta, III
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi  39205-0220
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for The Hon. Delbert Hosemann*

Pieter Teeuwissen
PIETER TEEUWISSEN, PLLC
Post Office Box 16787
Jackson, Mississippi  39236
adwoodard@bellsouth.net

*Counsel for Hinds County, Mississippi Election Commission*

Robert E. Sanders
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 23059
Jackson, Mississippi  39225-3059
rsanders@youngwells.com

John Wesley Daughdrill, Jr.
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 6005
Ridgeland, Mississippi  39157
wes.daughdrill@youngwells.com

*Counsel for Jefferson Davis County, Mississippi Election Commission*

Elise Berry Munn
BERRY & MUNN, P.A.
Post Office Drawer 768
Hazlehurst, Mississippi  39083
emunn@berrymunnpa.com

*Counsel for Copiah County, Mississippi Election Commission*

Jeffrey T. Webb
WEBB LAW FIRM, PLLC
Post Office Box 452
Carthage, Mississippi  39051
webblaw@bellsouth.net

*Counsel for Leake County, Mississippi Election Commission*

Lee Thaggard
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, Mississippi  39302-2009
thaggard@barrypalmerlaw.com

> *Counsel for Lauderdale County,*
> *Mississippi Election Commission*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi  39042
cslay@rankincounty.org

> *Counsel for Rankin County, Mississippi*
> *Election Commission*

Mike Espy
MIKE ESPY, PLLC
317 East Capitol Street, Suite 101
Jackson, Mississippi  39201
mike@mikespy.com

> *Counsel for Madison County,*
> *Mississippi Election Commission*

This the 25th day of August, 2014.

> *s/Michael B. Wallace*
> Michael B. Wallace