IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TRUE THE VOTE, *ET AL*.                                      PLAINTIFFS

V.                                        CIVIL ACTION NO.:3:14-cv-532-NFA

THE HONORABLE DELBERT
HOSEMANN, in his official capacity
as Secretary of State for the State
of Mississippi, *ET AL*.                                     DEFENDANTS

_____

**REPLY BRIEF OF SECRETARY OF STATE DELBERT HOSEMANN
IN SUPPORT OF MOTION TO STRIKE**
_____

JIM HOOD, ATTORNEY GENERAL

Harold E. Pizzetta, III (Bar No. 99867)
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for Delbert Hosemann, in his
official capacity as Secretary of State
for the State of Mississippi*

# TABLE OF CONTENT

TABLE OF CONTENTS....................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

SUMMARY OF THE ARGUMENT ....................................................................1

ARGUMENT ........................................................................................................1

    I.   True the Vote incident reports do not reflect information that
        could otherwise be testified to at trial ...................................................1

    II.  The incident reports do not qualify under FRE 803(6) as records
        of a regularly conducted activity .........................................................3

        A.  The incident reports were prepared in anticipation of litigation...3

        B.  True the Vote volunteers had no "business duty" to create
            the incident reports..............................................................4

    III. The incident reports are not admissible as present sense
        impressions under FRE 803(1).............................................................7

    IV. The second tier statements are offered for the truth of the
        matter asserted ...................................................................................9

    V.  Public records and reports.................................................................. 11

    VI. Adoptive admission rule .................................................................... 11

    VII. The contention that the incident reports should be
        admitted because they "do not determine the outcome of
        the case" is meritless ........................................................................ 13

CONCLUSION...................................................................................................14

CERTIFICATE OF SERVICE........................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

Advisory Committee's Note,
  56 F.R.D. 183 (1973)...................................................................................... 6

*AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.,*
  896 F.2d 1035 (7th Cir. 1990) .................................................................. 3, 4

*Bracey v. Herringa,*
  466 F.2d 702 (7th Cir. 1972) .................................................................... 3, 4

*City of Cleveland v. Cleveland Electric Illuminating Co.,*
  538 F. Supp. 1257 (D.C. Ohio 1980) ........................................................... 6

*Coyle v. Kristjan Palusalu Maritime Co., Ltd.,*
  83 F. Supp.2d 535 (E.D. Pa. 2000)............................................................ 8, 9

*Echo Acceptance Corp. v. Household Retail Servs., Inc.,*
  267 F.3d 1068 (10th Cir. 2001) ................................................................... 3

*Florida Canal Industries, Inc. v. Rambo,*
  537 F.2d 200 (5th Cir. 1976) ....................................................................... 6

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010,*
  2012 WL 85447 (E.D. La. January 11, 2012) ............................................. 6

*Melendez–Diaz v. Massachusetts,*
  557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) ............................. 3

*Palmer v. Hoffman,*
  318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) ................................... 3, 4

*Pridemore v. Legal Aid Society of Dayton,*
  625 F. Supp. 1171 (S.D. Ohio 1985)............................................................ 8

*Rock v. Huffco Gas & Oil Co., Inc.,*
  922 F.2d 272 (5th Cir. 1991) ................................................................... 3, 5

*Scheerer v. Hardee's Food Sys., Inc.*,
    92 F.3d 702 (8th Cir. 1996) ............................................................. 3

*Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*,
    71 F.3d 335 (10th Cir. 1995) ........................................................... 4

*U.S. v. Snyder*,
    787 F.2d 1429 (10th Cir. 1986) ....................................................... 5

*United States v. American Radiator & Stand. San. Corp.*,
    433 F.2d 174 (3d Cir. 1970) ............................................................. 6

*United States v. Baker*,
    693 F.2d 183 (D.C. Cir. 1982) ......................................................... 6

*United States v. Beasley*,
    513 F.2d 309 (5th Cir. 1975) ........................................................... 6

*United States v. Davis*,
    571 F.2d 1354 (5th Cir. 1978) ......................................................... 6

*United States v. Pazsint*,
    703 F.2d 420 (9th Cir. 1983) ........................................................... 6

*United States v. Plum*,
    558 F.2d 568 (10th Cir. 1977) ......................................................... 6

*United States v. Ware*,
    247 F.2d 698 (7th Cir. 1957) ........................................................... 3

*White Industries, Inc. v. Cessna Aircraft Co.*,
    611 F. Supp. 1049 (D.C. Mo. 1985) ............................................. 5, 6

## State Cases

*Farmer's Union Oil Co. of Dickinson v. Wood*,
    301 N.W.2d 129 (N.D. 1980) ........................................................... 5

## Federal Rules

FRE 801 (a)-(c) and 802 ................................................................ 2, 3

FRE 801 (a)-(c), 802, 803(1) and (6) ................................................ 1

FRE 803(1) ..................................................................................... i, 7, 8

FRE 803(6) ........................................................................................ passim

FRE 803(8) ..................................................................................... 11, 12

FRE 805 .................................................................................................. 1

FRCP 56(c)(4) ................................................................................... 1, 14

FRE 801(c) ............................................................................................. 1

## Other Authorities

McCormick on Evidence § 306 at 872 (3rd ed. 1984) ................................... 3

## SUMMARY OF THE ARGUMENT

Plaintiffs submitted a number of declarations and incident reports purportedly filled out by True the Vote volunteers following the run-off election.  [Dkt. 83-2; 83-3; 83-4; 84-5].  These incident reports contain inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence ("FRE") and in some instances, contain hearsay within hearsay not meeting the criteria for admissibility under FRE 805.  Plaintiffs argue in response to the motion to strike that the incident reports should be admitted under FRE 801 (a)-(c), 802, 803(1) and (6), or alternatively, because the hearsay is not being offered for the truth of the matter asserted.  As set forth below, plaintiffs' arguments are without merit.

## ARGUMENT

**I.    True the Vote incident reports do not reflect information that could otherwise be testified to at trial**.

Plaintiffs argue the incident reports contain information that True the Vote volunteers could testify to at trial.  [Dkt. 143] at p. 2.  According to plaintiffs "[a] True the Vote volunteer could testify, based on her personal knowledge, that on X date at X time she went with a group of volunteers to X office in X city to inspect X records.  Volunteers can also testify they were unable to publicly inspect X records."  *Id.*  The problem with plaintiffs'

hypothetical scenario above is that it does not reflect the actual the content of the subject incident reports.

Instead, the incident reports contain lengthy recitations written by the volunteers of alleged statements made by various County Clerk employees. *Id.* Thus, plaintiffs' hypothetical about what True the Vote volunteers *could* theoretically testify to at trial is irrelevant to the present analysis because it is simply an inaccurate portrayal of the information actually contained in the incident reports – to which True the Vote volunteers could not testify to at trial. If plaintiffs only sought to establish they were denied access to certain records at the County Clerks' offices on certain dates, as suggested in their hypothetical, then they could have submitted affidavits to that effect. They did not but instead attached numerous incident reports (a total of 30) containing multiple levels of hearsay recounting what True the Vote volunteers were allegedly told by county officials along with reasons why the volunteers would not be given access to certain records. *See, e.g.* [Dkt. 83-2], Exh. 3-C, 3-D, and 3-E.

Plaintiffs then argue, again relying on the faulty hypothetical as support, that "[b]ecause this information is not describing an 'out of court statement' the statements are facts that could be testified to in court and may be considered as summary judgment evidence." [Dkt. 143], p. 2 (citing FRE 801 (a)-(c) and 802. Again, plaintiffs' hypothetical of what True the Vote

volunteers could conceivably testify to at trial in no way reflects the actual content of the incident reports being presently offered by plaintiffs.  This fact is self-evident from the face of the incident reports.  Thus, reliance on FRE 801 (a)-(c) and 802 is unfounded.

## II.   The incident reports do not qualify under FRE 803(6) as records of a regularly conducted activity.

### A.   The incident reports were prepared in anticipation of litigation.

The rationale underlying FRE 803(6) is that certain records are reliable because they are generated on a day-to-day basis and that "[t]he very regularity and continuity of the records are calculated to train the record keeper in habits of precision." *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 279 (5th Cir. 1991) (quoting McCormick on Evidence § 306 at 872 (3rd ed. 1984)).  Unlike records maintained in the regular day-to-day operations of a business, documents prepared in anticipation of litigation are not admissible under FRE 803(6).  *See Palmer v. Hoffman*, 318 U.S. 109, 113–14, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *see also Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 321, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); *Bracey v. Herringa*, 466 F.2d 702, 704–05 (7th Cir. 1972); *United States v. Ware*, 247 F.2d 698, 700 (7th Cir. 1957); *Echo Acceptance Corp. v. Household Retail Servs., Inc.,* 267 F.3d 1068, 1091 (10th Cir. 2001); *Scheerer v. Hardee's Food Sys., Inc.*, 92 F.3d 702, 706–07 (8th Cir. 1996).  This is because litigation is

not a regularly conducted business activity.  *See AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.,* 896 F.2d 1035, 1045 (7th Cir. 1990); *Palmer*, 318 U.S. at 114; *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."). Even records prepared with an eye toward litigation raise serious trustworthiness concerns.  *AMPAT/Midwest, Inc.*, 896 F.2d at 1045.

The incident reports were prepared by True the Vote volunteers on July 7 and 8, 2014.[1]  Plaintiffs filed suit on July 9, 2014 [Dkt. 1] obviously relying on information contained incident reports gathered by the volunteers over the two (2) previous days.  So not only were the incident reports prepared in anticipation of litigation, the timing between the collection of the reports and the filing of the law suit demonstrates that the reports were prepared specifically for litigation and for no other purpose.  Therefore, the incident reports are not admissible under FRE 803(6).

## B.   True the Vote volunteers had no "business duty" to create the incident reports.

For a document to be admitted under FRE 803(6), there must be evidence of a business duty to make and regularly maintain the records and

---

[1]      *See* [Dkt. 83] [Dkt. 83-2, Exhs. 3, 3-A through 3-H; Exhs. 4, 4-A & 4-B]; [Dkt 83-3, Exhs. 5, 5-A through 5-D; Exhs. 6, 6-A & 6-B; Exhs. 7, 7-A]; [Dkt. 83-4, Exhs. 9, 9-A; Exhs. 10, 10-A through 10-F; Exhs. 11, 11-A & 11-B]; [Dkt. 83-5, Exhs. 12, 12-A through 12-D, Exh. 13].

this duty is not satisfied if any of the participants involved in the making of the record are outside the pattern of regularity of activity. *U.S. v. Snyder*, 787 F.2d 1429 (10th Cir. 1986); *Farmer's Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129 (N.D. 1980). The justification underlying FRE 803(6) is missing when "any person in the process is not acting in the regular course of the business." *Rock*, 922 F.2d at 279 (citing McCormick, § 310 at 879). "If . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, *and the fact that it may be recorded with scrupulous accuracy is of no avail.*" Advisory Committee Notes, FRE 803(6) (emphasis supplied).

Further, each person involved in transmitting the information, including the original source, must have been acting under a "business duty" to the business activity in question in connection with that transmittal. *White Industries, Inc. v. Cessna Aircraft Co.,* 611 F. Supp. 1049, 1060 (D.C. Mo. 1985) (citations omitted). In *White Industries*, the Court said that "[i]t is clear enough, of course, that an employee or agent of the business activity in question will ordinarily be considered as acting under such a business duty; *and it is equally clear that a mere volunteer or bystander – someone lacking*

*any ongoing business relationship with the business activity – will not be."*

*Id.*[2]  (emphasis supplied).

This same rationale was expressed by the Court in *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010*, 2012 WL 85447 *2 (E.D. La. January 11, 2012).  The Court noted:

> The rationale for the exception [FRE 803(6)] is that business records are reliable due to the qualities of regularity of record-keeping, the fact that they are relied upon in business, *and the fact that employees have a duty and incentive to produce reliable records.*  Advisory Committee's Note, 56 F.R.D. 183, 308 (1973) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, *or by a duty to make an accurate record as part of a continuing job or occupation."*).

*Id.* (emphasis supplied).  Here, the incident reports were prepared by volunteers with no business duty to or on-going business relationship with True the Vote.  *See, e.g.* [Dkt. 83-2], Exh. 3, Declaration of Julia Hoenig ("In the days following the following the June 24 Republican Primary Run-Off election, I was part of a group of True the Vote volunteers who requested

---

[2]      *See also United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983); *United States v. Baker*, 693 F.2d 183, 187–88 (D.C. Cir. 1982); *United States v. Davis*, 571 F.2d 1354, 1358–60 (5th Cir. 1978); *United States v. Plum*, 558 F.2d 568, 572 (10th Cir. 1977); *Florida Canal Industries, Inc. v. Rambo*, 537 F.2d 200, 201–03 (5th Cir. 1976); *United States v. Beasley*, 513 F.2d 309, 314 (5th Cir. 1975) (decided under the Federal Business Records Act); *United States v. American Radiator & Stand. San. Corp.*, 433 F.2d 174, 197 (3d Cir. 1970) (decided under the Federal Business Records Act); *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 F. Supp. 1257, 1269–71 (N.D. Ohio 1980).

access to voting records. . . .").  True the Vote has proffered no evidence the volunteers operated with the type of business duty required for the application of FRE 803(6).  Because an essential link in the document chain is missing – a business duty on the part of True the Vote volunteers – plaintiffs' reliance on FRE 803(6) is misplaced.

## III.   The incident reports are not admissible as present sense impressions under FRE 803(1).

Plaintiffs argue the incident reports should be admitted under FRE 803(1) as present sense impressions.  [Dkt. 143], p. 6.  In support, plaintiffs rely on Ellen Swenen's July 24, 2014 hearing testimony that she witnessed Susan Morse, another True the Vote volunteer, "fill out her incident report." *Id.* (citing Dkt. 83-1, Exh. 1, pp. 200-202; 209-210).[3]  Plaintiffs argue that Ms. Swensen was trained to fill out incident reports, and that volunteers filled out the reports out immediately, and were able to submit them to True the Vote via a cell phone application.  [Dkt. 143], p. 6.  First, while plaintiffs rely on Ms. Swensen's testimony to admit the incident reports under FRE 803(1), they do not even offer an incident report she prepared in support of

_____

[3]      In fact, this statement in plaintiffs' response brief is not even consistent with Ms. Swensen's hearing testimony.  Ms. Swensen testified that she filled out the particular incident report and that Ms. Morse signed it. *See* [Dkt 83-1], p. 200 (testifying that she wrote the document and that Ms. Morse signed it). *See also* [Dkt. 83-1] p. 209-10 (testifying that she [Swensen] wrote all the reports that she saw at the hearing).

7

the motion for partial summary judgment.[4]  Ms. Swensen's hearing

testimony, at best, indicates she saw another volunteer sign one particular

incident report.  [Dkt. 83-1], p. 200.  However, from there plaintiffs leap to

the sweeping conclusion that Ms. Swensen's "testimony supports a finding

that *the records* were prepared at or near the time of the events described

therein and are submitted quickly to the True the Vote for internal filing."

[Dkt. 143], p. 6 (emphasis supplied).  Her testimony supports no such finding.

*Pridemore v. Legal Aid Society of Dayton*, 625 F. Supp. 1171 (S.D. Ohio 1985)

(holding that without a reliable indication as to the time frame involved, FRE

803(1) cannot cover hearsay statements of government employee).

 Ms. Swensen's testimony does not and cannot support a finding that

the thirty (30) incident reports actually submitted by plaintiffs in support of

the motion for partial summary judgment otherwise meet the requirements

of FRE 803(1).  The plaintiffs offer nothing other than Ms. Swensen's

testimony to support the application of FRE 803(1) and have not met their

burden in this respect.  *See Coyle v. Kristjan Palusalu Maritime Co., Ltd.* 83

F. Supp.2d 535, 542 (E.D. Pa. 2000) ("Plaintiff, as the party seeking to invoke

---

[4]  Since Ms. Swensen at least testified at the July 24 hearing, it would have
seemed logical that plaintiffs would have at least offered incident reports that she
wrote in support of their motion for partial summary judgment.  They did not,
however, and reliance on this testimony about her familiarity with filling out
incident reports is not relevant to incident reports prepared by other people who did
not testify at the hearing for purposes of FRE 803(1).

these [hearsay] exceptions, bears the burden of establishing the necessary elements for admission of this proposed evidence.").

## IV.   The second tier statements are offered for the truth of the matter asserted.

The incident reports contain a number of second tier hearsay (hearsay within hearsay) in the form of alleged statements by Circuit Clerks who related information to True the Vote volunteers from still another sources – namely the Secretary of State or Attorney General's office.  [Dkt. 117], pp. 8, 10, 16.  Plaintiffs suggest these second tier hearsay statements "were not offered (for purposes of the Preliminary Injunction Hearing)[5] for the truth of the matter asserted."  [Dkt. 143], p. 7.  Instead, plaintiffs argue the incident reports are being offered "to show that True the Vote volunteers requested certain un-redacted records, but were denied access."  *Id.*  Again, if this is really all plaintiffs wanted to establish, they could have offered affidavits of the volunteers setting forth those specific facts – they did not.

Instead, it is clear that the hearsay material is being offered by plaintiffs in an effort to support their claim they were denied access to election-related document used in the run-off in what they contend is a violation of the NVRA.  *See* First Amended Complaint [Dkt. 58] at p. 12 ¶¶

---

[5]     Plaintiffs' reference to the fact that the incident reports were not being offered for the truth of the matter asserted at the Preliminary Injunction hearing is not relevant here in light of FRCP 56(c)(4).

45, 48. ("Immediately following the election in July 2014, True the Vote again requested voter records pursuant to the NVRA Section 8(i)(l) from Copiah County, Hinds County, Jefferson Davis County, Lauderdale County, Leake County, Madison County, Rankin County, Simpson County, and Yazoo County. True the Vote was *impermissibly* denied access to the complete voter records . . . .") ("By preventing access to these records, [d]efendants are denying True the Vote's rights under the NVRA, subverting the Act's purpose and inhibiting True the Vote's efforts to carry out its voter protection and election administration programs and activities."). *See also* [Dkt. 83] at p. 2. ("Defendants have unlawfully denied plaintiffs access to these records in violation of the NVRA, relying on Mississippi state law.").

The purpose for which the incident reports are being offered is particularly obvious in one volunteer's report:

> At noon, Ms. Henderson called us up to the counter to give us an update. *She had spoken to the Attorney General's office + had given him our memo from Atty Hogue mentioned above. The AG's opinion was that we did not have a right to inspect the Ballot Box documents requested that only a candidate or a candidate rep can inspect these documents.*

[Dkt. 83-5], Exh. 12-D (emphasis supplied). The second tier hearsay (that Ms. Henderson had spoken with the Attorney General's office who gave an opinion that True the Vote volunteers did not have a right to inspect the ballot box documents) goes directly to the plaintiffs' underlying claim in the

litigation that they were denied access to the documents in violation of the NVRA.

## V.   **Public records and reports**.

Relying on FRE 803(8), plaintiffs state "documents attached to the incident reports that are made or signed by the circuit clerks which [sic] she drafted in her role as circuit clerk, and records filed with the circuit clerk, may be considered by the Court." [Dkt. 143], p. 8.  Plaintiffs apparently contend that because they attached documents received from a Circuit Clerk to the incident report that this somehow transforms the incident report itself into a public record for purposes of FRE 803(8).  This is incorrect.

First, plaintiffs don't identify any particular documents attached to any of the incident reports or show how those documents may fall within FRE 803(8).  Second, and more importantly, plaintiffs do not and cannot demonstrate that the incident reports themselves (as opposed to documents prepared by county officials and attached to incident reports) fall within the public records exception under FRE 803(8).  This argument is without merit.

## VI.   **Adoptive admission rule**

Plaintiffs also argue that because the incident reports "were offered to show a request to each county was made, and that no records were produced in response" the incident reports potential hearsay within hearsay are not excluded due to the "adoptive admission rule." [Dkt. 143], p. 8.  Plaintiffs

then refer to a letter written by one of the True the Vote volunteers attached to one incident report. *Id.* at p. 9. Based on this letter, plaintiffs argue that the incident report itself is not hearsay due to an adoptive admission of the intended recipient of the letter. *Id.* This argument appears similar to the one advance by plaintiffs in the previous section regarding FRE 803(8) – that attaching a letter written by a True the Vote volunteer transforms the incident report containing multiple layers of hearsay into an adoptive admission and thus admissible as a hearsay exception.

First, an undated letter apparently purportedly written by a True the Vote volunteer to a Circuit Clerk, which itself has not been authenticated, has no bearing on whether the hearsay statements recounted in the incident report constitute an adoptive admission regarding the contents of the letter. In the incident report the volunteer wrote:

> I was advised there was a group who was there who had just reviewed the ballots, she had just sealed the box and was not sure if she could unseal the box, there might be a possible time frame involved. She stated she had to call the Secretary of State to find out, but was tied up with the group reviewing the Poll Books and needed to be there to redact the DOB. She stated I could leave a Public Information Request of needed material and she would call me tomorrow or I could call her. Edna also quoted statute 23-15-911 and stated she needed to contact the Secretary of State to verify if we could review the absentee ballots & poll books**.**

[Dkt. 83-3], Exh. 5-A. Even if the letter was relevant to the contents of the incident report, the letter does not meet even the first prong of the adoptive

admission test – that the "statement is made in a party's presence." [Dkt. 143], p. 9. There is no evidence that the letter referred to by plaintiffs was prepared in Ms. Carr's presence (which it likely was not) or that Ms. Carr ever received the letter. Again, while the letter is not relevant to whether the incident report contains inadmissible hearsay, the fact is the letter does not meet the criteria to be considered an adoptive admission.

## VII.   The assertion that the incident reports should be admitted because they "do not determine the outcome of the case" is meritless.

Plaintiffs' final argument is that the incident reports should be admitted in support of their motion for partial summary judgment because they do not determine the outcome of the lawsuit. [Dkt. 143], p. 9. According to plaintiffs, the incident reports "have been offered to show that the State is not following its burden that 'it shall make [sic] maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for purpose of ensuring the accuracy and currency of official lists of eligible voters[.]'" *Id.* at pp. 9-10. Presumably, plaintiffs are again suggesting that the incident reports are not being offered for the truth of the matter asserted, but do not say so explicitly. Secretary Hosemann has previously addressed this argument and it will not be repeated here.

13

Not surprisingly, plaintiffs cite no authority supporting the argument that the incident reports, otherwise riddled with multiple layers of inadmissible hearsay, should be admitted at summary judgment simply because they have decided the incidents reports "do not determine the outcome of the lawsuit." *Id.* at p. 9.  However, this is not the standard for determining the admissibility of evidence at the summary judgment stage of the proceedings under Rule 56(c)(4) of the Federal Rules of Civil Procedure requiring that "[a] affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence. . . ." *Id.*

## CONCLUSION

For the reasons set forth, and for the reasons previously set forth in the memorandum in support of his motion to strike, Secretary Hosemann respectfully requests that the Court grant the motion to strike.

This the 29th day of August, 2014.

Respectfully submitted,

DELBERT HOSEMANN, in his
official capacity as Secretary of State
for the State of Mississippi

By:   JIM HOOD, ATTORNEY GENERAL

By:   */s/ Harold E. Pizzetta, III*
Harold E. Pizzetta, III (Bar No. 99867)
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220

14

Jackson, MS 39205-0220
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for Delbert Hosemann, in his*
*official capacity as Secretary of State*
*for the State of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the
Clerk of Court using the Court's ECF system and thereby served on all
counsel of record having entered an appearance in this action to date.

*/s/ Harold E. Pizzetta, III*

15