# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**TRUE THE VOTE, ET AL.**                                    **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO. 3:14cv532-NFA**

**THE HONORABLE DELBERT
HOSEMANN, in his official capacity
as Secretary of State for the State
of Mississippi, ET AL.**                                    **DEFENDANTS**

_____

### BRIEF OF SECRETARY OF STATE DELBERT HOSEMANN
### SUPPORTING MOTION TO DISMISS FOR LACK OF SUBJECT
### MATTER JURISDICTION, OR, ALTERNATIVELY, FOR JUDGMENT
### ON THE PLEADINGS AS TO COUNT THREE OF PLAINTIFFS'
### AMENDED COMPLAINT

_____

JIM HOOD, ATTORNEY GENERAL

Harold E. Pizzetta, III (Bar No. 99867)
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*hpizz@ago.state.ms.us*
*jmath@ago.state.ms.us*

*Counsel for Delbert Hosemann, in his
official capacity as Secretary of State
for the State of Mississippi*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STATUS OF PROCEEDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW. . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   Plaintiffs Lack Standing to Assert an Equal Protection-based Vote
Dilution Claim Against Secretary Hosemann. . . . . . . . . . . . . . . . . . . . . . . . 5

II.  The Eleventh Amendment Bars any Equal Protection-based Vote
Dilution Claim Against Secretary Hosemann. . . . . . . . . . . . . . . . . . . . . . . 10

III.  Alternatively, Plaintiffs Fail to State an Equal Protection-based
Vote Dilution Claim Against Secretary Hosemann on the Merits. . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

*Aguilar v. Texas Dept. of Criminal Justice*,
    160 F.3d 1052 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bush v. Gore*, 531 U.S. 98 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cantu Servs., Inc. v. Roberie*, 535 Fed. Appx. 342 (5th Cir. 2013). . . . . . . . . . . 13

*Curry v. Baker*, 802 F.2d 1302 (11th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Diamond v. Charles*, 476 U.S. 54 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doe v. MySpace, Inc.*, 528 F.3d 412 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 3

*Ex Parte Young*, 209 U.S. 123 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11-15

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . 2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . 16-17

*Hans v. Louisiana*, 134 U.S. 1 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*,
    914 F.2d 74 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir. 1972). . . . . . . . . . . . . . . . . . . 15

*Johnson v. Owens*, 2009 WL 667193 (N.D. Tex. Mar. 26, 2009). . . . . . . . . . . 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . 6-8

*McClure v. Ashcroft*, 335 F.3d 404 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 6

*Minnesota Voters Alliance v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013). . . . . . . . 21

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). . . . . . . . . . . . . . . 6

*Neuwirth v. Louisiana State Bd. of Dentistry*,
    845 F.2d 553 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 9

*Papasan v. Allain*, 478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Pettengill v. Putnam County R-1 School Dist., Unionville, Missouri*,
    472 F.2d 121 (8th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . 3

*Powell v. Power*, 436 F.2d 84 (2nd Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . 18-21

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). . . . . . . . . . . . . . . . . . 2

*Reynolds v. Sims*, 377 U.S. 533 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Slotter v. Univ. of Texas at San Antonio*, 508 F.3d 812 (5th Cir. 2007). . . . . . 18

*Stewart v. Bernstein*, 769 F.2d 1088 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . 9

*Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Warnock v. Pecos County, Texas*, 88 F.3d 341 (5th Cir. 1996). . . . . . . . . . . . . . 2

-iii-

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . 17

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). . . . . . . . . . . . . . . . 10

*Willowbrook v. Olech*, 528 U.S. 562 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Laws and Constitutions

Miss. Code Ann. § 23-15-599. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1344. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10-11, 19-20

52 U.S.C. § 20507. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S. Const., art. I, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

U.S. Const., art. III, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-7, 9

U.S. Const., amend XI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 10-14, 22

U.S. Const., amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Rules

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed R. Civ. P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## NATURE AND STATUS OF PROCEEDING

True the Vote and its individual co-plaintiffs originally sued Mississippi Secretary of State Delbert Hosemann, the Mississippi Republican Party, and nine Mississippi County Election Commissions for allegedly violating the National Voter Registration Act's ("NVRA") provision for "public disclosure of voter registration activities," currently codified at 52 U.S.C. § 20507(i),[1] and for a purported vote dilution claim asserted by the individual plaintiffs[2] pursuant to 42 U.S.C. § 1983 and premised upon the Fourteenth Amendment's Equal Protection Clause in connection with the June 24, 2014 run-off that decided the Party's nominee for United States Senator in the upcoming November general election.  Amended Complaint, Docket No. 58. On August 29, 2014, the Court dismissed the NVRA counts with prejudice. Mem. Op. and Order, Docket No. 147.  Secretary Hosemann now moves to dismiss plaintiffs' remaining vote dilution claim for lack of subject matter jurisdiction, or alternatively, for judgment on the pleadings, and submits this

---

[1]  NVRA's public disclosure provision was codified at 42 U.S.C. § 1973gg-6(i) prior to September 1, 2014, and has since been transferred to Title 52 without substantial change.

[2]  Plaintiff True the Vote is not a party to the vote dilution claim, but even if Secretary Hosemann is mistaken in that regard, his grounds for dismissing count three apply equally to True the Vote and all other plaintiffs.  Only the 22 individual plaintiffs named in the Amended Complaint allege they voted in the June 24 Republican run-off and assert a vote dilution claim against the defendants. Amended Complaint at p. 22, Docket No. 58 ("The Individual Plaintiffs Allege an Equal Protection Violation").  Throughout this Memorandum, Secretary Hosemann refers to the 22 individual plaintiffs collectively as "plaintiffs."

brief supporting his motion.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The issues presented include whether, as a matter of subject matter jurisdiction, plaintiffs have standing to pursue their putative vote dilution claim against Secretary Hosemann and/or his Eleventh Amendment immunity bars the claim, or, alternatively, whether plaintiffs' Amended Complaint fails to state a viable vote dilution claim on the merits.

Secretary Hosemann's jurisdictional grounds for dismissal should be considered first.  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  Fed. R. Civ. P. 12(b)(1) is the appropriate vehicle to consider dismissal for lack of standing or Eleventh Amendment immunity.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011); *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996).  The Court's lack of subject matter jurisdiction may be evaluated by reviewing: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts.  *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

-2-

With respect to Secretary Hosemann's alternative request for judgment on the pleadings, "[a] motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The legal standards governing a motion under Rule 12(c) are the same as those governing a motion under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "'[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *Id.* (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). To avoid dismissal, a plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But the Court "does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

## SUMMARY OF THE ARGUMENT

Plaintiffs' equal protection-based vote dilution claim targeting the June 24 Republican Party run-off should be dismissed for three reasons. First, plaintiffs lack Article III standing to sue Secretary Hosemann claiming that votes cast and counted allegedly in violation of Mississippi law diluted their run-off votes. Speculation and beliefs that other voters diluted their votes in the Party's run-off do not satisfy the injury in fact requirement for constitutional standing. Plaintiffs have not alleged any injury fairly traceable to Secretary Hosemann's conduct. Further, no purported injury asserted here is redressable by relief against Secretary Hosemann. None of Article III's elements for constitutional standing is present in count three.

Second, whether plaintiffs have standing to sue Secretary Hosemann for vote dilution or not, their claim against him is barred by the Eleventh Amendment. Count three purports to make out a claim against Secretary Hosemann in his official capacity. For Eleventh Amendment purposes, it is a claim against Mississippi and cannot be brought in federal court. The narrow exception to Eleventh Amendment immunity established by *Ex Parte Young*, 209 U.S. 123 (1908) has no application here. Plaintiffs want relief against Secretary Hosemann for an alleged past violation of federal law, and, in any event, do not seek prospective relief against him.

-4-

Third, even if plaintiffs' vote dilution claim against Secretary Hosemann is somehow properly before the Court, count three utterly fails to state a claim on the merits. Voter-initiated election contests premised on alleged voting irregularities do not belong in federal court. Rather, the Fifth Circuit and numerous other federal courts around the country have repeatedly held that equal protection-based vote dilution claims are reserved for cases of racial discrimination or official misconduct. Plaintiffs do not, and cannot, contend Secretary Hosemann committed any such violation in conjunction with the June 24 Republican run-off. Count three accordingly fails to state a claim against Secretary Hosemann on the merits.

## ARGUMENT

### I. Plaintiffs Lack Standing to Assert Vote an Equal Protection-based Vote Dilution Claim Against Secretary Hosemann

Unadorned allegations and "beliefs" that other Mississippians improperly participated in the June 24 Republican Party run-off do not make out a justiciable equal protection-based vote dilution claim. Even presumed true, plaintiffs' conclusory assertions that other voters diluted their votes by "double" or "cross-over" voting in the June 24 run-off after previously voting in the June 3 Democratic primary, and other voters illegitimately voted absentee in the run-off, do not validate plaintiffs' standing. To the extent count three of plaintiffs' Amended Complaint purports to assert any claim

against Secretary Hosemann, it does not belong in this or any other federal court.

The standing doctrine is a threshold inquiry into adjudication, which defines and limits the role of the judiciary. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975)). Unless plaintiffs have standing, a federal district court lacks subject matter jurisdiction to address the merits of their claim. In the absence of standing, there is no "case or controversy" between the parties which serves as the basis for the exercise of judicial power under Article III of the Constitution. *Warth*, 422 U.S. at 498-99.

To establish standing to sue Secretary Hosemann here, plaintiffs must demonstrate (1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of Secretary Hosemann; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision against him. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling.").  Count three of plaintiffs' Amended Complaint establishes none of those required elements for Article III standing.[3]

First, count three fails to sufficiently assert a "personal injury" or "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth*, 528 U.S. at 180-81. Plaintiffs reviewed voting records from the June 24 run-off and "have perceived inaccuracies in the records causing them to believe their lawful vote was diluted by an unlawful, double vote."  Amended Complaint at ¶ 89, Docket No. 58.  They also "further allege that any absentee ballots improperly cast and counted toward the election results of the 2014 Republican Party Run-Off dilute their lawful votes."  *Id.* at ¶ 93.  A speculative "belief" that other voters "double" or "cross-over" voted and thereby diluted their votes, and a vague assertion that any improper absentee ballots cast and counted in the run-off diluted their votes, do not suffice.  Without more, those conjectural claims of injury do not support Article III standing.  *Lujan*, 504 U.S. at 560.

Second, even if plaintiffs could establish an injury in fact to support

_____

[3]  Beyond the run-off vote dilution allegations in count three, plaintiffs' claim that Mississippi counties violated their equal protection rights with respect to voter records requests likewise does not meet the Article III standing elements necessary to sue Secretary Hosemann under a records-access theory.  *See* Amended Complaint at ¶¶ 94-95, Docket No. 58.  The Amended Complaint does not: identify any concrete records-related injury Secretary Hosemann allegedly inflicted upon plaintiffs; explain how any such injury is "fairly traceable" to Secretary Hosemann; or articulate how any purported injury would be redressable against Secretary Hosemann.

standing, no such injury is "fairly traceable" to Secretary Hosemann's conduct.  Causation sufficient to confer standing requires that plaintiffs' purported injuries be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560.  The Amended Complaint fails to even identify any connection between any alleged Mississippi law violations by voters participating in the Republican Party's run-off – whether alleged "double" or "cross-over" voters, or allegedly improper absentee voters – and any actions of Secretary Hosemann.[4]  No causal link between Secretary Hosemann's actions and plaintiffs' putative injuries exists.

Further, to the extent plaintiffs believe Secretary Hosemann failed in preventing any voters from improperly voting in the Republican run-off, or stopping any officials from counting those votes, well-established Fifth Circuit precedent forecloses any such theory.  To meet the causation element of standing by accusing an official of failing to enforce the law, plaintiffs must

---

[4]  As the Court's Memorandum Opinion and Order resolving plaintiffs' NVRA claims recognized, Secretary Hosemann had no role in accepting, counting or canvassing votes in the June 2014 Republican Party primary and run-off elections. County Executive Committees oversee Party primary elections.  Mem. Op. and Order at 24-25, Docket No. 147.  After the County Executive Committees canvass returns and declare the primary election result on a county-by-county basis and inform the Party's State Executive Committee, the Party transmits a tabulated statement of the Party's vote to the Secretary of State.  Miss. Code Ann. § 23-15-599.  Indisputably, as a matter of public record, the Republican Party transmitted its tabulated statement of returns for the June 24 run-off to Secretary Hosemann on July 7, 2014.  Letter from Joe Nosef to Secretary Hosemann, Docket No. 12-2.

show the official has an actual connection with the law's enforcement. *Okpalobi v. Foster*, 244 F.3d 405, 426-28 (5th Cir. 2001); *Stewart v. Bernstein*, 769 F.2d 1088, 1091 (5th Cir. 1985). Here, plaintiffs cannot point to any legal obligation or authority by which Secretary Hosemann could have prevented any alleged "double" voting, alleged inappropriate absentee voting, or kept anyone from counting any such votes in the Republican Party's run-off.

Third, and similar to plaintiffs' causation problems for any vote dilution claim against Secretary Hosemann, they have not satisfied the redressability requirement for standing. Secretary Hosemann's lack of any enforcement obligations or authority regarding purported illegal votes in the Republican Party's run-off proves any post-election decision against him in this case would fail to meet Article III's redressability standard. *Okpalobi*, 244 F.3d at 426-28. Secretary Hosemann cannot change the outcome of the run-off for the plaintiffs. That conclusively nullifies plaintiffs' putative standing to sue him.

The Amended Complaint fails to even allege the most basic requirements for asserting an equal protection-based vote dilution claim in federal court. Plaintiffs have no concrete injury. They have not connected any supposed injury to Secretary Hosemann. They have not asked for a remedy, and certainly have not identified any remedy Secretary Hosemann could be forced to provide them. Count three should be dismissed for lack of standing as to Secretary Hosemann.

## II.  The Eleventh Amendment Bars any Equal Protection-based Vote Dilution Claim Against Secretary Hosemann

Even if plaintiffs' vote dilution accusations against Secretary Hosemann somehow make out a justiciable controversy, his Eleventh Amendment immunity precludes the Court from exercising subject matter jurisdiction over the claim.  The Eleventh Amendment broadly establishes that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State.

U.S. Const., amend. XI.  Eleventh Amendment immunity bars federal claims against a State by citizens of another State, as well as citizens of the same State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Hans v. Louisiana*, 134 U.S. 1, 9 (1890).  It bars claims against a State officer in his official capacity because, for all practical purposes, such claims are considered claims against the State. *Diamond v. Charles*, 476 U.S. 54, 57 n. 2 (1986).  Consequently, neither a State, nor its officials sued in their official capacities, are subject to suit in federal court under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

The Amended Complaint's vote dilution claim against Secretary Hosemann falls within the Eleventh Amendment's scope.  Plaintiffs are

Mississippi voters, and presumably Mississippi citizens.  Amended Complaint at ¶¶ 6-27, Docket No. 58.  Secretary Hosemann is a Mississippi official sued in his official capacity.  *Id*. at ¶ 28.  Count three purportedly relies upon Section 1983 as the jurisdictional vehicle for charging Secretary Hosemann with a violation of federal law.  *Id*. at ¶ 91.  Count three's equal protection-based vote dilution claims against Secretary Hosemann are squarely within the Eleventh Amendment's scope.[5]

When, as here, the Eleventh Amendment applies, it prohibits claims for monetary, declaratory, or injunctive relief sought against a State official for allegedly violating federal law.  *Pennhurst*, 465 U.S. at 102-03; *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  To avoid the bar, plaintiffs may contend Secretary Hosemann's constitutional immunity does not apply to count three on account of the narrow exception to the Eleventh Amendment's prohibitions established by *Ex Parte Young*, 209 U.S. 123 (1908).  Any reliance on *Ex Parte Young* here would be misplaced.

In determining whether the *Ex Parte Young* doctrine applies, the Court

---

[5]  The same holds true for any putative records-access claim asserted in count three.  *See* Amended Complaint at ¶¶ 94-95, Docket No. 58.  The records-access allegations are only asserted against unidentified Mississippi counties.  If plaintiffs are purportedly asserting any such claim against Secretary Hosemann, the same reasons the Eleventh Amendment bars their vote dilution claim against him would also apply and bar any records-access claim as well.

analyzes whether the Amended Complaint "alleges an ongoing violation of federal law" and "seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002); *see also Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) ("To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect").  Count three does not bring either *Ex Parte Young* element into play.  There is no ongoing violation of federal law or any prospective relief sought.

Secretary Hosemann is not committing any "ongoing violation" of federal law.  Plaintiffs contend "double" or "cross-over" voting violating Mississippi law occurred in the June 24 Republican run-off.  Amended Complaint at ¶ 88, Docket No. 58.  They "believe their lawful vote was diluted by an unlawful, double vote." *Id.* at ¶ 89.  They also generally "allege that any absentee ballots improperly cast and counted toward the election results of the 2014 Republican Primary Run-Off dilute their lawful votes." *Id.* at ¶ 93.  But they do not specifically contend Secretary Hosemann, or any defendants for that matter, violated any federal laws.

More importantly, even pretending count three's vague allegations

specifically target Secretary Hosemann, it does not claim any purported federal law violations are *ongoing*.  All the supposed harms plaintiffs have allegedly suffered are past harms in conjunction with the June 24 Republican run-off.  Past alleged harms do not justify applying the *Ex Parte Young* exception.  *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (under *Ex Parte Young*, "relief that serves directly to bring an end to a *present* violation of federal law is not barred by the Eleventh Amendment.") (emphasis added); *Cantu Servs., Inc. v. Roberie*, 535 Fed. Appx. 342, 345 (5th Cir. 2013) (complaint failed to demonstrate state officials were continuing to infringe a constitutionally protected interest, and thus asserted "no ongoing violation of law remediable by prospective relief under *Ex Parte Young*."); *Johnson v. Owens*, 2009 WL 667193, at *5 (N.D. Tex. Mar. 26, 2009) (while plaintiff may be suffering the effects of a past alleged violation of federal law, an injunction to correct those past deficiencies was barred by Eleventh Amendment immunity).  That, in and of itself, precludes *Ex Parte Young*'s application to plaintiffs' putative vote dilution claims.

Even more telling, if count three could be read to describe some alleged ongoing violation of federal law being committed by Secretary Hosemann, the Amended Complaint still fails to seek any "relief properly characterized as prospective" as necessary to satisfy the second element for *Ex Parte Young*.

*Verizon Maryland*, 535 U.S. at 645; *see also Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988) (*Ex Parte Young* exception "enables a federal court to entertain a suit for prospective relief against a defendant state officer upon allegations that he violated federal law, based on the legal fiction that a state officer cannot then be acting pursuant to state authority."). Plaintiffs asked for several different forms of NVRA-based declaratory and injunctive relief in conjunction with their previously dismissed counts one and two. Amended Complaint at pp. 25-26, Docket No. 58. However, any request for any relief, much less prospective relief, connected to count three is conspicuously missing from plaintiffs' pleading. That shuts out any plausible contention that count three supports the required "prospective relief" element for applying *Ex Parte Young*.

Plaintiffs' putative vote dilution claims against Secretary Hosemann are barred. *Ex Parte Young* does not save count three from Secretary Hosemann's Eleventh Amendment immunity. Assuming plaintiffs even have standing to sue Secretary Hosemann under their vote dilution theory, the claims should be dismissed on account of the Eleventh Amendment.

### III.  Alternatively, Plaintiffs Fail to State an Equal Protection-based Vote Dilution Claim Against Secretary Hosemann on the Merits

Putting aside count three's blatant jurisdictional defects, plaintiffs' half-baked equal protection-based vote dilution claim still should be dismissed.  In the absence of racial discrimination or egregious official misconduct, federal courts are not the place for challenging election results founded on alleged voting irregularities.  Count three does not, and plaintiffs cannot, contend they were victims of discriminatory or illegal conduct perpetrated by Secretary Hosemann, or any other defendants, in conjunction with the June 24 Republican run-off.  Count three simply fails to state any actionable claim on the merits.

Over the past forty years, the Fifth Circuit Court of Appeals has consistently held that, in the absence of any official acts of intentional or racial discrimination, voters have no constitutional right to complain about state election results under the guise of equal protection claims or otherwise. In 1972, the Fifth Circuit rejected a voters' suit asserting improper absentee voting contravened Texas law in a federal court challenge to the state election results on equal protection and other grounds.  *Hubbard v. Ammerman*, 465 F.2d 1169, 1172-74 (5th Cir. 1972), *cert. denied*, 410 U.S. 910 (1973).  In addition to finding it lacked jurisdiction under 28 U.S.C. § 1344 because none

of the voter-plaintiffs was a candidate seeking to recover title to an office, the Court recognized that the federal claims were not actionable since no racially discriminatory application of state law was involved. *Id.* at 1180-81.

Eight years later, the Fifth Circuit reversed a Texas district court's decision overturning a school board election on equal protection grounds. *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980). The *Gamza* plaintiffs premised their challenge on election machine and ballot irregularities, and claims that ballots were improperly destroyed after the election. *Id.* at 450-52. In reversing the district court, the Fifth Circuit recognized that absent any allegation of an intent to violate voters' rights, or the deliberate deprivation of voters' right to vote, the alleged election irregularities could not support a federal equal protection violation. *Id.* at 453-54. Specifically, discriminatory intent is a required element of any such claim because

> [u]nlike systemically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause. The unlawful administration by state officers of a non-discriminatory state law, "resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."

*Id.* at 454 (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)).[6]

---

[6] The Fifth Circuit's *Gamza* opinion also pointed out precisely why general equal protection vote dilution propositions first articulated in *Reynolds v. Sims*, 377

Subsequently, in a challenge to a 1983 Mississippi county supervisors election, a candidate and three supporters claimed that irregularities, errors, and fraud in the distribution and counting of absentee ballots tainted the election results. *Welch v. McKenzie*, 765 F.2d 1311, 1312-14 (5th Cir. 1985). After a bench trial, the district court found irregularities occurred but determined none rose to the level of intentional or racial discrimination supporting any Voting Rights Act or Fourteenth Amendment claims. *Id*. at 1314. Agreeing with the district court, the Fifth Circuit affirmed dismissal of the equal protection claims for lack of proof any racial discrimination. *Id*. at 1315.

Count three does not allege anyone has discriminated against plaintiffs on the basis of their race. Plaintiffs do not claim Secretary Hosemann or any other officials fraudulently diluted their votes. They merely (and only vaguely, at best) complain that other voters diluted their votes by allegedly violating Mississippi law by engaging in "gamesmanship," involving "double" or "cross-over" voting, or improper absentee voting. Amended Complaint at

---

U.S. 533 (1964), and restated in *Bush v. Gore*, 531 U.S. 98 (2000), do not substantiate count three here. States' applications of systemically discriminatory laws like those condemned by *Reynolds* are completely different from alleged isolated events affecting a local election, and the latter "are not presumed to be a violation of the equal protection clause." *Gamza*, 619 F.2d at 453. As such, any reliance count three may have on *Reynolds* or *Bush* would entirely be misplaced.

¶¶ 89, 92-93, Docket No. 58.  That does not even describe a valid equal

protection cause of action in the Fifth Circuit.[7]

Additionally, plaintiffs' allegations fail to state an equal protection

claim even if the well-developed body of Fifth Circuit law on the subject did

not exist.  Other federal appellate courts likewise have confirmed that

officially endorsed discrimination or misconduct is required to establish viable

equal protection-based vote dilution claims.

For example, in *Powell v. Power*, 436 F.2d 84 (2nd Cir. 1970), the Second

Circuit Court of Appeals applied that rule in rejecting claims similar to those

plaintiffs assert here.  Congressman Charlie Rangel defeated Adam Clayton

Powell in a 1970 New York Democratic Congressional primary by a margin of

150 votes.  *Id.* at 85-86.  State officials allegedly enabled 1,232 non-

Democratic voters to participate in the primary by failing to remove non-

Democratic registration cards from polling precincts before the election.  *Id.*

---

[7] Plaintiffs' apparent record-access equal protection claim asserted against unidentified Mississippi counties also clearly fails on the merits.  Amended Complaint at ¶¶ 94-95, Docket No. 58.  At a minimum, to make out any such claim against any defendants, plaintiffs would be required to show they have been intentionally treated differently from others similarly situated and no rational basis for the difference in treatment exists.  *See Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Slotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 823-25 (5th Cir. 2007).  Count three fails to state a claim against anyone by failing to identify any intentionally different treatment accorded plaintiffs, or any others similarly situated yet treated differently, by any Mississippi counties since no systemically discriminatory state laws are at issue.

at 86.  Powell asserted the non-Democratic voters' votes violated state law and initiated New York's statutory challenge procedure to invalidate the election result.  *Id*.  After the state trial court dismissed Powell's statutory challenge as untimely, the Appellate Division affirmed, and the New York Court of Appeals denied leave to appeal, Powell and five of his supporters filed a federal lawsuit alleging violations of the Voting Rights Act of 1965, as well as Section 1983 on equal protection and other grounds.  *Id*.

The district court denied the *Powell* plaintiffs' pre-general election motion to enjoin that election and their post-general election motions to set aside the primary election and enjoin Rangel's certification as Representative for the Congressional district.  *Id*.  The Second Circuit affirmed by concluding the *Powell* plaintiffs failed to assert any cognizable vote dilution theory as a matter of law.  *Id*. at 88.  First, the Court acknowledged the questionability of vote dilution claims lacking any connection to alleged racial discrimination:

> [i]n the plaintiffs' view, two federal statutes comprehensively protect their ballots against dilution by illegal voting, whether or not the dilution was wilful or knowing.  It is appropriate to note at the outset that the plaintiffs do not claim any discrimination because of race.  Thus, they face a considerable burden of persuasion in asserting so sweeping and novel a conception, on apparently never before asserted, so far as reported cases reveal.

*Id*. at 86.  The Court next recognized why the case required a federal hands-off approach to New York's local Congressional election:

> [w]ere we to embrace plaintiffs' theory, this court would
> henceforth be thrust into the details of virtually every election,
> tinkering with the state's election machinery, reviewing petitions,
> registration cards, vote tallies, and certificates of election for all
> manner of error and insufficiency under state an federal law.
> Absent a clear and unambiguous mandate from Congress,[] we
> are not inclined to undertake a wholesale expansion of our
> jurisdiction into an area which, with certain narrow and well
> defined exceptions, has been in the exclusive cognizance of the
> state courts.

*Id.* (footnote omitted).  Then, after concluding the *Powell* plaintiffs' Voting

Rights Act-based vote dilution theory had no merit, *id.* at 86-87, the Court

addressed their other vote dilution claims under Section 1983 premised on

the Fourteenth Amendment's equal protection and due process guarantees,

and Article I, section 2 of the Constitution.  *Id.* at 88.  The 1983 claims did not

even "require extended consideration."  *Id.*  Intentional or purposeful

discrimination was required to state a claim for state officials' alleged failure

to prevent voters from improperly voting in the primary, and the *Powell*

plaintiffs failed to make any such accusation:

> [u]neven or erroneous application of an otherwise valid statute
> constitutes a denial of equal protection only if it represents
> "intentional or purposeful discrimination."  *Snowden v. Hughes*,
> 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944).  See *Swain v.
> Alabama*, 380 U.S. 202, 204-05, 85 S.Ct. 824, 13 L.Ed.2d 759
> (1965); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, L.Ed.2d 446
> (1962).[FN7]  Similarly, the due process clause and article I, section
> 2 offer no guarantee against errors in the administration of an
> election.  New York Election Law §§ 145, 330(2) provide a method
> for correcting errors as are made, and the plaintiffs do not contest
> the fairness and adequacy of that remedy.  And while article 1,

section 2 may outlaw purposeful tampering by state officials with the conduct of a primary election for a Congressional seat, *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error.

[FN7] In the area of racial discrimination this may be viewed from a different perspective.  See, e.g., *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2nd Cir. 1968); *Kennedy Park Homes Ass'n, Inc. v. City of Lackawanna*, 436 F.2d 108 (2nd Cir. 1970).

*Id.*  Accordingly, the *Powell* plaintiffs' vote dilution claims conclusively lacked any merit.  *Id.*  Moreover, since *Powell*, several other federal appellate courts beyond the Fifth Circuit have concluded the same every time when faced with would-be vote dilution complaints about state elections absent intentional or racial discrimination by officials.  *See*, *e.g.*, *Minnesota Voters Alliance v. Ritchie*, 720 F.3d 1029, 1032-33 (8th Cir. 2013) (holding voters lacked any viable Fourteenth Amendment or other constitutional claims premised upon state officials' alleged failure to determine other voters' eligibility to vote in election in the absence of discriminatory or willful and illegal conduct); *Curry v. Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986) (finding no actionable federal due process vote dilution claim stemming from political party's alleged failure to prevent cross-over voting in primary election); *Pettengill v. Putnam County R-1 School Dist., Unionville, Missouri*, 472 F.2d 121, 122 (8th Cir. 1973) (recognizing plaintiffs asserted no constitutional basis for challenging voter

qualifications and absentee ballots in the absence of race discrimination, election official fraud, or unlawful conduct).

Plaintiffs' thinly-pled vote dilution claims regarding the 2014 Republican Party run-off are the same sort of failed allegations made by the *Powell* plaintiffs in connection the 1970 New York Democratic 18th District Congressional Primary and similar claims involving state elections in the Fifth Circuit, and elsewhere, in the past four decades.  Plaintiffs are disappointed with the Republican Party's run-off results.  They "believe" other voters "double" voted and cast improper absentee votes in violation of Mississippi law.  But they have not, and cannot, blame the election results, or their beliefs about the election, on any officials' racial or intentional discrimination.  They certainly cannot attribute any malfeasance to Secretary Hosemann or any other defendants here.

The Amended Complaint does not state any actionable equal protection-based vote dilution claim against Secretary Hosemann.  If count three does not fail for plaintiffs' lack of standing, or due to his Eleventh Amendment immunity, at a minimum, the remainder of plaintiffs' lawsuit should be dismissed for failure to even state a claim.

## CONCLUSION

-22-

For the reasons set forth above, Secretary Hosemann respectfully requests that the Court enter an order granting his motion to dismiss for lack of subject matter jurisdiction, or, alternatively, for judgment on the pleadings, dismissing count three of plaintiffs' Amended Complaint against him, and rendering final judgment against plaintiffs.

THIS the 19th day of September, 2014.

Respectfully submitted,

DELBERT HOSEMANN, in his
official capacity as Secretary of State
for the State of Mississippi

By:   JIM HOOD, ATTORNEY GENERAL


By:   S/Justin L. Matheny
      Harold E. Pizzetta, III (Bar No. 99867)
      Justin L. Matheny (Bar No. 100754)
      Office of the Attorney General
      P.O. Box 220
      Jackson, MS 39205-0220
      Telephone: (601) 359-3680
      Facsimile: (601) 359-2003
      *hpizz@ago.state.ms.us*
      *jmath@ago.state.ms.us*

      *Counsel for Delbert Hosemann, in his*
      *official capacity as Secretary of State*
      *for the State of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 19th day of September, 2014.

S/Justin L. Matheny
Justin L. Matheny