## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**TRUE THE VOTE, et al.**                                           **PLAINTIFFS**

**v.**                                        **Civil Action No.: 3:14-cv-00532-NFA**

**THE HONORABLE DELBERT HOSEMANN,**
**in his Official Capacity as Secretary of State**
**for the State of Mississippi, et al.**                           **DEFENDANTS**

---

## REBUTTAL MEMORANDUM OF MISSISSIPPI REPUBLICAN PARTY IN
## SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

---

Michael B. Wallace (MSB No. 6904)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39202-0651
Telephone: 601.968.5500

T. Russell Nobile (MSB No. 100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi 39501
Telephone: 228.867.7141

*Counsel for Mississippi Republican Party*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT .................................................................1

ARGUMENT ...........................................................................................3

I.     THIS MOTION IS GOVERNED BY THE UNAMBIGUOUS LANGUAGE OF § 11(c), NOT BY CASE LAW APPLICABLE TO SOME CIVIL RIGHTS STATUTES. .........................................................3

II.    EVEN UNDER THE MORE RESTRICTIVE CASE LAW GOVERNING CIVIL RIGHTS CASES, THE PARTY IS ENTITLED TO RECOVER ITS FEES. ................................................................................................5

    A.   The case law governing civil rights cases differs from that governing Fed. R. Civ. P. 11......................................................................5

    B.   The Party unquestionably prevailed with regard to Counts 1 and 2. ...8

       1.  The Party prevailed on the motion for preliminary injunction...............................................................9

       2.  The Party prevailed on the cross-motions for summary judgment. ............................................................10

       3.  The sanctions motion was part of the Party's successful defense....................................................... 12

III.   THE REQUESTED FEES ARE REASONABLE.......................................14

CONCLUSION .......................................................................................16

CERTIFICATE OF SERVICE ...................................................................17

i

# TABLE OF AUTHORITIES

**Cases:**

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*,
434 U.S. 412 (1978) ..................................................................................6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................13, 15

*Marlin v. Moody Nat'l Bank*, 533 F.3d 374 (5th Cir. 2008) ................................5

*Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988) ..............6

*United States v. Mississippi*, 921 F.2d 604 (5th Cir. 1991) ..................2, 7, 8, 10

**Constitution, Statutes, and Rules:**

U.S. Const. Art. I, § 2 ..................................................................................4

U.S. Const. Art. I, § 4 ..................................................................................4

U.S. Const. Art. I, § 8 ..................................................................................4

U.S. Const. Art. I, § 10 ................................................................................4

U.S. Const. Amend. 15 ................................................................................4

U.S. Const. Amend. 19 ................................................................................4

U.S. Const. Amend. 26 ................................................................................4

42 U.S.C. § 1983 ..........................................................................................3

Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988 ..................................1, 3

National Voter Registration Act, 52 U.S.C. § 20501 ......................................4

National Voter Registration Act, 53 U.S.C. § 20510 .............................. *passim*

Fed. R. Civ. P. 11 ......................................................................................5, 6

Fed. R. Civ. P. 54 ..................................................................................1, 3, 15

Fed. R. Civ. P. 56 ....................................................................................................2, 10, 12

Local Rule 7 ....................................................................................................................1

On September 12, 2014, the Mississippi Republican Party timely filed its motion [Dkt. 149], pursuant to Fed.R.Civ.P. 54(d) and § 11(c) of the National Voter Registration Act ("NVRA"), 53 U.S.C. § 20510(c), for attorneys' fees, expenses, and costs incurred in connection with this Court's judgment of August 29, 2014 [Dkt. 147], dismissing with prejudice Counts 1 and 2 of plaintiffs' amended complaint [Dkt. 58].  On October 1, 2014, plaintiffs untimely filed their brief [Dkt. 160] in opposition to that motion.[1]  Nothing in plaintiffs' belated arguments undermines the Party's entitlement to fees under the unambiguous language of § 11(c).

## SUMMARY OF THE ARGUMENT

The unambiguous language of § 11(c) entitles the Party to a fee award because it is "the prevailing party" in this litigation with regard to Counts 1 and 2.  Nothing in the NVRA describes it as a civil rights statute.  Congress has repeatedly amended 42 U.S.C. § 1988 to apply its standards to new substantive statutes.  It did not add the NVRA to § 1988, but adopted separate language, which should be enforced here according to its terms.

Even if this Court were to apply the body of case law applicable to § 1988 and other civil rights statutes, the Party is still eligible for an award of attorneys' fees.

This Court's opinion of August 29, 2014, overruling the Party's motion for sanctions with regard to Counts 1 and 2, did not approve everything plaintiffs have done in this case.  To the contrary, this Court explicitly ruled only that plaintiffs' conduct at the

---

[1] Plaintiffs suggest that the Party's motion violated Local Rule 7(b)(10). [Dkt. 160 at 3 n.1] That provision applies by its terms only to "non-dispositive motions." The Party's motion asks this Court to render judgment against plaintiffs in an amount exceeding $80,000.  It is hard to get more dispositive than that.

time they filed the original complaint was not sanctionable.  [Dkt. 147 at 86 & n.228]  A

defendant's application for fees under true civil rights statutes is subject to three

considerations:

> (1) whether the plaintiffs established a prima facie case, (2) whether the
> defendant offered to settle, and (3) whether the district court dismissed the
> case or held a full-blown trial.

*United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).  The Party satisfies all three

prongs of this test.

Plaintiffs barely bother to dispute the fact that the Party prevailed on Counts 1 and

2.  Instead, they argue that the Party is entitled to little relief because it lost several issues.

In fact, the great bulk of the effort in this case was directed toward the motion for a

preliminary injunction and the accompanying legal arguments, which overlapped with the

cross-motions for summary judgment.   The Party prevailed in full on the motion for

preliminary injunction, as it did on the cross-motions for summary judgment.  Plaintiffs

moved for summary judgment on Counts 1 and 2 against all defendants, and the Party

successfully resisted the motion, while succeeding on its own motion.  The Party's motion

for summary judgment on Count 3 was consistent with Fed. R. Civ. P. 56(b) and this

Court's order of July 25, 2014.  [Dkt. 46]  While the Party did not succeed on its motion

for sanctions as it related to Counts 1 and 2, that motion contributed to the Party's

successful defense.

Finally, the fees requested by the Party were reasonable. It was necessary for the

Party to monitor other litigation concerning the primary of June 24, 2014, so as to

determine issues of mootness and abstention.  The Party's study of the original complaint

2

filed by plaintiffs in the Northern District of Mississippi and the opinion of Judge Mills was necessary to demonstrate to this Court the shortcomings in plaintiffs' legal theories. Its counsel's time entries were sufficient to permit understanding of the services performed. Should this Court be in any doubt concerning the relevant facts, the Party will be happy to submit to evidentiary proceedings pursuant to Fed. R. Civ. P. 54(b)(2)(C), but the Party believes the existing record is sufficient to prevent resolution of the motion.

## ARGUMENT

### I.   THIS MOTION IS GOVERNED BY THE UNAMBIGUOUS LANGUAGE OF § 11(c), NOT BY CASE LAW APPLICABLE TO SOME CIVIL RIGHTS STATUTES.

Section 11(c) unambiguously provides for an award of attorneys' fees to the "prevailing party." Plaintiffs ask this Court to ignore the language chosen by Congress and to apply case law applicable to other statutes protecting civil rights. The NVRA is not a civil rights statute, and the language chosen by Congress should be applied according to its terms.

Nothing in the language chosen by Congress in the NVRA describes it as a civil rights statute. No Court of Appeals has disregarded the plain language of § 11(c) on the theory that the NVRA is a civil rights statute. Count 3 of this action is filed under 42 U.S.C. § 1983, which is a civil rights statute, and fees may be awarded with regard to Count 3 under the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988. Congress has amended § 1988 on many occasions to provide for its application to new substantive statutes. Congress could have inserted a reference to the NVRA into § 1988, but it chose not to do so. Instead, it adopted the unambiguous language of § 11(c).

3

Plaintiffs observe that Congress characterized voting as a fundamental right in § 1(a)(1) of the NVRA, 52 U.S.C. § 20501(a)(1), but not every right, not even every Constitutional right, falls within the scope of the statutes generally regarded as protecting civil rights.  For instance, the right to enforce contracts is explicitly protected by U.S. Const. Art. I, § 10, but our law does not characterize that as a civil rights issue, any more then the rights of authors and inventors protected by Congress under U.S. Const. Art. I, § 8.  Indeed, the Constitution does not provide any independent guarantee of the right to vote, declaring only that the House of Representatives shall be chosen by those persons having "the qualifications requisite of electors of the most numerous branch of the state legislature."  U.S. Const. Art. I, § 2.   What the Constitution does provide is that, in conferring the right to vote, the States may not discriminate on the basis of race, sex, or age. U.S. Const. Amend. 15, 19, 26.  Statutes preventing discrimination on these bases are generally considered to qualify as civil rights statutes.

Here, plaintiffs quite candidly describe the statutory right at issue in this case as "the right to disclosure of voter registration records." [Dkt. 160 at 3].  This statutory provision, enacted by Congress pursuant to the Election Clause, U.S. Const. Art. I, § 4, as this Court has acknowledged [Dkt. 147 at 60], is certainly important, but it cannot be characterized as a civil right, any more than, for instance, the right of access to federal documents under the Freedom of Information Act.  This right is doubtless important, which is why Congress adopted specific provisions for its enforcement.   One of those provisions is § 11(c), and plaintiffs have offered no reason not to apply it according to its terms.

4

Because the Party has unquestionably prevailed on Counts 1 and 2, it is entitled to seek reimbursement of its fees as Congress intended.

## II.   EVEN UNDER THE MORE RESTRICTIVE CASE LAW GOVERNING CIVIL RIGHTS CASES, THE PARTY IS ENTITLED TO RECOVER ITS FEES.

### A.   The case law governing civil rights cases differs from that governing Fed. R. Civ. P. 11.

Plaintiffs claim that the Party is foreclosed from recovery "because the Court already ruled this is a non-frivolous civil rights suit." [Dkt. 160 at 4] This Court's opinion of August 29, 2014, of course, said nothing about civil rights, nor did it address plaintiffs' conduct in this litigation as a whole.   Properly applying established law, the Court remarked, "The Fifth Circuit has articulated a 'snapshot rule' whereby 'Rule 11 liability is assessed only for a violation existing at the moment of filing.'" [Dkt. 147 at 85, quoting *Marlin v. Moody Nat'l Bank*, 533 F.3d 374, 380 (5th Cir. 2008)] This Court therefore limited its ruling to the time that the original complaint [Dkt. 1] was filed, July 9, 2014. This Court said, "Plaintiffs apparently were under the impression at the time they filed suit that the Republican Party controlled access to those documents," and, "Plaintiffs appear to have been under the impression at the time they filed this case that the Republican Party has constructive possession of some of the documents they sought." [Dkt. 147 at 86 & n.228] Plaintiffs have continued to pursue their claims against the Party for months, including the filing of an amended complaint [Dkt. 58] on July 30, 2014, but this Court has made no finding about anything plaintiffs did after July 9.[2]

---

[2] With regard to Count 3, this Court said that it "does not reach Plaintiffs' Equal Protection Clause claim for vote dilution."   The Court therefore did not resolve the reasonableness of plaintiffs' argument that the Party "is a necessary party to this case for purposes of implementing

Indeed, despite the "snapshot rule," the Fifth Circuit has long recognized that Rule 11 may be violated by adhering to a position after it has become unreasonable. *Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 874 n.9 (5th Cir. 1988) (en banc). That principle has now been incorporated into Rule 11 by the 1993 amendments. The official comment declares that "a litigant's obligations with respect to the contents of those papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they ceased to have any merit." Plaintiffs' repeated adherence, in writing and in open court, to the representations they made on July 9 would doubtless authorize relief under Rule 11. The difficulty is that the complicated procedures for presenting such a motion under Rule 11(c)(2) make it impractical to pursue such relief every time a litigant repeats a baseless position.

That is why a statutory claim for attorneys' fees at the end of a civil rights case goes back over the entire conduct of the litigation.[3] Plaintiffs do not dispute that the proper standard in such cases has been clearly enunciated by the Fifth Circuit:

> The factors important to frivolity determinations are (1) whether plaintiffs established a *prima facie* case, (2) whether defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial.

---

a remedy." [Dkt. 147 at 86-87]

[3] In conducting that review, the Supreme Court of the United States has held that fees may be awarded if "the plaintiff continued to litigate after it clearly became" frivolous, unreasonable, or groundless. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978). This Court has not yet addressed that issue.

6

*United States v. Mississippi*, 921 F.2d at 609.  Plaintiffs misunderstand and misapply all three prongs of the test.

First, plaintiffs claim that this Court "held that the Plaintiffs had alleged a cause of action under the NVRA." [Dkt. 160 at 6] The Court held precisely the opposite with regard to the Party:

> Defendant Republican Party contends that it is an improper Defendant under the NVRA. The Republican Party argues that it is not a "State" under NVRA, and that only States are subject to the NVRA's requirements. The Court agrees.

[Dkt. 147 at 21].  Even if the Party had been properly subject to suit, the Court held that plaintiffs had neither alleged nor proven compliance with the pre-suit notice provisions of § 11(b) of the NVRA, 53 U.S.C. § 20510(b).  Moreover, on a factual basis, plaintiffs failed to provide any evidence that the Party actually had possession of any documents covered by the NVRA.  Plaintiffs proved no *prima facie* case against the Party.

"Second, RPM admits that it did not offer to settle the case." [Dkt. 160 at 6]  That is precisely the point of *United States v. Mississippi*.  An offer by a defendant to settle a case is an indication of possible merit in the plaintiffs' claim.  After plaintiffs filed their original complaint in the Northern District of Mississippi, and before they filed this one, the Party told them in no uncertain terms that their claims had no merit.  [Dkt. 67 Ex. 3] The Party did not offer to settle any portion of the complaint, and it defeated Counts 1 and 2 before this Court.

Finally, plaintiffs suggest that Counts 1 and 2 were not simply dismissed, because the Court conducted "proceedings akin to a bench trial."  [Dkt. 160 at 6]  This Court

7

conducted an extensive evidentiary hearing on plaintiffs' demand for a preliminary injunction because plaintiffs claimed the existence of an emergency. Had this Court had the opportunity to read the legal arguments before the hearing, instead of after the hearing, there never would have been a hearing. As noted above, this Court explicitly found that the parties should never have been sued under the NVRA. [Dkt. 147 at 21.] The conduct of "a full-blown trial" on plaintiffs' motion did nothing but multiply the Party's damages. It utterly failed to demonstrate that plaintiffs had any business filing the complaint in the first place.

If, therefore, this Court applies the test of *United States v. Mississippi*, instead of the unambiguous language of § 11(c), the Party has satisfied all three tests for eligibility for an award of attorneys' fees. Plaintiffs have demonstrated no reason why this Court should not make such an award.

**B.      The Party unquestionably prevailed with regard to Counts 1 and 2.**

Plaintiffs' complaint and amended complaint are quite clear. Plaintiffs sued multiple defendants, including the Party, for alleged NVRA violations. In Count 1, plaintiffs alleged "that the Defendants have violated the Public Disclosure Provision of the NVRA." [Dkt. 58 ¶ 78] Count 2 did not explicitly address conduct of any defendant, but sought an injunction, requiring all defendants to grant them access to documents. [Dkt. 58 ¶ 86] The prayer for relief sought declarations and injunctions against all defendants [Dkt. 147 at 25-26]. This Court's judgment of August 29, 2014 [Dkt. 147], dismissed Counts 1 and 2 against all defendants, including the Party. There can be no dispute that the Party prevailed.

8

Plaintiffs argue, instead, that the Party lost particular aspects of the dispute between these parties during the course of the litigation. Washington lost plenty of battles on his way to Yorktown, but he nevertheless prevailed, as did the Party within the plain language of § 11(c). In fact, for the most part, the Party prevailed at each stage of the litigation.

### 1.     The Party prevailed on the motion for preliminary injunction.

Plaintiffs ignore the fact that the great bulk of the fees were incurred in successfully resisting plaintiffs' motion for a preliminary injunction. As the Court well knows, plaintiff True the Vote broadcast to the world that it was seeking injunctive relief against the Mississippi Republican Party. *See* Ex. D-4 [Dkt. 107]. Plaintiffs acknowledge that their baseless motion required "over approximately 9 hours of recorded hearings and the presence of more than fifteen attorneys in the Federal District Court." [Dkt. 160 at 6] After the hearing, all parties had to brief the law and the facts relevant to that motion. The legal arguments, to a large extent, duplicated the arguments made in support of the motions for summary judgment simultaneously briefed.

The result of all this expensive effort is that plaintiffs got nothing. Indeed, this Court denied relief precisely because it had already resolved the dispositive motions on Counts 1 and 2 against plaintiffs. [Dkt. 147 at 79] The Court proceeded to explain that, even it were wrong on the substantive law, plaintiffs would not be entitled to a preliminary injunction.

As this Court's own approach to the issues demonstrated, almost everything done in this case led to the rejection of plaintiffs' motion for preliminary injunction. There is no reason why the Party should not recover its fees with regard to those efforts.

2.       **The Party prevailed on the cross-motions for summary judgment**.

Plaintiffs object to compensating the Party for its successful efforts on summary judgment on the peculiar theory that its "briefing was offensive rather than defensive." [Dkt. 160 at 7]  Plaintiffs cite no support for this distinction and none exists.  Section 11(c) authorizes fees to the prevailing party, regardless of tactics.  Moreover, everything a defendant does to escape a baseless complaint is defensive.  Presumably, plaintiffs think the United States was no longer defending itself after Eisenhower's troops crossed into Germany.  That is not the fact, and that is not the law.

Plaintiffs' argument seems to be that the Party was wasting money in arguing summary judgment "because the plaintiffs only sought summary judgment against the Secretary of State."  Plaintiffs continue, "As RPM admits, Plaintiffs did not file a summary judgment motion against it on Counts 1 and 2."  Plaintiffs offer no citation to the record for this fantasy, and it is false.  Although plaintiffs represented to the Court that they did "not intend to seek summary judgment against the Republican Party at this stage" [Dkt. 63 at 2], the motion they actually filed did not exclude the Party from its scope.  It began, "Plaintiffs True the Vote, et. [*sic*] al. respectfully move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on their claims under the Public Disclosure Provision of the National Voter Registration Act." [Dkt. 83 at 1-2]  They continued, "Defendants have unlawfully denied Plaintiffs access to these records in violation of the NVRA …."  [Dkt. 83 at 2] Because plaintiffs' motion sought summary judgment for all purposes against all defendants on Counts 1 and 2, the Party was obliged to incur the expense of filing an opposition brief. [Dkt. 116]  That brief, however, was relatively short, because the Party

had already presented most of its legal arguments in support of its own motion for summary judgment. [Dkt. 87]  There is no reason it should not be compensated for its successful defense of plaintiffs' claims.

A word should be said concerning plaintiffs' repeated accusations that the Party somehow violated this Court's order of July 25, 2014. [Dkt. 46]  That order "invite[d] the parties to file motions for summary judgment on the NVRA claims to resolve on the merits Plaintiffs' claims under that statute."  The Party did that.  The Court continued, "If a party desires to seek summary judgment at this stage, the party must so inform the Court in writing by July 30, 2014."  The Party did that. [Dkt. 60]  The Court concluded, "The parties must jointly set a briefing schedule that results in the final briefs being filed on or before August 22, 2014."  This seems to constitute the crux of plaintiffs' accusation.

Without consulting anyone except counsel for the Secretary of State, plaintiffs submitted a schedule to the Court by letter of July 30, 2014. [Dkt. 53]  The Party proceeded to file its summary judgment brief consistent with the schedule chosen by plaintiffs. Plaintiffs complain that "[t]he RPM did not even *attempt* to confer with plaintiffs regarding a briefing schedule." [Dkt. 160 at 7 (emphasis in original)]  There was not much point in conferring when plaintiffs had already announced the schedule.  The Party proceeded to comply with that schedule.

Plaintiffs, however, do not stop there.  "RPM thereafter disregarded the Court's directive again.  Instead of briefing only Counts 1 and 2 of the case, RPM prematurely moved for summary judgment on Count 3." [Dkt. 160 at 3]  Nothing in the Court's order directed the parties to brief only Counts 1 and 2.  There was nothing premature about the

11

Party's motion concerning Count 3. According to Fed. R. Civ. P. 56(b), "a party may file a motion for summary judgment at any time until 30 days until after the close of all discovery." The Party violated no order and no rule. If plaintiffs were not ready to proceed on Count 3, they should not have included Count 3 in their complaint.

Finally, plaintiffs assert that the Party should have "coordinate[d] briefing with the Secretary of State – the main defendant in this case." At no time before the filing of plaintiffs' opposition to the Party's motion for fees have plaintiffs identified the Secretary as "the main defendant." As far as the Party is concerned, the Party was the main defendant, and it defended itself. The accusation that the Party's briefing constituted "an entirely duplicative effort" [Dkt. 168] is nonsense. This Court dismissed Counts 1 and 2 against the Party because it is not properly subject to suit under the NVRA. [Dkt. 147 at 21] The Secretary did not make that argument and could not have done so.

Nothing regarding the work done on summary judgment was unnecessary. Only this lawsuit was unnecessary. Plaintiffs should have to pay for it.

### 3.      The sanctions motion was part of the Party's successful defense.

Without any citation of authority, plaintiffs contend that they "should not be required to pay for fees in connection with preparation of the RPM's Motion for Sanctions, as this Court found it unsuccessful." [Dkt. 160 at 9]   Obviously, the legal research that the Party's counsel performed before the service of the motion for sanctions was necessary to every subsequent argument about the complaint. Indeed, some of that research had already been incorporated into the Party's response [Dkt. 12] to the motion for temporary restraining order [Dkt. 8], filed the day after the commencement of this action. As the

Supreme Court made clear in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), upon which plaintiffs themselves rely, a litigant's failure to win every round of every bout need not necessarily reduce the fee award. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.*, at 439. Although this Court denied sanctions, it found the same arguments sufficient to dismiss Counts 1 and 2.

To the extent it may be relevant to this Court's resolution of this motion, it is important to note that plaintiffs have never offered any sworn evidence that any plaintiff or any of their counsel believed that the Mississippi Republican Party had any documents encompassed by the NVRA. No evidence demonstrates when plaintiffs came into possession of the letter of July 17, 2014, admitted at the hearing as Exhibit P-9, but they certainly did not have it when they filed their complaint. No one testified that anyone believed that the Clerk's letter referred to the Mississippi Republican Party. Colonel Harding plainly knew who had the documents, because he told the local newspaper that he would "rather not name names." See Exhibit 1.[4] The Party was perfectly prepared to ask Colonel Harding who had those documents, but the Court's evidentiary ruling had made it unnecessary.[5] If the Court believes the meaning of Exhibit P-9 to be relevant to this motion,

---

[4] The Party sees no ambiguity in Colonel Harding's affidavit, attached as Exhibit 1 to plaintiffs' counsel's letter of July 10, 2014 [Dkt. 9], but his comments to the newspaper make clear that he was referring to members of the Harrison County Committee, not the Mississippi Republican Party.

[5] The Court admitted Exhibit P-9 only for the purpose of showing what Colonel Harding received. Tr. 176. Because Colonel Harding is not a plaintiff, what he received is irrelevant to any issue in this case. Certainly, Colonel Harding's knowledge does not prove what any plaintiff or plaintiffs' counsel may have known.

the Party will be perfectly happy to bring Colonel Harding to Court and ask him. The Party is confident of his answer.

## III.   THE REQUESTED FEES ARE REASONABLE.

Plaintiffs conclude with unwarranted criticism of some of the details of the fees requested by the Party.

Plaintiffs suggest that the Party is attempting to recover payment for its "work in other matters." Much of that argument is countered by the sworn testimony of the Party's lawyer in his affidavit [Dkt. 149 Ex. 1], which plaintiffs make no attempt to address. Counsel swore in ¶ 5:

> To a certain extent, however, it has been necessary for me to familiarize myself with proceedings in the primary challenge brought by Senator McDaniel against Senator Cochran for purposes of this litigation. For instance, it was necessary to review the papers filed in the challenge to determine whether any issues overlapped with this litigation, so as to consider a possible motion for abstention. I have not charged a fee for any time devoted purely to the primary or the primary challenge.

Plaintiffs offer no reason to believe this testimony to be false.

It was not only the Party that found it necessary to monitor the election challenge. Secretary Hosemann attached the complaint in that case as Exhibit 5 to his response to plaintiffs' motion for summary judgment. [Dkt. 113] He explained in his brief that certain documents requested by plaintiffs could not be delivered until after that challenge ends. [Dkt. 114 at 23-24] For multiple reasons then, it was hardly a waste of time to remain cognizant of that litigation.

Plaintiffs also complain that the Party reviewed the mandamus proceedings brought by Senator McDaniel in lower courts and in the Supreme Court in an effort to obtain access

to poll books. To the contrary, if the Supreme Court had granted Senator McDaniel access to poll books, that would have largely mooted the NVRA claims. Had the Supreme Court ruled that anyone could walk into the courthouse and get the poll books, plaintiffs would have had no further need to solicit the aid of this Court. The result of that litigation was important enough that Secretary Hosemann's counsel advised this Court of the outcome during the hearing on preliminary injunction. Tr. 308.

Even more absurd is plaintiffs' contention that their original complaint in the Northern District of Mississippi is somehow unrelated to this case. The Party attached the original complaint and the opinion of Judge Mills as exhibits to its response to plaintiffs' motion for a temporary restraining order. [Dkt. 12] It aided the Party and this Court in understanding why plaintiffs were entitled to no relief.

More generally, plaintiffs complain that some time entries refer without detail to review of filings. This Court's opinion of August 29, 2014, was the 147th filing in this action. Every one of those filings had to be reviewed. If plaintiffs have any doubt which filings were being reviewed on any particular date, comparison to the docket will make the answer plain.

It is certainly true that the Party's initial motion did not discuss in detail all of the factors listed in *Hensley v. Eckerhart*, 461 U.S. at 436-37. Given the necessity to respond immediately and exhaustively to the multitude of claims that plaintiffs asserted on an emergency basis, there should have been little need to do so. Still, if plaintiffs wish to challenge the veracity of the statements submitted to the Party by its counsel, Rule 54(b)(2)(C) permits this Court to receive and resolve evidence. The Party's counsel will

15

be happy to be subjected to cross-examination on the bill, and the Party looks forward to cross-examining plaintiffs' counsel on all of the issues raised by this motion. However, the Party firmly believes that a sufficient record is before this Court to submit its resolution.

## CONCLUSION

For the reasons stated herein and in the Party's original brief, its motion for fees, expenses, and costs should be granted in full.

Respectfully submitted, this the 3rd day of October, 2014.

MISSISSIPPI REPUBLICAN PARTY

By:     s/Michael B. Wallace
        Michael B. Wallace (MSB No. 6904)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi 39202-0651
        Telephone: 601.968.5500
        mbw@wisecarter.com


        T. Russell Nobile (MSB No. 100682)
        WISE CARTER CHILD & CARAWAY, P.A.
        1105 30th Avenue, Suite 300
        Gulfport, Mississippi 39501
        Telephone: 228.867.7141
        trn@wisecarter.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Joseph M. Nixon
Kelly Hunsaker Leonard
Kristen W. McDanald
Lloyd Eades Hogue
BEIRNE, MAYNORD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
jnixon@bmpllp.com
kleonard@bmpllp.com
kmcdanald@bmpllp.com
ehogue@bmpllp.com

James Edwin Trainor
BEIRNE, MAYNORD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas 78701
ttrainor@bmpllp.com

*Counsel for Plaintiffs*

Harold Edward Pizzetta, III
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205-0220
hpizz@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for The Hon. Delbert Hosemann*

Pieter Teeuwissen
PIETER TEEUWISSEN, PLLC
Post Office Box 16787
Jackson, Mississippi 39236
adwoodard@bellsouth.net

*Counsel for Hinds County, Mississippi Election Commission*

Robert E. Sanders
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 23059
Jackson, Mississippi 39225-3059
rsanders@youngwells.com

John Wesley Daughdrill, Jr.
YOUNG WELLS WILLIAMS SIMMONS, P.A.
Post Office Box 6005
Ridgeland, Mississippi 39157
wes.daughdrill@youngwells.com

*Counsel for Jefferson Davis County, Mississippi Election Commission*

Elise Berry Munn
BERRY & MUNN, P.A.
Post Office Drawer 768
Hazlehurst, Mississippi 39083
emunn@berrymunnpa.com

*Counsel for Copiah County, Mississippi Election Commission*

Jeffrey T. Webb
WEBB LAW FIRM, PLLC
Post Office Box 452
Carthage, Mississippi 39051
webblaw@bellsouth.net

*Counsel for Leake County, Mississippi Election Commission*

17

Lee Thaggard
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, Mississippi  39302-2009
thaggard@barrypalmerlaw.com

  *Counsel for Lauderdale County,*
  *Mississippi Election Commission*

Mike Espy
MIKE ESPY, PLLC
317 East Capitol Street, Suite 101
Jackson, Mississippi  39201
mike@mikespy.com

  *Counsel for Madison County,*
  *Mississippi Election Commission*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi  39042
cslay@rankincounty.org

  *Counsel for Rankin County, Mississippi*
  *Election Commission*

Danny Welch, Esq.
224 North Main Street
Mendenhall, Mississippi 39114
Danny_welch@bellsouth.net

  *Counsel for Simpson County,*
  *Mississippi Election Commission*

This the 3rd day of October, 2014.

  *s/Michael B. Wallace*
  Michael B. Wallace

18