IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| TRUE THE VOTE, *et al.*, § | |
| Plaintiffs, § | |
| § | |
| v.  § | C.A. NO. 3:14-CV-532-NFA |
| § | |
| THE HONORABLE DELBERT § | |
| HOSEMANN, *et al.*, § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Attorneys' Fees, Expenses, and Costs [Doc. # 149] ("Motion") and the Memorandum in Support [Doc. # 150] ("Republican Party's Memorandum") filed by Defendant The Republican Party of Mississippi (the "Republican Party"). Plaintiffs filed a Response [Doc. # 159] and Memorandum in Support [Doc. # 160] ("Plaintiffs' Memorandum"), to which the Republican Party filed a "Rebuttal" [Doc. # 162] ("Reply"). The Court heard brief argument on the Motion during a telephonic conference held on October 6, 2014. Plaintiffs subsequently filed a letter [Doc. # 163] ("Plaintiffs' Oct. 6 Letter") clarifying several of their positions, to which the Republican Party responded with its own letter [Doc. # 166] ("Republican Party's Letter"). After carefully considering the parties' briefing, the evidence of record, and the applicable legal authorities, the Court **denies** the Republican Party's Motion.

## I. BACKGROUND

The Court detailed extensively the facts of this case in its Memorandum and Order [Doc. # 147] ("Court's Memorandum") issued August 29, 2014 and does not repeat them here. The Court granted in part the Republican Party's Motion to Dismiss, or, in the alternative for Summary Judgment [Docs. # 87 and # 88] ("Republican Party's Motion for Summary Judgment") as to Counts 1 and 2 of Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief [Doc. # 58] ("Amended Complaint"), claims under the National Voter Registration Act ("NVRA") (Counts 1 and 2 collectively are the "NVRA claims"). Court's Memorandum, at 22-23, 90. The Court denied all Plaintiffs' requests for preliminary or other injunctive relief and dismissed with prejudice, on several grounds, the NVRA claims against all defendants. *Id.*, at 89-90.

The Court did not invite motions on and declined to address Count 3 of Plaintiffs' Amended Complaint, a putative Equal Protection Clause claim alleging vote dilution (the "Equal Protection Clause claim"). Accordingly, the Court denied without prejudice the Republican Party's Motion for Summary Judgment on this claim. *Id.*, at 22 n.63, 90.

The Court further denied the Republican Party's request for Rule 11 sanctions and reimbursement for fees, costs, and expenses. *Id.*, at 84-86, 89. The Court

concluded sanctions were not warranted because "[w]hile Plaintiffs' [NVRA] claims against Defendant Republican Party [did] not pass muster on summary judgment, . . . Plaintiffs apparently were under the impression at the time they filed suit that the Republican Party controlled access" to requested documents and stated that "should Plaintiffs prevail [on the Equal Protection Clause claim] it is at least arguable that the Republican Party is a necessary party to this case for purposes of implementing a remedy." *Id.*, at 86-87.

The Republican Party now seeks $82,118.75 in attorneys fees and $365.59 in expenses pursuant to Federal Rule of Civil Procedure 54(d) and 52 U.S.C. § 20510(c).[1] Motion, at 1. The Republican Party sought but then withdrew a request for taxable costs. *See* Notice Regarding Bill of Costs [Doc. # 167]. Accordingly, the Court limits its analysis to the Republican Party's request for attorneys fees and expenses.

## II.   LEGAL STANDARD

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt*

---

[1]   On September 1, 2014, after the Court issued its Memorandum, the NVRA provisions and all United States Code ("U.S. Code") provisions relating to voter registration and elections were transferred from Title 42 to Title 52 of the U.S. Code. *See* Court's Memorandum, at 3-4 n.1. No substantive changes were made through the recodification. The Court, therefore, cites to Title 52 and the current codification of the NVRA.

*v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84 (1983)) (internal quotation marks omitted). Here, the Court must apply the NVRA's provision for recovery of attorneys fees, expenses, and costs, which states that courts "may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." *See* 52 U.S.C. § 20510(c).

The parties first dispute whether the NVRA is a "civil rights statute." The Supreme Court has held that, in civil rights cases, prevailing defendants may only recover attorneys fees if the plaintiff's "claim was frivolous, unreasonable, or groundless" or "the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also Fox v. Vice*, 131 S. Ct. 2205, 2209 (2011) (quoting *Christiansburg*). The parties, therefore, agree that in a "civil rights case," prevailing defendants may recover attorneys fees only when the suit is "frivolous, unreasonable, or groundless." *See* Republican Party's Memorandum, at 5; Plaintiffs' Memorandum, at 4.

The rationale for these fee shifting standards is that "[t]o take the further step of assessing attorneys fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Christiansburg*, 412 U.S. at 421; *see also Vaughner v. Pulito*, 804 F.2d 873,

878 (5th Cir. 1986) ("We have recognized that private enforcement would be substantially diminished if parties who had good faith claims under the civil rights statutes faced the prospect of always having to pay their opponent's fees should they lose."). The Fifth Circuit has noted that "[t]he 'stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail.'" *Myers v. City of W. Monroe*, 211 F.3d 289, 292 n.1 (5th Cir. 2000) (quoting *Alter v. N.Y. Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984)).

The Republican Party asserts that, because the NVRA has not been included in the list of statutes cited in 42 U.S.C. § 1988(b), the fee shifting provision in the civil rights laws, the NVRA is not a civil rights statute and prevailing defendants in NVRA suits are not required to meet the standards for recovery of fees that are imposed on prevailing defendants in civil rights cases.[2] *See* Republican Party's Memorandum, at 4; Reply, at 3-4. The NVRA provides that the Court "may allow" the "prevailing party" recovery of attorneys fees, expenses and costs. 52 U.S.C. § 20510(c). Congress, accordingly, granted courts wide discretion in deciding whether attorneys fees and expenses should be awarded to a prevailing defendant under the NVRA. *Cf.*

---

[2] The Republican Party urges that Congress could have amended the statute to specifically include the NVRA but chose not to. Republican Party's Memorandum, at 4; Reply, at 5.

*Fox*, 131 S. Ct. at 2211; *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983) (all acknowledging the discretion afforded to district courts in determining the appropriateness of a fee award). This Court adopts the reasoning of other courts addressing the NVRA and other laws, and exercises its discretion to rely on the fee shifting authority applicable to civil rights cases, whether or not the NVRA is a civil rights law.

The NVRA is akin to a civil rights statute, even if not technically defined as such. It is inescapable that Congress enacted the NVRA in recognition of the "fundamental right" to vote, *see* 52 U.S.C. § 20501(a)(1), and with the purposes of establishing procedures to increase voter registration, enhancing voter participation, protecting the integrity of the electoral process, and ensuring accuracy of voter register registration rolls. *See* 52 U.S.C. § 20501(b)(1)-(4). Contrary to the Republican Party's suggestions, *see* Reply, at 4, Congress and the Supreme Court have recognized that the right to vote is a civil right. *See* 28 U.S.C. § 1343 (giving district courts original jurisdiction over civil actions brought by any person "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote"); *Morse v. Republican Party of Va.*, 517 U.S. 186, 222 n.34 (1996) ("It is quite natural, however, that Congress would draw on § 1983 when it sought to draft provisions that established individual liability for persons who violate civil rights such as the right to vote."); *Shelby Cnty., Ala. v.*

*Holder*, 133 S.Ct. 2612, 2619 (2013) ("Inspired to action by the civil rights movement, Congress responded in 1965 with the Voting Rights Act."); *Shelby Cnty.*, 133 S.Ct. at 2644 (Ginsburg., J., dissenting) (calling the Voting Rights Act "the Nation's signal piece of civil-rights legislation").

The voter registration rights at issue are grounded in the Constitution, fundamental to our system of democratic government, and central to the relationship among citizens of the United States and those who govern. The right of citizens to register to vote is a predicate to the right to cast a ballot. Further, the public's right to reasonably access voter registration materials in compliance with the NVRA is an important corollary to the right to enforcement of the registration right. If these are not "civil rights" *per se*, they are so closely akin to such rights that the same fee shifting standards should apply.

Courts that have reached the issue of defendants' entitlement to recovery of attorneys fees in NVRA suits have concluded that the NVRA is subject to the same fee shifting standards that apply in civil rights cases. *See Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 708-09 (E.D. Va. 2012) ("Courts apply the same standards applicable to other federal civil rights fee shifting statutes when considering an award under this section."); *Nat'l Coal. for Students with Disabilities v. Bush*, 173 F. Supp. 2d 1272, 1276 (N.D. Fl. 2001) ("In cases arising under the National Voter Registration Act, as in cases arising under 42 U.S.C. § 1983 and certain other civil

rights statutes, the court may award the prevailing party a reasonable attorney's fee." (internal citations and quotation marks omitted)); *Project Vote v. Blackwell*, No. 1:06–CV–1628, 2009 WL 917737, at *4 n.7 (N.D. Ohio Mar. 31, 2009) (O'Malley, J.) (noting that "the same standards apply to fees recovered" under the NVRA and 42 U.S.C. § 1988).

Other courts have addressed fee shifting standards in regard to comparable statutes. For instance, the Fifth Circuit held that the *Christiansburg* fee shifting standard should apply in an Americans with Disabilities Act ("ADA") case because the underlying policies of that law were similar to the concerns addressed by the civil rights laws listed in § 1988 and Title VII. *See No Barriers, Inc. v. Brinker Chilli's Tex., Inc.*, 262 F.3d 496, 498 (5th Cir. 2001). In addressing a successful defendant's request for fees in this ADA case, the Fifth Circuit stated: "Each circuit that has addressed the issue has concluded that the considerations that govern fee-shifting under § 706(k) of title VII or under 42 U.S.C. § 1988 apply to the ADA's fee-shifting provision, because the almost identical language in each indicates Congress's intent to enforce them similarly." *Id.*; *see also Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1209 (Colo. App. 2010) ("[F]ederal courts have ruled similarly to *Christiansburg* in applying attorney fees provisions in antidiscrimination, civil rights, and other statutes where policies such as those relied on in *Christiansburg* are present.").

The underlying concern in *Christiansburg*, to avoid unwarranted deterrence of individuals' efforts to vindicate their rights, applies equally to plaintiffs asserting claims under the NVRA. *Cf. Ass'n of Cmty. Orgs. for Reform v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999) (explaining how the inclusion of an attorneys fee provision in the NVRA indicated Congressional support for "enforcement actions by private attorneys general"). Thus, the Court concludes that the Republican Party may recover attorneys fees under the NVRA only if it can show either that Plaintiffs' claims were "frivolous, unreasonable, or groundless" at the outset of the case, or that during the litigation Plaintiffs continued to litigate after their claims against the Republican Party clearly became so. *See Christiansburg*, 434 U.S. at 422.

In the Fifth Circuit, courts "review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *U.S. v. State of Miss.*, 921 F.2d 604, 609 (5th Cir. 1991). "When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers*, 211 F.3d at 292 (citing *State of Mississippi*, 921 F.2d at 609).

### III. ANALYSIS

The Republican Party, as a prevailing defendant on the NVRA claims, requests an award of its attorneys fees and expenses incurred in defense of those claims.

Motion, at 1. To the extent the Court granted summary judgment in favor of the Republican Party on the NVRA claims, *see* Court's Memorandum, at 22-23, 90, the Republican Party is a prevailing party. The more difficult issue is whether Plaintiffs' NVRA claims were frivolous, unreasonable, or groundless at some point in time or whether the claims turned out, after the parties' exchange of information, to be legally incorrect, but not unreasonable. The Court concludes the latter.

A.   **Time of Filing**

As noted, to determine if a suit was frivolous, the Court considers three factors, under *Myers* and *State of Mississippi*: (1) did the plaintiff establish a *prima facie* case, (2) did the defendant offer to settle, and (3) did the court hold a full trial. *Myers*, 211 F.3d at 292 (citing *State of Mississippi*, 921 F.2d at 609). In denying the Republican Party's request for sanctions under Federal Rule of Civil Procedure 11, the Court was unpersuaded by the Republican Party's argument that Plaintiffs' NVRA claims were frivolous when pleaded. Court's Memorandum, at 86. The Court, for the same reasons, does not find Plaintiffs' NVRA claims were frivolous, unreasonable, or groundless when filed. *See id.* (when Plaintiffs filed this lawsuit they were apparently under the impression that the Republican Party controlled access to requested documents and it was "at least arguable" that the Republican Party was a necessary party for purposes of relief under the Equal Protection Clause claim); *see also* Plaintiffs' Response [Doc. # 131], ¶¶ 3, 10 (explaining why Plaintiffs believed the

Republican Party was in control of the requested documents); Letter from Gayle Parker to Phil Harding [Doc. # 106-2] (stating that Harding should direct questioning regarding missing absentee ballot applications and envelopes to the "executive committee members" because "the Republican Party was in charge of the conduct of the Republican Runoff Election");[3] Email from Joe Nosef to Julie Patrick [Doc. # 131-3] (showing that the chairman of the Republican Party provided direction to county committees). The Court thus does not find that Plaintiffs failed to have a semblance of a basis for a *prima facie* case.

As to settlement efforts and the need for a trial, the Court notes that, from Plaintiffs' perspective, time was of the essence. The role of the Republican Party in administering the primary and the primary run-off elections, and thus the Republican Party's custody or control of voter registration documents, initially was not clear. This confusion was understandable for those unschooled in the intricacies of Mississippi election law and procedures and in light of complex state statutes and regulations, as well as the Republican Party's delegation to the counties and municipalities of certain duties. In fact, there was a need for a preliminary injunction hearing to educate all concerned about state and county procedures and policies.[4]

---

[3] While the Republican Party's arguments about the meaning of this letter are significant and informative, it was far from clear what the comments meant when the letter was sent.

[4] The Republican Party contends that Plaintiffs should have known the procedures and
(continued...)

In hindsight, Plaintiffs' assertions of the NVRA claims against the Republican Party were unwarranted. Plaintiffs should have requested documents and sought clarification from the Republican Party officials prior to filing suit against that entity. However, the Court cannot find under the circumstances presented that Plaintiffs' NVRA claims against the Republican Party, at the outset of this case, were frivolous, unreasonable, or groundless. *See State of Mississippi*, 921 F.2d at 609.

### B.   Continued Litigation

The Court also must consider if attorneys fees are warranted because Plaintiffs continued to litigate the NVRA claims against the Republican Party after those claims became frivolous, unreasonable, or groundless. *See Christiansburg*, 434 U.S. at 422. The Republican Party concedes that "it is difficult to specify the date upon which plaintiffs' litigation against the Party became frivolous" but contends that the NVRA claims "unquestionably became frivolous no later than the point at which [Plaintiffs'] counsel stood up in court [at the July 24th hearing] and said with regard to the [Republican] Party, 'We haven't said they've done anything bad.'" *See* Republican Party's Memorandum, at 6 (quoting July 24 Hearing Transcript [Doc. # 50], at 347).

---

[4]   (...continued)
policies from certain informal publications that it claims were available. But given the shortness of time, complexity of the procedures, and uncertainty regarding what documents were available to Plaintiffs prior to filing, the Court cannot conclude that Plaintiffs' NVRA claims at the time of filing were frivolous, unreasonable, or groundless based on the existence of these documents.

Analysis of the *Myers* factors here does not sway the Court strongly in either party's favor. The first factor, whether Plaintiffs had a *prima facie* case against the Republican Party, tips in the Republican Party's favor. At the close of the preliminary injunction hearing on July 24, 2014, Plaintiffs were aware that they could not establish a *prima facie* claim under the NVRA because they could not establish that the Republican Party had possession of any voter registration documents that Plaintiffs sought.[5] Indeed, Plaintiffs seem to have conceded this point by not seeking summary judgment on the NVRA claims against the Republican Party. *See* Letter to Court dated July 30, 2014[Doc. # 53] ("Plaintiffs' July 30 Letter"), at 1 (stating that Plaintiffs only intended to seek summary judgment against the Secretary of State). While the Republican Party requested dismissal from the suit, it is not clear whether its request was directed to all claims or only the NVRA claims. The Republican Party sought summary judgment on all claims, including the Equal Protection Clause claim. *See* Republican Party's Motion for Summary Judgment. At the time, it remained possible that the Republican Party was a necessary party to any relief Plaintiffs sought under the Equal Protection Clause claim. *See* Plaintiffs' Oct. 6 Letter, at 1; Court's Memorandum, at 87.

---

[5] Moreover, Plaintiffs had not meaningfully requested documents from the Republican Party.

The second and third *Myers* factors are less clear. The Republican Party appears to admit that it did not make any "settlement offers" in this case. Reply, at 7. Rather, the Republican Party apparently demanded dismissal from the suit. The parties dispute whether this factor supports Plaintiffs or the Republican Party. *Compare* Reply, at 7, *with* Response, at 6. The Fifth Circuit has recognized that this factor may be less important than the others. *See Myers*, 211 F.3d at 292.

The case was decided on summary judgment motions, filed after the case was pending only approximately one month. Indeed, the case was pending approximately two months total. While the Court held a long one-day hearing, no post-discovery, full trial on the merits occurred. During this time, Plaintiffs had concerns that were not unreasonable that the Republican Party expressly or implicitly controlled document disclosure decisions made by the county committee members. Also, Plaintiffs' reluctance to dismiss the Republican Party from the NVRA claims appears to have stemmed from their expansive construction of the NVRA. Plaintiffs' construction of the statute was incorrect, but the Court cannot find on the record presented that Plaintiffs' continued assertion of the NVRA claims against the Republican Party for an additional month was frivolous, unreasonable, or groundless. Notably, Plaintiffs did timely move to dismiss the entire case after the Court issued its Memorandum dismissing the NVRA claims.[6]

---

[6] The Court notes the Republican Party's contention that Plaintiffs' NVRA claims were
(continued...)

In sum, the Court is unpersuaded that the Republican Party has met its burden to show that Plaintiffs' decision not to dismiss the NVRA claims against it in late July 2014 warrants recovery of attorneys fees or expenses. The Court here "resist[s] the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22. Accordingly, the Court denies the Republican Party's motion for fees.[7]

---

[6] (...continued)
frivolous, unreasonable, or groundless because the lawsuit was improperly politically motivated. *See* Republican Party's Letter, at 2; Response of Mississippi Republican Party to So-Called Amended Agreed Motion to Dismiss [Doc. # 161], at 3. While it is patently true that this suit was politically motivated, in the context of the NVRA this motivation is not sufficient grounds for a finding that the claims were frivolous, for the various reasons enumerated above.

[7] Even if an award of fees were warranted, the Court concludes that the request would likely have been largely denied. The Fifth Circuit imposes rigorous detailed standards on the party requesting attorneys fees. The Fifth Circuit utilizes the "lodestar method" to calculate attorneys fees whereby the district court determines the reasonable number of hours expended on successful aspects of the litigation and the reasonable hourly rate for the attorneys, and then multiplies the number of hours reasonably expended by the reasonable hourly rate. *Forbush v. J.C. Penny Co.*, 98 F.3d 817, 821 (5th Cir. 1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). "The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)." *Forbush*, 98 F.3d at 821. The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 438; *see also Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).

The Republican Party's counsel performed important work by providing factual background and elucidating the Mississippi legal landscape. Nevertheless, the Republican Party has not met its burden to identify the work and expenses relating solely to issues on which it prevailed. "[I]f the defendant would have incurred those
(continued...)

## IV. CONCLUSION AND ORDER

Although Plaintiffs' NVRA claims lacked merit on numerous grounds, the Court has determined that the Republican Party has not demonstrated that Plaintiffs' NVRA claims were frivolous, unreasonable, or groundless, as required by the applicable fee shifting standard. It is, therefore, hereby

**ORDERED** that Defendant Republican Party's Motion for Attorneys' Fees, Expenses, and Costs [Doc. # 149] is **DENIED**.

Signed at Houston, Texas, this 17th day of **October, 2014.**

Nancy F. Atlas
United States District Judge

---

[7] (...continued)
fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Fox*, 131 S. Ct. at 2215. The Republican Party seeks fees for work done, in part, on a claim on which it did not prevail, Plaintiffs' Equal Protection Clause claim. *See* Affidavit of Michael B. Wallace [Doc. # 149-1] ("Wallace Affidavit"), at ECF page 9 ("edit brief regarding summary judgment on vote dilution"). Many entries pertain to briefing and preparation performed by counsel for the preliminary injunction proceeding, even though Plaintiffs did not seek injunctive relief against the Republican Party. *See* Plaintiffs' July 30 Letter, at 2; Wallace Affidavit, at ECF page 10 ("draft brief opposing preliminary injunction"). Some time and expense entries are vague and do not identify the issues or claims addressed. *E.g.*, Wallace Affidavit, at ECF pages 10-11 ("[e]mails and review filings" or "[r]eview filings"). Accordingly, the Court cannot segment recoverable fees from those that appear to be unrecoverable, and the Republican Party has not shown that it would have incurred all of the requested fees "but for" the presence of the NVRA claims. *See Fox*, 131 S. Ct. at 2215. The Court intends no criticism of counsel or the Republican Party. It emphasizes that their work assisted the Court's understanding of the facts, election procedures in Mississippi, and local practices, and thus was of benefit to the required analysis.